## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Joint Administration Pending) |

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTING, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby move (the "**Motion**") for entry of an interim order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Interim Order**"), pursuant to sections 105, 361, 362, 363, 506, 507, and 552(b) of title 11 of the United States Code (the "**Bankruptcy Code**"); Rules 2002, 4001, 6004(h), 7062 and 9014 of Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**"); and Rules 2002-1(b), 4001-2, and 9013-1(m) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) authorizing the Debtors to use the "**Cash Collateral**," as defined in Bankruptcy Code section 363(a), of the Prepetition Secured Parties (as defined below); (ii) providing adequate protection to the Prepetition Secured Parties on the terms set forth in the Interim Order; (iii) modifying the automatic stay; and (iv) scheduling a final hearing on the Motion and approving the form and notice of notice thereof. In support of the Motion, the Debtors rely upon the *Declaration of Alton Davis, President and Chief Operating Officer of Bayou Steel BD Holdings, L.L.C., in Support of Chapter 11 Petitions and First Day*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

*Motions* [Docket No. 14] (the "**First Day Declaration**"). In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

**JURISDICTION AND VENUE**

1.        This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2.        The statutory predicates for the relief requested herein are Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b), Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, and Local Rules 2002-1(b), 4001-2, and 9013-1(m).

**BACKGROUND**

**I.        General Background**

3.        On October 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

4.        The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

2

II.     **Prepetition Debt Structure**

5.      In April 2016, BD LaPlace, LLC ("**LaPlace**" or the "**Borrower**") as borrower and Bayou Steel Parent and BD Bayou Steel Investment, LLC ("**Bayou Steel Investment**" and together with Bayou Steel Parent, the "**Guarantors**") as guarantors are party to that certain Loan and Security Agreement dated as of April 4, 2016 (as amended, supplemented, or otherwise modified from time to time, the "**Credit Agreement**" or the "**ABL Credit Agreement**") with Bank of America, N.A., in its capacity as agent and lender (the "**Pre-Petition Agent**" or the "**ABL Agent**") and Suntrust Bank (together with the Senior Agent, the "**Pre-Petition Lenders**" or the "**ABL Lenders**").

6.      Pursuant to the ABL Credit Agreement, the ABL Lenders agreed to extend the Company revolving loans in an aggregate principal amount not to exceed $75 million (the "**ABL Facility**" or the "**Revolver**"). As of the Petition Date, the maximum revolver commitment under the ABL Facility was $72.5 million.

7.      The ABL Agent has also extended letters of credit in the principal amount of $2.67 million.

8.      The ABL Facility is secured by first priority liens over substantially all of the Debtors' assets, including the Debtors' accounts receivable, inventory, and cash collateral, but excluding real estate and proceeds thereof (the "**ABL Collateral**"), all as set forth in greater detail in the ABL Credit Agreement and related documents (collectively, the "**ABL Facility Documents**").

9.      As of the Petition Date, the aggregate principal amount outstanding under the ABL Facility is approximately $41.25 million (the "**ABL Obligations**").

10.     The Borrower and Guarantors are also party to that certain Subordinated Loan and Security Agreement dated as of December 21, 2017 (as amended, supplemented, or otherwise

70599093.5

modified from time to time, the "**Subordinated Loan Agreement**" or the "**Term Loan Agreement**") with Black Diamond Commercial Finance, LLC as lender and agent (the "**Subordinated Agent**" or the "**Term Loan Agent**", and together with the ABL Lenders, the "**Prepetition Secured Parties**").

11.     Pursuant to the Prepetition Term Loan Agreement, the Term Loan Agent agreed to extend the Company term loans in the aggregate principal amount of $15 million (the "**Term Loan Facility**"). As of the Petition Date, the maximum commitment under the Term Loan Facility was $40 million.

12.     The Term Loan Facility is secured by a second priority lien over the ABL Collateral and a first priority lien on the real estate owned by the Company (the "**Real Estate Collateral**", and together with the ABL Collateral, the "**Prepetition Collateral**"), all as set forth in greater detail in the Term Loan Agreement and related documents (the "**Term Loan Documents**").

13.     As of the Petition Date, the aggregate principal amount outstanding under the Term Loan Facility is approximately $36.5 million (the "**Term Loan Obligations**", and together with the ABL Obligations, the "**Prepetition Secured Obligations**").

14.     The ABL Agent and the Term Loan Agent are parties to that certain Subordination and Intercreditor Agreement dated as of December 21, 2017 (the "**Intercreditor Agreement**").[2] The Intercreditor Agreement contains customary provisions governing the relationship between the ABL Agent and the Term Loan Agent, namely, to confirm the relative priority of their respective liens in the Prepetition Collateral. The Intercreditor Agreement also

---

[2]  The Debtors are not parties to the Intercreditor Agreement, but received and executed an acknowledgement of the Intercreditor Agreement.

70599093.5

sets forth the parties rights with regard to postpetition financing and other bankruptcy-related rights.

## III.   The Debtors' Need for the Use of Cash Collateral

15.     As described in the First Day Declaration, the Debtors explored strategic alternatives and potential forbearance from the Prepetition Secured Parties to address mounting liquidity issues. This problem was compounded after the Debtors defaulted and the ABL Agent began sweeping the Debtors' cash on a daily basis, which left the Debtors unable to purchase raw materials.

