**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>**BAYOU STEEL BD HOLDINGS, L.L.C.**, *et al.*,[1]<br><br>Debtors. | Chapter 11<br>Bankruptcy Case<br>No. 19-1253-KBO<br>(Joint Administration Pending) |
| **TROY FLEMING, JARROD NABOR, and DAVARIAN URSIN**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**BAYOU STEEL BD HOLDINGS, L.L.C.** *dba* **BAYOU STEEL GROUP, BD BAYOU STEEL INVESTMENT, LLC, BD LAPLACE, LLC, BAYOU STEEL BD HOLDINGS II, L.L.C.,** and **BLACK DIAMOND CAPITAL MANAGEMENT, LLC**,<br><br>Defendants. | Adv. Pro. No. _____-_____ |

**CLASS ACTION ADVERSARY PROCEEDING COMPLAINT
FOR VIOLATION OF WARN ACT AND DECLARATORY JUDGMENT**

Plaintiffs, Troy Fleming, Jarrod Nabor, and Davarian Ursin ("Plaintiffs"), on behalf of themselves and a putative class of similarly situated former employees of Bayou Steel BD Holdings, L.L.C. *dba* Bayou Steel Group *fka* BD Long Products, LLC ("BD Holdings"), BD Bayou Steel Investment, LLC ("BD Investment"), and BD LaPlace, LLC *fka* Arcelormittal LaPlace, LLC ("BD LaPlace" and, collectively, "Debtors"), hereby file this Class Action

---

[1] The Debtors in these cases are Bayou Steel BD Holdings, L.L.C. (Bankr. Case No. 19-12153-KBO); BD Bayou Steel Investment, LLC (Bankr. Case No. 19-12154-KBO); and BD LaPlace, LLC (Bankr. Case No. 19-12155-KBO). The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Bayou Steel BD Holdings, L.L.C. (1984); (ii) BD Bayou Steel Investment, LLC (1222); and (iii) BD LaPlace, LLC (5783). The mailing address for the Debtors is 138 Highway 3217, LaPlace, Louisiana 70068.

1476583v.1

Adversary Proceeding Complaint against Debtors, Bayou Steel BD Holdings II, L.L.C. ("Bayou Steel Parent"), and Black Diamond Capital Management, LLC ("Black Diamond" and, collectively, "Defendants"), upon personal knowledge as to those matters within their knowledge, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. This is a class action adversary proceeding against Defendants for violation of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101 *et seq.* (the "WARN Act"), for the recovery by Plaintiffs and other similarly situated former employees of Defendants for damages in the amount of sixty (60) days' back pay and ERISA benefits, pursuant to 29 U.S.C. § 2104(a). This action also seeks a declaratory judgment to the effect that the claims of Plaintiffs and similarly situated former employees are entitled to be recognized as administrative expense claims or, alternatively, privilege claims.

2. On or about September 30, 2019, and within less than sixty (60) days prior to termination of their employment, Plaintiffs learned that they were to be terminated that same day without cause, as part of, or as the foreseeable result of, a mass layoff or facility closing ordered by Defendants. Such termination violates the notice requirements of the WARN Act because it fails to give Plaintiffs and Class members at least sixty (60) days' advance written notice of termination.

3. Plaintiffs and other similarly situated employees of Defendants seek their statutory remedies in light of Defendants' violation of the WARN Act.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1367, and 29 U.S.C. § 2104(a)(5), and the standing order of reference of bankruptcy matters by the United States District Court for the District of Delaware.

5.     This is a core and non-core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O).

6.     Venue is proper in this District pursuant to 28 U.S.C § 1409 and 29 U.S.C. § 2104(a)(5).  The instant proceeding is related to the Debtors' Chapter 11 cases, which are pending in this district.[2]

## THE PARTIES

### Plaintiffs

7.     Plaintiff Troy Fleming was employed by Defendants and worked at the Bayou Steel Louisiana facility operated by Defendants and located at 138 Highway 3217, LaPlace, Louisiana 70068 (the "Louisiana Facility").  Prior to his termination, Mr. Fleming worked at the Louisiana Facility for nearly thirteen (13) years, since November of 2006, and held positions as a P2 Operator, a P4 Operator, a P5 Operator, and a P6 Operator.  Mr. Fleming was informed that he no longer had employment with Defendants, effective immediately, on September 30, 2019, via a text message.  Mr. Fleming did not receive written notice of termination.  At the time of his termination, Mr. Fleming held the position of P2 Operator, a position he had held for four (4) years.

