**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, LLC., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 24** |

**AGREED INTERIM ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), for entry of an interim order (this "**Interim Order**"), seeking, *inter alia*, pursuant to Sections 105, 361, 362(d), 363(c), 503(b), and 507 of Title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), the following:

(i)     authorization for the Debtors to use Cash Collateral (as defined below) of Bank of America, N.A., in its capacity as administrative agent (in such capacity, the "**Pre-Petition Agent**"), for itself and the other lenders (in such capacity, and together with the Pre-Petition Agent in its capacity as a lender, the "**Pre-Petition Lenders**") party to the Credit Agreement (as defined below), on an interim basis and solely upon the terms and conditions set forth in this order (the "**Cash Collateral Order**") during the period following the Petition Date (as defined below) and through the earlier to occur of the Expiration Date (as defined below)

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana, 70068.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

or the Termination Date (as defined below);

(ii)    authorization to provide adequate protection of the respective interests of the Pre-Petition Agent and the Pre-Petition Lenders (collectively, the "**Pre-Petition Secured Parties**"), pursuant to Bankruptcy Code sections 361 and 363(e) for such interim use;

(iii)    modification of the automatic stay of Bankruptcy Code section 362 (the "**Automatic Stay**") to the extent provided herein;

(iv)    subject to entry of the Final Order (as defined below), authorization to grant adequate protection liens on the proceeds of the estate's claims and causes of action arising under the Bankruptcy Code, including Bankruptcy Code sections 544, 545, 547, 548, 549, and 550 or any other similar state or federal law (such actions, collectively, the "**Avoidance Actions**," and the proceeds and property recovered in respect thereof, the "**Avoidance Actions Proceeds**");

(v)    subject to entry of the Final Order (as defined below), and except to the extent of the Carve Out (as defined below), the waiver of any and all rights to surcharge any Pre-Petition Collateral or Cash Collateral pursuant to Bankruptcy Code sections 506(c) or 552(b) or any other applicable principle of equity or law, as identified pursuant to Local Rule 4001-2(a)(i)(C); and

(vi)    that a final hearing (the "**Final Hearing**") be scheduled by the Court to consider entry of a final order (the "**Final Order**") authorizing on a final basis the relief requested in the Motion.

The Court having considered the Motion; and upon the First Day Declaration; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and this Court having reviewed the Motion and having heard statements in support of the Motion at a hearing held before this Court (the "**Interim Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Interim Hearing establish just cause for the relief granted herein; and any objections to the relief requested in the Motion having been withdrawn or overruled on the merits; and after due deliberation thereon and good and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

1.      The Motion is granted as set forth herein.  The Debtors and the Pre-Petition Agent[3] have represented to this Court that they have agreed in good faith to the terms and conditions of this Cash Collateral Order.

2.      The Debtors and the Pre-Petition Agent have stipulated and agreed as follows, and based upon the pleadings and evidence presented at the Interim Hearing before this Court, this Court hereby acknowledges such stipulations, and grants the relief herein, on an interim basis, pursuant to Bankruptcy Rule 4001 to prevent immediate and irreparable harm to the Debtors and their estates.  Therefore, consistent with Bankruptcy Code sections 361, 362, 363, 503(b), and 507, this Court hereby finds and orders:

## OPPORTUNITY TO OBJECT

3.      Pursuant to Bankruptcy Rule 4001(d)(2), any objection to the entry of a final order on the Motion must be filed on or before 4:00 p.m. Eastern Time on October 29, 2019 (the "**Objection Deadline**").   The Final Hearing on the Motion shall take place on November 5, 2019, at 1:00 p.m. Prevailing Eastern Time before the Honorable Karen B. Owens, United States Bankruptcy Judge, at the United States Bankruptcy Court, District of Delaware, 824 Market Street, 6th Floor, Courtroom 2, Wilmington, Delaware 19801. Objections shall be in writing and shall be filed with the clerk of the Bankruptcy Court such that any such objections are received on or before the Objection Deadline. All objections shall be served on the following: (a) proposed counsel for the Debtors,  Polsinelli PC, 222 Delaware Ave., Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@Polsinelli.com) and Shanti M. Katona (skatona@polsinelli.com); (b) counsel to the Pre-Petition Agent, Vinson & Elkins

---

[3]     The Pre-Petition Agent shall act in accordance with, and shall be subject to, the applicable voting requirements of the Pre-Petition Claim Documents, and references to the Pre-Petition Agent in this Cash Collateral Order shall include, as applicable, the Pre-Petition Agent acting for itself and for and on behalf of the Pre-Petition Lenders.

LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (collins@rlf.com); (c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com); (d) proposed counsel to any statutory committee appointed in the Chapter 11 Cases; and (e) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda J. Casey (linda.casey@usdoj.gov).

4.     The Debtors and the Pre-Petition Agent have represented to the Court that they have negotiated at arms' length and have acted in good faith in the negotiation and preparation of this Cash Collateral Order, have been represented by counsel, and intend to be and are bound by its terms. The terms and conditions of this Cash Collateral Order reflect the Debtors' exercise of prudent business judgment under exigent circumstances and are consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

## STATEMENT OF JURISDICTION

5.     This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (D), (G), (K), (M) and (O). Venue for the Chapter 11 Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## NOTICE

6.     The Interim Hearing was held pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(b). Notice of the requested relief sought in the Motion at the Interim Hearing was

provided by the Debtors to, among others: (a) the U.S. Trustee; (b) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (c) Vinson & Elkins LLP, as counsel to the Pre-Petition Agent; (d) counsel to Black Diamond Commercial Finance, LLC; (e) parties that requested notice pursuant to Bankruptcy Rule 2002; and (f) all parties entitled to notice pursuant to Local Rule 9013-1(m).  Notice of the Motion and the Interim Hearing with respect thereto has been given pursuant to Bankruptcy Rules 2002, 4001(b) and (d), 9006, and 9014, and Local Rule 4001-2, and as required by Bankruptcy Code sections 102, 105, 361, 362, and 363.

## FACTUAL AND PROCEDURAL BACKGROUND

7.      On October 1, 2019 (the "**Petition Date**"), the Debtors each filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, initiating the Chapter 11 Cases. The Debtors have continued in the management and possession of their businesses and property as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108.

8.      On October 3, 2019, the Court conducted the Interim Hearing on the Motion and pronounced interim approval of the Motion as set forth herein.

9.      An official committee of unsecured creditors has not been appointed in these Chapter 11 Cases.

## THE LENDERS' PRE-PETITION CLAIMS

10.     The Debtors acknowledge, agree, admit, and stipulate that, pursuant to the Pre-Petition Claim Documents (as defined below) and applicable law, the Pre-Petition Secured Parties hold a valid, enforceable, secured, and allowable claim against the Debtors, as of the Petition Date, in an aggregate amount equal to not less than (a) $37,104,883.29 of unpaid principal, plus (b) undrawn letters of credit in the amount of not less than $2,670,000, plus any and all other interest (accruing at the default rate), fees, costs, expenses, charges, and other

- 5 -

70675998.1

claims, debts or obligations of the Debtors to the Pre-Petition Secured Parties that have accrued as of the Petition Date under the Pre-Petition Claim Documents and applicable law, plus all post-Petition Date interest (accruing at the default rate), fees, costs, and charges allowed to the Pre-Petition Secured Parties on such claim pursuant to Bankruptcy Code section 506(b) (collectively, the "**Pre-Petition Claim**").  The Debtors acknowledge, agree, admit, and stipulate that, pursuant to the Pre-Petition Subordinated Term Loan Documents (as defined below) and applicable law, the Pre-Petition Subordinated Term Loan Secured Parties hold a valid, enforceable, secured, and allowable claim against the Debtors, as of the Petition Date, in an aggregate amount equal to not less than $36,553,991.46 of unpaid principal, plus any and all other interest (accruing at the default rate), fees, costs, expenses, charges, and other claims, debts or obligations of the Debtors to the Pre-Petition Subordinated Term Loan Secured Parties that have accrued as of the Petition Date under Pre-Petition Subordinated Term Loan Documents and applicable law, plus all post-Petition Date interest (accruing at the default rate), fees, costs, and charges allowed to Pre-Petition Subordinated Term Loan Secured Parties on such claim pursuant to Bankruptcy Code section 506(b) (collectively, the "**Pre-Petition Subordinated Term Loan Claim**").

11.     The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Claim and the Pre-Petition Subordinated Term Loan Claim each constitutes an allowed, legal, valid, binding, enforceable, and non-avoidable obligation of and claim against each Debtor, and that (a) the Pre-Petition Claim, along with the Pre-Petition Secured Parties' first-priority liens upon and security interests in the Pre-Petition Collateral (as defined below) and (b) the Pre-Petition Subordinated Term Loan Claim and the second priority liens upon and security interests in the Pre-Petition Collateral (as defined below) and the first-priority liens upon and security interests in the Excluded Collateral (as defined below) (collectively, the "**Pre-Petition Subordinated Lien**"), are not and shall not be subject to any offset, defense, counterclaim, avoidance,

recharacterization, or subordination (whether equitable or otherwise), recovery, challenge, or claim pursuant to the Bankruptcy Code or any other applicable law, and that the Debtors, their estates, and any official committee appointed in these Chapter 11 Cases, except as otherwise provided in this Cash Collateral Order, do not possess and shall not assert any claim, counterclaim, setoff, or defense of any kind, nature, or description which would in any way affect the validity, enforceability, allowance, and non-avoidability of the Pre-Petition Claim or the Pre-Petition Subordinated Term Loan Claim.

## THE PRE-PETITION CLAIM DOCUMENTS

12.    The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Claim is evidenced by certain documents executed and delivered to the Pre-Petition Secured Parties by the Debtors, including, without limitation, that certain *Loan and Security Agreement* dated as of April 4, 2016 by and among the Debtors and the Pre-Petition Secured Parties (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**").

