```
 1                    UNITED STATES BANKRUPTCY COURT
                           DISTRICT OF DELAWARE
 2
                                    .    Chapter 11
 3    IN RE:                        .
                                    .    Case No. 19-12153 (KBO)
 4    BAYOU STEEL BD HOLDINGS, LLC, .
      et al.,                       .
 5                                  .
                                    .    Courtroom No. 2
 6                                  .    824 North Market Street
                                    .    Wilmington, Delaware 19801
 7                                  .
                    Debtors.        .    October 3, 2019
 8    . . . . . . . . . . . . . . . .    10:30 A.M.

 9                       TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE KAREN B. OWENS
10                 UNITED STATES BANKRUPTCY JUDGE

11    APPEARANCES:

12    For the Debtors:          Christopher Ward, Esquire
13                              Shanti Katona, Esquire
                                POLSINELLI PC
14                              222 Delaware Avenue
                                Wilmington, Delaware 19801
15
      For U.S. Trustee:         Linda Casey, Esquire
16                              OFFICE OF UNITED STATES TRUSTEE
                                844 King Street
17                              Wilmington, Delaware 19801

18
      For Bank of America:      William Wallander, Esquire
19                              VINSON & ELKINS
                                666 Fifth Avenue
20                              New York, New York 10103

21    Audio Operator:           AL LAGUNO

22    Transcription Company:    Reliable
                                1007 N. Orange Street
23                              Wilmington, Delaware 19801
                                Email: gmatthews@reliable-co.com
24
25    Proceedings recorded by electronic sound recording, transcript
      produced by transcription service.
```

1

<u>INDEX</u>

2

3  #5) Motion of Debtors for Entry of an Order Directing Joint
Administration of Related Chapter 11 Cases [Docket No. 3;
4  Filed: 10/1/2019].

5  **Ruling: 13**

6  #6) Motion of Debtors for Order (I) Authorizing Continuation
of, and Payment of Prepetition Obligations Incurred in the
7  Ordinary Course of Business in Connection With, Various
Insurance Policies, (II) Authorizing Banks to Honor and
8  Process Checks and Electronic Transfer Requests Related
Thereto, (III) Preventing Insurance Companies From Giving Any
9  Notice of Termination or Otherwise Modifying Any Insurance
Policy Without Obtaining Relief from the Automatic Stay, and
10 (IV) Authorizing the Debtors to Continue to Honor Premium
Financing Obligations [Docket No. 4; Filed: 10/1/2019].

11

12 **Ruling: 21**

13 #7) Application of Debtors for Authorization to Employ and
Retain Kurtzman Carson Consultants LLC as Claims and Noticing
14 Agent Effective Nunc Pro Tunc to the Petition Date [Docket
No. 5; Filed: 10/1/2019].

15

16 **Ruling: 15**

17 #8) Motion of Debtors for an Order Authorizing Payment of
Prepetition Taxes and Fees [Docket No. 6; Filed: 10/1/2019].

18 **Ruling: 17**

19 #9) Motion of Debtors for Entry of an Order Extending Time
for Filing Schedules of Assets and Liabilities and Statement
20 of Financial Affairs [Docket No. 8; Filed: 10/1/2019].

21

22

23

24

25

#10) Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Debtors to Pay Certain Prepetition Claims of Critical Vendors, Shippers, and Freight Forwarders, and (II) Granting Related Relief [Docket No. 9; Filed: 10/1/2019].

**Ruling: 26**

#11) Motion of Debtors for Entry of Interim and Final Orders Authorizing Payment of (I) Certain Prepetition Workforce Claims, Including Wages, Salaries, and Other Compensation, (II) Certain Employee Benefits and Confirming Right to Continue Employee Benefits on Postpetition Basis, (III) Reimbursement to Employees for Prepetition Expenses, (IV) Withholding and Payroll-Related Taxes, (V) Workers' Compensation Obligations, and (VI) Prepetition Claims Owing to Administrators and Third-Party Providers [Docket No. 10; Filed: 10/1/2019].

**Ruling: 30**

#12. Motion of Debtors for Entry of Interim and Final Orders (I) Prohibiting Utility Providers from Altering, Refusing, or Discontinuing Service, (II) Approving the Debtors' Proposed Adequate Assurance of Payment for Postpetition Services, and (III) Establishing Procedures for Resolving Requests for Additional Adequate Assurance of Payment [Docket No. 11; Filed: 10/1/2019].

**Ruling: 36**

#13) Motion of Debtors for Interim and Final Orders Authorizing the Debtors to Maintain and Administer Existing Customer Programs and Honor Certain Prepetition Obligations Related Thereto [Docket No. 12; Filed: 10/1/2019]

**Ruling: ..**

#14. Motion of Debtors for Interim and Final Orders Authorizing (I) Continued Use of Existing Cash Management System, Including Maintenance of Existing Bank Accounts, Checks, and Business Forms, and (II) Continuation of Existing Deposit Practices [Docket No. 13; Filed: 10/1/2019].

**Ruling: ..**

#15) Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief [Docket No. 24; Filed: 10/2/2019].

**Ruling: ..**

| EXHIBITS | I.D. | REC'D |
|----------|------|-------|
| Declaration of Alton Davis | | 12 |

1          (Proceedings commenced at 11:10 a.m.)

2               THE CLERK:  Please rise.

3               THE COURT:   Good morning.  Please be seated.

4               Mr. Ward, how are you?

5               MR. WARD:  I'm good, Your Honor. Good morning.

6               THE COURT:  Good morning.

7               MR. WARD:  For the record, Chris Ward, Polsinelli

8  on behalf of the debtors.

9               First and foremost, Your Honor, this is my first

10  time before you, so it's an honor to see you sitting up there

11  in that robe.

12               THE COURT:  It's an honor to have you in my

13  courtroom.

14               MR. WARD:  Your Honor, as you know, we're here for

15  the first day hearing of Bayou Steel Group.  We filed about

16  12:03 a.m. on Tuesday.  We're here on our first day hearing.

17               I trust that the court has gotten binders of

18  everything that is going forward today.

19               THE COURT:  I have.

20               MR. WARD:  We have worked with Ms. Casey and her

21  office as much as possible on comments from the United States

22  Trustee.  I think I propose today I'll make introductions of

23  the debtors' side in the courtroom and give you a very brief

24  background of the company.  It's not overly complicated and

25  most of it is in our first day declaration.  And then me and

1  Ms. Katona will walk you through the first day pleadings --

2           THE COURT:  Good morning.

3           MR. WARD:  -- and all of the revisions that we

4  have for today, Your Honor.

5           THE COURT:  Okay.

6           MR. WARD:  So starting off, Your Honor, we have

7  with us, Mr. Alton Davis who's the president and chief

8  operating officer of the company.  And Mr. Kevin Kirkland who

9  is the vice president of finance.

10           As I mentioned, I have my partner, Shanti Katona,

11  from Polsinelli with me.  Then, we have our financial

12  advisory team from Glenn Pollack and Mr. Rishi Agarwal, as

13  well, Your Honor.

14           THE COURT:  Welcome.

15           MR. WARD:  That's kind of our core team that's

16  been putting this together over the last week.  If we seem a

17  little frazzled this has come together very quickly, but we

18  have gotten it to a point, I think, we're ready to move

19  forward today with our first day hearing.

20           Before we go and move onto the first day's, Your

21  Honor, let me give you a brief description of what the

22  debtors do and why we're here.

23           The company is a minimill with electric arc

24  furnace steelmaking, continuous billet casting and medium

25  section rolling mill.  All of the companies are Delaware

1  LLC's which is why we are before you today, Your Honor.

2          They are headquartered in Laplace, Louisiana.  The

3  headquarters are alongside the Mississippi River and near

4  several rail companies which makes this, as we'll get into

5  later, potential very valuable, the location, for both

6  domestic and international shipping.  It's right on the river

7  and there's rail, as well.

8          The facilities also include a melt shop and

9  rolling mills and they have some recycling operations, as

10 well.

11         In addition to the Laplace headquarters, there's

12 also a plant in Harriman, Tennessee, and there's three depots

13 located in Tulsa, Oklahoma; Chicago, Illinois; and one

14 outside Pittsburgh, Pennsylvania.

15         And, Your Honor, this is a fairly traditional

16 minimill steelmaking facility where the production flows from

17 processing scrap where it moves to the melting facility and

18 then turned into finished steel which is then sold to

19 consumers and third parties by which Ms. Katona will get into

20 one of our more important motions ship by barge, rail and

21 shippers, which are absolutely necessary to the business.

22         The company's debt structure is very

23 straightforward.  Back on April 4th, 2016, BD who replaced

24 LLC, one of the debtors, as the borrower and Bayou Steel

25 parent and Bayou Steel Investment, LLC as guarantors entered

1   into a first lien credit facility with the company.  Bank of

2   America is the agent on that facility and Suntrust is one of

3   the lenders as well.

4        The current loan balance under the ABL facility is

5   approximately $37.1 million dollars, plus letter of credit

6   exposure for about $2.7 million dollars for a total exposure

7   to the first lien for the $39.8 million dollars due and owing

8   on the petition date.

9        In addition, there's a term loan facility which we

10   call the second lien facility which has a second priority on

11   all of the assets and a first priority on the real estate

12   which was carved out of pursuant to an intercreditor

13   agreement between the first and the second, the real estate

14   was carved out.  Black Diamond holds the second lien

15   position.  And they have a first on the real estate, Your

16   Honor.

17        On the petition date, the second lien lenders owed

18   about $36.5 million dollars.  And as I noted, there is an

19   intercreditor agreement between the two parties.  The debtors

20   are not party to the intercreditor agreement, but they have

21   acknowledged its existence.

