IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **In re:** | |
| | **Chapter 11** |
| **BAYOU STEEL BD HOLDINGS, L.L.C.,** *et al.*, | **Case No. 19-12153 (KBO)** |
| | **(Jointly Administered)** |
| **Debtors.** | |

**MOTION OF WARN ACT CLAIMANTS TO TRANSFER VENUE OF THREE AFFILIATED CHAPTER 11 BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA**

By this Motion, Troy Fleming, Jarrod Nabor, and Davarian Ursin (collectively, "WARN Act Claimants" or "Movants"), on behalf of themselves and a putative class of similarly situated former employees of Debtors,[1] seek the entry of an order transferring venue of Debtors' three affiliated bankruptcy cases to the United States Bankruptcy Court for the Eastern District of Louisiana (the "Louisiana Court").[2]

**I.    INTRODUCTION**

1.    Debtors are headquartered in LaPlace, Louisiana, within the Eastern District of Louisiana. In LaPlace, Debtors own and operate a mini-mill capable of steelmaking and continuous billet casting and a medium section rolling mill. At an office in Harvey, Louisiana, also within the Eastern District of Louisiana, Debtors conduct recycling operations. Debtors also operate a facility in Harriman, Tennessee that includes a melt shop and rolling mill. Debtors lease distribution facilities in Tulsa, Oklahoma and Pittsburgh, Pennsylvania and own a distribution

---

[1] Movants are Plaintiffs and putative class representatives in the class action adversary proceeding styled *Fleming, et al. v. Bayou Steel BD Holdings, L.L.C., et al.*, Adv. Pro. No. 19-50392 (D. Del. filed Oct. 3, 2019).

[2] The Debtors in these cases are Bayou Steel BD Holdings, L.L.C. (Bankr. Case No. 19-12153-KBO); BD Bayou Steel Investment, LLC (Bankr. Case No. 19-12154-KBO); and BD LaPlace, LLC (Bankr. Case No. 19-12155-KBO). The last four digits of the taxpayer identification numbers for each of the Debtors follow in parenthesis: (i) Bayou Steel BD Holdings, L.L.C. (1984); (ii) BD Bayou Steel Investment, LLC (1222); and (iii) BD LaPlace, LLC (5783). The mailing address for the Debtors is 138 Highway 3217, LaPlace, Louisiana 70068.

1

depot in Chicago, Illinois.  Debtors' management and key corporate records are located in LaPlace, Louisiana.  *See* Declaration of Alton Davis, President and Chief Operating Officer of Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions ("Alton Declaration"), Docket No. 14 at ¶¶ 11-12.

2. Although Debtors are incorporated in Delaware, they have no other connection to the State.  They have no assets or employees in Delaware.  Rather, most of Debtors' assets, employees, and records are located in LaPlace, Louisiana.  Mr. Davis correctly describes the LaPlace facility as Debtor's headquarters.  *See* Alton Declaration at ¶ 1.  Further, the List of Equity Security Holders filed by Debtors lists Louisiana as the office address and principal place of business of Debtors' Equity Security Holder.  *See* List of Equity Security Holders, Docket No. 1 at 18.

3. According to Mr. Alton's Declaration, Debtors are a party to a Loan and Security Agreement with Bank of America and SunTrust Bank.  *See* Alton Declaration at ¶ 17.  Bank of America is represented by lawyers from the Dallas offices of Vinson and Elkins.  *See* Notice of Appearance and Demand for Service of Notices and Papers, Docket No. 17.

4. Debtors are also party to loan agreements with Black Diamond Commercial Finance LLC.  *See* Alton Declaration at ¶ 22.  Upon information and belief, Black Diamond is an affiliate of Debtors' equity owners.

5. On Monday, September 30, 2019, without notice, Debtors terminated over 300 employees at their principal place of business located in LaPlace, Louisiana.  On Tuesday, October 1, 2019, Debtors filed for relief under Chapter 11 in this Court.

6. Debtors assert that the filing was due to a liquidity crisis caused by their lenders conducting a "daily sweep of the Company's bank accounts."  *See* Alton Declaration at ¶ 28.

1479241v.1

7. The Debtors' plan of action in connection with their Chapter 11 filing is to "use the bankruptcy process to sell off the remainder of the inventory and attempt to sell substantially all of [their] remaining assets via section 363 of the Bankruptcy Code to a strategic or financial buyer." *See* Alton Declaration at ¶ 30.

8. Mr. Alton's Declaration does not state the reason Debtors filed their Chapter 11 cases in this Court, as opposed to in Louisiana, where Debtors conduct the vast majority of their business, and where their headquarters, records, and witnesses are located.

