# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: § | |
| § | CASE NO. 19-12153 (KBO) |
| **BAYOU STEEL BD HOLDINGS, LLC,** § | |
| *et al.*,[1] § | |
| *Debtors* § | (Jointly Administered) |
| § | |
| § | |

## DECLARATION IN SUPPORT OF MOTION OF WARN ACT CLAIMANTS TO TRANSFER VENUE OF THREE AFFILIATED CHAPTER 11 BANKRUPTCY CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA

PLEASE TAKE NOTICE that the State of Louisiana Department of Justice, Office of Attorney General Jeff Landry, (the "State"), by and through its undersigned counsel, hereby files this Declaration in Support of the Motion of Warn Act Claimants to Transfer Venue of three affiliated Chapter 11 bankruptcy cases to the United States Bankruptcy Court for the Eastern District of Louisiana (the "Motion"). The State respectfully represents as follows:

### I. INTRODUCTION

Generally, while a Debtor's initial choice of venue is granted some weight by bankruptcy courts, in this particular case the State requests that this Court exercise its discretion, and, based on the requisite analysis of the efficiency and fairness of the venue, transfer these proceedings to the Bankruptcy Court for the Eastern District of Louisiana

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

pursuant to 11 U.S.C. § 1404, and Rule 1014 of the Federal Rules of Bankruptcy Procedure, for the reasons set forth in the Motion.

In this case, upon information and belief, the connections between Bayou Steel BD Holdings and its affiliates (the "Debtors") and the State of Delaware are tenuous at best. There are no indications that Debtors conducted any business or operations in Delaware other than incorporating their business in that State. Neither the Debtors, nor any of their affiliates appear to have a Delaware Business License, which is required for "any person or entity conducting a trade or business in the state of Delaware. This includes entities located in Delaware who conduct their business outside of the State."[2] The Debtors' do not appear to own assets or facilities in Delaware, nor do they keep business records, employ Delaware citizens, or conduct any operations in that State. Of the 30 largest creditors holding unsecured claims listed in the Debtors' Chapter 11 petition, none are Delaware creditors.[3]

However, the future of the Debtors' operations and assets, particularly the potential liquidation of real properties that may require environmental remediation or monitoring by the State, is of great concern to the State of Louisiana and several of its political subdivisions. The Debtors' principal place of business and center of operations is in LaPlace, Louisiana.[4] The Debtors also operated a steel mill in LaPlace and a recycling plant in Harvey, Louisiana, which employed approximately 376 employees. Approximately 17 of the 30 largest unsecured trade claim creditors listed in the Debtors' Chapter 11 Petition are from Louisiana or nearby Southern states: of the $20,825,804.30

---

[2] *See* Delaware Division of Revenue, Business License Frequently asked Questions, available at: https://revenue.delaware.gov/frequently-asked-questions/business-licenses-faqs/.
[3] *See* Debtors' Voluntary Petition for Non-Individuals Filing for Bankruptcy [Docket No. 1].
[4] *See* Declaration of Alton Davis Chief Operating Officer of the Debtors, Chief Restructuring Officer in Support of Debtors' Chapter 11 Petitions and First Day Motions ("Alton Declaration") [Docket No. 14].

in unsecured claims listed in the Petition, approximately $10,989,078.30 are held by Louisiana and proximal state creditors (approximately 53%).[5]

The Debtors assert that venue is appropriate under 29 U.S.C. § 1408(1). That is, the Debtors checked the box that "Debtor has had its domicile, principle place of business, or principle assets in the district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district."[6] Because the Debtors do not appear to own any assets within the State of Delaware, venue hinges on domicile or principal place of business. The State suggests that the Debtors' principal place of business should be the guiding factor in determining the proper venue in this case. The principal place of business is defined by the United States Supreme Court as follows:

> We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters- provided that the headquarters is the actual center of direction, control, and coordination, i.e., the "nerve center," and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).[7]

Here there is no question that the "nerve center" of the Debtors' business is their corporate headquarters in LaPlace, Louisiana. There is no corporate headquarters, or office of any type in Delaware. Any alleged Delaware office of the Debtors is simply a third-party vendor who specializes in incorporating out-of-state businesses in Delaware and provides an address for service of process for a fee.[8]

