**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12153 (KBO)<br><br>(Jointly Administered)<br><br>**Objection Deadline: October 29, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date: November 5, 2019 at 1:00 p.m. (ET)** |

**APPLICATION OF THE DEBTORS (I) TO EMPLOY AND RETAIN CANDLEWOOD PARTNERS, LLC AS FINANCIAL ADVISOR AND INVESTMENT BANKER FOR THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE AND (II) MODIFYING CERTAIN INFORMATION REQUIREMENTS OF DEL. BANKR. L.R. 2016-2**

The above-captioned debtors and debtors in possession (the "**Debtors**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**") file this application (the "**Application**"), pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules 2014-1 and 2016-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), (i) for entry of an order, substantially in the form attached to this Application as Exhibit A (the "**Proposed Order**"), authorizing the retention and employment of Candlewood Partners, LLC ("**Candlewood**") as financial advisor and investment banker to the Debtors, *nunc pro tunc* to the Petition Date (as defined below) and (ii) modifying certain information requirements of Local Rule 2016-2. In support of this Application, the Debtors rely on and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana, 70068.

incorporate by reference the *Declaration of Glenn C. Pollack in Support of Retention of Candlewood Partners, LLC*, attached to this Application as Exhibit B (the "**Pollack Declaration**"). In further support of this Application, the Debtors respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b). Under Local Rule 9013-1(f), the Debtors consent to entry of a final order under Article III of the United States Constitution. Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory and other legal predicates for the relief sought in this Application are sections 327(a) and 328(a) of the Bankruptcy Code, Rules 2014 and 2016 of the Bankruptcy Rules, and Rules 2014-1 and 2016-1 of the Local Rules.

## BACKGROUND

3. On October 1, 2019, (the "**Petition Date**"), each of the Debtors commenced cases under chapter 11 of the Bankruptcy Code. The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Alton Davis, President and Chief Operating Officer of Bayou Steel BD Holdings, L.L.C., in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**") [Docket. No. 14] and is fully incorporated herein by reference.

4. The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases, but the Office of the United States Trustee appointed

the Official Committee of Unsecured Creditors on October 10, 2019 [Docket No. 67].

## RELIEF REQUESTED

5.     By this Application, the Debtors request entry of the Proposed Order, (i) authorizing the Debtors to employ and retain Candlewood, *nunc pro tunc* to the Petition Date, to provide financial advisory and investment banking services during these Chapter 11 Cases, pursuant to and in accordance with the terms and conditions set forth in that certain engagement agreement, dated September 24, 2019 (the "**Engagement Agreement**"), a copy of which is attached hereto as Exhibit C, and (ii) requesting a modification of compliance with the information requirements relating to compensation requests set forth in Local Rule 2016-2, to the extent requested herein.

## CANDLEWOOD'S QUALIFICATIONS

6.     The Debtors have determined, in the exercise of their business judgment, that the size of their business operations and the complexity of the financial difficulties attendant upon operations of such scope, require them to employ an investment banker and financial advisor with knowledge of the Debtors' industry and businesses and experience with the chapter 11 process, to advise them with respect to the sale of the Debtors' assets. The Debtors further believe that Candlewood is well-qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. Candlewood will coordinate with the other retained professionals in these Chapter 11 Cases to eliminate unnecessary duplication or overlap of work. Retaining such an advisor will enable the Debtors to carry out their duties in these Chapter 11 Cases and maximize the value of their estates for the benefit of all stakeholders through the sale of the Debtors' assets.

7.     As detailed above, Candlewood was first engaged by the Debtors on September 24, 2019 to provide general investment banking and financial advice in connection with the

filing of the Debtors' Chapter 11 Cases and the Debtors' attempts to sell their assets. During this process, Candlewood's professionals have been working closely with the Debtors' management and other professionals and, as a result, have become acquainted with the Debtors' history, business operations, capital and corporate structure and related matters. Accordingly, Candlewood has developed substantial knowledge regarding the Debtors that will result in effective and efficient services in these Chapter 11 Cases.

8. Candlewood, an investment banking and financial advisory firm with offices in Cleveland and New York, is well suited to provide the services that the Debtors require. In its business, Candlewood provides financial and investment banking services in a variety of areas, including capital formation and restructuring.