16.     Given that the Debtors have no liquidity, the Debtors have an immediate and critical need for the use of Cash Collateral. Access to the use of Cash Collateral will allow the Debtors to retain employees to sell off inventory, which the Debtors believe will preserve and maximize the value of the estate, as well as attempt to sell substantially all of the Debtors' remaining assets and re-start plant operations. The Debtors have determined that absent the use of Cash Collateral, the Debtors will not be unable to undertake the limited operations of their businesses during the Chapter 11 Cases and sell of the remainder of its inventory, which will irreparably harm the Debtors' estates and creditors. Other than Cash Collateral, the Debtors do not have access to funds. The Debtors hope to continue to sell inventory and create new inventory from raw materials on hand, but any revenue generated will constitute collateral under the ABL Credit Agreement and Term Loan Credit Agreement. The Debtors' ongoing obligations include obligations to pay wages to employees and amounts due and owing to critical vendors.

17.     In exchange for the consensual use of Cash Collateral, the Debtors have agreed, and the Interim Order provides, adequate protection in the form of, among other things, adequate protection liens, superpriority claims, and adequate protection payments to protect the Prepetition Secured Parties against any diminution in the value of their interests in the Cash

70599093.5

Collateral resulting from the use, sale, or lease of the Cash Collateral, the subordination of the Prepetition Secured Parties' liens to the Carve-Out (as defined in the Interim Order), and the imposition of the automatic stay.

18.    At this time, the Debtors do not contemplate the need for postpetition financing. Instead, the Debtors intend to operate their businesses solely on the use of the existing Cash Collateral generated from selling off existing inventory. Access to existing Cash Collateral on an interim basis will provide the Debtors with the liquidity necessary to ensure that the Debtors have sufficient working capital and liquidity to begin the process of liquidating inventory and beginning a sales process. Without access to such liquidity, the Debtors will face irreparable harm.

## RELIEF REQUESTED

19.    The Debtors respectfully request entry of the Interim and Final Orders, pursuant to Bankruptcy Code sections 105, 361, 362, 363, 506, 507, and 552(b) and Bankruptcy Rules 2002, 4001, 6004(h), 7062 and 9014, (i) authorizing the Debtors to use the Cash Collateral, (ii) granting the Prepetition Secured Parties adequate protection upon the terms set forth in the Interim Order and in any final orders, (iii) modifying the automatic stay, and (iv) scheduling a final hearing on the Motion.

20.    Pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the following are the principal terms of the Proposed Interim Order:[3]

| Required Disclosure | Summary of Material Term |
|---|---|
| **Parties with an Interest in Cash Collateral** | The ABL Lenders and the Subordinated Term Loan Lenders. |

---

[3]  Capitalized terms used but not otherwise defined in the chart have the meanings ascribed to them in the Interim Order. This summary and any other description of the Interim Order provided for in this Motion is qualified in its entirety by the actual terms of the Interim Order. The actual terms of the Interim Order will control in the event of any inconsistency between this Motion and the Interim Order.

70599093.5

| Required Disclosure | Summary of Material Term |
|---|---|
| Bankruptcy Rule 4001(b)(1)(B)(i) | |
| **Purposes for the Use of Cash Collateral**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | The Debtors have requested immediate entry of this Cash Collateral Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2, and have an immediate need to obtain use of the Cash Collateral in the amount and in the manner set forth in the Budget (as defined below) and this Cash Collateral Order in order to, among other things, preserve and maintain the value of their estates and businesses, liquidate their assets, and maximize the return to all creditors.  The Pre-Petition Secured Parties do not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Cash Collateral Order and the Budget.  The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain and operate their businesses and assets, sell or otherwise liquidate their assets, provide financial information, and pay other expenses necessary to maximize the value of the Debtors' estates.  Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein.  The use of Cash Collateral will benefit the Debtors and their estates.  The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of the Pre-Petition Secured Parties.  Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserve their estates. |
| **Budget**<br><br>Bankruptcy Rule 4001(b)(1)(B)(ii) | The Debtors are authorized to use Cash Collateral strictly in accordance with the 13-week budget attached hereto as **Exhibit 1** (the "**Budget**").  For each weekly period set forth in the Budget: (a) the actual aggregate expenditures by the Debtors for the immediately preceding one-week period (each, a "**Testing Period**") shall not in any event exceed the projected amount therefor set forth in the Budget by more than ten percent (10%) (excluding any expenditures for the Lenders' Costs (as defined below)); (b) the actual expenditures by the Debtors for any line item for the Testing Period shall not in any event exceed the projected amount therefor set forth in the Budget by more than twenty percent (20%) (excluding any expenditures for the Lenders' Costs); and (c) the actual aggregate receipts of the Debtors for the Testing Period shall not in any event be less than the projected amount therefor set forth in the Budget by less than twenty percent (20%).  Any unused expenditure amounts, not receipts, in the Budget during any one-week period, by line-item, may be carried forward and applied to any amount by which that same line-item, and only that same line-item, exceeds its projected use as set forth in the Budget during the subsequent eight-week period.  Notwithstanding the foregoing and any amount in the Budget, there shall be no variance on the fees and expenses of Professional Persons (as defined below), and there shall be no payment or series of payments made on account of (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned, and (b) contributions to an employee benefit plan, to any person that would in the aggregate exceed the statutory priority caps set forth in Bankruptcy Code sections 507(a)(4) and (a)(5) for any such person.<br><br>The Pre-Petition Agent is hereby authorized to apply at any time, or hold in reserve and subsequently apply at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or to permit the Debtors to use and the Pre-Petition Secured Parties to receive Adequate Protection for such use, all cash receipts for the Testing Period in excess of the projected amount for aggregate cash receipts set forth in the Budget (the "**Excess Cash**") to the Pre-Petition Claim and/or the Adequate Protection Claim, as determined by the Pre-Petition Agent.  The Debtors may request to use such Cash Collateral held in reserve on not more frequently than a weekly basis, and the amount of Cash Collateral available for such use shall be limited to the extent of the amount of such Cash Collateral held in reserve and the Budget. |