8.     Plaintiff Jarrod Nabor was employed by Defendants and worked at the Bayou Steel Louisiana Facility.  Prior to his termination, Mr. Nabor worked at the Louisiana Facility for nearly

---

[2] Plaintiffs maintain that venue would also be proper in, and that venue should be transferred to, the United States Bankruptcy Court for the Eastern District of Louisiana because the violations alleged by Plaintiffs occurred in that district, and the Defendants transact business in that district.

fifteen (15) years, since January of 2005, and held positions as a P2 Operator, a P3 Operator, a P5 Operator, a P6 Operator, and a P7 Operator. Mr. Nabor was informed that he no longer had employment with Defendants, effective immediately, on September 30, 2019, via a text message from a fellow co-worker. Mr. Nabor did not receive written notice of termination. At the time of his termination, Mr. Nabor held the position of P2 Operator, a position he had held for over five (5) years.

9. Plaintiff Davarian Ursin was employed by Defendants and, prior to his termination on September 30, 2019, worked at the Bayou Steel Louisiana Facility for more than six (6) years, since July of 2013, in the position of P4 Operator. Mr. Ursin was notified verbally of his termination on the morning of September 30, 2019, when his supervisor called Mr. Ursin and other employees to the safety meeting room, and their department manager stated that Bayou Steel would be closing and that employees were to clean out their lockers and exit the premises immediately. Mr. Ursin did not receive written notice of termination.

**Defendants**

10. Upon information and belief, Debtor and Defendant Bayou Steel BD Holdings, L.L.C. *dba* Bayou Steel Group *fka* BD Long Products, LLC ("BD Holdings") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

11. Upon information and belief, Debtor and Defendant BD Bayou Steel Investment, LLC ("BD Investment") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

12. Upon information and belief, Debtor and Defendant BD LaPlace, LLC *fka* Arcelormittal LaPlace, LLC ("BD LaPlace") is a Delaware limited liability company with its

principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068, and its principal assets located at 2404 S. Roane Street, Harriman, Tennessee 37748.

13. On September 30, 2019, each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.

14. Upon information and belief, Defendant Bayou Steel BD Holdings II, L.L.C. ("Bayou Steel Parent") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

15. Upon information and belief, Defendant Bayou Steel Parent was also an employer of the Plaintiffs, because:

    a. Upon information and belief, Bayou Steel Parent holds a 100% equity security interest in Debtors; and

    b. Upon information and belief, as its 100% equity owner, Bayou Steel Parent controlled the employment and personnel policies of Debtors.

16. Upon information and belief, Black Diamond Capital Management, LLC ("Black Diamond") is a Delaware limited liability company with its principal place of business at One Sound Shore Drive, Greenwich, Connecticut 06830.

17. Upon information and belief, Defendant Black Diamond was also an employer of the Plaintiffs, because:

    a. Upon information and belief, Black Diamond holds a 100% equity interest in Bayou Steel Parent and in turn, owns 100% of each of the subsidiary Debtors;

    b. Upon information and belief, as their 100% equity owner, Black Diamond controlled the employment and personnel policies of Debtors.

18. Upon information and belief, Black Diamond—through Bayou Steel Parent—owned and controlled Debtors.

19. Upon information and belief, at all relevant times, Defendants jointly owned and/or operated facilities in four locations: LaPlace, Louisiana (the "Louisiana Facility"); Harriman, Tennessee (the "Tennessee Facility"); Leetsdale, Pennsylvania (the "Pennsylvania Facility"); and Catoosa, Oklahoma (the "Oklahoma Facility" and, collectively, the "Facilities").

20. Upon information and belief, at all relevant times, Defendants jointly owned and/or operated distribution depots in three locations: Tulsa, Oklahoma; Chicago, Illinois; and Pittsburgh, Pennsylvania (the "Distribution Depots").