13.    The Credit Agreement, and all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments, agreements, or documents executed in connection therewith or related thereto shall be referred to herein collectively as the "**Pre-Petition Claim Documents**."  True and correct copies of certain of the Pre-Petition Claim Documents are retained by the Prepetition Secured Parties and may be made available to interested parties upon request.

14.    The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Claim Documents and the Prepetition Subordinated Term Loan Documents (as defined below) are genuine, valid, existing, legally enforceable, and admissible in the Chapter 11 Cases for all purposes.

## THE PRE-PETITION COLLATERAL

70675998.1

15.     The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Claim evidenced by the Pre-Petition Claim Documents is secured by perfected, first-priority liens and security interests in (collectively, the "**Pre-Petition Liens**"), *inter alia*, all of the personal property, wherever located, whether now owned or at any time hereafter acquired by any of the Debtors or in which the Debtors now have or at any time in the future may acquire any right, title or interest and whether now existing or hereafter coming into existence covered by those certain security and pledge agreements forming a component of the Pre-Petition Claim Documents, including, without limitation, (1) the following presently owned and after-acquired personal property: (a) accounts, (b) chattel paper (both tangible and electronic), (c) commercial tort claims, (d) deposit accounts, (e) documents, (f) general intangibles, including intellectual property, (g) goods (including, without limitation, all inventory, equipment and fixtures), (h) instruments, (i) investment property, (j) letter-of-credit rights, (k) supporting obligations, (l) monies, whether or not in the possession or under the control of the Pre-Petition Secured Parties, or a bailee or affiliate of the same (including Cash Collateral), (m) accessions to, substitutions for, and all replacements, products, and cash and non-cash proceeds of the foregoing, including proceeds of and unearned premiums with respect to insurance policies, and claims against any person for loss, damage, or destruction of any collateral, (n) books and records (including customer lists, files, correspondence, tapes, computer programs, print-outs, and computer records) pertaining to the foregoing, and (o) to the extent not otherwise included, any other property insofar as it consists of personal property of any kind or character defined in and subject to the UCC (as defined in the Credit Agreement), and (2) to the extent not otherwise included, all proceeds and products of any and all of the foregoing and all collateral security, income, royalties and other payments now or hereafter due and payable with respect to, and guarantees and supporting obligations relating to, any and all of the Pre-Petition Collateral and,

to the extent not otherwise included, all payments of insurance (whether or not the Pre-Petition Agent is the loss payee thereof), or any indemnity, warranty or guaranty, payable by reason of loss or damage to or otherwise with respect to any of the foregoing Pre-Petition Collateral, all other claims, including, without limitation, all cash, guarantees and other supporting obligations given with respect to any of the foregoing (collectively, the "**Pre-Petition Collateral**"); *provided, however*, that notwithstanding anything to the contrary herein, the Pre-Petition Collateral does not include (a) the Avoidance Actions or the Avoidance Proceeds, (b) the Excluded Property (as defined in the Credit Agreement), or (c) the Excluded Real Estate (as defined in that certain *Subordination and Intercreditor Agreement* dated as of December 21, 2017 (the "**Intercreditor Agreement**")) or any Excluded Real Estate Proceeds (as defined in the Intercreditor Agreement) (Excluded Real Estate and the Excluded Real Estate Proceeds, collectively, the "**Excluded Collateral**").  The Pre-Petition Secured Parties' liens on and security interests in the Pre-Petition Collateral were granted pursuant to, *inter alia*, the Pre-Petition Claim Documents. The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Secured Parties hold properly perfected first-priority liens and security interests and other liens in the applicable Pre-Petition Collateral (subject to Prior Liens, if any) as evidenced by, among other things, the Pre-Petition Claim Documents, documents held in possession of the Pre-Petition Secured Parties, and documents filed with the appropriate state, county, and other offices.

16.    The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Subordinated Term Loan Claim evidenced by the Pre-Petition Subordinated Term Loan Documents is secured by (i) properly perfected, first-priority liens and security interests in the Excluded Collateral and (ii) properly perfected, second-priority liens and security interests in the Pre-Petition Collateral. The Pre-Petition Subordinated Term Loan Secured Parties' liens on and security interests in the Pre-Petition Collateral and the Excluded Collateral were granted pursuant

to, *inter alia*, the Pre-Petition Subordinated Term Loan Documents.

## DEFAULTS BY THE DEBTORS

17.    The Debtors acknowledge, agree, admit, and stipulate that they are in default of their debts and obligations to the Pre-Petition Secured Parties and the Pre-Petition Subordinated Term Loan Parties under the terms and provisions of the Pre-Petition Claim Documents and the Pre-Petition Subordinated Term Loan Documents.  The Debtors further acknowledge, agree, admit, and stipulate that these defaults exist, have not been timely cured, and are continuing. The Debtors further acknowledge, agree, admit, and stipulate that the filing of these Chapter 11 Cases has accelerated, to the extent not previously accelerated, the maturity of  the Pre-Petition Claim and the Pre-Petition Subordinated Term Loan Claim for all purposes, including in these Chapter 11 Cases and in connection with the Pre-Petition Secured Parties' enforcement of their respective rights and remedies under the Pre-Petition Claim Documents and applicable law.  The Debtors further acknowledge, agree, admit, and stipulate that they are each indebted and liable under the terms and provisions of the Pre-Petition Claim Documents without defense, counterclaim, or offset of any kind, and that the Pre-Petition Claim remains fully due and owing. The Debtors further acknowledge, agree, admit, and stipulate that they are each indebted and liable under the terms and provisions of the Pre-Petition Subordinated Term Loan Documents without defense, counterclaim, or offset of any kind, and that the Pre-Petition Subordinated Term Loan Claim remains fully due and owing.  The Debtors further acknowledge, agree, admit, and stipulate that no payments or other transfers made by or on behalf of the Debtors to the Pre-Petition Secured Parties prior to the Petition Date shall be avoidable or recoverable from any of the Pre-Petition Secured Parties under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.  From and after the Petition Date, neither the Pre-Petition Agent nor the Pre-Petition Lenders nor any of the Pre-Petition Subordinated Term Loan

Parties shall have any obligation to lend or advance funds to the Debtors or their estates.

## CASH COLLATERAL

A.    **Pre-Petition Secured Parties' and Pre-Petition Subordinated Term Loan Parties' Cash Collateral**

18.    The Debtors acknowledge, agree, admit, and stipulate that all cash of each of the Debtors' bankruptcy estates, wherever located, and all products, rents, or profits that are cash equivalents, whether in the form of cash, negotiable instruments, documents of title, securities, deposit accounts, investment accounts, or in any other form, wherever held, that were on the Petition Date in the Debtors' (or persons in privity with the Debtors) possession, custody or control, or in which the Debtors will obtain an interest during the pendency of these Chapter 11 Cases, or which represent income, proceeds, products, rents, or profits of any of the Pre-Petition Collateral constitute the cash collateral, subject to the Intercreditor Agreement,  of the Pre-Petition Agent and the Pre-Petition Subordinated Term Loan Parties within the meaning of Bankruptcy Code sections 363(a) and 552(b), for itself and for and on behalf of the Pre-Petition Lenders (collectively, the "**Cash Collateral**").  The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Secured Parties have first-priority, perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Claim Documents and Bankruptcy Code section 363(a). The Debtors acknowledge, agree, admit, and stipulate that the Pre-Petition Subordinated Term Loan Parties have second-priority, perfected liens and security interests in the Cash Collateral pursuant to the applicable provisions of the Pre-Petition Subordinated Term Loan Documents and Bankruptcy Code section 363(a).

19.    The Debtors shall segregate and account to the Pre-Petition Secured Parties and the Pre-Petition Subordinated Term Loan Parties for all Cash Collateral that they now possesses, that they have permitted to be transferred into the possession of others (if any), that is being held

by those in privity with the Debtors, or that the Debtors might hereafter obtain or have any interest in. The Debtors shall account to the Pre-Petition Secured Parties and the Pre-Petition Subordinated Term Loan Parties for the receipt and use, if any, of the Cash Collateral received by the Debtors since the Petition Date and prior to the entry of this Cash Collateral Order. Absent a further order of this Court or the consent of the Pre-Petition Secured Parties and, only after the Pre-Petition Secured Parties are indefeasibly paid in full, the Pre-Petition Subordinated Term Loan Parties, the Debtors are strictly prohibited from using Cash Collateral except as expressly provided for herein.

**B.       Need For and Consent to Limited Use of Cash Collateral**

20.       The Debtors have requested immediate entry of this Cash Collateral Order pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2, and have an immediate need to obtain use of the Cash Collateral in the amount and in the manner set forth in the Budget (as defined below) and this Cash Collateral Order in order to, among other things, preserve and maintain the value of their estates and businesses, liquidate their assets, and maximize the return to all creditors. The Pre-Petition Secured Parties do not consent to the Debtors' use of Cash Collateral except in strict accordance with the terms and conditions contained in this Cash Collateral Order and the Budget. The relief hereunder is necessary to avoid immediate and irreparable harm to the Debtors' estates because, without the use of Cash Collateral, the Debtors will not have the funds necessary to maintain and operate their businesses and assets, sell or otherwise liquidate their assets, provide financial information, and pay other expenses necessary to maximize the value of the Debtors' estates. Good, adequate, and sufficient cause has been shown to justify the granting of the relief requested herein. The use of Cash Collateral will benefit the Debtors and their estates. The ability of the Debtors to maximize the value of their estates depends upon the Debtors' ability to use the Cash Collateral of the Pre-Petition Secured

Parties and the Pre-Petition Subordinated Term Loan Parties.  Accordingly, the use of Cash Collateral by the Debtors is actual and necessary to preserve their estates.