22        In addition to the secured debt, Your Honor,

23   there's about $30 million dollars of trade debt that exists

24   as of the petition date and has continued to grow as we led

25   into the bankruptcy.

1      For the reasons that we put forth in our petition,

2  Your Honor, there was significant operating losses and

3  negative cash flow over the last -- the four-month period

4  from April to July.  There's about $20 million dollars of

5  losses which led to severe liquidity issues at the company

6  and eventually a default under our credit facility with Bank

7  of America as agent.

8      At that point in time, the company and Bank of

9  America began negotiating a forbearance.  Unfortunately, the

10  parties were not able to agree upon a forbearance agreement

11  and notice of default was issued, Your Honor.

12      Pursuant to the loan documents and as

13  traditionally done, Bank of America had a daily sweep of the

14  debtors' accounts and all the cash was taken on a daily

15  basis, Your Honor, which left the debtor in a position where

16  it could to buy further raw materials to turn in the finished

17  good and make product.

18      And I wanted to make clear for the record and Mr.

19  Davis' declaration are exhibit to the cash collateral motion

20  and it may be not be clear that there was all the accounts

21  sweep up to Bank of America, so I wanted to clarify that for

22  the record.  All the cash does sweep up to Bank of America.

23      With really no other alternative left, at this

24  point, Your Honor, the company hired restructuring advisors,

25  brought in Polsinelli as counsel and Candlewood as financial

1  advisor to discuss its strategic options which led to an

2  eventual Chapter 11 bankruptcy filing.

3          Once the liquidity issues reached a point where it

4  could not purchase raw materials anymore, the company focused

5  on selling off its existing inventory in order to bring in

6  cash to fund the cash collateral usage in this bankruptcy

7  and, eventually, pay down the debt of -- the first lien

8  position of Bank of America.

9          So with that on September 30th, the day prior to

10  the bankruptcy, the debtors conducted a reduction of force.

11  They idled most of their operations and filed for bankruptcy.

12  There are still very limited operations at the debtors that

13  are concluding turning the raw materials into finished goods.

14  And then from that point forward, we'll focus solely on

15  selling off the existing inventory in the bankruptcy.

16          So why are we in Chapter 11?  We are here because

17  we need the automatic stay in order to sell off that

18  inventory. And we are going to run a marketing process to

19  sell off the plant, the fixtures, and the other --

20  substantially the remaining assets of the debtors which we do

21  believe have value, Your Honor.  And we will be asking the

22  court for a hearing on bid procedures in short order.

23          I think as Your Honor has seen in our cash

24  collateral budget, we have a very tight window to get through

25  this process.  We do think there's value there.  Our hope is

1  at the end of the day, there's enough value in the inventory

2  that we can pay off Bank of America.  And then we will run a

3  sale process to sell the remaining assets.  And we do believe

4  that there's value there given the type of minimill that it

5  is and its location in Louisiana.

6         So with that, Your Honor, we didn't want to come

7  before the court and try and hide the ball as to what our

8  intentions are.  And we need to run this process as quickly

9  as possible.

10         There are going to be no operations in very short

11  order.  It's just going to be the limited operations to sell

12  off the inventory.  And our goal of this Chapter 11 is to run

13  a sale process to a strategic or financial buyer that is

14  going to buy these mills and restart operations so that we

15  can put the employees in the place and other locations back

16  to work.

17         So that is why we're here, Your Honor.  And we

18  think we need to move as expeditiously as possible in order

19  to make that happen.

20         So with that, Your Honor, and the declaration of

21  Mr. Davis, I would like to enter that into evidence.  He is

22  in the courtroom. He's available for cross-examination if any

23  parties have any questions of Mr. Davis.

24         THE COURT:  Does anyone object to the admission of

25  Mr. Davis' declaration?

1        MR. WARD:  And there were some clarifying points

2   so if I missed them, I'm sure counsel will -- we'll hear.

3        MR. WALLANDER:  Good morning, Your Honor, Bill

4   Wallander on behalf of Bank of America.

5        I was just going to note for the record that Mr.

6   Ward did make clarifications in his presentation to clarify

7   the first day declaration.  And as long as those

8   clarifications are part of that, then we have no objection to

9   the first day declaration.

10       THE COURT:  Okay.  All right.

11       MR. WALLANDER:  Thank you, Your Honor.

12       THE COURT:  Thank you.

13       All right, hearing no further objection, Mr.

14  Davis' declaration is admitted into evidence, subject to

15  cross-examination, to the extent necessary.

16     (Declaration of Alton Davis, admitted into evidence)

17       MR. WARD:  Thank you, Your Honor.

18       And I apologize.  I should have noted that there

19  were some corrections in my presentation that are slightly

20  different than what's in the declaration, but we have

21  corrected that.

22       So, I think that takes us onto the agenda, Your

23  Honor.

24       THE COURT:  Okay.

25       MR. WARD:  Your Honor, the first matter on the

1  agenda is the debtors' motion for joint administration

2  seeking standard relief to have the three cases jointly

3  administered.  We're not asking for any substantive relief in

4  that motion.

5          The United States Trustee didn't have any

6  comments, other than to clarify that we can file the monthly

7  operating reports on a consolidated basis, but not a

8  consolidating, I think is the word they prefer -- on a

9  consolidating basis, but there's no comments to the actual

10 order itself.

11         THE COURT:  Okay.  I don't have any questions.

12 Does anyone else wish to be heard in connection with the

13 debtors' joint administration motion?

14     (No verbal response)

15         THE COURT:  Okay.

16         MR. WARD:  Before you move onto the rest, Your

17 Honor, may I approach with orders because there will be

18 changes to the remainder?

19         THE COURT:  Yes.  You'll have to upload them to

20 the extent that they have not already been uploaded, and we

21 will sign them electronically.

22         MR. WARD:  Thank you, Your Honor.

23         I think the way this is going to work is the joint

24 administration motion will be uploaded as filed.  The

25 remainder of the motions will be filed under certification of

1  counsel, most likely after the hearing.  We were making

2  changes up until late in the office today.

3          THE COURT:  Okay.

4          MR. WARD:  Thank you, Your Honor.

5          I think for ease, Your Honor, if we could skip

6  number six.  Ms. Katona is going to handle that.  And I was

7  going to handle the next couple rather than play musical

8  chairs at the podium, if that's okay?

9          THE COURT:  That's fine.

10          MR. WARD:  Moving onto the Kurtzman Carson

11  Consultants retention application, Your Honor.

12          We shared that with the United States Trustee.  We

13  have not received any objections.  This is a case with more

14  than 200 creditors under our local rules.  We are required to

15  retain a claim's noticing agent, received three quotes, and

16  our client is determined to move forward with Kurtzman Carson

17  Consultants.

18          We made some very -- made some cleanup issues in

19  the order that is presented to the court.  There is not a

20  redline because they were -- we removed a paragraph at Ms.

21  Casey's request, but I did not bring a redline to that one

22  order, Your Honor.  I apologize.

23          THE COURT:  What paragraph was removed?

24          UNIDENTIFIED SPEAKER:  Your Honor, I believe, they

25  were two superfluous paragraphs.  I believe it was original

1  paragraph number eleven and then there is some repetitive

2  language in another one of the paragraphs.

3        MR. WARD:  Yes, Your Honor, we removed paragraph

4  eleven as duplicative of what's already in paragraph seven

5  and eight.

6        THE COURT:  Okay.  Does anyone wish to be heard in

7  connection with the debtors' application to employ Kurtzman

8  Carson?

9     (No verbal response)

10        THE COURT:  All right, hearing nothing, I have no

11  further questions and I will approve the order.

12        MR. WARD:  Thank you, Your Honor.

13        The next motion on the agenda is the debtors'

14  motion for authority to pay prepetition taxes and fees, Your

15  Honor.

16        Again, we received some comments from the United

17  States Trustee on this motion.  And let me find those, and

18  I'll walk the court through those comments.

19        THE COURT:  Can you direct me to what number that

20  is in the binder?

21        MR. WARD:  The tax motion is at number eight in

22  the binder, Your Honor.

23        THE COURT:  Thank you.

24        MR. WARD:  Yeah, the comments of the trustee to

25  the tax motion, Your Honor, were that we made this an interim

1  order, which we have done, and we will send that out on

2  notice.

3         THE COURT:  Okay.

4         MR. WARD:  And that we limit the amount authorized

5  to be paid on the first day to only those amounts that will

6  become due during the interim period and the past due taxes

7  will be paid, unless it is the absolutely last day for those

8  taxes to be paid.

9         The motion itself seeks a far greater amount than

10  what is in the order.  The order is limited solely to amounts

11  that fall within those criteria for the trustee.

12         In addition, there are property taxes that are

13  listed in the motion as filed.  Those property taxes are on

14  the first lien real estate of Black Diamond, so our -- or on

15  the second lien -- the first lien on the real estate, but our

16  first lien lender on all of the assets and its cash

17  collateral used to pay the real estate taxes.

18         THE COURT:  Okay.

19         MR. WARD:  Those are not due and owing at this

20  point.  We will work through language between now and the

21  final order to make that clear at the final hearing.

22         THE COURT:  Do you have a redline of the tax

23  order?

24         MR. WARD:  That is the one order that we did not

25  get a redline, Your Honor.  Unfortunately, our folder that

1 reads redline has clean in its, so that is the only one we do

2 not have a redline for you.