9. Movants are former employees who are supported by significant trade creditors of the Debtors,[3] who will be forced to participate in the bankruptcy process in an extremely inconvenient forum at significant expense. The additional legal and travel costs they are being asked to bear as a result of the Debtors' venue decision will only add to the loss they have already suffered as a result of the Debtors' cessation of business.

10. The State of Louisiana and St. John the Baptist Parish support a transfer and will request that the cases be transferred so they are not required to expend significant tax dollars in order to protect their interests and the interests of Louisiana citizens in a distant, foreign forum.[4] These interests are substantiated and include the following:

(a) Upon information and belief, the headquarters and adjacent facilities are, at least in part, located on a superfund site which is under the oversight of the Louisiana Department of Environmental Quality ("LDEQ"). The State may, and likely does, have various claims against Debtors relating to the environmental condition of

---

[3] Creditors supporting the transfer of the case are the following: LA Scrap Metal Recycling of Baton Rouge; River Parish Contractors, Inc.; LA Scrap Processors; Scrap Connection; Xpress Recycling, Inc.; Pac-Man Auto Crushers, Inc.; and Guidry's Industrial Services. It is expected that additional creditors in Texas, Louisiana, Alabama and Mississippi will support the transfer.
[4] The State of Louisiana has advised it will be filing a separate brief in support of the transfer.

    the property. At a minimum, the property is subject to continuing oversight, testing, and evaluation by LDEQ. That agency's capacity to exercise regulatory oversight effectively and economically will be significantly advanced if the cases are transferred to Louisiana.

(b) The Department of Revenue is now determining whether the State has one or more claims for taxes or deficiencies in tax filings against one or more of the Debtors. The Parish of St. John the Baptist is in the final stages of an audit on the Debtors' tax liability that dates back to 2006.

(c) The State and Parish are also evaluating what claims may exist as a result of Debtors' shut down of the headquarters and termination of over 300 employees, most of whom were Louisiana residents. In particular, the State and Parish will evaluate whether the terminations result in the default of agreements between the State and Parish and one or more of the Debtors with respect to employee training and retention.

11. Good cause exists to transfer venue of Debtors' Chapter 11 cases to the Louisiana Court. The interests of the State of Louisiana creditors, employees, and other interested parties are best served by having the Bankruptcy Court in the Eastern District of Louisiana oversee the wind down and potential sale/liquidation of Debtors' assets which are primarily located in Louisiana.

12. For all of the foregoing reasons, the venue of these recently filed Chapter 11 cases should be transferred to the Eastern District of Louisiana.

## II. VENUE TRANSFER TO THE EASTERN DISTRICT OF LOUISIANA IS WARRANTED

13. Under 28 U.S.C. §§ 1404, 1408, and 1412, and under Federal Rule of Bankruptcy Procedure 1014, a bankruptcy court may transfer venue of a bankruptcy case in "the interest of justice or for the convenience of the parties."

14. In determining whether a venue transfer serves the convenience of the parties, courts generally examine the following six factors:

(a) the proximity of creditors of every kind to the court in which the case has been filed;

(b) the proximity of the debtor to that court;

(c) the proximity of the witnesses necessary to the administration of the estate;

(d) the location of the assets;

(e) the economic administration of the estate; and

(f) the necessity for ancillary administration if liquidation should result.

*In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979); *In re Enron Corp.*, 274 B.R. 327, 343 (Bankr. S.D.N.Y. 2002); *In re Caesars Entm't Operating Co., Inc.*, No. 15-10047, 2015 WL 495259, at *6 (Bankr. D. Del. Feb. 2, 2015). Under this analysis, "the factor given the most weight is the promotion of the economic and efficient administration of the estate." *Enron*, 274 B.R. at 343.

15. A number of courts, including courts within the Third Circuit, have included as an additional consideration or factor, "a state's interest in having local controversies decided within its borders." *In re Standard Tank Cleaning Corp.*, 133 B.R. 562, 567 (Bankr. E.D.N.Y. 1991) (quoting *Portjeff Development*, 118 B.R. 184, 193 (Bankr. E.D.N.Y. 1990); *In re Toxic Control Technologies, Inc.*, 84 B.R. 140, 143 (Bankr. N.D. Ind. 1988); *In re Thomasson*, 60 B.R. 629, 632

(Bankr. M.D. Tenn. 1986); *In re Boca Raton Sanctuary Assoc.*, 105 B.R. 273, 275 (Bankr. E.D. Pa. 1989)).