---

[5] *See* Docket No. 1, page 16.
[6] *See* Docket No. 1, page 3.
[7] *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).
[8] *See* State of Delaware Division of Corporations Entity Search, available at: https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx, which lists "The Corporation Trust Company" as the registered agent of Bayou steel. This type of company provides a local address and

The Debtors predicate venue on domicile, while the State would ask this Court to predicate venue on the Debtors' principal place of business. The State does not dispute that venue would be *allowable* at the Debtors' place of domicile, it simply asserts that venue based on the Debtors' principal place of business is proper in this case. Bankruptcy courts have noted that "venue is different from jurisdiction in that jurisdiction is the power to adjudicate, while venue, which relates to the place where judicial authority may be exercised, is intended for the convenience of the litigants."[9] Clearly then, just because a venue is allowable does not mean it is the proper venue for the case to be heard. In this matter, although Delaware is *allowable*, Louisiana is the proper venue and the State requests an order from this Court transferring this matter to the Eastern District of Louisiana.

## II. LAW AND ARGUMENT

When considering a transfer of venue, 11 U.S.C. § 1412 provides that: "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." Section 1412 is written in the disjunctive, meaning that each of the two prongs – "in the interest of justice" and "for the convenience of the parties" – constitutes an independent basis for transferring venue.[10]

Under the interest of justice prong, courts consider whether: (1) transfer would promote the economic and efficient administration of the bankruptcy estate; (2) the interests of judicial economy would be served by the transfer; (3) the parties would be able to receive a fair trial in each of the possible venues; (4) either forum has an interest in

---

incorporation services to out-of-state entities who wish to incorporate in a particular state, but do not have an actual physical address in that state.
[9] *Irwin v. Beloit Corp. (In re Harnischfeger Indus.),* 246 B.R. 421, 431-432, (Bankr. N.D. Ala. 2000).
[10] *In re Patriot Coal Corp*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012).

having the controversy decided within its borders; (5) the enforceability of any judgment would be affected by the transfer; and (6) the plaintiffs original choice of forum should be disturbed.[11]

Considering these factors:

1. Would the transfer promote the economic and efficient administration of the bankruptcy estate? Here, transfer would promote economic and efficient administration of the estate because there is no reason to believe the bankruptcy court in the Eastern District of Louisiana would handle this case any less efficiently or economically than this court. Further, because the Debtors' headquarters, operations, records, executives, witnesses, and substantially all evidence are located within the physical jurisdiction of the Eastern District of Louisiana, transferring venue would actually reduce costs and delays and streamline the administration of the estate. The relocation of all of these moving parts to Delaware, requiring duplicative local counsel, and requiring witnesses, the Debtors, and both secured and unsecured creditors to appear in Delaware involve logistical delays and significant costs that can be avoided by a transfer of venue.

2. Will the interests of judicial economy be served? In this case, judicial economy would be served, because it is early in this bankruptcy process for these Debtors, and because transfer would not involve duplicative efforts by the local court. An unsecured creditor committee has only recently been appointed on October 10, 2019. Of the five unsecured creditor committee members appointed by the U.S. Trustee, four have operations centers or headquarters that are in or relatively

---

[11] *In re Dunmore Homes*, 380 B.R. 663, 671-72 (Bankr. S.D.N.Y. 2008).

proximate to Louisiana: United Steel Workers (which represents Bayou Steels' former Louisiana employees through its local chapter USW District 13), Tri Coastal Trading LLC (a Houston, Texas-based scrap metal processor), Tokai Carbon GE, LLC (a graphite electrode supplier based with locations in North Carolina, Arkansas and Kentucky) and Louisiana Scrap Metal Recycling of Baton Rouge (a Louisiana-based scrap metal recycler). Only one committee member is headquartered in the northern United States: American State Equipment Company, a Wisconsin based heavy equipment company, which is approximately 1,000 miles from Delaware.[12]  It is clear that judicial economy would be best served by access to a local venue by debtors, creditors, regulators, and nearly every other party, and there is no reason to believe that there would be a "learning curve" while the local bankruptcy court gets up to speed concerning the facts of this case.