9. Candlewood and its principals have a breadth and diversity of experience in restructuring, having been involved in over 100 restructuring engagements ranging from public companies to private equity portfolio companies to family businesses, with the typical client being a middle market company. Services provided by Candlewood in such engagements have included sale and liquidation management, debt restructuring, plan of reorganization development, and creditor and other interested party negotiations.

10. Candlewood has served as financial advisor and investment banker to debtors, secured and unsecured creditors, acquirers, and other parties-in-interest involved in financially troubled companies based in a variety of industries and requiring complex financial restructurings, both in and outside of bankruptcy. Candlewood and its principals have more than 30 years of experience working with middle market companies in a wide range of in-court and out-of-court restructuring and asset disposition engagements. Candlewood has been, and is, involved in many restructuring cases, including representing debtors in *In re East West*

*Copolymer LLC*, Case No. 17-10327 (DDD) (Bankr. M.D. La. Apr. 7, 2017), *In re PTC Seamless Tube Corp.*, Case No. 15-21445 (TPA) (Bankr. W.D. Pa. Apr. 26, 2015), *In re Jancor Companies, Inc.*, Case No. 08-12556 (MFW) (Bankr. D. Del. Oct. 30, 2008), and *In re Chart Industries, Inc.*, Case No. 03-12114 (CSS) (Bankr. D. Del. July 8, 2003) and representing other interested parties in *In re Ghurka Brands Holdings LLC*, Case No. 18-11782 (MG) (Bankr. S.D.N.Y. June 12, 2018) and *In re Grand Eagle, Inc.*, Case No. 01-54821 (MSS) (Bankr. N.D. Oh. Dec. 7, 2001).

11. The Debtors have selected Candlewood as their investment banker and financial advisor based upon, among other things, (i) the Debtors' need to retain an investment banking and financial advisory firm to provide services in connection with the sale of the Debtors' assets, and (ii) Candlewood's extensive experience and excellent reputation in providing investment banking and financial advisory services in complex chapter 11 cases.

## CANDLEWOOD'S PREPETITION SERVICES

12. Before the Petition Date, on September 24, 2019, the Debtors engaged Candlewood to provide general investment banking and financial advice in connection with the Debtors' attempts to sell their assets. In rendering prepetition services to the Debtors in connection with these matters, Candlewood has worked closely with the Debtors' management and other retained professionals and has become well-acquainted with the Debtors' business operations and capital structure. Accordingly, Candlewood has developed significant expertise regarding the Debtors that will assist it in providing effective and efficient services during these Chapter 11 Cases. Should the Court approve the Debtors' retention of Candlewood as investment bankers, Candlewood will continue, without interruption, to perform the services for the Debtors as described herein.

5

## SERVICES TO BE PROVIDED[2]

13. As further described in the Engagement Agreement, the services to be provided by Candlewood in these Chapter 11 Cases include the following:

(a) further familiarizing itself, to the extent Candlewood deems appropriate and feasible, with the business, operations, assets, financial condition and prospects of the Debtors;

(b) developing and, at the Debtors' direction, executing a strategic plan to market and sell the Debtors' assets, in one or more transactions, pursuant to section 363 of the Bankruptcy Code (a "**Sale**") or otherwise assist the Debtors at their direction in connection with a potential reorganization of the Debtors' balance sheet;

(c) assisting the Debtors in preparing presentations, discussions and due diligence materials relating to a Sale;

(d) assisting in the negotiation and closing of a Sale;

(e) at the Debtors' request, making presentations to the Debtors' senior management and/or the Board of Directors on the status of any negotiations or discussions regarding a Sale;

(f) communicating with the Debtors' secured lenders and their professionals; and

(g) providing such other financial advisory and investment banking services as are customary for similar transactions and as may be mutually agreed upon by the Debtors and Candlewood.

14. It is necessary for the Debtors' efforts to maximize the value of their assets that the Debtors employ Candlewood to render the foregoing professional services. The Debtors believe that the services will not duplicate the services that other professionals will be providing to the Debtors in these cases. Specifically, Candlewood will carry out unique functions and will use reasonable efforts to coordinate with the Debtors and other professionals retained in these cases to avoid the duplication of services.