70599093.5

| Required Disclosure | Summary of Material Term |
|---|---|
| | The Debtors' use of Cash Collateral shall be conditioned upon the Debtors' compliance with the Budget. The Budget may be modified in writing only with the prior written consent of the Pre-Petition Agent and the Pre-Petition Lenders. The Debtors will file any amended Budget with the Court. Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors' Vice President of Finance or otherwise mutually agreeable party shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget and this Cash Collateral Order.<br><br>On a weekly basis, the Debtors shall deliver to the Pre-Petition Agent a line-by-line variance report, which shall be approved by the Debtors' Vice President of Finance or otherwise mutually agreeable party and shall otherwise be in form and substance acceptable to the Pre-Petition Agent, and which shall compare actual cash receipts and disbursements of the Debtors with corresponding amounts provided for in the Budget on a line-by-line basis for the prior Testing Period, including written descriptions in reasonable detail explaining any material positive or negative variances. If, for any Testing Period, the line item in the Budget for net cash flow exceeds the amount forecasted for such Testing Period, the Pre-Petition Agent shall be authorized as follows: (a) if the Debtors' actual aggregate expenses exceeded the amount forecasted for such Testing Period, an amount equal to all such excess cash flow may be applied at any time, or held in reserve and subsequently applied at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or the Pre-Petition Agent may permit the Debtors to use such excess cash flow, and the Pre-Petition Secured Parties to receive Adequate Protection for such use, or (b) if the Debtors' actual aggregate expenses were less than the amount forecasted for such Testing Period, an amount equal to such excess cash flow minus the difference between the actual aggregate expenses and the amount forecasted for such Testing Period may be applied at any time, or held in reserve and subsequently applied at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or permit the Debtors to use such excess cash flow and the Pre-Petition Secured Parties to receive Adequate Protection for such use, ((a) and (b) immediately preceding, the "**Excess Cash Flow**").<br><br>The Pre-Petition Secured Parties' consent to the Debtors' use of Cash Collateral extends only to amounts actually incurred in accordance with the Budget. Upon the occurrence of a Termination Event (as defined below), the Pre-Petition Secured Parties' consent to the Debtors' use of Cash Collateral shall automatically and immediately terminate and any consent or authority for use of Cash Collateral to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn unless such Termination Event is waived in writing by the Pre-Petition Agent.<br><br>Absent the prior written consent of the Pre-Petition Agent, except as may specifically be provided in the Budget including, without limitation, for ordinary-course payroll, benefits, and expense reimbursements, the Debtors shall not transfer any Cash Collateral to any of the Debtors' insiders, as that term is defined in Bankruptcy Code section 101. . |
| **Duration of Use of Cash Collateral / Events of Default**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | The occurrence of any of the following shall constitute an Event of Default under this Cash Collateral Order:<br><br>a.   any default, event of default, violation, or breach by any of the Debtors of any of the terms of this Cash Collateral Order;<br><br>b.   the occurrence of the Expiration Date or Termination Date, maturity, termination, expiration, or non-renewal of this Cash Collateral Order as provided for herein; |

70599093.5

| Required Disclosure | Summary of Material Term |
|---|---|
| | c.   the Debtors shall fail to obtain, on or before thirty-five (35) days after the Petition Date, an order by the Court approving the Motion on a final basis in form and substance acceptable to the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders, in its sole and absolute discretion; |
| | d.   the dismissal or conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' Chapter 11 Cases; |
| | e.   the appointment of a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) in the Chapter 11 Cases; |
| | f.   the grant of any security interest, lien, or encumbrance (excluding any Prior Liens) in any of the Collateral which is pari passu with or senior to the liens, security interests, or claims of the Pre-Petition Secured Parties (including, without limitation, the Adequate Protection Liens), including, without limitation, any surcharge of the Collateral pursuant to Bankruptcy Code section 506(c), unless the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, agrees in writing that such security interest, lien, or encumbrance does not constitute an Event of Default; |
| | g.   without the consent of the Pre-Petition Agent, the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Pre-Petition Secured Parties) in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Pre-Petition Collateral or the Cash Collateral, in each case involving assets with a value in excess of $50,000; |
| | h.   any attempt by any Debtor to vacate or modify this Cash Collateral Order over the objection of the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders; |
| | i.   the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of any Collateral without the consent of the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders; |
| | j.   the failure of the Debtors to make timely any and all Adequate Protection Payments or other adequate protection transfers authorized or required in the Cash Collateral Order; |
| | k.   the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Cash Collateral Order without the consent of the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders; |
| | l.   the Debtors commence any challenge to the extent, validity, priority, amount, or unavoidability of the Pre-Petition Secured Parties' liens securing the Pre-Petition Claim or the Adequate Protection Claim, or the entry of an order sustaining any such challenge commenced by any party other than the Debtors; |
| | m.   the Debtors fail to timely pay any amount required to be paid to the Pre-Petition Agent by this Cash Collateral Order, the Budget, or otherwise. |
| | Each of the foregoing events of default are referred to in this Cash Collateral, individually, as an "**Event of Default**", and jointly, as "**Events of Default**"). Any such |