21. Upon information and belief, at all relevant times, Defendants jointly employed approximately 462 employees across the Facilities and Distribution Depots in the time immediately preceding September 30, 2019. Defendants employed approximately 376 employees at the Louisiana Facility and 72 employees at the Tennessee Facility.

22. Upon information and belief, as of October 1, 2019, Defendants employed only 161 employees across the Facilities and Distribution Depots.

## FACTUAL ALLEGATIONS

23. Prior to termination, Plaintiffs and other similarly situated individuals were fulltime employees of Defendants and worked at their Facilities.

24. On or around September 30, 2019, Plaintiffs and Class Members learned, either directly through verbal or electronic communications with management and/or colleagues, or indirectly through word of mouth, that Defendants' Facilities would be closing.

25. On or around September 30, 2019, Plaintiffs and Class Members learned, either directly through verbal or electronic communications with management and/or colleagues, or

indirectly through word of mouth, that they would be subject to termination as a consequence of the imminent closure of Defendants' Facilities.

26. Upon information and belief, on or around September 30, 2019, at least 304 Plaintiffs and Class Members learned, either directly through verbal or electronic communications with management and/or colleagues, or indirectly through word of mouth, that they were terminated, effective immediately, as a consequence of the imminent closure of Defendants' Facilities.

27. Upon information and belief, as of the filing of this Complaint, Plaintiffs and Class Members have not received written notice of termination.

## FEDERAL WARN ACT CLASS ALLEGATIONS

28. Pursuant to 29 U.S.C. § 2104(a)(5), Fed. R. Bankr. P. 7023, and Fed. R. Civ. P. 23(a) and (b)(3), Plaintiffs bring this adversary proceeding for relief against Defendants for violation of the WARN Act, 29 U.S.C. § 2101 *et seq.*, on their own behalf and on behalf of all other persons similarly situated, as representatives of the following class (the "Class"):

29. All former fulltime employees of Defendants, who worked at, received assignments from, or reported to Defendants' Facilities and who:

   a. were terminated without cause beginning on or about September 30, 2019, and within 30 days of that date; or

   b. were terminated without cause as the reasonably foreseeable consequence of the mass layoffs and/or facility closings ordered by Defendants on or about September 30, 2019; and

   c. are affected employees, as that term is defined by the WARN Act in 29 U.S.C. § 2101(a)(5).

30. Plaintiffs reserve the right to amend the definition of the Class and/or add subclasses to include or exclude members.

31. As described below, this action satisfies the numerosity, commonality, typicality, superiority, predominance, and adequacy of representation requirements of Bankruptcy Rule 7023, Fed. R. Civ. P. 23.

### Numerosity

32. The persons in the Class are so numerous that joinder of all members is impracticable. In the interest of judicial economy, this dispute should be resolved through class action.

33. Upon information and belief, Defendants employed more than 100 fulltime employees who worked at, received assignments from, or reported to the Defendants at its headquarters at the Louisiana Facility.

34. Upon information and belief, Defendants employed more than 400 fulltime employees who worked at, received assignments from, or reported to the Defendants' headquarters at the Louisiana Facility and were based at one of Defendants' other Facilities, including but not limited to the Tennessee Facility.

35. Although the precise number of such persons is unknown, the number, identity, and location of Class Members are ascertainable through appropriate discovery and may be identified by the books and records maintained and possessed by Defendants.

36. Upon information and belief, the rate of pay and benefits that were being paid to each Class Member by Defendants at the time of his/her termination is contained in the books and records of Defendants and is ascertainable through appropriate discovery.

### Commonality

37. There are common questions of law and fact affecting the entirety of the Class. Specifically, common questions include without limitation:

    a. whether the members of the Class were fulltime employees of Defendants who worked at, received assignments from, or reported to Defendants' Facilities;

    b. whether Defendants unlawfully terminated the employment of the members of the Class by terminating them without cause and without providing written notice sixty (60) days in advance in violation of the WARN Act; and

    c. whether Defendants unlawfully failed to pay the Class Members sixty (60) days' wages and benefits as required by the WARN Act.