**C.      Authorization for Limited Use of Cash Collateral**

21.      Subject to the Carve Out, the Debtors are hereby authorized, on a limited and interim basis, to use Cash Collateral only in strict accordance with the terms and conditions provided in this Cash Collateral Order and the Budget.  Except on the terms and conditions of this Cash Collateral Order, the Debtors are prohibited from using the Cash Collateral at any time absent consent of the Pre-Petition Secured Parties, or further order of the Court.

**D.      Cash Collateral Accounts**

22.      The Debtors shall immediately, and shall continue to, segregate, remit, and deposit all Cash Collateral, whether contained in the Debtors' bank accounts (or in any account opened during the pendency of these Chapter 11 Cases after obtaining consent from the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders), or otherwise in the Debtors' possession, custody or control, and which the Debtors may receive in the future in the collection accounts (or related lockboxes) of the Debtors in the name of the Debtors maintained with the Pre-Petition Agent and those banks as identified on **Exhibit 2** attached hereto the "**Cash Collateral Accounts**").

23.      To the extent there exists or comes to exist any cash of the Debtors' estates that is not Cash Collateral, wherever located and however held, such cash shall be deemed to have been used first by the Debtors' estates and such cash, to the extent applicable, shall be subject to the Adequate Protection Liens granted to the Pre-Petition Secured Parties hereunder.

## **ADEQUATE PROTECTION**

### **Pre-Petition Secured Parties' Entitlement to Adequate Protection**

24.      The Pre-Petition Secured Parties are entitled, pursuant to Bankruptcy Code

sections 361, 363(c)(2), and 363(e) to adequate protection of their respective interests in the Pre-Petition Collateral and the Cash Collateral, and the Debtors shall be obligated to provide such adequate protection to the extent that the Automatic Stay or any use, sale or lease, or any grant of a lien results in a decrease in the value of the Pre-Petition Secured Parties' interests in the Pre-Petition Collateral and the Cash Collateral from and after the Petition Date (such decrease in value, the "**Adequate Protection Obligations**").

25.    As adequate protection, the Pre-Petition Secured Parties are each hereby granted (collectively, the "**Adequate Protection**"):

(a)    Adequate Protection Liens.  Effective as of the Petition Date, to the extent of the Adequate Protection Obligations, and subject to the Carve Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Pre-Petition Agent is hereby granted a valid, binding, continuing, enforceable, fully perfected, unavoidable replacement lien on, and security interest in (collectively, the "**Adequate Protection Liens**") all of the Debtors' assets and properties of any kind or type, whether now owned and hereafter acquired, personal property, tangible and intangible assets, and rights of any kind or nature, wherever located, including, without limitation, all pre-petition and post-petition property of the Debtors and their estates, and all products, proceeds, rents, and profits thereof, whether existing on or as of the Petition Date, or thereafter acquired, or arising upon any use, lease, sale, consumption, or other disposition of such assets and properties, including without limitation, goods and other personal property, accounts receivable, other rights to payment, cash, inventory, general intangibles, contracts, servicing rights, proceeds, and termination payments, servicing receivables, securities (including equity interests in the Debtors); chattel paper, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, Excluded Property, commercial tort claims, insurance of any kind or type, property subject to avoided liens, and claims and causes of action including, upon the entry of the Final Order, Avoidance Proceeds, and the products and proceeds of any and all of the foregoing (collectively, the "**Adequate Protection Collateral**"); *provided, however*, that the Adequate Protection Liens in the Adequate Protection Collateral shall be first priority but subject to (x) any valid, perfected, and unavoidable liens in property of the Debtors in existence as of the Petition Date and (y) any valid and unavoidable liens on property of the Debtors in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by Bankruptcy Code section 546(b), but only to the extent such valid, perfected and unavoidable liens are senior in priority to the Pre-Petition Liens in favor of the Pre-Petition Lenders as permitted in the Pre-Petition Claim Documents or pursuant to applicable law (the liens described in (x) and (y), the "**Prior Liens**");

*provided, further*, however, that the Adequate Protection Collateral shall not include any of the Debtors' Excluded Collateral. The Adequate Protection Liens shall be deemed first-priority (subject only to the Carve Out and Prior Liens, if any), perfected, and properly recorded for all purposes as to all parties and third parties as of the Petition Date without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages, deeds of trust, or other similar documents, or by the possession or control by the Pre-Petition Secured Parties of any Adequate Protection Collateral. The Debtors and the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, shall have the right to object to the validity, priority, or extent of any Prior Liens, or the allowance of any claims purported to be secured thereby, or to institute any actions or adversary proceedings with respect thereto.

(b)  Status of the Adequate Protection Liens. The Adequate Protection Liens granted to the Pre-Petition Secured Parties pursuant to this Cash Collateral Order shall not at any time be (i) made subject or subordinated to, or made *pari passu* with, any other lien or security interest existing on the Petition Date, or any claim, lien, or security interest created under Bankruptcy Code sections 363 or 364 or otherwise, or (ii) subject to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under Bankruptcy Code section 551.

(c)  Adequate Protection Claim/Superpriority Administrative Claim. The Adequate Protection Obligations due to the Pre-Petition Secured Parties shall also constitute allowed joint and several superpriority administrative claims against each of the Debtors and their respective estates to the extent of diminution of value as and to the extent provided in Bankruptcy Code section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors and their estates, now existing or hereafter arising in the Chapter 11 Cases (subject to the Carve Out), to the extent provided in Bankruptcy Code section 507(a), including in any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Adequate Protection Claim**"), which Adequate Protection Claim shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors and their estates.

(d)  Adequate Protection Payments: The Debtors shall pay to the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders, (i) adequate protection payments on the last business day of each calendar week after the entry of this Cash Collateral Order, in each case, in an amount equal to all accrued and unpaid prepetition or post-petition interest at the applicable post-default rate and any other fees and costs due and payable under the Pre-Petition Claim Documents, including as further set forth herein under the provisions regarding professional fees of the Pre-Petition Agent, attorneys and other professional fees, and any applicable letters of credit and banking services agreements (including, without limitation, interest on loans, breakage costs, and accrued fees owing to the Pre-Petition Agent and the Pre-Petition Lenders); (ii) on a weekly basis, adequate protection

payments based on the line item entitled "ABL Paydown (Draw)" as specified by the amount and timing in the Budget for such line item; (iii) on a weekly basis, adequate protection payments, in each case, in an amount equal to the amount of cash receipts in excess of the projected amount for aggregate cash receipts set forth in the Budget for a Testing Period (as defined below) pursuant to paragraph 30 hereof; (iv) in addition to the "ABL Paydown (Draw)" payments, on a weekly basis, adequate protection payments, in each case, in an amount equal to the excess net cash flow of the Debtors during a Testing Period pursuant to paragraph 32 hereof, and (v) transfers of the Excess Cash and Excess Cash Flow ((i) through (v) immediately preceding, the "**Adequate Protection Payments**").  All weekly Adequate Protection Payments shall be made on the first business day of the applicable week.

### Subordinated Term Loan Lenders' Entitlement to Adequate Protection

26.    Black Diamond Commercial Finance, L.L.C., as agent (in such capacity, the "**Subordinated Term Loan Agent**") for the lenders (in such capacity, the "**Subordinated Term Loan Lenders**", and together with the Subordinated Term Loan Agent, the "**Subordinated Term Loan Parties**") party to that certain *Loan and Security Agreement* dated as of April 4, 2016 (as amended, supplemented, or otherwise modified to time to time, the "**Subordinated Term Loan Agreement**" and, together with all notes, security agreements, assignments, pledges, mortgages, deeds of trust, guaranties, forbearance agreements, letters of credit, and other instruments, agreements, or documents executed in connection therewith or related thereto, the "**Subordinated Term Loan Documents**"), and the Subordinated Term Loan Lenders, are entitled, pursuant to Bankruptcy Code sections 361, 363(c)(2), and 363(e), and subject in all respects to the terms of the Intercreditor Agreement, to adequate protection of their respective interests in the Pre-Petition Collateral and the Cash Collateral (which, for the avoidance of doubt, shall be junior in all respects to the adequate protection of the Pre-Petition Secured Parties in the Pre-Petition Collateral and the Cash Collateral) and the Excluded Collateral, and the Debtors shall be obligated to provide such adequate protection to the extent that the Automatic Stay or any use, sale or lease, or any grant of a lien results in a decrease in the value of the Subordinated

Term Loan Parties' interests in the Pre-Petition Collateral, Cash Collateral, and the Excluded

Collateral from and after the Petition Date.

27.     As adequate protection, the Subordinated Term Loan Parties are each hereby

granted (collectively, the "**Subordinated Term Loan Parties' Adequate Protection**

**Obligations**"):

(a)     Adequate Protection Liens.  Effective as of the Petition Date, to the extent of the Subordinated Term Loan Parties' Adequate Protection Obligations, and subject to the Carve Out, pursuant to Bankruptcy Code sections 361(2) and 363(c)(2), the Subordinated Term Loan Agent, on behalf of the Subordinated Term Loan Lenders, is hereby granted a valid, binding, continuing, enforceable, fully perfected, unavoidable replacement lien on, and security interest in (i) the Adequate Protection Collateral, subject and subordinate in all respects to the Adequate Protection Liens, and (b) the Excluded Collateral (collectively, the "**Subordinated Term Loan Parties' Adequate Protection Liens**").