3          The only actual change to the order is the amount.

4          THE COURT:  Right.

5          MR. WARD:  It's the representation on the record

6 that we're making to satisfy the trustee's issues, Your

7 Honor.

8          MS. CASEY:  I'm changing it to an interim order.

9          THE COURT:  Yes.  And those were my two comments

10 that I had, so I appreciate Ms. Casey's efforts to make it an

11 interim and put a cap in there.

12          Does anyone else wish to be heard in connection

13 with the debtors' tax motion?

14      (No verbal response)

15          THE COURT:  Okay.  Hearing nothing, we will go

16 ahead and I will go ahead and approve that order.

17          Did you say you're going to be uploading them by

18 certification of counsel?

19          MR. WARD:  We will, Your Honor.

20          THE COURT:  After the hearing.  Okay.

21          MR. WARD:  Thank you, Your Honor.

22          The next matter on the agenda, number nine, is the

23 debtors' motion to extend the time to file the schedules and

24 statements.  Ms. Casey has asked that we send that motion out

25 on notice and we've agreed to do so, so that will not go

1  forward today.  That will be heard at the second day hearing

2  which we'll need to discuss at the end of the hearing.

3          THE COURT:  Okay.

4          MR. WARD:  And I think with that, Your Honor, I

5  will cede the podium to Ms. Katona to handle the harder

6  motions.

7          MS. KATONA:  Good morning, Your Honor.

8          THE COURT:  Good morning.

9          MS. KATONA:  Shanti Katona, Polsinelli, proposed

10 counsel to the debtors.

11          Your Honor, again, I repeat our apologies for how

12 disorganized this appears to be, and we apologize.

13          I believe Mr. Ward handed up a folder that has the

14 redlines with respect to the motions that I'm going to be

15 going through this morning.

16          THE COURT:  Okay.

17          MS. KATONA:  I'm going to turn to agenda item

18 number six which is actually Docket Number 4 and that is the

19 continuation of the debtors' prepetition obligations with

20 respect to the insurance policies.

21          Your Honor, at the direction and request of the

22 office of the United States Trustee, the edits to this order

23 from what was originally filed are that this is now being

24 sought on an interim basis.  There's also some clarifying

25 language in paragraph three of the interim order which

1 reflects that payments that are going to be made in

2 accordance with the exhibit are only going to be made on

3 account of payments that come due and owing during the

4 interim period.

5        So, the debtors -- we don't believe actually that

6 there are any prepetition amounts that are due and owing at

7 this time on account of insurance premiums.  And we

8 understand that to the extent any do come due and owing

9 between now and the final hearing.  Those are the only

10 amounts that are authorized under this order.

11        THE COURT:  Okay.

12        MS. KATONA:   Ms. Casey also pointed out to us,

13 Your Honor, if you take a look at new paragraph number

14 eleven, there is some clarifying language that was requested

15 by Bank of America.

16        The debtors have a $1.9 million dollar letter of

17 credit to the benefit of Travelers.  That is with respect to

18 certain worker's compensation policies that the debtors

19 maintain.  Bank of America has requested that the debtors add

20 this language into the order noting that Travelers does not

21 draw on the $1.9 million dollar letter of credit with regards

22 to the installment plan which is only relating to the

23 premiums, is how installment plan was defined in the motion.

24        So with respect to premiums that are owed to

25 Travelers, the language has been added to the order that

1 Travelers will not draw on the letter of credit to satisfy

2 any premium obligations.

3          THE COURT:  Okay.

4          MS. KATONA:  We have shared this language with

5 Travelers and we have not received any objection.  And our

6 understanding is that the letter of credit technically can't

7 be used for this purpose anyway.  It's for claims.  But we

8 just wanted to clarify that on the record.

9          THE COURT:  Okay.  And I'm sure if they have an

10 issue with it, they'll talk to you between now and the final.

11          My only comment to this order was just really a

12 question in connection with paragraph nine. I just wanted to

13 clarify that we're not giving the financier relief from the

14 automatic stay through entry of this order in that particular

15 paragraph.

16          MS. KATONA:  No, Your Honor.  I don't -- yes, I

17 mean that is absolutely our intention that they cannot come -

18 - they cannot do anything without coming back to the court --

19          THE COURT:  And that's reflected in paragraph

20 seven, but this one seemed to indicate that they might be

21 able to cancel it if they give you notice and, obviously,

22 they're bound by the automatic stay, right?

23          MS. KATONA:  Yes.

24          THE COURT:  Okay.  Good.

25          Does anyone wish to be heard in connection with

1   the debtors' insurance motion?

2       (No verbal response)

3           THE COURT:   Okay.   All right, we'll go ahead and

4   approve the order.

5           MS. KATONA:   Thank you, Your Honor.

6           Your Honor, the next agenda item is agenda item

7   number ten and this is Docket Number 9.   It's the debtors'

8   motion to pay certain prepetition claims of critical vendors

9   and shippers.

10          Your Honor, as Mr. Ward laid out at the outset of

11  the case during his presentation regarding the background of

12  these debtors, the debtors heavily rely on both

13  transportation companies who move a product and inventory

14  through rail, as well as barges.   And then the debtors also

15  heavily rely on truckers to haul finished goods to various

16  depots and warehouses throughout the country.

17          So, the debtors through this motion, and we've

18  worked with Bank of America to determine an appropriate

19  budget for this.   The debtors and Candlewood, the proposed FA

20  to the debtors, have worked together.   They've identified

21  classes of vendors that we believe are critical to the

22  uninterrupted operations of the debtors.

23          They've specifically categorized them as shippers

24  pursuant to either rail or barge and then actually truck

25  movers, as well as there is an entity that provides some

1  labor support at some of the warehouses on a limited basis in

2  certain locations.

3         The debtors believe that they are critical to the

4  uninterrupted operation of these businesses.  And we believe

5  that's been detailed in Mr. Davis' declaration as well.

6         So the one caveat, Your Honor, we do not believe

7  that any of these counterparties are subject to true

8  executory contracts, but Ms. Casey has pointed out and

9  requested certain clarifying language in this that to the

10 extent the debtors are seeking to pay any critical vendor who

11 is subject an executory contract, the debtor shall reserve

12 the right to disgorge such payments to the extent it's later

13 determined that this is actually in violation of the

14 automatic stay.

15        And to provide you with a little bit of

16 background.  Your Honor, specifically we have some truckers

17 who presently we need the services of immediately.  The

18 debtors are in the process of trying to locate the full

19 complete and up-to-date contracts that might governess this

20 relationship to date.  That's obviously a little bit of a

21 delay process as we go through the reduction in force and

22 everything.

23        So right now, we have designated some of these

24 counterparties as critical.  We believe that there may be

25 terms in the contract that allows them some leeway where and

1  their behavior may not be truly a violation of the automatic

2  stay.  But Ms. Casey wanted it clear on the record that to

3  the extent its determined that any of the behaviors of these

4  counterparties are engaging in is, in fact, a violation, that

5  the debtors will be disgorging such payments on account of

6  this motion.

7         And I'm going to share with Ms. Casey the language

8  that was added to the order.

9         THE COURT:  Okay.

10         MS. KATONA:  And then the only other issue that we

11  are -- I believe that's been addressed in this is, again, I

12  know we know that Bank of America had some concerns in the

13  original motion.  We had sought a much greater number than

14  what was in the budget.  We believe that's been rectified.

15  And with respect to the revised budget that we will be

16  filing, we believe that that's -- the numbers are going to

17  comport.

18         THE COURT:  Okay.

19         MS. KATONA:  At this time, we're still only

20  seeking $1.5 million dollars of authority on an interim

21  basis.

22         THE COURT:  Okay.

23         MS. CASEY:  Your Honor, if you would give me some

24  leeway in reading this.  I haven't seen the revisions.

25         THE COURT:  Take your time.

1        (Pause)

2              MS. CASEY:  For the record, Linda Casey on behalf

3   of the United States Trustee.  Your Honor, this is also the

4   first time that I've appeared before you and it is also an

5   honor and pleasure to appear before Your Honor.

6              It may not be the way that I like to see it worded

7   and I'll just raise the issue with Your Honor to see.  The

8   U.S. Trustee is concerned we've had several debtors come in

9   and say that counterparties to executory contracts can cause

10  immediate irreparable if they refuse -- if they violate the

11  automatic stay and the debtors don't have time to come in and

12  ask for it.

13             And the U.S. Trustee has objected to that because

14  that's basically having Your Honor reward people who violate

15  the automatic stay.  Our preferred language is to say that

16  the debtor -- if the debtors are authorized to pay under

17  those circumstances, but if they do so they are required

18  within a certain period of time to file the motion to

19  disgorge it.

20             That's our preferred language.  This, again, this

21  is the first time I'm reading it, so I didn't have time to

22  negotiate with this debtor to -- this is a little bit more

23  mushy.  And what we like the order to say is if we're only

24  paying you because you're violating the automatic stay, we're

25  going to file the motion so that creditors know right up

1  front you're not really getting this money indefeasibly.

2  You're getting this money because you're going to hurt us,

3  but we're still going to go to the court.

4          So that's our preferred language is to require the

5  debtors to file the motion if they're paying it to somebody

6  who has an executory contract and they're refusing to comply

7  with their obligations.

8          THE COURT:  Okay.

9          MS. CASEY:  And then I just want to point out

10  another change in new paragraph eleven, old paragraph twelve.

11          The change to subparagraph one; to make it clear

12  that the debtors can't determine that a transfer is

13  avoidable, post-petition transfer.  Your Honor will upon

14  notice of motion.

15          THE COURT:  Right.  And I was going to highlight

16  that, so I appreciate you catching that.

17          Do the debtors have a problem with just working

18  with Ms. Casey to make sure that the language reflects

19  exactly what the U.S. Trustee would like to see or do the

20  debtors take issue with the language that Ms. Casey requests?