16. In Chapter 11 cases, courts grant substantial deference to a debtor's choice of forum; however, a debtor's mere filing of the case in a district is not dispositive. *See, e.g.*, *Enron*, 274 B.R. at 342. The decision of whether to transfer venue is within the court's discretion based upon an individualized case by case analysis of convenience and fairness. *See id.* A court can transfer venue if the court finds that either the interests of justice or the convenience of the parties warrants transfer. *See In re Qualteq. Inc.,* No. 11-12572, 2012 WL 527669, at *6 (Bankr. D. Del. Feb 16, 2012).

### III.   APPLICATION OF THE TRADITIONAL FACTORS TO THIS CASE

17. *Asset Location*. Here, Debtors' operating assets are primarily located in the State of Louisiana. The Louisiana operating assets, on information and belief, account for ninety percent (90%) of the value of Debtors' total assets. All of Debtors' books and witnesses needed for court appearances are located in Louisiana. In contrast, Debtors have no assets, witnesses, or records located in Delaware. Proceeding in Delaware, Debtors' choice of venue, will not be in the best interests of creditors or Debtors considering the increased cost and expense that will be incurred by Debtors' creditors and witnesses attending hearings in Delaware. This factor supports granting the venue transfer motion.

18. *Creditor Location*. A review of Debtors' creditor list reveals that a significant portion of Debtors' unsecured creditors are located in the vicinity of New Orleans, including over 300 employees who were laid off without cause and without notice. Consequently, and given the vital interests of the State of Louisiana, the Parish of St. John the Baptist, and the metro area of LaPlace in Debtors' bankruptcy proceedings, New Orleans is a far more convenient venue. Over

fifty percent (50%) of Debtors' creditors or their counsel are located in the Texas/Louisiana area. This includes counsel for Bank of America, who is located in Dallas, Texas. The Louisiana venue represents a less expensive venue for Debtors' primary secured creditor in terms of travel time, travel cost, and legal travel time. Debtors have few unsecured creditors in the Northeast United States, save Debtors' affiliated lender, who may have played a key role in the selection of Delaware as a venue. Nevertheless, the vast majority of Debtors' employees, creditors, and other stakeholders are located in or have significant business operations on the Gulf Coast. This factor strongly supports a transfer of venue to Louisiana.

19. *Proximity of the Witnesses*. This factor strongly supports a transfer of venue to Louisiana. All of Debtors' employees and management are in Louisiana; none are in Delaware.

20. *Proximity to Court*. Geographically, LaPlace, Louisiana is more than 1,200 miles from Wilmington, Delaware. Attendance in court in Wilmington will be costly and difficult for the terminated employees, as well as the other Louisiana creditors, many of whom are comparatively small businesses. This factor weighs heavily in favor of venue transfer.

21. *Economic Administration of Estate*. This factor likewise weighs heavily in favor of venue transfer. It does not make economic sense to have a Delaware court administer and oversee the wind down, closure, and liquidation of entities whose primary assets are located in Louisiana. Most of the creditors and other interested parties will save on legal fees and travel costs if the case is transferred to Louisiana. Debtors will also benefit if their cases are transferred to Louisiana as their travel costs to and from Delaware would be eliminated. Additionally, many of Debtors' employees may be required to participate in these cases. They work and reside in Louisiana.

22. Based on all the above, there is no legitimate dispute that the costs of the Chapter 11 process, which will be a substantial drain on creditors' ultimate recoveries, will be materially

increased by the lengthy travel time and inconvenience resulting from conducting these Chapter 11 cases over one thousand miles away from where Debtors and their principal assets are located and where Debtors operate their business. It is simply not economical to conduct these Chapter 11 cases in the District of Delaware.

23. *Ancillary Administration*. In this case, Debtors are liquidating. The major issues in the case will be governed by Louisiana law related to the sale of Debtors' real estate, equipment, and fixtures. In *In re B.L. McCandless LP*, 417 B.R. 80 (Bankr. Ill 2009), the court held "'that the factor which overwhelmingly militates in favor of transferring' the case was that the Debtor's principal asset was real estate located in the other jurisdiction. 'Courts have observed that matters concerning real property have always been of local concern and traditionally are decided at the situs of the property.'" 417 B.R. at 84 (quoting *In re Eleven Oak Tower*, 59 BR 626, 629 (Bankr. N.D. Ill 1986) (internal quotations partially omitted). This factor supports transferring venue. A Louisiana bankruptcy court is best suited to address the real estate and myriad of other issues, all governed by Louisiana law, that undoubtedly will arise in connection with the wind down and sale of Debtors' assets.

IV. **OTHER ISSUES**

24. Due to the location of Debtors' major assets in Louisiana, legal concepts not found in Delaware will apply to the parties' relationships. Specifically, Louisiana recognizes "vendor's lien privileges," has special materialmen, warehouse, and other craftsman liens, and has certain non-uniform sections of the uniform commercial code that will impact the rights of creditors and their relative priorities. Indeed, this factor is particularly significant given that part of the Louisiana real property is a superfund site subject to pervasive regulations by LDEQ.