3. Would the parties be able to receive a fair trial in each of the possible venues? This factor is not applicable in this case because there is no reason to believe the Debtors would not get a fair trial in any permissible venue.

4. Does either forum have an interest in having the controversy decided within its borders? The Eastern District of Louisiana has a strong interest in having this case administered there because many of the creditors and the Debtors' headquarters, as well as the majority of its assets, records, former employees, and operations are located within the bounds of the Eastern District.

5. Would the enforceability of any judgment be affected by the transfer?  This factor does not appear applicable in this bankruptcy case.

---

[12] *See* Docket No. 77, page 2.

6. Would the plaintiff's original choice of forum should be disturbed? Here, there *is* a reason to disturb the Debtors' choice of forum. The Debtors do not have any connection to the State of Delaware other than hiring a third-party to file corporate documents there. There is no evidence, witnesses, records, personnel, or prior operations of any kind in Delaware, so the Debtors' reasons for requiring the transfer of all of the evidence in this case nearly two thousand miles across multiple states is tenuous at best.

The convenience of parties prong also has six factors: (1) proximity of creditors of every kind to the court; (2) proximity of the debtor; (3) proximity of witnesses necessary to the administration of the estate; (4) location of the assets; (5) economic administration of the estate; and (6) necessity for ancillary administration if liquidation should result.[13]

Considering these factors:

1. Proximity of creditors of every kind to the court: As discussed above, with few exceptions, all the creditors are either in the State of Louisiana or in states nearby. As of this filing, there are no creditors located in Delaware.

2. Proximity of the debtor: As stated above, these Debtors have no actual, physical existence, records, or corporate headquarters in Delaware, and have almost their entire existence in Louisiana with the exception of a small mill in Tennessee, as well as some scattered distribution outlets.

3. Proximity of witnesses necessary to the administration of the estate: The executives and other former employees who ran the business operations of the Debtors are located in the Eastern District of Louisiana.

4. Location of the assets: The vast majority of the Debtors' assets are located in the

---

[13] *In re Dunmore Hom*es, 380 B.R. at 672.

Eastern District of Louisiana; none are located in Delaware.

5. Economic administration of the estate: As stated above, there is no reason to believe that the bankruptcy court in the Eastern District of Louisiana would handle this case any less efficiently or economically than this Court. Given that witnesses to be examined are in the Eastern District, as are many creditors, considerable efficiency should be gained by a transfer.

6. Necessity for ancillary administration if liquidation should result: Once liquidation begins, because most of the Debtor's assets are located in the Eastern District of Louisiana, any due diligence on the part of buyers would most likely need to be conducted in Louisiana.

Finally, the business operations of the Debtors involve various state agencies and political subdivisions of the State of Louisiana. The Louisiana Department of Environmental Quality, the Louisiana Department of Revenue, and the Parish of St. John the Baptist are all necessarily involved in this case. Potential claims by these entities are as yet undetermined, but are certain to arise due the abrupt cessation of Debtors' operations. Maintaining venue in Delaware would create needless financial and logistical burdens on these entities, as well as the bulk of other creditors in this case.

### III. CONCLUSION

The decision to transfer venue is within the discretion of the Court. While a Debtor's selection of venue is initially granted some weight, the overall circumstances of this case show by a preponderance of the evidence that a transfer of venue is warranted based on the relevant factors. The State respectfully requests that this Court exercise its discretion to transfer venue in this case, because nearly every factor suggests that transfer

of venue to the Eastern District of Louisiana would promote both judicial efficiency and the efficient administration of the bankruptcy estate.

        Respectfully submitted:

        JEFF LANDRY
        ATTORNEY GENERAL

By:    /s/ Christopher Lento
        Christopher Lento (La. Bar # 35614)
        Ryan M. Seidemann (La. Bar # 28991)
        Assistant Attorneys General
        Louisiana Department of Justice
        Post Office Box 94005
        Baton Rouge, Louisiana 70804-9005
        TEL: (225) 326-6000
        FAX: (225) 326-6099
        *Attorneys for the State of Louisiana,*
        *Office of the Attorney General*