---

[2] Unless otherwise defined in this section and the section titled "Professional Compensation," capitalized terms shall have the meanings ascribed to them in the Engagement Agreement.

## PROFESSIONAL COMPENSATION

15. During the 90 days prior to the commencement of these Chapter 11 Cases, the Debtors pre-paid Candlewood a $60,000 retainer as well as $60,000 for the first monthly fee for a total of $120,000 in the aggregate. As of the Petition Date, Candlewood did not hold a pre-petition claim against the Debtors. As more fully described in the Engagement Agreement, in consideration of the services provided by Candlewood, the Debtors have agreed to pay Candlewood during these Chapter 11 Cases:

    (a) **Monthly Work Fees:** The Debtors shall pay Candlewood a non-refundable work fee of sixty thousand dollars ($60,000) per month (the "**Monthly Work Fee**"); and

    (b) **Sale Fee:** In addition to the Monthly Work Fees if the Debtors complete, or enter into a definitive agreement to complete, a Sale with any party during the Term of the Engagement Agreement or with a Covered Party within 12 months following the termination of the Engagement Agreement pursuant to paragraph 7 of the Engagement Agreement, provided that such Sale is completed and closes within such 12 month timeframe, the Debtors shall pay Candlewood from the sale proceeds of any such Sale a fee (the "Sale Fee"). The Sale Fee shall be calculated as follows:

        a. Three hundred fifty thousand dollars ($350,000), plus

        b. Two percent (2.0%) of the total Consideration (as defined below), provided, however, that if the Debtors completes a Sale in whole or in part to Black Diamond Capital Management, L.L.C., or any direct or indirect affiliate, the Sale Fee shall include only the payment of Three hundred and fifty thousand dollars ($350,000) and not the additional two percent (2.0%) of the total Consideration.

    The Sale Fee shall be fully earned, due and payable no later than the closing of the respective Sale (i.e., the execution of unconditional documentation with respect thereto and the payment of the Sale proceeds).

    For purposes of the Engagement Agreement, "Consideration" shall mean the sum of the cash; amount of credit bid made by any of the Debtors' creditors; market value of marketable equity securities or interests; fair market value of unmarketable equity securities or interests; the face value of cash flows to be received by the Debtors under non-contingent straight and convertible debt instruments or other such obligations, issued or issuable from an acquiring party in connection with the Sale; the present value (discounted at a rate of 8% per

7

annum) of the face amount of earn-out obligations from an acquiring party in connection with the Sale; any assumption of indebtedness for money borrowed including guarantees assumed by the acquirer in connection with the Sale; any assumption of long term liabilities (including, but not limited to, underfunded pension liabilities, other underfunded employee or retiree benefits, environmental liabilities, reserves for law suits and other liabilities, product liability amounts and capital lease obligations); the present value (discounted at a rate of 8% per annum) of any contracts or agreements not to compete and of any personal service contracts or agreements which are in excess of such personal service contracts or agreements in effect for managers of the Debtors prior to the closing of the Sale, provided, however, that Consideration shall not include proceeds received by the Debtors in respect of sales of the Debtors' inventory that is not included under the Sale Transaction. Consideration in the form of private company stock or assets shall be valued at the market value mutually agreed upon by the parties in good faith as of the closing.

16. In addition to all of the other fees and expenses described in the Engagement Agreement, the Debtors shall, upon Candlewood's request and in accordance with applicable orders of the Bankruptcy Court, reimburse Candlewood for its reasonable out of-pocket expenses incurred from time to time in connection with its services hereunder. Candlewood bills its clients for its reasonable out-of-pocket expenses including, but not limited to (i) economy travel-related, telephone, facsimile, memoranda production, duplication, courier, database research, and other similar expenses and the reasonable fees and expenses of Candlewood's counsel. Candlewood's expenses shall not exceed $1,000 for any single expense or $25,000 in total, without the prior approval of the Debtors.

17. The Debtors specifically request that, subject to application to this Court, Candlewood be reimbursed by the Debtors for the fees and expenses of Candlewood's legal counsel arising out of or incurred in connection with the negotiation and performance of the Engagement Agreement and the matters contemplated hereby.