| Required Disclosure | Summary of Material Term |
|---|---|
| | Event of Default may be waived in writing by the Pre-Petition Agent in its sole and absolute discretion. |
| **Carve-Out**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iii) | As used in this Cash Collateral Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus any applicable interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in (iii) below); (iii) to the extent (x) provided for in the Budget, (y) in the Professional Fee Reserve, and (z) allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Bankruptcy Court, all accrued and unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code section 327, 328, or 363 (the "**Debtor Professionals**"), and any appointed committee pursuant to Bankruptcy Code section 328 or 1103 (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before delivery by the Pre-Petition Agent of a Carve Out Trigger Notice (as defined below); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount, after application of all retainers, not to exceed $50,000.00 incurred on or after the first business day following delivery by the Pre-Petition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean, a written notice stating that the Post-Carve Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Pre-Petition Agent to the Debtors, their lead bankruptcy counsel, the U.S. Trustee, and counsel to any appointed committee, which notice may be delivered following the occurrence and continued existence of an Event of Default under the terms of this Cash Collateral Order.<br><br>The amounts in the Budget for the fees and expenses of the Professional Persons for periods prior to the delivery by the Pre-Petition Agent of a Carve Out Trigger Notice in accordance with the terms of this Cash Collateral Order shall be deposited weekly into a segregated account of the Debtors with the Pre-Petition Agent and held for the sole purpose of funding Allowed Professional Fees of Professional Persons benefitting from the Carve Out and incurred prior to such delivery of a Carve Out Trigger Notice (the "**Professional Fee Reserve**"), with such funds in the Professional Fee Reserve being subject to the respective interests of the Pre-Petition Agent and the Pre-Petition Lenders. Allowed Professional Fees of Professional Persons benefitting from the Professional Fee Reserve shall be paid only from the Professional Fee Reserve.  Any unused amounts in the Professional Fee Reserve shall be transferred to the Pre-Petition Agent unless the Pre-Petition Lenders shall have been indefeasibly paid in full.  Any amounts payable by the Debtors to the Professional Persons on account of fees or expenses incurred prior to the delivery of a Carve Out Trigger Notice shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Reserve.<br><br>While the Pre-Petition Secured Parties have consented to the Carve Out, the Pre-Petition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any subsequent cases under any chapter of the Bankruptcy Code.  Nothing in this Cash Collateral Order or otherwise shall be construed to obligate the Pre-Petition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, and any such obligation to make payments to any |

| Required Disclosure | Summary of Material Term |
|---|---|
| | Professional Person shall be an obligation of the Debtors' estates.

Any payment or reimbursement made prior to or after the delivery of a Carve Out Trigger Notice in respect of any Allowed Professional Fees incurred prior to the delivery of a Carve Out Trigger Notice shall not reduce the Post-Carve Out Trigger Notice Cap. Any payment or reimbursement made on or after the delivery of a Carve Out Trigger Notice in respect of any Allowed Professional Fees incurred following the delivery of the Carve Out Trigger Notice shall permanently reduce the Carve Out Trigger Notice Cap on a dollar-for-dollar basis.

Other than the Carve Out, neither the Pre-Petition Agent nor the Pre-Petition Lenders consent to any carve out from the Collateral or the Adequate Protection Collateral for the payment of any fees or expenses of the Professional Persons. The amounts payable on account of Professional Fees are subject to final approval and allowance by the Bankruptcy Court, and to the extent the amounts funded in the Professional Fee Reserve exceed the amount so allowed, any excess shall be paid to the Pre-Petition Agent unless the Pre-Petition Lenders shall have been indefeasibly paid in full. The Pre-Petition Agent expressly retains the right to object to any fees or expenses of any Professional Persons as to reasonableness or on any other grounds.

Until such time as the Pre-Petition Claim and Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and this Cash Collateral Order, any remaining unapplied retainer funds, if any, at the conclusion of a Professional Person's engagement shall be immediately returned to the Pre-Petition Agent as Cash Collateral. Any and all payments of fees and expenses to any Professional Person or use of Cash Collateral shall constitute diminution in the value of the Pre-Petition Collateral and the Cash Collateral for all purposes including, without limitation, all adequate protection and superpriority claims granted under the Bankruptcy Code and this Cash Collateral Order.