38. Answers to these common questions will drive the resolution of the claims shared by each member of the Class.

### Typicality

39. Plaintiffs' claims are representative of those of all members of the Class. Specifically, Plaintiffs worked at, received assignments from, or reported to Defendants at its headquarters at the Louisiana Facility and were terminated beginning on or about September 30, 2019, due to the mass layoff and/or facility closing ordered by Defendants.

### Predominance and Superiority

40. Class certification of these claims is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Class predominate over any questions affecting only individual Class Members. These common questions include, but are not limited to:

    a. whether the members of the Class were fulltime employees of Defendants who worked at, received assignments from, or reported to Defendants' Facilities;

    b. whether each of the Defendants was an employer within the scope of the WARN Act;

    c. whether Defendants unlawfully terminated the employment of the members of the Class by terminating them without cause and without providing written notice sixty (60) days in advance in violation of the WARN Act; and

    d. whether Defendants unlawfully failed to pay the Class Members sixty (60) days' wages and benefits as required by the WARN Act.

41. This action should be maintained as a class action because the prosecution of separate, and largely duplicative actions by individual members of the Class would create a risk of inconsistent or varying adjudications, with respect to individual members.

42. A class action is particularly valuable in the context of WARN Act litigation, where individual plaintiffs may lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants, and damages suffered by individual Class Members are small compared to the expense and burden of individually prosecuting their claims.

43. A class action is superior to other available methods for the fair and efficient adjudication of this controversy as it will conserve judicial resources and the resources of the parties and is likely to present significantly fewer difficulties than those presented in individual claims and adjudications. The identities of the Class Members may be obtained from Defendants' records. Plaintiffs intend to send notice to all members of the Class to the extent required by Rule 23.

### **Adequacy of Representation**

44. Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs' interests are squarely aligned with those of individual members of the Class. On or about September 30, 2019, Plaintiffs were notified of termination and subsequently terminated by Defendants as part of a mass layoff or facility closing, as those terms are defined in 29 U.S.C. § 2101(a)(2) and (3). They were entitled to receive written notice under the WARN Act sixty (60) days in advance of termination and were not provided that notice.

45. Plaintiffs have retained counsel competent and experienced in complex class action lawsuits, bankruptcy law and procedure, and employment litigation, including under the WARN Act. Counsel for Plaintiffs are well-versed in bankruptcy class action adversary proceedings and

will best represent the localized interests of the Class Members as former employees of Defendants located in Louisiana.

## CLAIMS FOR RELIEF

### I. Violation of the Federal WARN Act

46. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

47. At all relevant times, Defendants employed more than 100 fulltime employees at its headquarters at the Louisiana Facility, who in the aggregate worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

48. At all relevant times, Defendants employed more than 400 fulltime employees, who worked at, received assignments from, or reported to the Louisiana Facility or one of Defendants' other Facilities, including but not limited to the Tennessee Facility.

49. At all relevant times, Defendants were "employers," as that term is defined in 29 U.S.C. § 2101 (a)(1) and 20 C.F.R. § 639(a)(3), and continued to operate as a business until they decided to order a mass layoff and/or facility closing at the Facilities.

50. Beginning on or about September 30, 2019, Defendants ordered a mass layoff and/or facility closing at the Facilities, as those terms are defined by 29 U.S.C. § 210l(a)(2) and 20 C.F.R. § 639.3(i).

51. The mass layoff and/or facility closing at the Facilities resulted in "employment loss" as that term is defined by 29 U.S.C. § 2101(a)(2) for at least fifty (50) of Defendants' fulltime employees as well as at least thirty-three percent (33%) of Defendants' workforce at its Facilities, excluding "part-time employees" as defined by 29 U.S.C. § 2101(a)(8).

52. Plaintiffs and Class Members were terminated by Defendants without cause on their part, as part of or as the reasonably foreseeable consequence of the mass layoff and/or facility closing ordered by Defendants at the Facilities.

53. Plaintiffs and Class Members are "affected employees" of Defendants, within the meaning of 29 U.S.C. § 2101(a)(5).

54. Defendants were required by the WARN Act to give Plaintiffs and Class Members at least sixty (60) days' advance written notice of their terminations.