(b)     Subordinated Term Loan Parties' Adequate Protection Claim/Superpriority Administrative Claim. The Subordinated Term Loan Parties' Adequate Protection Obligations due to the Subordinated Term Loan Parties shall also constitute allowed joint and several superpriority administrative claims against each of the Debtors and their respective estates to the extent of diminution of value as and to the extent provided in Bankruptcy Code section 507(b), with priority in payment over any and all unsecured claims and administrative expense claims against the Debtors and their estates, now existing or hereafter arising in the Chapter 11 Cases (subject to the Carve Out), to the extent provided in Bankruptcy Code section 507(a), including in any subsequent proceedings, including without limitation any chapter 7 proceeding, under the Bankruptcy Code (the "**Subordinated Term Loan Parties' Adequate Protection Claim**"), which Subordinated Term Loan Parties' Adequate Protection Claim shall be subject and subordinate in all respects to the Adequate Protection Claim and shall have recourse to and be payable from all pre-petition and post-petition property of the Debtors and their estates.

28.     For the avoidance of doubt and notwithstanding any other provision of this

Interim Order, the terms of the Intercreditor Agreement shall control as between the Pre-Petition

Secured Parties and the Subordinated Term Loan Parties, including, without limitation, with

respect to the relative priorities and rights of the Pre-Petition Claim, the Pre-Petition Liens, the

Adequate Protection Liens, and the Adequate Protection Claims in favor of the Pre-Petition

Secured Parties, and the Pre-Petition Subordinated Term Loan Claim, the Pre-Petition Subordinated Lien, the Subordinated Term Loan Parties' Adequate Protection Liens, and the Subordinated Term Loan Parties' Adequate Protection Claims in favor of the Subordinated Term Loan Parties.

## Budgeted Use of Cash Collateral

29.    The Debtors are authorized to use Cash Collateral strictly in accordance with the 13-week budget attached hereto as **Exhibit 1** (the "**Budget**").  For each weekly period set forth in the Budget: (a) the actual aggregate expenditures by the Debtors for the immediately preceding one-week period (each, a "**Testing Period**") shall not in any event exceed the projected amount therefor set forth in the Budget by more than ten percent (10%) (excluding any expenditures for the Lenders' Costs (as defined below)); (b) the actual expenditures by the Debtors for any line item for the Testing Period shall not in any event exceed the projected amount therefor set forth in the Budget by more than twenty percent (20%) (excluding any expenditures for the Lenders' Costs); and (c) the actual aggregate receipts of the Debtors for the Testing Period shall not in any event be less than the projected amount therefor set forth in the Budget by less than twenty percent (20%), except for first testing period such variance on aggregate receipts shall be thirty percent (30%) rather than twenty percent (20%).  Any unused expenditure amounts, not receipts, in the Budget during any one-week period, by line-item, may be carried forward and applied to any amount by which that same line-item, and only that same line-item, exceeds its projected use as set forth in the Budget during the subsequent eight-week period.  Notwithstanding the foregoing and any amount in the Budget, there shall be no variance on the fees and expenses of Professional Persons (as defined below), and there shall be no payment or series of payments made on account of (a) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned, and (b) contributions to an employee

benefit plan, to any person that would in the aggregate exceed the statutory priority caps set forth in Bankruptcy Code sections 507(a)(4) and (a)(5) for any such person.

30.     The Pre-Petition Agent is hereby authorized to apply at any time, or hold in reserve and subsequently apply at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or to permit the Debtors to use and the Pre-Petition Secured Parties to receive Adequate Protection for such use, all cash receipts for the Testing Period in excess of the projected amount for aggregate cash receipts set forth in the Budget (the "**Excess Cash**") to the Pre-Petition Claim and/or the Adequate Protection Claim, as determined by the Pre-Petition Agent.  The Debtors may request to use such Cash Collateral held in reserve on not more frequently than a weekly basis, and the amount of Cash Collateral available for such use shall be limited to the extent of the amount of such Cash Collateral held in reserve and the Budget.

31.     The Debtors' use of Cash Collateral shall be conditioned upon the Debtors' compliance with the Budget.  The Budget may be modified in writing only with the prior written consent of the Pre-Petition Agent and the Pre-Petition Lenders.  The Debtors will file any amended Budget with the Court.  Prior to any transfer or use of Cash Collateral by the Debtors, the Debtors' Vice President of Finance or otherwise mutually agreeable party shall review and verify the proposed transfer or use of Cash Collateral for strict compliance with the Budget and this Cash Collateral Order.

32.     On a weekly basis, the Debtors shall deliver to the Pre-Petition Agent and the Pre-Petition Subordinated Term Loan Agent a line-by-line variance report, which shall be approved by the Debtors' Vice President of Finance or otherwise mutually agreeable party and shall otherwise be in form and substance acceptable to the Pre-Petition Agent, and which shall compare actual cash receipts and disbursements of the Debtors with corresponding amounts

provided for in the Budget on a line-by-line basis for the prior Testing Period, including written descriptions in reasonable detail explaining any material positive or negative variances.  If, for any Testing Period, the line item in the Budget for net cash flow exceeds the amount forecasted for such Testing Period, the Pre-Petition Agent shall be authorized as follows: (a) if the Debtors' actual aggregate expenses exceeded the amount forecasted for such Testing Period, an amount equal to all such excess cash flow may be applied at any time, or held in reserve and subsequently applied at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or the Pre-Petition Agent may permit the Debtors to use such excess cash flow, and the Pre-Petition Secured Parties to receive Adequate Protection for such use,  or (b) if the Debtors' actual aggregate expenses were less than the amount forecasted for such Testing Period, an amount equal to such excess cash flow minus the difference between the actual aggregate expenses and the amount forecasted for such Testing Period may be applied at any time, or held in reserve and subsequently applied at any time or from time to time, to the Pre-Petition Claim as determined by the Pre-Petition Agent, or permit the Debtors to use such excess cash flow and the Pre-Petition Secured Parties to receive Adequate Protection for such use,  ((a) and (b) immediately preceding, the "**Excess Cash Flow**").

33.     The Pre-Petition Secured Parties' consent to the Debtors' use of Cash Collateral extends only to amounts actually incurred in accordance with the Budget.  Upon the occurrence of a Termination Event (as defined below), the Pre-Petition Secured Parties' consent to the Debtors' use of Cash Collateral shall automatically and immediately terminate and any consent or authority for use of Cash Collateral to satisfy projected, budgeted expenditures shall be immediately terminated and deemed withdrawn unless such Termination Event is waived in writing by the Pre-Petition Agent.

34.     Absent the prior written consent of the Pre-Petition Agent, except as may

specifically be provided in the Budget including, without limitation, for ordinary-course payroll, benefits, and expense reimbursements, the Debtors shall not transfer any Cash Collateral to any of the Debtors' insiders, as that term is defined in Bankruptcy Code section 101.

## **Automatic Perfection**

35.    This Cash Collateral Order shall be sufficient and conclusive evidence of the priority, perfection, attachment, and validity of all of the Pre-Petition Secured Parties' and the Pre-Petition Subordinated Term Loan Parties' security interests in and liens on any collateral granted and created hereunder, including without limitation the Pre-Petition Collateral, the Cash Collateral, and the Adequate Protection Collateral (collectively, the "**Collateral**") and such security interests and liens shall constitute valid, automatically perfected and unavoidable security interests and liens, with the priorities granted hereunder, effective as of the Petition Date, without the necessity of executing, creating, filing, recording, or serving any financing statements, deposit account control agreements, mortgages, or other documents that might otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to the Pre-Petition Agent by this Cash Collateral Order.

36.    To the extent that any applicable non-bankruptcy law otherwise would restrict the granting, scope, enforceability, attachment, or perfection of the Pre-Petition Secured Parties' or the Pre-Petition Subordinated Term Loan Parties' liens and security interests granted and created in the Collateral by this Cash Collateral Order, or would otherwise impose filing or registration requirements with respect to such liens and security interests, such law is hereby pre-empted to the maximum extent permitted by the Bankruptcy Code, applicable federal law, and the judicial power of the United States Bankruptcy Court.

37.    By virtue of the terms of this Cash Collateral Order, to the extent that the Pre-

Petition Secured Parties or the Pre-Petition Subordinated Term Loan Parties have executed deposit account control agreements with the Debtors or filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the name of any of the Debtors, such execution and filings, as applicable, shall be deemed to properly perfect their liens and security interests granted and created in the Collateral under this Cash Collateral Order without further action by them.

38.    If the Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent shall elect for any reason to file any Uniform Commercial Code financing statements, mortgages, deeds of trust, or other recordable documents, or enter into any deposit account control agreements, to further evidence perfection of its interests in the Collateral or any other in property of the Debtors or their estates, if any, or, upon the reasonable request of the Pre-Petition Agent, any Pre-Petition Lender, or any Pre-Petition Subordinated Term Loan Lender, the Debtors are authorized to execute, or cause to be executed, all such mortgages, deeds of trust, deposit account control agreements, or other documents, and the filing, recording, or service (as the case may be) of such financing statements, mortgages, deeds of trust, or similar documents, or the execution of any deposit account control agreements, shall be deemed to have been made at the time of and on the Petition Date, and the signature(s) of any person(s) designated by the Debtors, whether by letter to the Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent or by appearing on any one or more of the agreements or other documents respecting the security interests and liens of the Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent granted hereunder shall bind the Debtors and their estates.  The Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent may determine to execute such documents on behalf of the Debtors as the Debtors' attorney-in-fact, or file a certified copy of this Cash Collateral Order in any filing or recording office in any county or other jurisdiction in which the Debtors

have real or personal property, and, in such event, the subject filing or recording officer is authorized to file or record such documents or certified copy of this Cash Collateral Order.

## Authorization to Act

39.    The Debtors are hereby authorized to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments and agreements, as the Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent may reasonably require as evidence of and for the protection of the Cash Collateral, or that may be otherwise deemed necessary by the Pre-Petition Agent or the Pre-Petition Subordinated Term Loan Agent to effectuate the terms and conditions of this Cash Collateral Order.