21          MS. KATONA:  Your Honor, the debtors do not take

22  issue with the language that Ms. Casey requests.  The only

23  concern we have is that we have -- we would like to have an

24  order as soon as possible. So to the extent that we can

25  coordinate on that language immediately, that would be

1  incredible and we will work with her to do so.

2        THE COURT:  Okay.  That would be great.

3        You're going to be submitting them anyway, so

4  hopefully you could hammer that out fairly quickly.

5        All right, does anyone else wish to be heard in

6  connection with the debtors' critical vendor motion?

7     (No verbal response)

8        THE COURT:  All right, hearing nothing, I am

9  prepared to approve the relief.  And actually, did not make

10  this statement and I will go ahead and do so.

11        To the extent, and Rule 6003 does apply in this

12  instance, but to the extent that it's implicated in the prior

13  motions that I just approved, I find that based on Mr. Davis'

14  declaration that Rule 6003 has been satisfied and the relief

15  requested is necessary and to avoid immediate and irreparable

16  harm to the debtors and their estates.

17        So, we'll go ahead and approve that motion once it

18  gets -- approve that order once it gets uploaded in its

19  revised form.

20        MS. KATONA:  Thank you, Your Honor.

21        THE COURT:  Thank you.

22        MS. KATONA:  The next agenda --

23        THE COURT:  Oh, I'm sorry.  I actually do have one

24  more comment to the order and this will probably be a

25  consistent comment on orders to come.

1          Paragraph fourteen -- no, I'm sorry.  Paragraph

2    thirteen -- new paragraph thirteen, I think this is a

3    consistent practice of our courts that the order stand alone,

4    so I would like that provision removed.  And, of course, I

5    understand the lender's position, but I think its consistent

6    practice in our court that we don't have this sort of

7    language in our first day orders.

8          MS. KATONA:  Your Honor, and Ms. Casey also

9    apprised us of her concern with that. We shared that concern

10   with Bank of America, the prepetition agent, and they

11   understand, and we are going to be deleting that from all the

12   orders.

13         If it was left in here, that's my fault.

14         THE COURT:  Okay. Great.  I'm glad we're on the

15   same page.

16         MS. KATONA:  The next agenda item is agenda item

17   number 11 which is Docket Number 10. And this relates to the

18   wage motion.

19         Obviously, Your Honor, from the debtors'

20   perspective this is one of the most critical motions that we

21   are seeking approval of today on an interim basis.  We've

22   shared this with obviously our lenders, as well as the office

23   of the United States Trustee.

24         Ms. Casey had a few concerns with respect to this

25   motion.  The primary one being if you notice there is a -- in

1  paragraph two there is a table that lays out certain

2  obligations that we believe the debtors is obligated for.

3  One of them that Ms. Casey raised are the credit card

4  obligations.  And her concern with respect to whether or not

5  these were simply prepetition obligations of the debtors or,

6  in fact, there is any liability that could filter down to the

7  customers or, I'm sorry, to the employees who actually use

8  credit cards.

9           We've touched base with the company.  We

10 understand that there could be some liability and exposure on

11 account of the failure to pay these.  So, we would request --

12 obviously, this is all subject to being in accordance with

13 the cash collateral budget that is going to be approved

14 today, hopefully, but that would be our request that we do

15 have authority to pay these credit card obligations, even

16 though these are cards that the company directly pays.

17 They're issued in the names of individual employees.

18           THE COURT:  Okay.  That seems to be standard

19 operating procedure.

20           MS. CASEY:  The way the motion was written, it

21 sounded to me like it was the debtors that owned the cards,

22 and I just wanted it to be clarified that, in fact, is in the

23 employee's names and, therefore, it's to (indiscernible)

24 employee morale.

25           I do have one other issue that's not a today

1  issue, but I just wanted to raise it.

2        In this wages motion, the debtor discloses that

3  they have self-funded healthcare plans and a self-funded

4  short-term disability plan.  I have spoken with the debtors

5  and the prepetition lenders regarding the need to ensure that

6  administrative expense claims that arise under these often

7  accrue during the (indiscernible) period, but don't get paid.

8  And so, between now and the final hearing, we are going to

9  work together to ensure that there are sufficient funds

10  available to pay those accrued, but unpaid self-funded

11  claims.

12        THE COURT:  Okay.

13        If you could just give me a moment to walk through

14  your changes.

15        MS. KATONA:  Your Honor, I want to make one

16  clarifying point on the record. With respect to the numbers

17  that are laid out in the table, we understand that the

18  company as well is working with Candlewood, the proposed

19  financial advisor with our prepetition agent, to understand

20  exactly what the payroll number is. We have a number in here

21  presently as a placeholder.

22        Unfortunately, we believe it might be a little bit

23  higher than what's presently in the proposed budget and so,

24  we will work with everybody to ensure that all of these

25  payments that are made in accordance with these categories

1  all remain within budget and are, in fact, approved under

2  this order.

3          THE COURT:  Okay.  And no employee is going to be

4  receiving over the cap when they receive their salary and the

5  paid-out vacation time?

6          MS. KATONA:  Correct, Your Honor.  There is one

7  employee who technically under his prepetition employment

8  agreement could be paid over the cap.  However, he

9  understands that under the Bankruptcy Code that is not going

10 to be allowed here.

11         THE COURT:  Okay.  Does anyone else wish to be

12 heard in connection with the debtors' employee wage motion?

13      (No verbal response)

14         THE COURT:  Okay.  Hearing nothing, I am prepared

15 to approve the relief requested in the order.  It goes

16 without saying that it's necessary to avoid immediate and

17 irreparable harm and that Rule 6003 has been satisfied.

18         MS. KATONA:  Thank you, Your Honor.

19         THE COURT:  Thank you.

20         MS. KATONA:  The next item on the agenda is agenda

21 item number twelve and this is Docket Number 11.

22         Your Honor, you'll note that are a number of

23 changes in the version that you have. And, again, this is

24 another one that we are kind of sharing with Ms. Casey in

25 real time here, so if we could have a little bit of leeway as

1  presenting this.

2          THE COURT:  Sure.

3          MS. KATONA:  I just wanted to lay out.

4          So this is -- the debtors are in a little bit of a

5  unique situation here, as Mr. Ward mentioned.  One of the

6  facilities was idled immediately prepetition and then the

7  debtors continued to operate on a limited basis on a go

8  forward basis.

9          And so, what you normally see obviously in a

10 utility is you lay out all the utilities that the debtors use

11 over the course of, you know, a year or whatever and then you

12 provide them with a certain adequate assurance of deposit

13 amount associated for what would be 50 percent of the months'

14 worth of utility services.

15         The debtors believe that they are going to be

16 substantially paring down their utility usage during this

17 period.  As such, we have outlined on the schedule which lays

18 out exactly the critical utilities that the debtors believe

19 they're going to be using on an ongoing basis.

20         Not all of the prior utility providers have yet

21 been terminated, just because, again, the idling just took

22 place on Monday, September 30th, in some respects.  So, the

23 debtors are working with onsite to ensure that the utilities

24 that are not going to be used are going to be terminated in

25 due course as soon as possible.

1          With respect to the ones that we need on a go

2  forward basis, we believe that the debtors have laid out what

3  they anticipate being the go forward usage and have deposited

4  approximately 50 percent of that into -- and propose to

5  deposit approximately 50 percent of that in an account.

6          We understand that there are utility provides that

7  may disagree with this.  We have served out this motion on

8  all 2019 utility providers.  We have made a note of that in

9  here that we understand the utility providers that were not

10 served with this motion cannot be bound by the terms of this.

11         And you can let me know, Ms. Casey, if the

12 language is not appropriate or if you want a little bit of a

13 clarification.

14         But I think that's where we are, Your Honor. We

15 don't believe that there is substantial where as before when

16 they were fully operating.  They were accruing approximately

17 $2 million dollars' worth of utility usage a month.  That's

18 going to be substantially pared down.  And we do believe that

19 the utilities that are going to be providing services are

20 sufficiently protected under what we propose here.

21         THE COURT:  Okay.

22         MS. KATONA:  The only other change to this is,

23 again, we removed there's the cash collateral language. That

24 has been removed out of paragraph fifteen or former fifteen.

25         And then we have also included some notice

1   provisions you'll notice in paragraph number seven saying

2   that, you know, the debtors are obligated to provide notice

3   of any additions to the list, and they need to be served with

4   the order to the extent we add anybody.

5              THE COURT:  Okay.

6              Ms. Casey.

7              MS. CASEY:  Linda Casey, again, for the record for

8   the United States Trustee.

9              Your Honor, I do rise to object to this motion in

10  a way that's a little unusual for a first day which is the

11  debtors are seeking to put in a segregated account 50 percent

12  of their anticipated usage, not 50 percent of the historical

13  usage.

14             And the U.S. Trustee objects to that, especially

15  on a first-day basis when, although, I know they have been

16  served.  I don't know if they have had sufficient time

17  actually receive it and understand it and come into Your

18  Honor.

19             And it is, of course, putting in the debtors'

20  estimation. The debtors have said to me that it should be

21  acceptable because it is just an interim order and there are

22  the proposed adequate assurance procedures.  What this does

23  is it fundamentally alters what Congress set out for utility

24  provides.  Utility providers are authorized to discontinue

25  service after twenty days if they don't have adequate

1 assurance.

2         And although it is an interim order that

3 eliminates their right and it should be 50 percent on the

4 historical usage.  That can certainly come down after the

5 final order.  They can seek, you know, the authority to

6 reduce it at the final hearing, and that will give parties

7 the time to come in and object.