25.    *Interests of the State of Louisiana and Parish and City Government.* Debtors own and operate a business in Louisiana that is subject to environmental regulations in both the State of Louisiana and the Parish of St. John the Baptist Parish. The Parish supports the transfer of the case to New Orleans. In *In re Safety-Kleen Corp.*, No. 00-02303, 2001 WL 1820321 (Bankr. D. Del. Aug. 27, 2001), the court transferred an adversary proceeding in a Delaware case to South Carolina. While the transferred case was an adversary proceeding, the operable transfer statute was 28 U.S.C. § 1412, the same statute that governs case transfer herein. In *Safety-Kleen*, Judge Walsh wrote:

> Pinewood's material asset here is a hazardous waste landfill. Such an operation with its unique use of real property and attendant impact on surrounding communities raises local issues not present with a more traditional manufacturing concern that has a more national scope. I am therefore inclined to agree with Sumter County that the location of the Facility within its borders engenders a public policy interest that favors transfer under the circumstances.

2001 WL 1820321, at *4.

26.    The principal asset owned by Debtors is real property and equipment located in St. John the Baptist Parish, Louisiana. Both the State of Louisiana and the Parish of St. John the Baptist have a particular public interest in the outcome of this case. It is unreasonable to require the State of Louisiana and St. John the Baptist Parish to retain Delaware counsel and attend hearings 1,200 miles away. Requiring the State and Parish to incur the cost and expense of litigating in Delaware is unreasonable in light of the amounts potentially owed to the Parish and its loss of tax base and revenue as a result of Debtors' plant closing and the loss of jobs. This factor strongly supports venue transfer to Louisiana.

27.    Taken together, all of these factors overwhelmingly support transferring venue to the Louisiana Court.

V. **NOTICE**

28. Notice of this Motion is being given to: (a) the Office of the United States Trustee for the District of Delaware; (b) the parties included on Debtors' consolidated list of thirty (30) largest unsecured creditors; (c) counsel to the Bank of America, N.A., Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander and Bradley R. Foxman, and Richards Layton & Finger, P.A., One Rodney Square, 920 King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins; (d) counsel to Black Diamond Commercial Finance, LLC, Fox Rothschild LLP, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth A. Niederman and Winston & Strawn LLP, 35 West Wacker Drive, Chicago, IL 60601, Attn: Daniel J. McGuire; (e) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (f) all parties entitled to notice pursuant to Local Rule 9013-(m).  The Movants submit that, under the circumstances, no other or further notice is required.

VI. **CONCLUSION**

Debtors' bankruptcy cases should be transferred to the Eastern District of Louisiana for the convenience of the parties and in the interest of justice.  Each of the factors used to determine whether a motion to transfer venue should be granted weighs in favor of transfer to the Eastern District of Louisiana.  Indeed, not a single factor weighs in favor of maintaining venue in Delaware.  For the foregoing reasons, Movants respectfully request that this Court enter an order transferring

1479241v.1

venue of these Chapter 11 cases to the United States Bankruptcy Court for the Eastern District of Louisiana.

Dated: October 10, 2019	Respectfully submitted,

By:   */s/ James G. McMillan, III*
James G. McMillan, III (Bar No. 3979)
HALLORAN FARKAS + KITTILA LLP
5803 Kennett Pike, Suite C
Wilmington, Delaware 19807
Telephone: (302) 257-2103
Facsimile: (302) 257-2019
jm@hfk.law

Brent B. Barriere (La. Bar. No. 2848)
   *pro hac vice*
Jason W. Burge (La. Bar No. 30420)
   *pro hac vice*
Kathryn J. Johnson (La. Bar No. 36513)
   *pro hac vice*
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-2520
bbarriere@fishmanhaygood.com
jburge@fishmanhaygood.com
kjohnson@fishmanhaygood.com

Hugh P. Lambert, T.A. (La. Bar No. 7933)
   *pro hac vice*
Cayce C. Peterson, Esq. (La. Bar No. 32217)
   *pro hac vice*
THE LAMBERT FIRM, PLC
701 Magazine Street
New Orleans, Louisiana 70130
Telephone: (504) 581-1750
Facsimile: (504) 529-2931
hlambert@thelambertfirm.com
cpeterson@thelambertfirm.com

1479241v.1

Randal L. Gaines, Esq. (La. Bar No. 17576)
*pro hac vice pending*
7 Turnberry Drive
LaPlace, Louisiana 70068
Telephone: (225) 647-3383
Facsimile: (985) 652-3299
attyrandal@gmail.com

*Attorneys for Movants*