18. The Debtors believe that the compensation structure described above is (i) comparable to compensation generally charged by investment banking firms of similar stature to Candlewood for comparable engagements, both in and out of bankruptcy proceedings,

8

and (ii) reflects a typical fee structure for Candlewood and other investment banking firms which do not bill their clients on an hourly basis, but are generally compensated on a transactional basis.

19. The hours worked, the results achieved and the ultimate benefit to the Debtors of the work performed by Candlewood in connection with this engagement may vary and the Debtors have taken this into account in setting the above fees.

20. Candlewood's restructuring expertise, as well as its capital markets knowledge, financing skills, knowledge and experience with middle market companies and mergers and acquisitions capabilities, some or all of which may be required by the Debtors during the term of Candlewood's engagement hereunder, were important factors to the Debtors in determining the amount of Candlewood's fees, and the Debtors believe that the ultimate benefit to the Debtors of Candlewood's services hereunder cannot be measured merely by reference to the number of hours to be expended by Candlewood's professionals in the performance of such services.

21. The Debtors propose that all compensation and expenses will be sought in accordance with 328(a) of the Bankruptcy Code and will not be subject to the standard of review in section 330 of the Bankruptcy Code.

### MODIFICATION OF COMPLIANCE WITH REQUIREMENTS REGARDING TIME ENTRY DETAIL

22. Consistent with its ordinary practice and the practice of investment bankers and financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Candlewood does not ordinarily maintain contemporaneous time records in one-tenth hour increments or provide or conform to a schedule of hourly rates for its professionals. Candlewood will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in these cases. As Candlewood's

compensation will be calculated and paid based on a defined, deferred transaction fee (in addition to Monthly Work Fees), Candlewood requests that it not be required to file time records in accordance with Local Rule 2016-2 and the United States Trustee Fee Guidelines. Instead, notwithstanding that Candlewood does not charge for its services on an hourly basis, Candlewood will nonetheless maintain records (in summary format with 0.5 hour increments) of its services rendered for the Debtors, including descriptions of those services, the time expended in providing those services and the individuals who provided those services, and will present such records together with its fee applications filed with the Court.

### CANDLEWOOD'S DISINTERESTEDNESS

23.     To the best of the Debtors' knowledge, (i) Candlewood is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, and, as required by section 327(a) and referenced by section 328(c) of the Bankruptcy Code, neither holds nor represents any interest adverse to the Debtors and their estates, and (ii) except as disclosed in the Pollack Declaration, has no connection to the Debtors or to their significant creditors or certain other potential parties-in-interest ("**Parties-In-Interest**") whose names were supplied to Candlewood by the Debtors.[3]

24.     Also, to the best of the Debtors' knowledge, information and belief, and based entirely and in reliance upon the Pollack Declaration: (i) none of Candlewood's past or current engagements would or does appear to create an interest materially adverse to the interests of the Debtors, creditors, or equity security holders in these cases and, as such the Debtors believe that Candlewood is disinterested and holds no materially adverse interest as to the matters upon

---

[3] The list of Parties-In-Interest supplied to Candlewood by the Debtors is attached as <u>Annex 2</u> to the Pollack Declaration.

which they are to be retained; and (ii) to the extent Candlewood discovers any facts bearing on the matters described herein during the period of Candlewood's retention, they will supplement the information contained in the Pollack Declaration.

25. As described in more detail in the Pollack Declaration, Candlewood, among other things, searched its client databases to determine whether it represents, or has represented, certain of the Debtors' creditors or other Parties-In-Interest in these proceedings, and/or matters wholly unrelated to those proceedings. Due to the number of creditors and other parties in interest involved in these Chapter 11 Cases, however, Candlewood may have represented certain of the Debtors' creditors or other Parties-In-Interest in matters wholly unrelated to these Chapter 11 Cases in the past. Except as may be described in the Pollack Declaration, Candlewood does not, to its knowledge, represent any party with an interest materially adverse to the Debtors or their estates.

26. Also, in accordance with section 504 of the Bankruptcy Code, Candlewood has informed the Debtors that there is no agreement or understanding between Candlewood and any other entity, other than employees of Candlewood, for the sharing of compensation received or to be received for services rendered in connection with these Chapter 11 Cases.