Notwithstanding the foregoing, in no event shall Cash Collateral, the Carve Out, the Professional Fee Reserve, or any other funds made available by the Pre-Petition Secured Parties to or for the benefit of the Debtors be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Professional Person or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Pre-Petition Claim, the Adequate Protection Claim, the Pre-Petition Claim Documents, this Cash Collateral Order, or any liens or security interest granted thereby or with respect thereto, or any other rights or interests of the Pre-Petition Secured Parties under any Pre-Petition Claim Document, (b) investigating, asserting, prosecuting or the joinder in any claims or causes of action against the Pre-Petition Secured Parties, or any of their officers, directors, employees, affiliates, agents, attorneys, or equity holders (whether arising under state law, the Bankruptcy Code or any other federal or foreign law); (c) preventing, enjoining, hindering or otherwise delaying the Pre-Petition Secured Parties' enforcement of the Pre-Petition Claim Documents or this Cash Collateral Order or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in this Cash Collateral Order); (d) incurring indebtedness except as permitted by this Cash Collateral Order; (e) modifying the Pre-Petition Secured Parties' rights under this Cash Collateral Order without the Pre-Petition Secured Parties' consent; (f) asserting or declaring any liens or security interests granted under any of the Pre-Petition Claim Documents or this Cash Collateral Order to have a priority other than the priority set forth herein or therein; (g) asserting, prosecuting or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the liens and security interests of the Pre-Petition Secured |

| Required Disclosure | Summary of Material Term |
|---|---|
| | Parties in the Cash Collateral or any portion thereof without the Pre-Petition Secured Parties' written consent; (h) asserting or declaring any of the Pre-Petition Claim Documents or this Cash Collateral Order to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any Collateral except as specifically permitted in this Cash Collateral Order.  Notwithstanding the foregoing, Cash Collateral advances deposited into the Professional Fee Reserve for any Committee Professionals may be used to pay the fees earned and expenses incurred of counsel to any appointed creditors' committee in an amount not to exceed $25,000 to review the Pre-Petition Claim, the Pre-Petition Claim Documents, and any lien or security interest granted thereby, and to investigate any challenges to one or more of the Debtors' stipulations or the releases set forth herein.<br><br>While the Pre-Petition Secured Parties have consented to the Carve Out, the Pre-Petition Secured Parties shall not be responsible for the payment or reimbursement of any fees or disbursements of any wind-down expenses incurred in connection with the Chapter 11 Cases or any subsequent cases under any chapter of the Bankruptcy Code.  Nothing in this Cash Collateral Order or otherwise shall be construed to guarantee that the Debtors have sufficient funds to pay such expenses, and any such obligation to pay such expenses shall be an obligation of the Debtors' estates. |
| **Adequate Protection**<br><br>Bankruptcy Rule 4001(b)(1)(B)(iv) | The Pre-Petition Secured Parties are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e) to adequate protection of their respective interests in the Pre-Petition Collateral and the Cash Collateral, and the Debtors shall be obligated to provide such adequate protection in an amount equal to the decrease in the value of the respective interests of the Pre-Petition Secured Parties in the Pre-Petition Collateral and the Cash Collateral from and after the Petition Date for all of the reasons set forth in Bankruptcy Code section 361 and to the extent of such decrease in the value (if any), including, without limitation, resulting from any reason or factor including the use, lease, sale, consumption, depletion, or other disposition of any of the Pre-Petition Collateral and the Cash Collateral, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362 (such decrease in value, the "**Adequate Protection Obligations**").<br><br>Subject to entry of a final order, as adequate protection, the Pre-Petition Secured Parties are each hereby granted:<br><br>a.   Adequate Protection Liens.  Effective as of the Petition Date, to the extent of the Adequate Protection Obligations, and subject to the Carve Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Pre-Petition Agent is hereby granted a valid, binding, continuing, enforceable, fully perfected, unavoidable replacement lien on, and security interest in (collectively, the "**Adequate Protection Liens**") all of the Debtors' assets and properties of any kind or type, whether now owned and hereafter acquired, personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all pre-petition and post-petition property of the Debtors and their estates, and all products, proceeds, rents, and profits thereof, whether existing on or as of the Petition Date, or thereafter acquired, or arising upon any use, lease, sale, consumption, or other disposition of such assets and properties, including without limitation, goods and other personal property, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, proceeds, and termination payments, servicing receivables, securities (including equity interests in the Debtors), chattel paper, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, Excluded Property, commercial tort |

| Required Disclosure | Summary of Material Term |
|---|---|
| | claims, insurance of any kind or type, property subject to avoided liens, and claims and causes of action including, upon the entry of the Final Order, Avoidance Proceeds, and the products and proceeds of any and all of the foregoing (collectively, the "**Adequate Protection Collateral**"); *provided, however*, that the Adequate Protection Liens in the Adequate Protection Collateral shall be first priority but subject to (x) any valid, perfected, and unavoidable liens in property of the Debtors in existence as of the Petition Date and (y) any valid and unavoidable liens on property of the Debtors in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), but only to the extent such valid, perfected and unavoidable liens are senior in priority to the Pre-Petition Liens in favor of the Pre-Petition Lenders as permitted in the Pre-Petition Claim Documents or pursuant to applicable law (the liens described in (x) and (y), the "**Prior Liens**"); *provided, further*, however, that the Adequate Protection Collateral shall not include any of the Debtors' Excluded Collateral. The Adequate Protection Liens shall be deemed first-priority (subject only to the Carve Out and Prior Liens, if any), perfected, and properly recorded for all purposes as to all parties and third parties as of the Petition Date without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, deeds of trust, or other similar documents, or by the possession or control by the Pre-Petition Secured Parties of any Adequate Protection Collateral. The Debtors and the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, shall have the right to object to the validity, priority, or extent of any Prior Liens, or the allowance of any claims purported to be secured thereby, or to institute any actions or adversary proceedings with respect thereto.