55. Defendants failed to give Plaintiffs and Class Members written notice that complied with the requirements of the WARN Act.

56. Plaintiffs and each of the Class Members are "aggrieved employees" of Defendants as that term is defined in 29 U.S.C. § 2104(a)(7).

57. Defendants failed to pay Plaintiffs and each of the Class Members their respective wages, salary, commissions, bonuses, accrued vacation and personal time off for sixty (60) days following their respective terminations.

## II.     Declaratory Judgment

58. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

59. Plaintiffs seek declaratory judgment that their claims for Damages for WARN Act Violations are administrative expenses under 11 U.S.C. § 503(b), because these claims arose post-petition.

60. Alternatively, Plaintiffs seek declaratory judgment that their claims for Damages for WARN Act Violations are priority claims and are entitled to priority status treatment pursuant to 11 U.S.C. § 507(a)(4) and/or (5), up to the amount of $12,850 per employee.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons, prays for the following relief as against Defendants:

a. Certification of this action as a class action;

b. Designation of Plaintiffs as Class Representatives;

c. Appointment of undersigned counsel as Class Counsel;

d. An allowed post-petition administrative expense claim or, in the alternative, a wage priority claim for up to $12,850 for each of Plaintiffs' WARN Act claims and for each of the other similarly situated former employees under 11 U.S.C. § 507(a)(4) and (5), and the remainder as a general unsecured claim, equal to the sum of: unpaid wages, salary, commissions, bonuses, accrued holiday pay, accrued vacation pay pension and 401(k) contributions and other ERISA benefits, for 60 days, that would have been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the federal WARN Act, 29 U.S.C. § 2104(a)(1)(A) against Defendants in favor of Plaintiffs and the other similarly situated former employees equal to those sums;

e. Reasonable attorney's fees and costs and disbursements that Plaintiffs will incur in prosecuting this action, as authorized by the WARN Act;

f. Interest as allowed by law on all amounts owed pursuant to the previous paragraphs;

g. A declaratory judgment that the claims of the Plaintiffs and all similarly situated individuals are administrative expenses pursuant to 11 U.S.C. § 503(b) or,

      alternatively, priority claims pursuant to 11 U.S.C. § 507(a)(4) or (5) up to $12,850, and the remainder as a general unsecured claim;

  h.  Other such relief as the Court deems just and proper.

Dated: October 3, 2019      Respectfully submitted,

By:   */s/ James G. McMillan, III*
     James G. McMillan, III (Bar No. 3979)
     HALLORAN FARKAS + KITTILA LLP
     5803 Kennett Pike, Suite C
     Wilmington, Delaware 19807
     Telephone: (302) 257-2103
     Facsimile: (302) 257-2019
     jm@hfk.law

     Brent B. Barriere (La. Bar. No. 2848)
        *pro hac pending*
     Jason W. Burge (La. Bar No. 30420)
        *pro hac pending*
     Kathryn J. Johnson (La. Bar No. 36513)
        *pro hac pending*
     FISHMAN HAYGOOD, L.L.P.
     201 St. Charles Avenue, Suite 4600
     New Orleans, Louisiana 70170
     Telephone: (504) 586-5252
     Facsimile: (504) 586-2520
     bbarriere@fishmanhaygood.com
     jburge@fishmanhaygood.com
     kjohnson@fishmanhaygood.com

     Hugh P. Lambert, T.A. (La. Bar No. 7933)
        *pro hac pending*
     Cayce C. Peterson, Esq. (La. Bar No. 32217)
        *pro hac pending*
     THE LAMBERT FIRM, PLC
     701 Magazine Street
     New Orleans, Louisiana 70130
     Telephone: (504) 581-1750
     Facsimile: (504) 529-2931
     hlambert@thelambertfirm.com
     cpeterson@thelambertfirm.com

                                                Randal L. Gaines, Esq. (La. Bar No. 17576)
                                                        *pro hac vice pending*
                                                7 Turnberry Drive
                                                LaPlace, Louisiana 70068
                                                Telephone: (225) 647-3383
                                                Facsimile: (985) 652-3299
                                                attyrandal@gmail.com

                                                *Attorneys for Plaintiffs and Class Members*