## No Additional Liens

40.    Until such time as the Pre-Petition Claim and Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and this Cash Collateral Order, the Debtors shall not be authorized to obtain credit secured by a lien or security interest in the Collateral without the prior written consent of the Pre-Petition Agent or by order of the Court upon reasonable notice.

## No Liability

41.    No act committed or action taken by the Pre-Petition Agent under this Cash Collateral Order (excluding the exercise of remedies following the modification of the Automatic Stay hereunder), or payments on account of the Pre-Petition Claim or the Adequate Protection Claim by the Debtors as authorized hereunder, shall be used, construed, or deemed to hold the Pre-Petition Agent and/or the Pre-Petition Lenders to be in "control" of or participating in the governance, management, or operations of any of the Debtors for any purpose, without limitation, or to be acting as a "responsible person(s)" or "owner(s) or operator(s)" or a person(s) in "control" with respect to the governance, management, or operation of any of the Debtors or

their businesses (as such terms, or any similar terms, are used in the Internal Revenue Code, the WARN Act, the Comprehensive Environmental Response, Compensation and Liability Act, or the Bankruptcy Code, each as may be amended from time to time, or any other federal or state statute, at law, in equity, or otherwise) by virtue of the interests, rights, and remedies granted to or conferred upon the Pre-Petition Agent and the Pre-Petition Lenders under the Pre-Petition Claim Documents or this Cash Collateral Order including, without limitation, such rights and remedies as may be exercisable by the Pre-Petition Agent and the Pre-Petition Lenders in connection with this Cash Collateral Order.

### Automatic Stay

42.     The Automatic Stay is hereby vacated and modified to the extent necessary (a) to permit the Debtors, the Pre-Petition Agent, and the Pre-Petition Lenders to commit all acts and take all actions necessary to implement this Cash Collateral Order, (b) to permit the Debtors, the Pre-Petition Agent, and the Pre-Petition Lenders to commit all acts, actions, and transfers contemplated herein, including, without limitation, transfers of Cash Collateral, Excess Cash, Excess Cash Flow, and other funds to the Pre-Petition Agent by the Debtors as provided herein, and (c) consistent with the terms of this Cash Collateral Order, to permit the Pre-Petition Agent and/or the Pre-Petition Lenders, at their option, to pursue their rights and remedies as to the Collateral in accordance with the Pre-Petition Claim Documents and this Cash Collateral Order, including the provisions governing remedies following an Event of Default, and applicable law.

### Collateral Insurance, Maintenance, Taxes, and Deposits

43.     The Debtors shall maintain, with financially sound and reputable insurance companies, insurance of the kind covering the Collateral and in accordance with the Pre-Petition Claim Documents (covering such risks in amounts as shall be satisfactory to the Pre-Petition Agent and shall name the Pre-Petition Agent as loss payee thereunder), including, without

limitation, insurance covering the Collateral and such other collateral of the Pre-Petition Secured Parties, if any, as the Pre-Petition Agent may from time to time request; and, at the Pre-Petition Agent's request, the Debtors shall deliver to the Pre-Petition Agent evidence of the maintenance of such insurance.  Upon receipt of notification (written or oral) that an insurance policy covering any Collateral will not be renewed by the respective carrier, the Debtors will promptly notify the Pre-Petition Agent in writing of such occurrence and thereafter provide the Pre-Petition Agent with the status of all negotiations, if any, regarding such policy on a weekly basis.

44.     To the extent permitted by the Budget, the Debtors shall make any and all payments necessary to keep the Collateral and its other property in good repair and condition and not permit or commit any waste thereof.

45.     To the extent the Debtors have made or make any deposits for the benefit of utility companies or any other entity (and the Debtors shall not make any such deposits which are not included in the Budget without first obtaining prior written consent of the Pre-Petition Agent), the proceeds of any such deposits returned to the Debtors shall be, immediately upon such return, subject to the first-priority, perfected liens and security interests of the Pre-Petition Secured Parties in respect of the Debtors' use of Cash Collateral granted by this Cash Collateral Order.

**Reporting Requirements**

46.     The Debtors shall comply in all material respects and on a timely basis with the reporting requirements set forth in the Pre-Petition Claim Documents including borrowing base reports, monthly operating reports, but excluding monthly financial statements, all of which reports shall be provided to the Pre-Petition Agent (for further delivery to the Pre-Petition Lenders), to any appointed committee or the U.S. Trustee (as defined below), or to any other party in interest in these Chapter 11 Cases; and shall provide such other reports and information

as the Pre-Petition Agent (including on behalf of any Pre-Petition Lender) may reasonably request from time to time.

47.     In addition to, and without limiting whatever rights to access the Pre-Petition Agent and the Pre-Petition Lenders have under the Pre-Petition Claim Documents, upon reasonable prior written notice, at reasonable times during normal business hours, and otherwise not to be unreasonably withheld, the Debtors shall permit representatives, advisors, agents, and employees of the Pre-Petition Agent and the Pre-Petition Lenders (i) to have access to and inspect the Debtors' properties, (ii) to examine the Debtors' books and records, and (iii) discuss the Debtors' affairs, finances, and condition with the Debtors' officers, management, financial advisors, and counsel.

### Interest, Fees, Costs and Expenses of the Pre-Petition Secured Parties

48.     During the Chapter 11 Cases, as additional adequate protection for the Pre-Petition Secured Parties, all interest, fees, costs, and expenses, including, without limitation, attorneys' fees and expenses and financial advisors' fees and expenses, due at any time to the Pre-Petition Secured Parties under the Pre-Petition Claim Documents that are incurred as a result of or in way related to the Debtors' Chapter 11 Cases, or incurred prior to and unpaid on the Petition Date (collectively, the "**Lenders' Costs**"), may be charged by the Pre-Petition Agent and the Pre-Petition Lenders and shall be paid by the Debtors out of the Cash Collateral, on no less frequently than a weekly basis, up to the aggregate amount for such Lenders' Costs set forth in the Budget or, if greater than such amount in the Budget, only if approved in writing by the Pre-Petition Agent.  The Debtors are hereby authorized to pay such Lenders' Costs without the Pre-Petition Agent or the Pre-Petition Lenders, or the Prepetition Agent's or the Prepetition Lenders' counsel, having to file any further application with this Court for approval or payment. Any such Lenders' Costs that constitute fees and expenses incurred by any professional retained

by the Pre-Petition Agent shall be paid within ten (10) calendar days of delivery of a summary invoice/fee statement, which may be redacted for privilege, to the Debtors, the U.S. Trustee, and any official committee appointed in these Chapter 11 Cases; *provided, however*, that (i) any redacted invoice/fee statement shall retain all privileges irrespective of any disclosure of any privileged matter, and any such disclosure shall be deemed inadvertent for all purposes and deemed stricken from any record in the Chapter 11 Cases or otherwise, (ii) if the Debtors, the U.S. Trustee, or any appointed committee objects to the reasonableness of such fees and expenses and cannot resolve such objection within five (5) business days of service of such invoice(s), the Debtors, the U.S. Trustee, or any appointed committee, as the case may be, shall file and serve upon such professional an objection with the Court (a "**Fee Objection**") limited to the issue of the reasonableness of the disputed fees and expenses within ten (10) calendar days of the delivery of such invoice; (iii) if the Debtors, the U.S. Trustee, or any appointed committee fails to object to the reasonableness of such fees and expenses within ten (10) calendar days thereafter, any objection of the Debtors, the U.S. Trustee, or any appointed committee, as the case may be, shall be waived, (iv) the Debtors shall timely pay in accordance with this Cash Collateral Order the undisputed fees and expenses reflected on any invoice to which a Fee Objection has been timely filed, and (v) notwithstanding the foregoing (i), (ii), (iii), and (iv) of this sentence, the Lenders' Costs incurred prior to and unpaid as of the Petition Date shall be paid upon entry of this Cash Collateral Order.  Payments of Lenders' Costs may be effectuated directly by the Pre-Petition Agent.  All Lenders' Costs owed to the Pre-Petition Agent and/or the Pre-Petition Lenders, regardless of whether or not such Lenders' Costs are set forth in the Budget, shall be secured by the Collateral and afforded all priorities and protections under this Cash Collateral Order.

**Carve Out/Professional Fees of the Estate**

49.    As used in this Cash Collateral Order, the "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus any applicable interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $25,000 incurred by a trustee under Bankruptcy Code section 726(b) (without regard to the notice set forth in (iii) below); (iii) to the extent (x) provided for in the Budget, (y) in the Professional Fee Reserve, and (z) allowed at any time, whether by interim order, procedural order, or otherwise, but subject to final allowance by the Bankruptcy Court, all accrued and unpaid fees and expenses (the "**Allowed Professional Fees**") incurred by persons or firms retained by the Debtors pursuant to Bankruptcy Code section 327, 328, or 363 (the "**Debtor Professionals**"), and any appointed committee pursuant to Bankruptcy Code section 328 or 1103 (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") at any time before delivery by the Pre-Petition Agent of a Carve Out Trigger Notice (as defined below); and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount, after application of all retainers, not to exceed $50,000.00 incurred on or after the first business day following delivery by the Pre-Petition Agent of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amount set forth in this clause (iv) being the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean, a written notice stating that the Post-Carve Out Trigger Notice Cap has been invoked, delivered by hard copy, facsimile, or email (or other electronic means) by the Pre-Petition Agent to the Debtors, their lead bankruptcy counsel, the U.S. Trustee, and counsel to any appointed committee, which notice may be delivered following the occurrence and continued existence of an Event of Default under the terms of this Cash Collateral Order.