8         I also noticed that under the adequate assurance

9 procedures that are proposed, there's a thirty-day period to

10 negotiate a request for additional adequate assurance.  And

11 then if it is not resolved, an additional fourteen days'

12 notice.  So after a utility provider has requested a larger

13 deposit than what the debtors assert is appropriate, it would

14 be, at least, forty-four more days before they would get it

15 in a case that is so quick.

16         So, I understand the debtors' rationale.  I just -

17 - we do object in this case on a first day with limited

18 notice and very shortened notice providing less than 50

19 percent of the historical balance now.

20         We don't object to providing no adequate assurance

21 for those utilities who have been terminated and are no

22 longer providing service because they had been terminated.

23 But those who have not been terminated and they're continuing

24 to go forward, at least on an interim basis, if they're going

25 to prevent them from being able to discontinue after twenty

1  days, it should be 50 percent of the historical basis.

2          THE COURT:  I understand that you tried to -- you

3  identified the utilities that you will only need going

4  forward and they are on Exhibit A.

5          MS. KATONA:  Correct, Your Honor.

6          THE COURT:  So if a utility is not on Exhibit A

7  then they can terminate and you would need them to terminate

8  actually, right?

9          MS. KATONA:  Technically under 366 correct, Your

10 Honor.  There's nothing that obligates them to maintain

11 service.

12         THE COURT:  Right.  So really the issue is the

13 historical, the method of calculation for adequate assurance

14 of the utilities that you need going forward.  And I'm just

15 looking at 366 because there is actually is no requirement

16 that we need to have a historical lookback.

17            I think that's just customary practice.  So, I

18 don't want to take the wind out of your sales, but I will

19 overrule the trustee's objection in this case simply.  This

20 is a unique circumstance.  I think that there is no

21 requirement, like I said, in 366 that you need to have a

22 historical lookback. That's been our customary practice, of

23 course, but we can alter that based on the facts and

24 circumstances of the case.

25            And I think coupled with that fact, we also have

1    to deal with Rule 363.   And to the extent that it's not

2    immediate or irreparable then I think I can scale it back and

3    just approve what you have requested, subject to the utility

4    company's ability to request more and you have the procedures

5    in place to ensure that that will happen.

6            So, Ms. Casey, I hear you, but I'm going to

7    overrule your objection in this case and I am prepared to

8    approve the relief requested unless someone else has an

9    objection that they like to lodge.

10           MS. KATONA:   Thank you, Your Honor.

11           THE COURT:   Thank you.

12           MS. KATONA:   The next agenda item is number

13   thirteen which is Docket Number 12 which is the debtors'

14   request to maintain and administer the existing customer

15   programs.

16           So in the ordinary course of business, Your Honor,

17   the debtor offers various incentives, credits and deductions

18   to its customers.   The debtors are seeking to maintain this

19   program on a go forward basis.   And they understand that they

20   are going to be limited in the amount.   We believe that

21   pursuant to this interim order, the amount that the debtors

22   are going to continue to honor will not exceed $2.1 million

23   dollars, and that's in paragraph number two.

24           With respect to this order, Your Honor, Bank of

25   America also raised a valid concern and we have edited the

1  language in paragraph number two to reflect this.  And this

2  is at -- the customer programs that existed prepetition also

3  included some rebates where the debtors were actually paying

4  back to certain counterparties on a go forward basis.

5          Those programs will be discontinued.  The debtors

6  will not be offering any cash payments back to customers.  We

7  are going to, however, continue to honor the prepetition

8  allowances, reductions and credits that these customers had

9  so that they will continue to do business with the debtors on

10  a go forward basis.

11          So, we don't believe that there are any

12  liabilities or administrative claims that are going to accrue

13  on account of this program that would unfairly prejudice the

14  debtors.

15          THE COURT:  Okay.

16          MS. KATONA:  And, again, we're seeking this on an

17  interim basis.

18          THE COURT:  Does anyone wish to be heard in

19  connection with the debtors' customer program motion?

20      (No verbal response)

21          THE COURT:  All right hearing nothing, I am

22  prepared to approve the revised form of order.

23          MS. KATONA:  Thank you, Your Honor.

24          THE COURT:  Thank you.

25          MS. KATONA:  Your Honor, the last item on the

1  agenda that I'm going to be covering today is Agenda Item

2  Number 14.  It's Docket Number 13.  It's the debtor's cash

3  management motion.

4          Again, in a lot of respects this is standard first

5  day relief.  The debtors have a total of seven bank accounts,

6  four of which sit with Bank of America, two with JPMorgan

7  Chase, and one with the First National Bank of Omaha.

8          The four accounts with Bank of America are

9  standard operating depository clearing house accounts.

10         We have the two accounts with Chase, with JPMorgan

11  Chase relate to local scrap vendors where vendors can bring

12  their scrap to the debtors and the debtors pay them.  It's

13  usually done on a local basis.  And where this typically

14  happens, my understanding is there is no Bank of America bank

15  at that location or in that vicinity.  So, therefore, they

16  are using a Chase bank to affect those payments.

17         The last bank, as I mentioned, is First National

18  Bank of Omaha and this is expressly used through Mutual of

19  Omaha who is the third-party administrator with respect to

20  the disability policy.

21         All three of these banks are approved depositories

22  in this region.  So, we don't believe that we need any waiver

23  or forgiveness from Section 365 in that context.

24              THE COURT:  Okay.

25              MS. KATONA:  Your Honor, walking through some of

1  the edits that are in the version, the redline that you have.

2          We removed, obviously, the language that we

3  understand the U.S. Trustee doesn't like in the decretal

4  paragraph about this being in the best interest of all

5  creditors.  We've removed that.

6          We removed, in Paragraph 2, some superfluous

7  language that was left in.

8          The biggest change that you're going to see

9  throughout is Bank of America, our prepetition agent, wants

10 to ensure that in order to protect its position that its

11 prepetition agent fees and expenses can also be honored and

12 offset, to the extent applicable, on a go-forward basis.  So,

13 we have revised language throughout the cash management order

14 to reflect that.

15         These edits were made immediately before the

16 hearing.  So, we have not shared this with Bank of America's

17 counsel.  Your Honor, if I could take a minute to share it

18 with them and confirm that this comports with what they are

19 okay with in light of the U.S. Trustee's concerns.

20         THE COURT:  Okay.  Yes.  Please, go ahead.

21         MS. KATONA:  Your Honor, we have one correction to

22 Attachment 2 of the motion which is the diagram of the cash

23 management system.  Your Honor, if you're looking at the

24 second column where it appears that incoming cash comes into

25 the depositories account, we are being corrected that, in

1    fact, incoming cash comes in directly to the credit facility

2    which then transfers that money into the depository ZBA

3    account.  So, the arrow that comes down in that second column

4    is incorrect.  It actually needs to flow from the credit

5    facility to the depository ZBA.

6              THE COURT:  Okay.  All right. Thank you for that

7    clarification.

8              Does anyone else wish to be heard in connection

9    with the debtor's cash management motion?

10         (No verbal response)

11             THE COURT:  Hearing nothing I am prepared to

12   approve the relief requested in the revised form of order.

13             MS. KATONA:  Thank you, Your Honor.

14             THE COURT:  Thank you.

15             MS. KATONA:  With that, with respect to the

16   orders, Your Honor, are you comfortable with us filing all of

17   these under certification of counsel so to the extent anybody

18   has any concerns about the changes that we walked you through

19   that they all can, obviously, comment?

20             THE COURT:  Yes.  That is my preferred preference.

21   Thank you.

22             MS. KATONA:  Thank you.

23             THE COURT:  And with redlines.

24             MS. KATONA:  Correct.  Thank you, Your Honor.

25             THE COURT:  Thank you.

1        MR. WARD:  Almost good afternoon, Your Honor.  For

2  the record Chris Ward again.

3        Moving onto the last item on the agenda for today,

4  Number 15 on the agenda, Docket Item Number 24, it's the

5  debtor's motion for interim and final orders approving the

6  use of cash collateral.

7        As noted in Mr. Davis's declaration the debtor

8  went into this bankruptcy with no cash on hand.  We are

9  operating under the cash collateral of our first-lien lender.

10  We have reviewed all the liens and priorities of the first

11  and second-lien lender, and the appropriate stipulations are

12  in the proposed form of order.

13        We received numerous comments from Ms. Casey. We

14  had a pretty extensive conference call this morning.  I know

15  there is a redline order that, hopefully, the lender has and

16  that we could walk the court through, and we could go through

17  the changes.

18        Other than the order, I'm happy to address any

19  questions the court may have on cash collateral usage, but I

20  do think we meet the 6003 standards as there is no other

21  means to operate this company in Chapter 11.

22        THE COURT:  I agree.  I have comments to the form

23  of order, but I think it makes sense to walk through your

24  revisions.  And to the extent Ms. Casey did not catch

25  something that I would have, otherwise, caught we will

1  address it.

2          MR. WARD:  May I approach with a redline, Your

3  Honor?

4          THE COURT:  Yes.

5          I will make one comment, generally, which is I

6  understand that in reviewing the order it seemed to me that

7  this reflected mostly the agreements between the lender and

8  the debtor, but its couched in a form of order.  So, many of

9  my comments may be going to that point, but I'm not going to

10  necessarily be ordering the agreements of the parties and no

11  one is necessarily going to seek to hold someone in contempt

12  of this order if the debtors do not comply with every

13  agreement of the parties that are listed in this or reflected

14  in this order.

15          So, to the extent I feel it's necessary to make

16  some changes to ensure that then we will talk about them, but

17  as a general matter if I don't catch everything, I'd like you

18  to just state it on the record for future hearings.