## INDEMNIFICATION OF CANDLEWOOD

27. The Engagement Agreement also contains certain standard indemnification language with respect to Candlewood's services, which states, in its entirety:

    (a)    Recognizing that Candlewood's role is advisory, the Company agrees to indemnify, defend and hold harmless Candlewood and its affiliates, the respective partners, directors, officers, agents and employees of Candlewood and its affiliates, and each other person, if any, controlling Candlewood or its affiliates (the foregoing being referred to herein individually as an "Indemnified Party" and collectively as the "Indemnified Parties") from and against any and all losses, claims, damages, liabilities or costs, including reasonable attorney fees, as and when incurred, to which such Indemnified Party may become subject or which are asserted against any Indemnified Party, directly or indirectly related to

11

        Candlewood's services under this Agreement, subject to the standard of care set forth in the following sentence. The Company will reimburse the Indemnified Parties for any reasonable legal or other expenses incurred by them, as and when incurred, in connection with investigating, preparing or defending any such losses, claims, damages or liabilities or any action in respect thereof, whether or not in connection with pending or threatened litigation, and whether or not any Indemnified Party is a party thereto; provided, however, that the Company shall not be liable under the foregoing indemnification and reimbursement provisions (i) for any settlement by an Indemnified Party effected without the Company's prior written consent (not to be unreasonably withheld); or (ii) to the extent that any liability is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, to have resulted from Candlewood's gross negligence, bad faith, fraud or willful misconduct in the performance of its duties under this Agreement. The Company agrees that reliance by Candlewood on any publicly-available information, the information supplied by the Company to Candlewood in connection with this Agreement and/or any directions furnished by the Company shall not constitute negligence, bad faith or willful misconduct by Candlewood.

(b)      Promptly after receipt by an Indemnified Party of notice of any intention or threat to commence an action, suit, or proceeding or notice of the commencement of any action, suit, or proceeding, such Indemnified Party will, if a claim in respect thereof is to be made against the Company pursuant hereto, promptly notify the Company in writing of the same. In case any such action is brought against any Indemnified Party and such Indemnified Party notifies the Company of the commencement thereof, the Company may elect to assume the defense thereof, with counsel reasonably satisfactory to such Indemnified Party, and an Indemnified Party may employ counsel to participate in the defense of any such action, provided that the employment of such counsel shall be at the Indemnified Party's own expense, unless (1) the employment of such counsel has been authorized in writing by the Company, (2) the Indemnified Party has reasonably concluded (based upon advice of counsel to the Indemnified Party) that there may be legal defenses available to it or other Indemnified Parties that are different from or in addition to those available to the Company, or that a conflict or potential conflict exists (based upon advice of counsel to the Indemnified Party) between the Indemnified Party and the Company that makes it impossible or inadvisable for counsel to the Company to conduct the defense of both the Company and the Indemnified Party (in which case the Company will not have the right to direct the defense of such action on behalf of the Indemnified Party), or (3) the Company has not in fact employed counsel reasonably satisfactory to the Indemnified Party to assume the defense of such action within a reasonable time after receiving notice of the action, suit, or proceeding, in each of which cases, the reasonable fees, disbursements, and other charges of such counsel will be at the expense of the Company; provided, further, that in no event shall the Company be required to pay fees and expenses for more than one firm of attorneys representing Indemnified Parties unless the defense of one Indemnified

12

        Party is unique or separate from that of another Indemnified Party subject to the same claim or action.

(c)     In order to provide for just and equitable contribution, if a claim for indemnification is made pursuant to this Agreement but it is found in a final judgment by a court of competent jurisdiction, not subject to further appeal, that such indemnification may not be enforced in such case, the Indemnified Parties, on the one hand, and the Company, on the other hand, shall each contribute to the amount paid or payable as a result of such losses, claims, damages or liabilities in such proportion as is appropriate to reflect the relative fault of the Indemnified Parties, on the one hand, and the Company, on the other hand, and the relative benefits to the Indemnified Parties, on the one hand, and the Company, on the other hand, arising out of the particular matter or transaction which gave rise to such loss, claim, damage, liability or costs, and all other relevant equitable considerations shall also be taken into account. No person found liable by a final judgment by a court of competent jurisdiction, not subject to further appeal, for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for such fraudulent misrepresentation. Notwithstanding the foregoing, Candlewood shall not be obligated to contribute any amount hereunder that exceeds the amount of fees previously received by Candlewood hereunder.