b.  Status of the Adequate Protection Liens. The Adequate Protection Liens granted to the Pre-Petition Secured Parties pursuant to this Cash Collateral Order shall not at any time be (i) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under Bankruptcy Code sections 363 or 364 or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

c.  Adequate Protection Claim/Superpriority Administrative Claim. The Adequate Protection Obligations due to the Pre-Petition Secured Parties shall also constitute allowed joint and several superpriority administrative claims against each of the Debtors and their respective estates to the extent of diminution of value as and to the extent provided in Bankruptcy Code section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors and their estates, now existing or hereafter arising in the Chapter 11 Cases (subject to the Carve Out), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Adequate Protection Claim**"), which Adequate Protection Claim shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors and their estates.

d.  Adequate Protection Payments: The Debtors shall pay to the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, (i) adequate protection payments on the last business day of each calendar month after the entry of this Cash Collateral Order, in |

| Required Disclosure | Summary of Material Term |
|---|---|
| | each case, in an amount equal to all accrued and unpaid prepetition or post-petition interest at the applicable post-default rate and any other fees and costs due and payable under the Pre-Petition Claim Documents, including as further set forth herein under the provisions regarding professional fees of the Pre-Petition Agent, attorneys and other professional fees, and any applicable letters of credit and banking services agreements (including, without limitation, interest on loans, breakage costs, and accrued fees owing to the Pre-Petition Agent and the Pre-Petition Lenders); (ii) on a weekly basis, adequate protection payments based on the line item entitled "ABL Paydown (Draw)" as specified by the amount and timing in the Budget for such line item; (iii) on a weekly basis, adequate protection payments, in each case, in an amount equal to the amount of cash receipts in excess of the projected amount for aggregate cash receipts set forth in the Budget for a Testing Period (as defined below) pursuant to paragraph 30 hereof; (iv) in addition to the "ABL Paydown (Draw)" payments, on a weekly basis, adequate protection payments, in each case, in an amount equal to the excess net cash flow of the Debtors during a Testing Period pursuant to paragraph 32 hereof, and (v) transfers of the Excess Cash and Excess Cash Flow ((i) through (v) immediately preceding, the "**Adequate Protection Payments**").  All weekly Adequate Protection Payments shall be made on the first business day of the applicable week. <br><br> Black Diamond Commercial Finance, L.L.C., as agent (in such capacity, the "**Subordinated Term Loan Agent**") for the lenders (in such capacity, the "**Subordinated Term Loan Lenders**", and together with the Subordinated Term Loan Agent, the "**Subordinated Term Loan Parties**") party to that certain *Loan and Security Agreement* dated as of April 4, 2016 (as amended, supplemented, or otherwise modified to time to time), and the Subordinated Term Loan Lenders, are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), and subject in all respects to the terms of the Intercreditor Agreement, to adequate protection of their respective interests in the Pre-Petition Collateral and the Cash Collateral (which, for the avoidance of doubt, shall be junior in all respects to the adequate protection of the Pre-Petition Secured Parties in the Pre-Petition Collateral and the Cash Collateral) and the Excluded Collateral, and the Debtors shall be obligated to provide such adequate protection in an amount equal to the decrease in the value of the respective interests of the Subordinated Term Loan Parties in such collateral from and after the Petition Date for all of the reasons set forth in Bankruptcy Code section 361 and to the extent of such decrease in the value (if any), including, without limitation, resulting from any reason or factor including the use, lease, sale, consumption, depletion, or other disposition of any of such collateral, or the imposition of the automatic stay pursuant to Bankruptcy Code section 362. <br><br> As adequate protection, the Subordinated Term Loan Parties are each hereby granted (collectively, the "**Subordinated Term Loan Parties' Adequate Protection Obligations**"): <br><br> a.   Adequate Protection Liens.  Effective as of the Petition Date, to the extent of the Subordinated Term Loan Parties' Adequate Protection Obligations, and subject to the Carve Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Subordinated Term Loan Agent, on behalf of the Subordinated Term Loan Lenders, is hereby granted a valid, binding, continuing, enforceable, fully perfected, unavoidable replacement lien on, and security interest in (i) the Adequate Protection Collateral, subject and subordinate in all respects to the Adequate Protection Liens, and (b) the Excluded Collateral (collectively, the "**Subordinated Term Loan Parties' Adequate Protection Liens**"). |

14

| Required Disclosure | Summary of Material Term |
|---|---|
|  | b. Subordinated Term Loan Parties' Adequate Protection Claim/Superpriority Administrative Claim. The Subordinated Term Loan Parties' Adequate Protection Obligations due to the Subordinated Term Loan Parties shall also constitute allowed joint and several superpriority administrative claims against each of the Debtors and their respective estates to the extent of diminution of value as and to the extent provided in Bankruptcy Code section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors and their estates, now existing or hereafter arising in the Chapter 11 Cases (subject to the Carve Out), including all claims of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, Bankruptcy Code sections 105, 326, 328, 330, 331, 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 726, 1113, or 1114, and shall at all times be senior to the rights of the Debtors and their estates, and any successor trustee or any creditor, in the Chapter 11 Cases or any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Subordinated Term Loan Parties' Adequate Protection Claim**"), which Subordinated Term Loan Parties' Adequate Protection Claim shall be subject and subordinate in all respects to the Adequate Protection Claim and shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors and their estates.<br><br>For the avoidance of doubt and notwithstanding any other provision of this Interim Order, the priorities and rights of the Adequate Protection Liens and the Adequate Protection Claims and the Subordinated Term Loan Parties' Adequate Protection Liens and Subordinated Term Loan Parties' Adequate Protection Claims shall be governed in all respects by the Intercreditor Agreement. |