50.    The amounts in the Budget for the fees and expenses of the Professional Persons

for periods prior to the delivery by the Pre-Petition Agent of a Carve Out Trigger Notice in accordance with the terms of this Cash Collateral Order shall be deposited weekly into a segregated account of the Debtors with the Pre-Petition Agent and held for the sole purpose of funding Allowed Professional Fees of Professional Persons benefitting from the Carve Out and incurred prior to such delivery of a Carve Out Trigger Notice (the "**Professional Fee Reserve**"), with such funds in the Professional Fee Reserve being subject to the respective interests of the Pre-Petition Agent and the Pre-Petition Lenders.  Allowed Professional Fees of Professional Persons benefitting from the Professional Fee Reserve shall be paid only from the Professional Fee Reserve.  Any unused amounts in the Professional Fee Reserve shall be transferred to the Pre-Petition Agent unless the Pre-Petition Lenders shall have been indefeasibly paid in full.  Any amounts payable by the Debtors to the Professional Persons on account of fees or expenses incurred prior to the delivery of a Carve Out Trigger Notice shall only be paid upon allowance or authorization by the Court from funds on deposit in the Professional Fee Reserve.

51.     Nothing in this Cash Collateral Order or otherwise shall be construed to obligate the Pre-Petition Secured Parties in any way, to pay compensation to, or to reimburse expenses of, any Professional Person, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement, and any such obligation to make payments to any Professional Person shall be an obligation of the Debtors' estates.

52.     Any payment or reimbursement made prior to or after the delivery of a Carve Out Trigger Notice in respect of any Allowed Professional Fees incurred prior to the delivery of a Carve Out Trigger Notice shall not reduce the Post-Carve Out Trigger Notice Cap.  Any payment or reimbursement made on or after the delivery of a Carve Out Trigger Notice in respect of any Allowed Professional Fees incurred following the delivery of the Carve Out Trigger Notice shall permanently reduce the Carve Out Trigger Notice Cap on a dollar-for-dollar basis.

53.     Other than the Carve Out, neither the Pre-Petition Agent nor the Pre-Petition Lenders consent to any carve out from the Collateral or the Adequate Protection Collateral for the payment of any fees or expenses of the Professional Persons.  The amounts payable on account of Professional Fees are subject to final approval and allowance by the Bankruptcy Court, and to the extent the amounts funded in the Professional Fee Reserve exceed the amount so allowed, any excess shall be paid to the Pre-Petition Agent unless the Pre-Petition Lenders shall have been indefeasibly paid in full.  The Pre-Petition Agent expressly retains the right to object to any fees or expenses of any Professional Persons as to reasonableness or on any other grounds.

54.     Until such time as the Pre-Petition Claim and Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the Pre-Petition Claim Documents and this Cash Collateral Order, any remaining unapplied retainer funds, if any, at the conclusion of a Professional Person's engagement shall be immediately returned to the Pre-Petition Agent as Cash Collateral.

55.     Notwithstanding the foregoing, in no event shall Cash Collateral, the Carve Out, the Professional Fee Reserve, or any other funds made available by the Pre-Petition Secured Parties to or for the benefit of the Debtors be used for the payment or reimbursement of any fees, expenses, costs or disbursements of any Professional Person or other persons incurred with the purpose of: (a) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, perfection, priority, or enforceability of the Pre-Petition Claim, the Adequate Protection Claim, the Pre-Petition Claim Documents, this Cash Collateral Order, or any liens or security interest granted thereby or with respect thereto, or any other rights or interests of the Pre-Petition Secured Parties under any Pre-Petition Claim Document, (b) investigating, asserting, prosecuting or the joinder in any claims or causes of action against the Pre-Petition Secured

Parties, or any of their officers, directors, employees, affiliates, agents, attorneys, or equity holders (whether arising under state law, the Bankruptcy Code or any other federal or foreign law); (c) preventing, enjoining, hindering or otherwise delaying the Pre-Petition Secured Parties' enforcement of the Pre-Petition Claim Documents or this Cash Collateral Order or any realization upon any Collateral (unless such enforcement or realization is in direct violation of an explicit provision in this Cash Collateral Order); (d) incurring indebtedness except as permitted by this Cash Collateral Order; (e) modifying the Pre-Petition Secured Parties' rights under this Cash Collateral Order without the Pre-Petition Secured Parties' consent; (f) asserting or declaring any liens or security interests granted under any of the Pre-Petition Claim Documents or this Cash Collateral Order to have a priority other than the priority set forth herein or therein; (g) asserting, prosecuting or the joinder in, any action or other proceeding seeking to grant a lien or security interest senior to, or on parity with, the liens and security interests of the Pre-Petition Secured Parties in the Cash Collateral or any portion thereof without the Pre-Petition Secured Parties' written consent; (h) asserting or declaring any of the Pre-Petition Claim Documents or this Cash Collateral Order to be invalid, not binding or unenforceable in any respect; or (i) using Cash Collateral or selling any Collateral except as specifically permitted in this Cash Collateral Order.  Notwithstanding the foregoing, Cash Collateral advances deposited into the Professional Fee Reserve for any Committee Professionals may be used to pay the fees earned and expenses incurred of counsel to any appointed creditors' committee in an amount not to exceed $25,000 to review the Pre-Petition Claim, the Pre-Petition Claim Documents, and any lien or security interest granted thereby, and to investigate any challenges to one or more of the Debtors' stipulations or the releases set forth herein.

56.    Nothing in this Cash Collateral Order or otherwise shall be construed to guarantee that the Debtors have sufficient funds to pay any wind-down expenses incurred in connection

with the Chapter 11 Cases or any subsequent cases under any chapter of the Bankruptcy Code, and any such obligation to pay such expenses shall be an obligation of the Debtors' estates.

### No Surcharge

57.     Subject to the entry of a final order, no costs or expenses of administration which have or may at any time be incurred in these Chapter 11 Cases (or in any subsequent chapter 7 cases) shall be charged against the Pre-Petition Secured Parties, the Pre-Petition Claim, the Adequate Protection Claim, or the Collateral pursuant to Bankruptcy Code section 506(c) without the prior written consent of the Pre-Petition Secured Parties, and no such consent shall be implied from any other action, inaction, or acquiescence by the Pre-Petition Secured Parties. Subject to entry of a final order, the Pre-Petition Secured Parties shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

### Section 552(b) – No "Equities of the Case" Exception

58.     Subject to the entry of a Final Order, the Pre-Petition Agent and Pre-Petition Lenders shall each be entitled to all of the rights and benefits of Bankruptcy Code section 552(b), and the "equities of the case" exception under Bankruptcy Code section 552(b) shall not apply to the Pre-Petition Agent or the Pre-Petition Lenders with respect to proceeds, product, offspring, or profits of any of the Collateral.

### EVENTS OF DEFAULT/REMEDIES

### Events of Default

59.     The Debtors agree that the occurrence of any of the following shall constitute an Event of Default under this Cash Collateral Order:

(a)     any default, event of default, violation, or breach by any of the Debtors of any of the terms of this Cash Collateral Order;

(b)     the occurrence of the Expiration Date (defined below) or Termination Date (defined below), maturity, termination, expiration, or non-renewal of this Cash Collateral Order as provided for herein;

(c)     the Debtors shall fail to obtain, on or before thirty-five (35) days after the Petition Date, an order by the Court approving the Motion on a final basis in form and substance acceptable to the Pre-Petition Agent;

(d)     the dismissal or conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' Chapter 11 Cases;

(e)     the appointment of a trustee or examiner with expanded powers (beyond those set forth in Bankruptcy Code sections 1106(a)(3) and (4)) under Bankruptcy Code section 1106(b) in the Chapter 11 Cases;

(f)     the grant of any security interest, lien, or encumbrance (excluding any Prior Liens) in any of the Collateral which is *pari passu* with or senior to the liens, security interests, or claims of the Pre-Petition Secured Parties (including, without limitation, the Adequate Protection Liens), including, without limitation, any surcharge of the Collateral pursuant to Bankruptcy Code section 506(c), unless the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, agrees in writing that such security interest, lien, or encumbrance does not constitute an Event of Default;

(g)     without the consent of the Pre-Petition Agent, the entry of an order granting relief from the Automatic Stay to the holder or holders of any other security interest or lien (other than the Pre-Petition Secured Parties) in any Collateral to permit the pursuit of any judicial or non-judicial transfer or other remedy against any of the Pre-Petition Collateral or the Cash Collateral, in each case involving assets with a value in excess of $50,000;

(h)     any attempt by any Debtor to vacate or modify this Cash Collateral Order over the objection of the Pre-Petition Agent;

(i)     the entry of an order pursuant to Bankruptcy Code section 363 approving the sale of any Collateral without the consent of the Pre-Petition Agent;

(j)     the failure of the Debtors to make timely any and all Adequate Protection Payments or other Adequate Protection transfers authorized or required in the Cash Collateral Order;

(k)     the entry of any order modifying, reversing, revoking, staying, rescinding, vacating, or amending this Cash Collateral Order without the consent of the Pre-Petition Agent;

70675998.1

(l)     the Debtors commence any challenge to the extent, validity, priority, amount, or unavoidability of the Pre-Petition Secured Parties' liens securing the Pre-Petition Claim or the Adequate Protection Claim, or the entry of an order sustaining any such challenge commenced by any party other than the Debtors;

(m)     the Debtors fail to timely pay any amount required to be paid to the Pre-Petition Agent by this Cash Collateral Order, the Budget, or otherwise;

(n)     the allowance of any priority claims (other than any Prior Liens and the Carve Out) in the Chapter 11 Cases that are senior to or on parity with the Adequate Protection Superpriority Claims or secured claims of the Pre-Petition Secured Parties against the Debtors and their estates arising from the Pre-Petition Claim Documents and this Cash Collateral Order; and

(o)     except for the reasonable and necessary sale of inventory and supplies and the collection of accounts receivable in the ordinary course of the Debtors' businesses and as may be provided for in the Budget and consistent with the terms hereof, the sale, transfer, lease, or disposition of, or the imposition of any encumbrance on, any of the Pre-Petition Collateral or the Cash Collateral, without the prior written consent of the Pre-Petition Agent.