19          MR. WARD:  Absolutely, Your Honor.  Understood.

20          THE COURT:  Okay.

21          MR. WARD:  It might make the most sense to just do

22  a page turn of the redline with the court, then we could walk

23  you through any issues that there may be.

24          Skipping over, there are some defined term changes

25  in adding the case numbers.  We can skip over them.

1        Your Honor, do you want to talk about a final

2   hearing and interim hearing now or should we wait until we

3   get through everything?

4        THE COURT:  We can talk about it now.  So, what

5   are you looking for?  I know you have 35 days to get a final

6   order, but I'm assuming you want, at least, 21 days out.

7        MR. WARD:  Well, I think we're looking from the

8   debtor's perspective we're going to be looking for two

9   hearings, Your Honor.  We're going to be looking for a

10  hearing in two weeks to, hopefully, have a bid procedures and

11  maybe some other emergent relief that needs to be heard.

12  There is a lot going on with this company despite its idle

13  operations.  So, we do believe we need to come back in about

14  two weeks and then we will need a date, likely the first week

15  of November for a true final hearing.

16        THE COURT:  Well, let's talk about the final

17  hearing first.  So, you're looking for the week of the 4th?

18        MR. WARD:  The week of the 4th, Your Honor.  If

19  there's something on or about the 5th of that week.

20        THE COURT:  How about one p.m. on the 5th?

21        MR. WARD:  I see some head shaking going around.

22        THE COURT:  So, we will add that to, obviously,

23  the final order that is handed up and make the objection

24  deadline one week before the hearing.

25        THE COURT:  Ms. Casey, have you set a formation

1  meeting yet?

2          MS. CASEY:  It has not been definitively set, but

3  we're very close to setting it for next Thursday, October

4  10th.

5          THE COURT:  Okay.  So, Mr. Ward, what are you

6  looking for, for bid procedures?

7          MR. WARD:  October 22nd or 23rd, if that's

8  available, Your Honor.

9          THE COURT:  When do you anticipate filing your bid

10 procedures motion?

11         MR. WARD:  It will be next week, Your Honor.  I

12 would love to tell you it's going to be done this week, but

13 it's not.

14         THE COURT:  I appreciate your honesty.  You said

15 the 22nd or the 23rd?

16         MR. WARD:  Correct, Your Honor.

17         THE COURT:  Okay.  I am out of the office on the

18 23rd.  So, how about the 22nd at one?

19         MS. CASEY:  Your Honor, the U.S. Trustee does not

20 object to setting that hearing date, but reserves any

21 objections to any motion to shorten or anything along those

22 lines.

23         THE COURT:  Of course.

24         MR. WARD:  Absolutely, Your Honor.

25         THE COURT:  If a committee is appointed there

1  rights are reserved as well.

2          MR. WARD:  One hundred percent, Your Honor. We had

3  talked to Ms. Casey about a later formation date, but given

4  that we foresee filing this motion now we have to move it

5  back to an earlier date so that we can get the process

6  moving.

7          THE COURT:  Okay.

8          MR. WARD:  Thank you, Your Honor.

9          THE COURT:  You're welcome.

10         MR. WARD:  Moving back to the redline form of

11 order the next changes are on Paragraph 5, and it goes to the

12 typical comments of the United States Trustee regarding

13 notice.

14         THE COURT:  Okay.

15         MR. WARD:  On Page 6 we put in the actual amount

16 of the term loan, Your Honor.  It's approximately $36 million

17 dollars.

18         There are no further substantive comments until

19 Page 13, Your Honor.

20         THE COURT:  Okay.

21         MR. WARD:  The language that was removed is

22 language that is appropriate and in the cash management

23 motion; not necessarily the cash collateral order, Your

24 Honor.

25         THE COURT:  Okay.

1          MR. WARD:  So, the parties have agreed to remove
2   that.

3          The next substantive change is on Page 15
4   regarding adequate protection.  And we removed some
5   diminution value language for that at the Trustee's request,
6   Your Honor.

7          THE COURT:  Okay.

8          MR. WARD:  Again, Page 17 in Sub-Paragraph (c) is
9   the next change.

10          THE COURT:  I appreciate that change.

11          MR. WARD:  Thank you, Your Honor.

12          Page 18, Your Honor, at the end of Paragraph 26 is
13   the next change.  It's a conforming change to the prior
14   change that was made, Your Honor.

15          THE COURT:  Okay.

16          MR. WARD:  And same on Page 19 in (b).  It's just
17   on the subordinated loans, Your Honor.

18          THE COURT:  Okay.

19          MR. WARD:  Again, Paragraph 28 goes to the inter-
20   creditor agreement and issues between the first and second-
21   lien.

22          The next is 24, Your Honor, at the end of
23   Paragraph 38.  A common change at the Trustee's request
24   regarding authorize and directed.  We removed and directed to
25   file such documents.  Then, actually, earlier in that

 1 paragraph there's a reasonable request of the prepetition

 2 agent has been added.  So, there's a reasonableness standard.

 3           THE COURT:  Okay.

 4           MR. WARD:  Page 25, in Paragraph 41 is the next

 5 change.  It's a clarification for the Trustee, Your Honor.

 6           THE COURT:  Okay.

 7           MR. WARD:  Page 27, Paragraph 45 would be the next

 8 change regarding the utility deposits and the lenders

 9 interest only in whatever is remaining at the end of the day

10 with respect to those accounts.

11           THE COURT:  Okay.

12           MR. WARD:  The changes in 46 and 47 go to the

13 debtor's reporting requirements and who gets those.

14           On Page 29 at the end of Paragraph 48, five lines

15 up, the word indefeasibly has been removed.

16           THE COURT:  Paragraph 51 --

17           MR. WARD:  Yes.

18           THE COURT:  -- the first sentence, I'd like that

19 removed.  I don't know what's going to happen in this case,

20 all right, so I think that rights are reserved with the

21 second sentence.  That is my interpretation of what I read

22 when I read this paragraph.  I understand that you would want

23 the rights reserved on that issue and making it clear that

24 nothing in this order is making the prepetition parties

25 obligated, but I am not prepared at this point to say that

1  they're not responsible.

2          MR. WARD:  Understood, Your Honor.  I'm looking at

3  lender's counsel crossing out this page.  So, I am sure he

4  will tell us if he has any issues with your changes.

5          THE COURT:  Okay.

6          MR. WARD:  Page 36 is the next change, Your Honor,

7  at Paragraph 60.

8          THE COURT:  Okay.  I actually have a comment on

9  Paragraph 54.

10          MS. CASEY:  Your Honor, I don't have an objection

11  to 54, but I just want to -- it seems like it's making that I

12  don't have objections.  I do have remaining and continuing o

13  objections.

14          THE COURT:  Oh, I'm sorry.  So, why don't we walk

15  through the court's collective changes and then we will talk

16  about your objections.

17          MS. CASEY:  Okay.

18          MR. WARD:  I think we've narrowed the open issues

19  to three or four that we can talk about.  The rest are all --

20  there was 33 total changes.  I think we got them down to

21  three or four.

22          THE COURT:  Okay.

23          MR. WARD:  So, I think that's --

24          MS. CASEY:  I didn't have an objection to 54.

25          THE COURT:  Okay.  I have -- I would like the last

1  sentence removed about what constitutes a diminution.  That

2  is something that we can talk about if it becomes an issue,

3  but at this time I'm not prepared to approve that.

4          MR. WARD:  Understood.

5          THE COURT:  Same thing in Paragraph 56, similar to

6  my comment with respect to Paragraph 51.  I think that the

7  first sentence should be removed and I'm comfortable with

8  keeping in the remainder of the paragraph, but at this time

9  I'm not prepared to make a comment about what he lender is

10 responsible for in the terms of wind-down.

11          MR. WARD:  Okay.  We will have that sentence

12 removed, Your Honor.

13          THE COURT:  Okay.  And then in connection with the

14 events at default I think that we need to add the words in

15 the beginning that the parties agree with the occurrence of

16 the following are events of default.  I think typically we

17 don't approve the events of default.  We just acknowledge

18 that you all have agreed that they're events of defaults.  To

19 the extent that an event of default is declared the parties

20 can come into court pursuant to Paragraph 60 and 61.  And we

21 can have a discussion about that.

22          MR. WARD:  We will make that change, Your Honor.

23          THE COURT:  Okay.

24          MR. WARD:  Page 36 was the next redline comment.

25          THE COURT:  Okay.  I actually do have a comment.

1  I know it's customary in our courts that typically its five

2  business days for a default notice period and I notice this

3  is three days.  So, why the diversion from our customary

4  practice.

5          MR. WARD:  We will defer to lender's counsel on

6  that one, Your Honor.

7          MR. WALLANDER:  Your Honor, we will accept five.

8          THE COURT:  Okay.

9          MS. CASEY:  Five days or five business days?

10          THE COURT:  Five business days.

11          MR. WARD:  We will make that revision to Paragraph

12  60, Your Honor.

13          THE COURT:  Okay.

14          MR. WARD:  Paragraph 63 is the next change, Your

15  Honor.

16          THE COURT:  Okay.

17          MR. WARD:  Just to clarify it's the credit bid

18  rights of the senior secured lenders here.

19          Paragraph 68 on Page 39.

20          THE COURT:  Do we need to make it clear that

21  that's subject to the committee's investigation and

22  challenge?

23          MS. CASEY:  Your Honor, it is the U.S. Trustees

24  preference to have it be subject to both the committee's

25  challenge period and 363(k).  We often times agree to just

1  363(k) since parties can come in and object, but it would

2  certainly be our preference to have it subject to the

3  challenge period.