(d)     To the extent Candlewood seeks indemnification pursuant to this section while the Company is a debtor in a bankruptcy case under title 11 of the United States Code, Candlewood shall not be entitled to the requested indemnification, contribution, or reimbursement pursuant to the terms of the Agreement, unless such services and the indemnification, contribution, or reimbursement therefore are approved by the bankruptcy court in which the Company's case is pending.

28.     The Debtors believe the indemnification provisions are customary and reasonable terms of consideration for professionals such as Candlewood for both in-court and out-of-court proceedings. The terms and conditions of the Engagement Agreement, including the indemnification provisions, were negotiated by the Debtors and Candlewood at arm's length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Agreement are reasonable and in the best interests of the Debtors and their estates. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth in the Engagement Agreement.

### RETENTION PURSUANT TO BANKRUPTCY CODE SECTION 328(a)

29.     The Debtors are seeking to retain Candlewood pursuant to Bankruptcy Code

section 328(a). Section 328(a) provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Thus, section 328(a) of the Bankruptcy Code permits this Court to approve the terms of Candlewood's engagement as set forth in the Engagement Agreement.

30.  The Debtors submit that the fee structure, expense reimbursements and indemnification provisions are reasonable terms and conditions of employment under section 328(a) of the Bankruptcy Code in light of the following: (a) the nature and scope of services to be provided by Candlewood; (b) industry practice with respect to the fee structures and indemnification provisions typically utilized by leading investment banks and investment bankers that do not bill their clients on an hourly basis; (c) market rates charged for comparable services both in and out of the chapter 11 context; (d) Candlewood's substantial experience with respect to financial restructuring and investment banking; and (e) the nature and scope of work already performed by Candlewood prior to the Petition Date.

31.  The terms of the Engagement Agreement were negotiated in good faith and at arm's-length between the Debtors and Candlewood and reflect the Debtors' evaluation of the work that has been and will be performed by Candlewood and its financial advisory expertise. The Debtors acknowledge and agree that the fee structure was agreed upon by the parties in anticipation of a substantial professional commitment of time and effort by Candlewood and its professional staff under the Engagement Agreement, and in light of the fact that such commitment may foreclose other opportunities for Candlewood and its professional staff and that the actual time and commitment required of Candlewood and its professional staff to

perform the services under the Engagement Agreement may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

32. Furthermore, the fee structure is consistent with and typical of compensation arrangements entered into by Candlewood and other comparable firms in connection with the rendering of similar services under similar circumstances. Candlewood's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Candlewood's engagement, were all important factors in determining the fee structure. The Debtors believe that the ultimate benefit of Candlewood's services cannot be measured by reference to the number of hours to be expended by Candlewood's professionals in the performance of such services. Accordingly, the Debtors submit that the fee structure is both fair and reasonable under the standards set forth in Bankruptcy Code section 328(a).

33. The Debtors propose that, notwithstanding Candlewood's retention under section 328(a), the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") will retain the right to object to the compensation to be paid to Candlewood pursuant to the Engagement Agreement based on the reasonableness standard provided for in section 330 of the Bankruptcy Code, provided that reasonableness for this purpose shall include, among other things, an evaluation by comparing the fees payable in these cases to the fees paid to other investment banking firms for comparable services in other chapter 11 cases and outside of chapter 11 cases, and shall not be evaluated primarily on the basis of time committed or the length of these cases.

34. As set forth above, notwithstanding approval of the Engagement Agreement under section 328(a) of the Bankruptcy Code, Candlewood intends to apply for compensation

for professional services rendered and reimbursement of expenses incurred in connection with these cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court and consistent with the fee structure set forth in the Engagement Agreement.

## NOTICE

35. Notice of this Application will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the Prepetition Agent; (d) counsel to the Subordinated Term Loan Lender; (e) counsel to the Official Committee of Unsecured Creditors; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.

36. The Debtors submit that, under the circumstances, no other or further notice is required.

## CONCLUSION

**WHEREFORE**, the Debtors respectfully request entry of the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested herein and such other and further relief as is just and proper.

Dated: October 15, 2019        */s/ Alton Davis*
Wilmington, Delaware            Alton Davis
                                President and Chief Operating Officer
                                **Bayou Steel BD Holdings, L.L.C., et al.**