21.     The Interim Order includes certain terms which constitute material provisions requiring explicit disclosure under the Local Rules. The provisions described in Local Rule 4001-2(a)(i), to the extent applicable, are set forth at the following sections of the Interim Order:

    a.    Local Rule 4001-2(a)(i)(A) – Cross Collateralization. No provision of the Interim Order grants cross-collateralization protection of the type contemplated by the Local Rules.

    b.    Local Rule 4001-2(a)(i)(B) – Validity, Perfection, and Amount of Prepetition Liens. Subject to the entry of the Final Order, the Debtor and Pre-Petition Agent stipulate to the validity, perfection, unavoidability, and amount of the ABL Obligations and prepetition liens held by the Pre-Petition Agent. *See* Interim Order, ¶¶ 10-16.

    c.    Local Rule 4001-2(a)(i)(C) – Section 506(c) Waiver. Subject to the entry of the Final Order, in consideration of its agreement to permit use of Cash Collateral, the Debtors and the Pre-Petition Agent have agreed to waive the provisions of Bankruptcy Code section 506(c) and any "equities of the case" claims under Bankruptcy Code section 552(b). *See* Interim Order ¶¶ 54-55.

d.    <u>Local Rule 4001-2(a)(i)(D) – Liens on Avoidance Actions</u>. No provision of the Interim Order grants liens on avoidance actions.

e.    <u>Local Rule 4001-2(a)(i)(E) – Provisions Deeming Prepetition Debt to be Postpetition Debt</u>. The Interim Order contains no provisions that deem prepetition debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt.

f.    <u>Local Rule 4001-2(a)(i)(F) – Disparate Treatment of Professionals Retained by the Committee</u>. The Interim Order contains no provisions that provide for any disparate treatment of professional retained by an official committee of unsecured creditors, if any.

g.    <u>Local Rule 4001-2(a)(i)(G) – Nonconsensual Priming</u>. The Interim Order does not provide for nonconsensual priming of any existing lien.

h.    <u>Local Rule 4001-2(a)(i)(H) – Provisions Affecting the Court's Power to Consider Equities of the Case</u>. Subject to entry of the Final Order, the Debtors have agreed to waive the provisions of Bankruptcy Code section 506(c) and any "equities of the case" claims under Bankruptcy Code section 552(b). *See* Interim Order ¶¶ 54-55.

**BASIS FOR RELIEF**

I.    <u>**Cash Collateral and Adequate Protection**</u>

22.    Bankruptcy Code section 363(c)(2) provides that a debtor may use cash collateral as long as (a) each entity that has an interest in such cash collateral consents; or (b) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section. 11 U.S.C. § 363(c)(2). Bankruptcy Code section 363(e) provides that s that "on request of an entity that has an interest in property . . . proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest." 11 U.S.C. § 363(e). *See also In re DeSardi*, 350 B.R. 790, 797 (Bankr. S.D. Tex. 2006) ("Adequate protection . . . is grounded in the belief that secured creditors should not be deprived of the benefit of their bargain"). The concept of adequate protection is designed to shield a secured creditor from diminution in the

value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

23.     Bankruptcy Code section 362(d)(1) provides for adequate protection in property due to the imposition of the automatic stay. 11 U.S.C. § 362(d)(1). *See In re Cont'l Airlines*, 91 F.3d 553, 556 (3d Cir. 1996). Although Bankruptcy Code section 361 provides examples of forms of adequate protection, such as granting replacement liens and administrative claims, courts decide what constitutes sufficient adequate protection on a case-by-case basis. *Resolution Trust Corp. v. Swedeland Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) ("[A] determination of whether there is adequate protection is made on a case by case basis."); *In re Columbia Gas Sys., Inc.*, 1992 WL 79323, at *2 (Bankr. D. Del. Feb. 18, 1992); *In re Mosello*, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996) ("[T]he determination of adequate protection is a fact-specific inquiry . . . left to the vagaries of each case . . . .") (citation and quotation omitted).

24.     The concept of adequate protection is designed to shield a secured creditor from diminution in the value of its interest in collateral during the period of a debtor's use. *See In re Carbone Cos.*, 395 B.R. 631, 635 (Bankr. N.D. Ohio 2008) ("The test is whether the secured party's interest is protected from diminution or decrease as a result of the proposed use of cash collateral); *see also In re Cont'l Airlines, Inc.*, 154 B.R. 176, 180-81 (Bankr. D. Del. 1993) (holding that adequate protection for use of collateral under section 363 is limited to use-based decline in value).