Each of the foregoing events of default are referred to in this Cash Collateral, individually, as an "**Event of Default**", and jointly, as "**Events of Default**").  Any such Event of Default may be waived in writing as determined by the Pre-Petition Agent.

## Remedies of the Prepetition Secured Parties

60.     Upon the occurrence of any Event of Default, and its continued existence following the giving of five (5) business days' (the "**Default Notice Period**") written notice to the Debtor, any committee appointed in these Chapter 11 Cases, and the U.S. Trustee (provided that no such time period, notice or any notice of any kind is required if the Expiration Date or Termination Date occurs) and at all times thereafter, and without further act or action by the Pre-Petition Agent, or any further notice, hearing, or order of this Court: (a) any and all obligations of the Pre-Petition Secured Parties under this Cash Collateral Order shall immediately terminate, and (b) the Debtors' authority to use Cash Collateral shall immediately terminate; *provided, however*, that during such Default Notice Period, the Debtors may seek an emergency hearing

before this Court, and must provide prompt notice of such hearing to the Pre-Petition Secured Parties and their counsel, to contest whether an Event of Default has occurred. As used herein, "**Termination Event**" shall mean the occurrence of an Event of Default and the passage of the Default Notice Period.

61.     Furthermore, upon the occurrence of any Termination Event or the Expiration Date, then without further act or action by the Pre-Petition Agent, or any further notice, hearing, or order of this Court, the Automatic Stay shall be immediately modified and the Pre-Petition Agent shall be and is hereby authorized to take any and all actions and remedies that the Pre-Petition Agent may deem appropriate to proceed against, take possession of, protect, and realize upon the Collateral and any other property of any of the Debtors' estates, including, without limitation, (a) any right or remedy set forth in the Pre-Petition Claim Documents, (b) any right or remedy that the Pre-Petition Agent may deem appropriate to proceed against, take possession of, foreclose upon, sell (in whole or in part), protect, and realize upon the Collateral and any other property of any of the Debtors' estates upon which the Pre-Petition Secured Parties have been or may hereafter be granted liens and security interests, (c) the commencement of actions for specific performance and for the foreclosure upon any the Cash Collateral, (d) the sale of the Collateral, or any portion thereof, either as a whole or in part, at private or public auction, and the Pre-Petition Agent shall have the right to purchase the Collateral at same by credit bidding all or a part of their debt or otherwise, (e) taking possession of the Collateral, and the exercise, without interference, and, if necessary, as the attorney-in-fact for the Debtors, of any rights of the Debtors in the management, possession, operation, protection or preservation of the Collateral, (f) the receipt of proceeds from the sale of any of the Collateral, (g) the direction of the payment for any purchase of the Collateral directly to the Pre-Petition Agent as applicable, and (h) the right of setoff and recoupment as to any funds of the Debtors' estates held by the Pre-Petition

Agent; *provided, however*, that the Pre-Petition Secured Parties shall not be obligated to take title to any of the Collateral in the pursuit of any of the Pre-Petition Secured Parties' rights and remedies and the Debtors shall cooperate with the Pre-Petition Agent and the Pre-Petition Lenders in conjunction with the exercise of any right and the pursuit of any remedy by the Pre-Petition Secured Parties without limitation.

62.     The Debtors covenant and agree that they will use their best efforts to (a) timely make all Adequate Protection Payments and other Adequate Protection transfers authorized or required in the Cash Collateral Order; and (b) otherwise comply in all respects with the terms of this Cash Collateral Order.

63.     Subject to entry of a Final Order, the Pre-Petition Agent (with the consent of the Pre-Petition Lenders) may exercise any credit bid rights it has under Bankruptcy Code section 363(k) as it determines, any portion and up to the entire amount of the Pre-Petition Secured Parties' claims, including, without limitation, the Pre-Petition Claim and the Adequate Protection Claim, in a sale subject to Bankruptcy Code section 363(b) on any individual asset, portion of the assets, or all assets constituting the Pre-Petition Collateral or the Cash Collateral in conjunction with any sale of the Debtors' assets.

### OTHER TERMS

64.     Reserved.

65.     Reserved.

66.     Reserved.

67.     The terms and provisions of this Cash Collateral Order and any actions taken pursuant hereto shall survive entry of any order that may be entered converting these Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissing these Chapter 11 Cases, except for the Debtors' authority to use Cash Collateral.  The terms and provisions of this Cash

Collateral Order, as well as the priorities in payment, liens, and security interests granted pursuant to this Cash Collateral Order, shall continue in this or any subsequent case under the Bankruptcy Code of the Debtors, and such priorities in payment, liens, and security interests shall maintain their priority as provided by this Cash Collateral Order until such time as the Pre-Petition Claim and the Adequate Protection Claim shall have been indefeasibly paid and satisfied in full in accordance with the terms of the Pre-Petition Claim Documents and this Cash Collateral Order, and the Pre-Petition Secured Parties shall have no further obligation or financial accommodation to the Debtors.

68.     Subject to paragraph 75 below, all payments or other transfers made by or on behalf of the Debtors to the Pre-Petition Secured Parties after the Petition Date pursuant to this Cash Collateral Order, including but not limited to any Adequate Protection Payments, are indefeasible and shall not be avoidable or recoverable from any of the Pre-Petition Secured Parties under any section of the Bankruptcy Code, any other federal, state, or other applicable law, or otherwise.

69.     Subject to the Challenge Deadline, to the extent applicable, the provisions of this Cash Collateral Order shall inure to the benefit of the Debtors and the Pre-Petition Secured Parties, and they shall be binding upon (a) the Debtors and their successors and assigns, including, without limitation, any trustee or other fiduciary hereafter appointed as legal representative of the Debtors or with respect to property of the Debtors' estates, whether under chapter 11 of the Bankruptcy Code, any confirmed plan, or any subsequent chapter 7 case, and (b) all creditors of the Debtors and other parties in interest .

70.     If any or all of the provisions of this Cash Collateral Order are hereafter purported to be, or are, modified, vacated, or stayed without the prior written consent of the Pre-Petition Agent, such modification, vacation, or stay shall not affect (a) the validity of any obligation,

indebtedness, or liability incurred by the Debtors to the Pre-Petition Secured Parties before the effective date of such modification, vacation, or stay, or (b) the validity or enforceability of any security interest, lien, priority or other protection authorized, granted, or created hereby. Notwithstanding any such modification, vacation, or stay, any indebtedness, obligations, or liabilities incurred by the Debtors to the Pre-Petition Secured Parties, before the effective date of such modification, vacation, or stay shall be governed in all respects by the original provisions of this Cash Collateral Order, and the Pre-Petition Secured Parties shall be entitled to all of the liens, rights, remedies, privileges, and benefits granted herein with respect to all such indebtedness, obligations, or liabilities.

71.    No approval, agreement, or consent requested of the Pre-Petition Agent by the Debtors pursuant to the terms of this Cash Collateral Order or otherwise shall be inferred from any action, inaction, or acquiescence of the Pre-Petition Agent other than a writing acceptable to the Pre-Petition Agent that is signed by the Pre-Petition Agent and expressly shows such approval, agreement, or consent, without limitation.  Nothing herein shall in any way affect the rights of the Pre-Petition Secured Parties as to any non-Debtor entity, without limitation.  Unless expressly required otherwise hereunder, any determination, agreement, decision, consent, election, approval, acceptance, waiver, designation, authorization, or other similar circumstance or matter of the Pre-Petition Agent or the Pre-Petition Lenders hereunder or related hereto, shall be as determined by the Pre-Petition Agent after consultation with the Pre-Petition Lenders, to the extent practicable, and subject to all applicable voting requirements in the Pre-Petition Claim Documents (and solely for such purpose as applicable this Cash Collateral Order will be treated as a Pre-Petition Claim Document).

72.    Nothing herein shall be deemed or construed to waive, limit, or modify the rights of the Pre-Petition Agent to obtain further adequate protection and other statutory protections for

the Debtors' use of Cash Collateral, or to seek other relief in these Chapter 11 Cases in accordance with any provision of the Bankruptcy Code or applicable law.  Unless expressly and specifically provided otherwise herein, nothing herein shall be deemed or construed to waive, limit, modify or prejudice the claims, rights, protections, privileges and defenses of the Pre-Petition Secured Parties afforded pursuant to the Bankruptcy Code.

73.     This Cash Collateral Order, and the findings of fact and conclusions of law contained herein, shall be effective upon signature by the Court, and may be relied upon by the Pre-Petition Secured Parties and the Debtors without the necessity of entry into the docket of these Chapter 11 Cases.  To the extent any findings may constitute conclusions of law, and vice versa, they are hereby deemed as such.  This Court hereby expressly retains jurisdiction over all persons and entities, co-extensive with the powers granted to the United States Bankruptcy Court under the Bankruptcy Code, to enforce the terms of this Cash Collateral Order and to adjudicate any and all disputes in connection therewith by motion and without necessity of an adversary proceeding.

74.     All headings in this Cash Collateral Order are descriptive and for reference only, and do not have separate meaning or change any terms therein.

**RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT**

75.     The stipulations, admissions, releases, and waivers in this Cash Collateral Order shall be binding on the Debtors and their successors.  All parties-in-interest (other than the Debtors) that have or have been granted standing shall have sixty (60) days from the date of entry of this Cash Collateral Order (or, subject to entry of the Final Order, in the case of any official committee or trustee appointed in the Chapter 11 Cases, if appointed within thirty (30) days of the Petition Date, the later of sixty (60) days from the date of entry of this Cash Collateral Order and sixty (60) days from the date of such appointment, and in any event not

more than ninety (90) days from the Petition Date) (such date, the "***Challenge Deadline***") (or, in the case of a chapter 7 trustee appointed in any subsequent cases of the Debtors under chapter 7 of the Bankruptcy Code, the later of (a) the Challenge Deadline, and (b) if appointed prior to the expiration of the Challenge Deadline, ten (10) days after such appointment), to file a complaint pursuant to Bankruptcy Rule 7001 challenging the stipulations, admissions, releases, and waivers contained in this Cash Collateral Order, asserting a claim or cause of action arising out of the Pre-Petition Claim Documents, or otherwise challenging the extent, priority, validity, perfection, amount, or allowability of the Pre-Petition Secured Parties' claims or security interests, arising out of or related to the Pre-Petition Claim Documents or the transactions related thereto.  If no action is commenced or pursued in accordance with the deadlines in this paragraph or such deadlines are not extended in writing as determined by the Pre-Petition Agent, all of the Debtors' stipulations, admissions, releases, waivers, and affirmations of the allowance, priority, extent, amount, and validity of the Pre-Petition Agent's and the Pre-Petition Lender's claims, liens, and interests, of any nature set forth in this Cash Collateral Order and the Debtors' waivers and releases as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Cash Collateral Order shall be of full force and effect and forever binding upon the Debtors, their estates, and all creditors and parties-in-interest of these Chapter 11 Cases, including, without limitation, upon any creditors or parties-in-interest that did not have or were not granted standing prior to such deadlines.  Notwithstanding the foregoing and regardless of the timely commencement of an action as contemplated in this paragraph, the Debtors' stipulations and affirmations of the allowance, priority, extent, and validity of the Pre-Petition Agent's and the Pre-Petition Lender's claims, liens, and interests, of any nature set forth in this Cash Collateral Order and the Debtors' waivers and releases as contained in the Pre-Petition Claim Documents or otherwise incorporated or set forth in this Cash Collateral Order shall be in

full force and effect with respect to any claims or causes of action not timely raised within the deadlines set forth in this paragraph.

## WAIVER OF CLAIMS

76.     IN CONSIDERATION OF THE USE OF CASH COLLATERAL FOR THE BENEFIT OF THE DEBTORS AND THEIR ESTATES, THE DEBTORS (IN THEIR OWN RIGHT AND, SUBJECT TO THE RESERVATION OF RIGHTS OF PARTIES IN INTEREST/DEADLINE TO ACT IN THE PRECEDING PARAGRAPH, ON BEHALF OF THEIR ESTATES, REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS, IN EACH CASE TO THE EXTENT PERMITTED BY APPLICABLE LAW) (COLLECTIVELY, THE "**RELEASING PARTIES**") HEREBY RELEASE, ACQUIT, FOREVER DISCHARGE AND COVENANT NOT TO SUE THE PRE-PETITION AGENT, THE PRE-PETITION LENDERS, AND THE PRE-PETITION AGENT'S AND THE PRE-PETITION LENDERS' RESPECTIVE REPRESENTATIVES, DIRECTORS, OFFICERS, EMPLOYEES, INDEPENDENT CONTRACTORS, ATTORNEYS AND AGENTS, AND THEIR SUCCESSORS AND ASSIGNS (THE "**RELEASED PARTIES**") FROM ANY AND ALL ACTS AND OMISSIONS OF THE RELEASED PARTIES, AND FROM ANY AND ALL CLAIMS, CAUSES OF ACTION, AVOIDANCE ACTIONS, COUNTERCLAIMS, DEMANDS, CONTROVERSIES, COSTS, DEBTS, SUMS OF MONEY, ACCOUNTS, RECKONINGS, BONDS, BILLS, DAMAGES, OBLIGATIONS, LIABILITIES, OBJECTIONS, LEGAL PROCEEDINGS, EQUITABLE PROCEEDINGS, AND EXECUTIONS OF ANY NATURE, TYPE, OR DESCRIPTION WHICH THE RELEASING PARTIES HAVE OR MAY COME TO HAVE AGAINST THE RELEASED PARTIES THROUGH THE DATE OF THIS CASH COLLATERAL ORDER, AT LAW OR IN EQUITY,

BY STATUTE OR COMMON LAW, IN CONTRACT, IN TORT, INCLUDING, WITHOUT LIMITATION, BANKRUPTCY CODE CHAPTER 5 CAUSES OF ACTION, WHETHER UNDER THE LAW OF THE UNITED STATES OR ANY OTHER COUNTRY, UNION, ORGANIZATION OF FOREIGN COUNTRIES OR OTHERWISE, KNOWN OR UNKNOWN, SUSPECTED OR UNSUSPECTED (COLLECTIVELY, THE "**RELEASED CLAIMS**"). NOTWITHSTANDING THE RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES CONTAINED ABOVE IN THIS PARAGRAPH, SUCH RELEASES AND COVENANTS IN FAVOR OF THE RELEASED PARTIES SHALL BE DEEMED ACKNOWLEDGED AND REAFFIRMED BY THE DEBTORS EACH TIME THE DEBTORS USE CASH COLLATERAL UNDER THIS ORDER AND THE PRE-PETITION CLAIM DOCUMENTS.  THE DEBTORS, ON BEHALF OF THE RELEASING PARTIES, FURTHER COVENANTS NOT TO SUE THE RELEASED PARTIES ON ACCOUNT OF ANY RELEASED CLAIM.  THIS PARAGRAPH IS IN ADDITION TO AND SHALL NOT IN ANY WAY LIMIT ANY OTHER RELEASE, COVENANT NOT TO SUE, OR WAIVER BY THE RELEASING PARTIES IN FAVOR OF THE RELEASED PARTIES.

77.    Notwithstanding any due diligence period granted to other parties in interest herein, as a result of the Debtors' review of the Pre-Petition Claim Documents and the facts related thereto, the Debtors shall have no right to file a complaint pursuant to Bankruptcy Rule 7001 or otherwise, or any other pleading asserting a claim or cause of action arising out of or related to the Pre-Petition Claim Documents or any transactions or dealings related to same.

## NOTICE

78.    The Debtors shall serve this Cash Collateral Order on all of the following parties: (a) the U.S. Trustee; (b) the Office of the United States Attorney for the District of Delaware; (c) the Internal Revenue Services; (d) Vinson & Elkins LLP as counsel to the Pre-Petition Agent;

(e) all relevant state and local taxing authorities, (f) the United States Environmental Protection Agency, (g) all relevant state environmental agencies, (h) the parties identified on the Debtors' list of thirty largest unsecured creditors; (i) the Banks; (j) Black Diamond Commercial Finance, LLC, and (k) all parties in interest who have filed a notice of appearance or upon whom service must be effected under the Federal Rules of Bankruptcy Procedure or the Local Rules. Any notice required hereunder to the Debtors or any official committee appointed in these Chapter 11 Cases shall be deemed provided when delivered by email, other electronic delivery, fax, or hard copy, to their respective counsel of record in these Chapter 11 Cases.

## PROOFS OF CLAIM

79. Neither the Pre-Petition Agent nor the Pre-Petition Lenders shall be required to file proofs of claim in these Chapter 11 Cases or any subsequent cases of the Debtors, and the Debtors' stipulations and admissions in this Cash Collateral Order shall be deemed to constitute a timely filed proof of claim against each of the Debtors and their estates. Any order entered by the Court in relation to the establishment of a bar date for any claim (including without limitation, administrative-expense and priority claims) in these Chapter 11 Cases or any subsequent cases of the Debtors shall not apply to the Pre-Petition Agent or the Pre-Petition Lenders with respect to the Pre-Petition Claim and the Adequate Protection Claim. Notwithstanding the foregoing, the Pre-Petition Agent, on behalf of itself and the Pre-Petition Lenders, is hereby authorized and entitled (but not required), in its sole discretion, to file (and amend and/or supplement, as it may determine) a single, master proof of claim (a "**Master Proof of Claim**") for any claims of the Pre-Petition Agent or the Pre-Petition Lenders arising from the Pre-Petition Claim Documents, hereunder, or otherwise. Upon the filing of a Master Proof of Claim by the Pre-Petition Agent, the Pre-Petition Agent and the Pre-Petition Lenders, as applicable, and each of their respective successors and assigns, shall be deemed to have filed a

proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors of any type or nature whatsoever, and the claim of each Pre-Petition Secured Party (and each of its respective successors and assigns), named in a Master Proof of Claim shall be treated as if such entity had filed a separate proof of claim in each of the Chapter 11 Cases; *provided, however*, that nothing herein shall waive the right of any Pre-Petition Lender to file its own proof(s) of claim against the Debtors.

## EXPIRATION DATE/MATURITY/TERMINATION

80. The Debtors' authority to use Cash Collateral, and subject to the Pre-Petition Agent's consent and Budget limitations above and other provisions of the Cash Collateral Order, this Cash Collateral Order, shall be effective upon entry of this Cash Collateral Order to and including, without limitation, the earlier of (a) thirty-five (35) days after the Petition Date, November 4, 2019 at 5:00 p.m. Eastern Time, if the Court has not entered an order approving the Motion on a final basis in form and substance acceptable to the Pre-Petition Agent, for itself and for and on behalf of the Pre-Petition Lenders (the "**Expiration Date**") or (b) the occurrence of a Termination Event (the "**Termination Date**"), at which time all of the Debtors' authority to use Cash Collateral and this Cash Collateral Order shall automatically terminate, as shall the Pre-Petition Secured Parties' consent to the Debtors' use of Cash Collateral, unless extended by written agreement of the parties hereto, a copy of which with an updated Budget shall be promptly filed with this Court by the Debtors.

70675998.1

## **RETENTION OF JURISDICTION**

81.     The Court shall retain exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Cash Collateral Order.

**Dated: October 3rd, 2019**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

70675998.1