4          THE COURT:  Okay.  My preference would be to have

5  it subject to the challenge as well and 363(k).

6          MR. WARD:  Your Honor, I think the concern here is

7  the challenge period will be 60 days from next week.  Our

8  hope is that the sale is before that.  We will likely be

9  requesting that the sale comes before that, but there is the

10  practicality that it may not be until after the challenge

11  period.

12          THE COURT:  I certainly understand that.  This

13  isn't the first case where there would be a sale that would

14  occur prior to the expiration of the challenge period, but I

15  know that there are creative solutions and creative wordage

16  that parties can agree to typically.

17          MR. WALLANDER:  Your Honor, Bill Wallander.

18          Our thinking was that if a sale were to occur

19  inside the challenge period that the 363(k) would capture it

20  because they could raise those issues in the context of a

21  hearing through 363(k) and try to protect themselves that

22  way.  We still would be in the challenge period.  They could

23  bring those types of issues as would be applied under 363(k).

24          What I'm trying to avoid is that there's just a

25  block to a credit bid within that 60-day period if it occurs.

1  We have no problem if people want to challenge, but we just

2  don't want to have an automatic 60-day block because of the

3  time period.  If they have those issues to bring in the

4  context of the credit bid then we think they need to bring

5  them at that time when the sale takes place under 363(k) to

6  convince Your Honor as to whether we have the right to credit

7  bid.

8          I don't think it will be within 60 days, but if it

9  is and we have a buyer lined up we don't want to lose a sale

10  because we have an automatic block on time.

11          THE COURT:  Okay.  Well, why don't we do this; why

12  don't we just reserve this issue.  I'm sure the committee is

13  going to have something to say perhaps, and we will deal with

14  it at a final hearing.  So, for now let's keep the language

15  as revised with 363(k) and if the committee wants to talk to

16  you about that issue, if and when appointed, then we will

17  deal with it when it becomes an issue.

18          MR. WARD:  I think that works for all the parties,

19  Your Honor.  Thank you.

20          Unless the court has any other issues in between

21  the next comment is on Page 39 at Paragraph 68.

22          THE COURT:  I actually do have something.

23          MR. WARD:  Okay.

24          THE COURT:  So, I think 64, 65 and 66.  In my

25  experience 64 and 65 are fairly customary in DIP orders and

1  cash collateral orders, but I've always felt uncomfortable

2  because I feel that those are more appropriate to be events

3  of default.  So, I propose that I would prefer that you

4  either make them events of default or you subject them to

5  further court order, the entry of a further court order.

6           With respect to 66 I don't think that that's

7  appropriate language for this cash collateral order.  I do

8  think that that needs to be removed.

9           MR. WARD:  We will add those to the OD's, Your

10  Honor, 64 and 65 in the events of default.

11           THE COURT:  Okay.  Then 66, it is what it is.  The

12  debtors have their right to propose a plan as they wish and

13  if it's an event of default it's an event of default, but

14  it's probably better to just remove that language.

15           MR. WARD:  We will remove 66 as well, Your Honor.

16           THE COURT:  Okay.

17           MR. WARD:  Paragraph 68, the changes to make it

18  subject to Paragraph 75 which is a reservation of rights

19  deadline provision which we will get to in a second, Your

20  Honor.

21           Turning to Page 40, at the end of Paragraph 71,

22  the last sentence, there's been a revision.

23           THE COURT:  Do we need to subject 69 -- I'm sorry,

24  do we need to subject 69 to the challenge as well, the

25  binding nature of the --

1           MR. WARD:  I think its binding on the debtors,

2 Your Honor.

3           THE COURT:  Right.

4           MR. WARD:  I don't think it goes further than just

5 between the debtors and the lender at this paragraph.

6           THE COURT:  Right.  You're right.  Thank you.

7           MS. CASEY:  It does go to a trustee and the

8 Trustee is subject to the challenge period.

9           THE COURT:  Okay.  So, why don't we just add

10 subject to the challenge to the extent that it's applicable.

11           MR. WARD:  We will make that revision, Your Honor.

12           THE COURT:  Okay.

13           MR. WARD:  On 71 it just goes to the action that

14 the lenders need to take, Your Honor.

15           Paragraph 75 is the next substantive change which

16 deals with challenge deadline.  I believe there may be some

17 discussion on the challenge deadline after we get through the

18 order, Your Honor.  So, I don't think we need to get into

19 that now, but those are --

20           THE COURT:  Wait.  What is that?

21           MR. WARD:  I think there is going to be a

22 discussion between the trustee and lender's counsel regarding

23 the language.  I think that is one of our open issues.  Does

24 that fix it?  And I will defer to Ms. Casey on that.

25           THE COURT:  Okay.

1        MS. CASEY:  So, the changes that were made to

2   this, because this was filed as quickly as it was, I asked

3   them to take out that certain stipulations were.  So, it's

4   any stipulations in the order because we just can't go

5   through.  It shouldn't be our burden to go through and make

6   sure that those paragraphs are correct.

7        They also had a provision that, basically,

8   truncates the local rules. So, we just have that subject to

9   final order to give the committee and opportunity. Then I

10  have the language that we, at least, request that if the

11  trustee is appointed prior to the end of the challenge period

12  they get the later of the end of the challenge period or 10

13  days after so that he or she has the time, in the exercise of

14  their fiduciary duty, to determine if a challenge is

15  appropriate.

16        THE COURT:  Okay.  I appreciate you making the

17  challenge period subject to a final order.

18        MR. WARD:  I think with that, Your Honor -- well,

19  I will cede the podium to Ms. Casey for any issues that are

20  not addressed by the redline that are still open.

21        THE COURT:  Okay.

22        MS. CASEY:  For the record Linda Casey, again, for

23  the United States Trustee.

24        I do have a few issues that had not been resolved.

25  The first one, quite frankly, is in an unusual position, but

1  I think it's important.  The order has various stipulations

2  as to the validity, priority and extent, but if you look at

3  the motion, the motion at 21(b) said that all of the

4  stipulations to the validity, perfection and amount of the

5  prepetition liens are subject to the entry of final order.

6          So, the U.S. Trustee takes the position that the

7  order, itself, cannot provide greater relief then the motion

8  did in any event.  In this case there are some factors that

9  make that even more important.

10          First, this is typical that this is a first day

11  order and parties have not, necessarily, had sufficient time

12  and if they reviewed that, and saw that, and relied upon

13  that, and didn't see it in the order it should be subject to

14  entry of final order.

15          In addition, this was filed just at three o'clock

16  or shortly thereafter.  So, parties didn't even have the

17  standard 24 hours.  So, they might have even had a more

18  truncated review.

19          The other reasons for having this be subject to

20  final order, since that's what the motion requested, is this

21  is a cash collateral order.  There is no new money coming in.

22  The subordinated lender is either an insider or an affiliate

23  of an insider.  And in addition, it's not clear that during

24  the interim period any cash collateral of the subordinated

25  lender will be utilized.

1          So, for all of those reasons, you know, starting

2    with just the standard that the order shouldn't give more

3    than the motion and then the specific factors that make it

4    even more compelling in this case we do think that the

5    stipulations, et cetera, should be subject to the entry of

6    final order.  We understand that that's unusual and that's

7    not typical in this district, but we just think that because

8    that's what the motion said that's what it should be.

9          Then specific language in the order itself,

10   Paragraphs 38 and 39.  The debtors had taken out the and

11   directed with regard to recording officers, but they didn't

12   take out the and directed with regard to the debtors.  And we

13   raise that so in Paragraph 38 they changed it to say that if

14   there's a reasonable request of the prepetition agent then

15   the debtors are directed to take such action.  Let me see if

16   I can find it real quick.  Yeah, so it's about four lines

17   down.  The debtors are authorized and directed.  Again, we

18   understand that the courts don't like to direct the debtors

19   to do something to result in them being in contempt of court

20   and authorizing them as sufficient.

21         Paragraph 39, there's the same language that the

22   debtors are hereby authorized and directed to perform all

23   acts, take any actions, et cetera.  And we would request that

24   those two and directed be taken out and the debtor simply be

25   authorized.

1          THE COURT:  I'm sorry, where is the first and

2  directed?

3          MS. CASEY:  Paragraph 38, carryover onto Page 24,

4  about four lines down the debtors are authorized and directed

5  to execute or cause to be executed all such mortgages, deeds,

6  trusts, etc., et cetera.

7          Now, in response to my request to delete and

8  directed they changed it to the reasonable request, but the

9  U.S. Trustee still takes the position that authorizing the

10  debtors is sufficient and they should not be directed under

11  court order to do that.  We believe, and I think the courts

12  in this jurisdiction believe if there's an issue the lender

13  can come in and request that they do it, but it shouldn't be

14  subjecting the debtors to contempt of court by directing them

15  to do it at this stage.

16          So, that is the second request as to both 38 and

17  39.

18          Paragraph 41, while the lenders did make a helpful

19  change, the U.S. Trustee objected to the language in

20  Paragraph 41 because it seems to be blessing future action.

21  No act committed or action taken by the debtors shall be

22  used, construed, et cetera.  They have attempted to limit it

23  to those that are taken in accordance with this order,

24  excluding actions taken if the automatic stay is lifted for

25  them to exercise remedies, but the U.S. Trustee does think

1  that it is inappropriate to provide that future actions that

2  are not even before the court yet are blessed and will not

3  give rise to certain liabilities.

4        What we don't object to is something that says,

5  you know, the granting of the permission to use the cash

6  collateral shall not be considered -- because that is

7  something that is before Your Honor today, but future acts we

8  object to that.