70599093.5

25.      Here, the ABL Agent has consented to the Debtors' use of Cash Collateral on the terms set forth in the Interim Order. The proposed adequate protection included in the Interim Order provides adequate protection in the form of, among other things, the Replacement Liens, the Superpriority Administrative Claim, adequate protection payments, including fees and expenses, and reporting requirements.. The Term Loan Parties' Adequate Protection Liens and Subordinate Term Loan Parties' Adequate Protection is subject to the Intercreditor Agreement. The Term Loan Parties' Adequate Protection Liens will be subordinated to the Adequate Protection Liens, with the exception of liens in Excluded Collateral.

26.      The Debtors submit that the proposed adequate protection is appropriate and sufficient to protect the Prepetition Secured Parties from any diminution in value of the Prepetition Collateral. The Cash Collateral will be used for funding business operations and allowing the Debtors to transition into the Chapter 11 Cases. Immediate access to this liquidity will permit the Debtors to fund payroll, pay vendors, and otherwise continue business in the ordinary course. As detailed in the First Day Declaration, one reason underlying the filing of these Chapter 11 Cases is to liquidate inventory and conduct a sales process pursuant to Bankruptcy Code section 363. If Cash Collateral is not available, the Debtors will dissipate value to the detriment of the Prepetition Secured Parties and other stakeholders. Thus, the use of Cash Collateral will protect the Prepetition Secured Parties' security interests by preserving the value of the Prepetition Collateral. *See In re Salem Plaza Assocs.*, 135 B.R. 753, 758 (Bankr. S.D.N.Y. 1992) (holding that a debtor's use of cash collateral to pay operating expenses, thereby "preserv[ing] the base that generates the income stream," provided adequate protection to the secured creditor). *See also Save Power Ltd. v. Pursuit Athletic Footwear, Inc. (In re Pursuit*

18

70599093.5

*Athletic Footwear, Inc.)*, 193 B.R. 713, 716 (Bankr. D. Del. 1996); *In re 499 W. Warren St. Assocs., Ltd. P'ship*, 142 B.R. 53, 56 (Bankr. N.D.N.Y. 1992).

27.     In light of the foregoing, the Debtors submit that the proposed adequate protection to be provided is appropriate and necessary to protect such party against any diminution in value and is also fair and appropriate on an interim basis under the circumstances of this case and to ensure that the Debtors are able to continue using Cash Collateral in the near term, for the benefit of all parties in interest and their estates.

28.     Based on the foregoing, the Debtors respectfully submit that entry of the Interim Order authorizing the interim use of Cash Collateral and scheduling a Final Hearing to approve the use of Cash Collateral on a final basis is necessary and appropriate.

## II.     Modification of the Automatic Stay is Warranted

29.     The relief requested by this Motion contemplates a modification of the automatic stay. 11 U.S.C. § 362. The automatic stay should be modified on a limited basis (to the extent applicable) as necessary to effectuate all terms and provisions of the Interim Order, including, without limitation to: (a) permit the Debtors to grant the Replacement Liens and Superpriority Administrative Claim and to make the adequate protection payments; (b) permit the Debtors to perform such acts as the ABL Agent may request to assure the perfection and priority of the liens granted in the Interim Order; and (c) authorize the Debtors to make, and the ABL Agent to retain and apply, payments made in accordance with the terms of the Interim Order.

30.     In addition, the Interim Order provides for the termination of the automatic stay to permit the ABL Agent to exercise, upon the occurrence and during the continuation of an Event of Default, and to take other remedies relating to the Cash Collateral without further order or application to the Court. The ABL Agent is required to provide ten (10) business days' notice to the Debtors, U.S. Trustee, and counsel to any committee appointed.

70599093.5

31.     Stay modifications of this kind are ordinary and standard terms of postpetition use by debtors in possession of prepetition collateral, and, in the Debtors' business judgment, is reasonable under the present circumstances.

32.     Accordingly, the Debtors respectfully request that the Court authorize the modification of the automatic stay in accordance with the terms set forth in the Interim Order.

## III.     Interim Approval and Scheduling of a Final Hearing

33.     Interim relief may be granted on a motion to use cash collateral pursuant to Bankruptcy Code sections 363(c) or 364 where relief "is necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bankr. P. 4001(b)(2), (c)(2).

34.     The Debtors believe that all or substantially all of their available cash constitutes Cash Collateral and is therefore unable to proceed to continue its business operations without the ability to use Cash Collateral and will suffer immediate and irreparable harm to the detriment of all creditors and other parties in interest. The Debtors' ability to finance its operations is vital to the preservation and maintenance of the value of the Debtors' assets.

35.     The Debtors will face immediate and irreparable harm without the entry of the Interim Order. Therefore, the Debtors respectfully request that the Court schedule a final hearing, no sooner than 14 days after the date of this Motion and no later than 25 days after the Petition Date, to consider entry of the Final Order.

36.     Moreover, Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtor.

## WAIVER OF BANKRUPTCY RULES

37.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtors seeks in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

38.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

39.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (c) counsel to Bank of America, N.A.; (d) counsel to Black Diamond Commercial Finance, LLC; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) all parties entitled to notice pursuant to Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

## NO PRIOR REQUEST

40.     No prior motion for the relief requested herein has been made to this or any other court.

70599093.5

**WHEREFORE**, the Debtors respectfully request that the Court enter an order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as the Court deems appropriate.

Dated:   October 2, 2019
        Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

/s/     *Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen J. Astringer (Del. Bar No. 6375)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sastringer@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*