9        The next objection I have is to Paragraph 60, and

10 that's on Page 36.  Your Honor, I had requested that the

11 parties not be limited to contesting whether an event of

12 default has occurred.  I -- to state what our negotiations

13 were I did agree that the debtors could be restricted if they

14 wanted to, but the committee shouldn't.  And instead of

15 saying that the committee can raise issues they just took out

16 the committee being able to take any issues at all.

17       So, I think the committee should be able to object

18 and should be able to object on any basis.  In fact, I think

19 anybody should be able to object.  If it's the debtors

20 agreeing to only object to whether an event of default

21 occurred that's okay, but any party should be able to raise

22 any issues that they see.

23       Then the final objection that we have is to the

24 release in Paragraph 76.  This is a broad release of all

25 claims.  It is a plan like release.  The U.S. Trustee objects

1  to these releases in DIP financing orders.  They are, again,

2  plan releases.  They are subject to the Zenith and Master

3  Mortgage standards.  It's not clear if the utilization of

4  cash collateral is sufficient consideration for such a broad

5  release.  There is no record as to what claims that there

6  might be and what the value of the using of the cash

7  collateral is.

8          At the very least we think it should be subject to

9  final order.  So, parties can get their hands around whether

10 the Zenith and Master Mortgage issues are there.  The U.S.

11 Trustee has frequently filed objections to the final hearing

12 that these releases are just inappropriate in the DIP's.

13 That is -- we don't believe that there is or could be a

14 record made today under the Zenith and Master Mortgage that

15 all of the facts have been met.  And we, therefore, reserve

16 our arguments for the final hearing and request that this be

17 made subject to the final order.

18          Unless Your Honor has any further questions those

19 are the U.S. Trustee's objections.

20          THE COURT:  I do not.

21          MS. CASEY:  Thank you.

22          THE COURT:  Can we hear from the lenders or the

23 debtors.

24          MR. WALLANDER:  Your Honor, Bill Wallander on

25 behalf of Bank of America.

1        The first item on final order in the motion versus

2   the order we recognize this case was put together in a prompt

3   manner.  I would also direct your court to the motion itself.

4   The first sentence of relief requested requests entry of the

5   interim and final orders.  The prayer for relief in the

6   motion requests entry of an order substantially in the form

7   as Exhibit A.  Exhibit A has the stipulations from the debtor

8   outright without final order.

9        The stipulations from the debtor won't change.

10  The parties can certainly challenge.  So, we think we

11  preserved the case ability for a committee or other creditors

12  to come in, but the debtors have done their own homework with

13  counsel.  They have seen our paper.  They know what we have

14  filed.  They've made those stipulations very important to the

15  lender that, at least, we know we have stipulations with the

16  debtor to have a consensual arrangement for use of cash

17  collateral.

18        In terms of the as directed language we recognize

19  the as directed is not favored and we tried to nullify that

20  by putting in only reasonable requests would be honored.

21  That way if there was a dispute between the debtors and the

22  bank then we could come see Your Honor if we had a problem

23  with it.  We would have to be reasonable in our requests and

24  wouldn't just be able to direct traffic.

25        I will also say we are sensitive to Your Honor's

1  plan of contempt.  I have never had a case where we even

2  considered looking to issue any type of a contempt order

3  against the debtor.  So, we are very sensitive to that as

4  well.

5       THE COURT:  And just to be clear, I realize that

6  it's rare, but I'm sure the parties can appreciate that all

7  eyes are on the court given that I'm new.  So, it's important

8  that orders that I enter early-on do not reflect what parties

9  perceive as my common practice.  So, I have to take quite a

10 bit of attention to detail, I think, at these outsets of the

11 cases to make it clear to folks what the court's

12 predilections are.

13      MR. WALLANDER:  Absolutely.  Thank you.  We

14 appreciate that.

15      In terms of the future actions we really tried to

16 put a fence around that by saying that if we're doing things

17 that are expressly authorized under this order during this

18 case, if we get payments that are authorized during this case

19 that that would not make us an operator or in control.

20      We excluded remedies.  We thought the concern was

21 if the stay lifts and you go exercise remedies you can't have

22 a protection against that in the future because those would

23 be additional acts.  So, we put language in there to exclude

24 remedies, but we do think it's fair that as long as we're

25 acting within the four corners of this order during the case

1  with authorization from a federal bankruptcy judge that we

2  should have some protection that we're not deemed to be an

3  operator or control person on the property because we're not.

4         So, that is why we put that in there.  We do

5  appreciate the comments of the U.S. Trustee and we tried to

6  add additional language to deal with the concern as we

7  understood that.

8         On the events of default language other parties in

9  interest can raise whatever issues they want if we have a

10 problem on event of default.  The debtor, itself, though, we

11 want to restrict to just did a default occur.  You agreed

12 that if these things happen, it's an event of default, five

13 business days the clock starts running, you have time to go

14 see the judge, but your case is whether an event of default

15 has arisen. Other parties aren't so restricted.

16        So, again, there is case protection in there if

17 there is a committee to come in and raise other challenges if

18 they need to, but the debtor, itself, we understand what our

19 agreement is with the debtor on that point.

20        Last but not least, the releases, much like the

21 rest, they're subject to challenge.  If those releases that

22 were given, if there's a reason to unwind them or to not

23 grant them then parties within the challenge period can come

24 in and state their challenge, and we can deal with that at

25 that time.

1          You know, the lenders always seek these types of

2    releases in the cases.  They are subject to review.  They're

3    subject to challenge, if they can be, but very important for

4    the lenders, having had the lending relationship with the

5    debtors, that they understand what their arrangement is, at

6    least, the way the debtor see it after they've been able to

7    review it with counsel, et cetera.

8          So, those are the positions of the lender on

9    those.  If we did -- we've made a lot of progress.  We

10   started with 25 and we got it narrowed down to four this

11   morning, which is great.  So --

12         THE COURT:  You lucked into getting one of our

13   best U.S. Trustees.  She makes it very easy for the court.

14         MR. WALLANDER:  We've worked with Linda before.

15   Thank you, Your Honor.

16         THE COURT:  Good.  All right.

17         MR. WARD:  Your Honor, I think the only thing the

18   debtors have to add to this is on the stipulations.  I mean

19   they're the debtor's stipulations.  They shouldn't be subject

20   to anything.  I mean, we realize the situation we're in.

21   We've done our homework and we think the stipulations should

22   stand.  So, we have consensual use of cash collateral.

23         THE COURT:  Okay.  All right.  Well, I am prepared

24   to enter the order, but I will make one change that Ms. Casey

25   has requested which is the request that she made in Paragraph

1  38 and 39 that I do feel it's appropriate to remove the and

2  directed language.  If there is a dispute the parties can

3  come into court on an expeditious -- in an expeditious

4  manner.  We can even have a hearing over the phone.  So, I

5  think that I understand the certainty that the lender would

6  like, but I think we should be able to get some clarification

7  if there's a dispute rather quickly.

8          With respect to the other objections of the U.S.

9  Trustee, and I find that the motion was most likely a

10  scrivener's error.  And I think that parties, you know, did

11  have notice of what was being agreed to or what was being

12  sought.  At least I can say that I did, on reading

13  everything.  And I understand that a hearing is being

14  conducted on an expedited basis, but this is just an interim.

15  So, there's time, time for parties to raise their objections

16  to the extent necessary at the final hearing.  I am

17  comfortable with the no liability language, especially with

18  the clarifying comments that the lender stated on the record

19  today.

20          Then with respect to the comments regarding the

21  event of default I think with that clarifying language the

22  parties should actually be -- there should be a meeting of

23  the minds that any party can come in and raise any dispute

24  that they want, it's just that the debtors' hands are tied

25  and I think that that is fine.

1        The reality is, you know, maybe I'm of Judge

2   Shannon's ilk which is I come in here, you raise an issue,

3   I'm going to think that my hands were not tied, but I

4   appreciate the language being there.  And we will address

5   that issue when it comes before the court.

6        With respect to the releases I understand the

7   trustee's position on this.  I feel that they are subject to

8   the challenge period.  If they eventually -- releases of this

9   ilk are put into the plan then we can address that release at

10  that time.  I have never seen where there's been a conflict,

11  quite frankly, and we'll address it at that time if there is

12  a conflict and there is something to be raised, and we can

13  have a healthy conversation of which order governs, I think,

14  at that time, but for purposes of this order, given the

15  challenge period, I am prepared to approve it.

16       MR. WARD:  Thank you, Your Honor.  I think we have

17  a few changes to make to the order.  Again, we will submit

18  the interim cash collateral order and a redline under

19  certification of counsel along with all the other first day

20  pleadings, but I think unless anyone has anything else I

21  think we -- we appreciate your time today in hearing us on

22  shortened notice and we will get the orders over as timely as

23  we can, Your Honor.

24       THE COURT:  Okay.  Thank you for being so

25  agreeable with the comments that I requested to the proposed

1  final order.  Despite what Ms. Katona said, I thought this

2  was very organized.  So, I thought it was wonderful.

3          MR. WARD:  You have not been in our offices for

4  the last five days.

5          THE COURT:  I glean that there might be some

6  chaotic happenings behind the scene, but I thought that you

7  presented it in a very organized manner.  So, thank you very

8  much and we will stand adjourned.

9          MR. WARD:  Thank you, Your Honor.

10      (Proceedings concluded at 12:28 p.m.)

11

12

13

14                      CERTIFICATE

15

16  We certify that the foregoing is a correct transcript from

17  the electronic sound recording of the proceedings in the

18  above-entitled matter.

19

20

   /s/Mary Zajaczkowski                 October 3, 2019
21  Mary Zajaczkowski, CET**D-531

22

23

24

25