## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
|  | **Re: Docket No. 68 & 85** |

### OBJECTION OF DEBTORS TO THE MOTION OF WARN ACT CLAIMANTS TO TRANSFER VENUE OF THREE AFFILIATED CASES TO THE UNITED STATUS BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby file this objection (the "**Objection**") to the *Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* [Docket No. 68] (the "**Motion**") filed by Troy Fleming, Jarrod Nabor, and Davarian Ursin (collectively, the "**WARN Act Claimants**" or "**Movants**"). In support of this Objection, the Debtors rely upon the *Declaration of Alton Davis, President and Chief Operating Officer of Bayou Steel BD Holdings, L.L.C., in Support of the Objection of Debtors to Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* (the "**Davis Declaration**") attached hereto as <u>Exhibit A</u> and the *Declaration of Alton Davis, President and Chief Operating Officer of Bayou Steel BD Holdings, L.L.C., in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 14] (the "**First Day Declaration**"). In further support of this Objection, the Debtors, by and through their undersigned counsel, respectfully represent:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

## PRELIMINARY STATEMENT

The Debtors object to the transfer of venue to the Eastern District of Louisiana. As a threshold matter, the Debtors are limited liability companies organized under the laws of Delaware, and as such, venue for these Chapter 11 Cases is proper in the District of Delaware pursuant to 28 U.S.C. § 1408. As set forth in the Davis Declaration, the Debtors selected the District of Delaware as the proper venue because they believe it is the best and most appropriate forum to implement a successful and expeditious sale process. As a matter of law, the Debtors' choice carries substantial weight. The Debtors conduct operations and have assets located across the United States. The overwhelming majority of claims, in both numerosity and amount, involve creditors throughout the country. The Debtors' operations affect many more constituencies than those within the State of Louisiana. Creditors, vendors, the Prepetition Secured Parties (as defined below), and parties in interest are located across the United States. Notwithstanding various unsubstantiated allegations, the Movants have utterly failed to meet their heavy burden that the proposed transfer is in the interest of justice or convenience of the parties. Moreover, most of the major constituencies in these Chapter 11 Cases support this Court retaining venue.

At this time, the focus of these Chapter 11 Cases is on a sale process for substantially all of the Debtors' assets under Bankruptcy Code section 363 to a strategic or financial purchaser that could re-start operations and re-hire the Debtors' former employees, which may include the WARN Act Claimants. An expeditious sales process is in the best interests of the Debtors and all creditor constituencies, including all state and local municipalities. Transferring venue will undoubtedly cause undue and unnecessary delay and additional costs to the Debtors' Chapter 11 Cases, to the detriment of the creditors.

For all these reasons, the Motion should be denied and venue should remain in the District of Delaware for these Chapter 11 Cases.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (the "**Delaware Court**") has jurisdiction to consider this matter under 28 U.S.C. § and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b).

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.      General Background

3.      On October 1, 2019 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**"). The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the First Day Declaration and fully incorporated herein by reference.

4.      The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in the Chapter 11 Cases.

5.      On October 10, 2019, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors in these Chapter 11 Cases (the "**Committee**").

### II.     The Debtors' Business and Prepetition Capital Structure

6.      As set forth on Exhibit B, each of the three Debtors is a Delaware limited liability company: BD LaPlace LLC was formed on May 26, 1988; BD Bayou Steel Investment, LLC

was formed on May 18, 2006; and Bayou Steel BD Holdings, L.L.C. was formed on December 22, 2015.

7.      As detailed in the Davis Declaration and First Day Declaration, the Debtors are a national business with production facilities in Louisiana and Tennessee. The Debtors also own significant assets in Illinois, Pennsylvania, and Oklahoma.

8.      As further set forth in the First Day Declaration, the Debtors are parties to that certain Loan and Security Agreement dated as of April 4, 2016 (as amended, supplemented, or otherwise modified from time to time, the "**ABL Credit Agreement**") with Bank of America, N.A., in its capacity as agent and lender (the "**Prepetition Agent**") and Suntrust Bank (together with the Prepetition Agent, the "**Prepetition Lenders**"). Pursuant to the Prepetition Credit Agreement, the Prepetition Lenders agreed to extend revolving loans to the Debtors (the "**ABL Facility**"). The ABL Facility is secured by first priority liens over substantially all of the Debtors' assets, including the Debtors' accounts receivable, inventory, and cash collateral, but excluding real estate (the "**ABL Collateral**"), all as set forth in greater detail in the ABL Credit Agreement and related documents (collectively, the "**ABL Facility Documents**"). As of the Petition Date, the aggregate principal amount outstanding under the ABL Facility is approximately $41.25 million (the "**ABL Obligations**").

9.      The Debtors are also party to that certain Subordinated Loan and Security Agreement dated as of December 21, 2017 (as amended, supplemented, or otherwise modified from time to time, the "**Subordinated Term Loan Agreement**") with Black Diamond Commercial Finance, LLC as lender and agent (the "**Subordinated Term Loan Agent**") for lenders (in such capacity, the "**Subordinated Term Loan Lenders**" and together with the ABL Lenders, the "**Prepetition Secured Parties**"). Pursuant to the Subordinated Term Loan

4

Agreement, the Term Loan Agent agreed to extend subordinated term loans to the Debtors (the "**Subordinated Term Loan Facility**"). The Subordinated Term Loan Facility is secured by a second priority lien over the ABL Collateral and a first priority lien on the real estate owned by the Debtors (the "**Real Estate Collateral**," and together with the ABL Collateral, the "**Prepetition Collateral**"), all as set forth in greater detail in the Subordinated Term Loan Agreement and related documents (the "**Subordinated Term Loan Documents**"). As of the Petition Date, the aggregate principal amount outstanding under the Subordinated Term Loan Facility is approximately $36.5 million (the "**Subordinated Term Loan Obligations**", and together with the ABL Obligations, the "**Prepetition Secured Obligations**").

10.     In addition to the Prepetition Secured Obligations, as of the Petition Date, the Debtors estimate that they have approximately $41 million of outstanding unsecured debt, which is comprised mostly of trade debt.

11.     On October 3, 2019, the Court held a first day hearing and granted interim relief to the Debtors on a number of matters, including relief pursuant to the *Agreed Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 42] (the "**Interim Cash Collateral Order**"), which permitted the Debtors to use the cash collateral of the Prepetition Secured Parties.

12.     On October 11, 2019, the Debtors filed the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and*

70911054.8

*Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 73] (the "**Bidding Procedures Motion**").  The Debtors have commenced a marketing effort to sell the Debtors' assets following the process contemplated by the Bidding Procedures Motion. The Debtors' primary assets are two operating plants, a warehouse depot, 160 acres of land adjacent to an operating plant, and accounts receivable.

### III.    Venue Transfer Background

13.    On the Petition Date, the WARN Act Claimants filed an adversary proceeding (the "**Adversary Proceeding**").

14.    On October 10, 2019, the Movants filed the Motion.[2] On October 15, 2019, the State of Louisiana (the "**State**") filed the *Declaration in Support of Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* [Docket No. 85] (the "**State Declaration**").

15.    The Motion, at footnote 3, reads: "Creditors supporting the transfer of the cases are the following: LA Scrap Metal Recycling of Baton Rouge; River Parish Contracts, Inc.; LA Scrap Processors; Scrap Connection; Xpress Recycling, Inc.; Pac-Man Auto Crushers, Inc.; and Guidrey's Industrial Services."[3] Importantly, the Motion is only proffered by, and signed on

---

[2]  The Movants also filed the *Motion to Shorten Notice Regarding the Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* [Docket No. 69], but the Court denied expedited relief. *See* Docket No. 78.

[3]  As of the date of this filing, the Debtors' books and records do not show a balance owing to the Pac-Man Auto Crushers, Inc.

behalf of, the Movants, which are the WARN Act Claimants, and only the State Declaration has

been filed.[4] No other creditor has properly joined the Motion.

## OBJECTION

**I.    The Chapter 11 Cases are Properly Venued in Delaware**

16.    In relevant part, the bankruptcy venue statute, 28 U.S.C. § 1408, provides:

> a case under title 11 may be commenced in the district court for the district—

>> (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement. . . .

28 U.S.C. § 1408(1).[5] "The statute is written in the disjunctive making venue proper in any of the

listed locations." *In re Dunmore Homes, Inc.*, 380 B.R. 663, 670 (Bankr. S.D.N.Y. 2008).

17.    "To determine the domicile of a corporation we look to the state of its

incorporation." *In re Segno Commc'ns, Inc.*, 264 B.R. 501, 506 (Bankr. N.D. Ill. 2001)). *See e.g.*,

*In re Innovative Commc'n Co., LLC*, 358 B.R. 120, 125 (Bankr. D. Del. 2006) ("Venue is

appropriate in the state of incorporation. . . ."); *In re B.L. of Miami, Inc.*, 294 B.R. 325, 328

(Bankr. D. Nev. 2003) ("Since Debtor is incorporated here in Nevada, the District of Nevada

may be considered Debtor's domicile and venue is thus proper under § 1408(1)."); *In re Caesars

Entm't Operating Co., Inc.*, Case No. 15-10047 (KG), 2015 WL 495259, at *4 (Bankr. Del. Feb.

2, 2015) (noting that venue was proper in Delaware because the debtor was incorporated there);

*In re EB Capital Mgmt. LLC*, Case No. 11-12646 (MG), 2011 WL 2838115, at *3 (Bankr.

S.D.N.Y. July 14, 2011) ("A corporation's domicile is generally held to be its state of

---

[4]  The Debtors reserve their right to object to the admission of the State Declaration at the hearing on the Motion.
[5]  The Movants do not reference that pursuant to 28 U.S.C. § 1408(2), the affiliated Chapter 11 Cases belong in the same venue as the Debtors are "affiliates" as defined by Bankruptcy Code section 101(2)(B).

incorporation."). This principle has been long recognized. For example, in *In re Delaware and Hudson Railway Co.*, 96 B.R. 467 (Bankr. D. Del. 1988), a railway company was headquartered and most of its assets were located in Albany, New York. *Id.* at 467. The company was incorporated in Delaware and filed its bankruptcy case in the District of Delaware. *Id.* The New York State Department of Transportation brought a motion to transfer venue to the Northern District of New York and was supported by a labor union. *Id.* Judge Balick recognized that both the District of Delaware and the Northern District of New York were proper venues, but found that the District of Delaware was a more appropriate venue. *Id.* at 469. In so ruling, Judge Balick noted that while transportation to Delaware would be difficult for former employees, such employees would be represented during the case by its union. *Id.* at 468.

18.     A corporation's "principal place of business" refers to "the place where a corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80–81, 92–93, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). This is commonly referred to as the corporation's "nerve center."[6] *In re LaGuardia Assocs., L.P.*, 316 B.R. 832, 837-38 (Bankr. E.D. Pa. 2004).

19.     Here, the Movants do not and cannot dispute that the Chapter 11 Cases are properly venued in District of Delaware. As set forth on <u>Exhibit B</u>, each of the three Debtors is a Delaware limited liability company. As such, each of the Debtors is properly domiciled in Delaware, establishing jurisdiction pursuant to 28 U.S.C. § 1408.

20.     The Movants fail to appreciate that the Debtors are a national steel producer with facilities and warehouses in five states that ship and deliver steel to locations across the country and internationally. Thus, these Chapter 11 Cases could proceed in a number of jurisdictions

---

[6] While the Supreme Court decided *Hertz* in the context of 28 U.S.C. § 1332, because the same language is used in 28 U.S.C. § 1408, bankruptcy courts have subsequently applied the nerve center test. *See, e.g.*, *In re West Coast Interventional Pain Med., Inc.*, 435 B.R. 569, 576 (Bankr. N.D. Ind. 2010).

outside of the District of Delaware under 28 U.S.C. § 1408. Notwithstanding, it is upon the

Movants to meet their burden of proof with respect to their request to transfer venue from the

Debtors' properly selected Court to the Eastern District of Louisiana to adjudicate these Chapter

11 Cases.

## II.    The Movants Have Not Met Their Burden of Proof

21.    "When venue is proper, the debtor's choice of forum is entitled to 'great weight'."

*In re Ocean Props. Of Delaware, Inc.*, 95 B.R. 304, 305 (Bankr. D. Del. 1988). As such, there is

a strong presumption in favor of maintaining a debtor's chosen venue. *See Hechinger Inv. Co. v.*

*M.G.H. Home Improvement, Inc. (In re Hechinger Inv. Co.)*, 288 B.R. 398, 402 (Bankr. D. Del.

2003). *See also Ogblebay Norton Co. v. Port (In re Onco Inv. Co.)*, 320 B.R. 577, 579 (Bankr.

D. Del. 2005) (noting that in an adversary proceeding related to chapter 11, "[a] plaintiff's choice

of venue should only be disturbed when the balance weighs heavily in favor of transfer.").

22.    The Debtors properly filed these Chapter 11 Cases in the Delaware Bankruptcy

Court. This Court must give great weight and deference to that decision.

23.    Motions to transfer a case with proper venue[7] are brought under 28 U.S.C. § 1412,

which provides that a bankruptcy court "may transfer a case or proceeding under title 11 to a

district court for another district, in the interest of justice or for the convenience of the parties."[8]

*See In re Houghton Mifflin Harcourt Pub. Co.*, 474 B.R. 122, 132 (Bankr. S.D.N.Y. 2012)

("Notably, § 1412 is permissive; it says that a district court '*may*' transfer a case 'in the interest

of justice or for the convenience of the parties.' It does not say that the court *must* do so. In light

of that language, many cases hold, not surprisingly, that decisions under § 1412 are within the

---

[7]  Cases filed in an improper venue are transferred pursuant to 28 U.S.C. 1406.

[8]  The same language is used in Bankruptcy Rule 1014(a)(1) which provides: "If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties."

70911054.8

court's discretion."); *In re Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002) ("*Enron I*")

("The decision of whether to transfer venue is within the court's discretion based on an

individualized case-by-case analysis of convenience and fairness."). *See also In re Land

Stewards, L.C.*, 293 B.R. 364, 369 (Bankr. E.D. Va. 2002) ("where the existing venue is entirely

appropriate, this Court exercises its power to transfer cases cautiously.").

24.     The party seeking to transfer venue bears the burden of proof. *In re DBSI, Inc.*,

478 B.R. 192, 194 (Bankr. D. Del. 2012); *In re Caesars Entm't Operating Co., Inc.*, 2015 WL

495259, at *5 ("In a traditional Section 1412 analysis, *i.e.* where a debtor initiates a voluntary

bankruptcy proceeding and a party in interest moves to transfer venue, the burden is on the

movant to demonstrate that the court should transfer the case in the interest of justice or for the

convenience of the parties."); *Enron I*, 274 B.R. at 342. *See also Gulf States Exp. Co. v. Manville

Forest Prod. Corp. (In re Manville Forest Prod. Corp.)*, 896 F.2d 1384, 1391 (2d Cir. 1990)

(noting that "the district in which the underlying bankruptcy case is pending is presumed to be

the appropriate district for hearing and determination of a proceeding in bankruptcy.").

25.     The Movants are thus required to prove either that the convenience of the parties

or interest of justice justifies transferring venue to the Eastern District of Louisiana.

### A.     The Movants Cannot Demonstrate That Venue Must Be Transferred For the Convenience of Parties

26.     Courts evaluating the convenience of the parties look to the *CORCO* factors,

which evaluate the following factors:[9]

        a.      the economic administration of the estate;

        b.      the location of the debtor's assets;

---

[9] The last *CORCO* factor, whether "[t]he necessity for ancillary administration if liquidation should result", is routinely discounted by courts and not relevant here. *In re Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *6.

c.     the proximity of creditors;

d.     the proximity of the debtor;

e.     the proximity of witnesses who are necessary to the administration of the estate; and

f.     the necessity for ancillary administration in the event of liquidation.

*Commonwealth of Puerto Rico v. Commonwealth Oil Refining Co. (In re Commonwealth Oil Refining Co.)*, 596 F.2d 1239, 1247 (5th Cir. 1979) ("*CORCO*"). *Accord In re Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *6; *Enron I*, 274 B.R. at 343; *In re Qualteq, Inc.*, Case No. 11-12572 (KJC), 2012 WL 527669 (Bankr. D. Del. Feb. 16, 2012); *In re Innovative Commc'n Co., LLC*, 358 B.R. at 126. The party wishing to transfer venue bears a "heavy burden of proof . . . to demonstrate that the balance of convenience clearly weighs in [their] favor." *Lionel Leisure, Inc. v. Trans Cleveland Warehouses, Inc. (In re Lionel Corp.)*, 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982).

27.     Here, the *CORCO* factors weigh in favor of the Delaware Court retaining jurisdiction of the Chapter 11 Cases.

**(1)     Economic Administration of the Estate**

28.     The economic and efficient administration of the estate is the most important factor when considering a motion to transfer venue. *CORCO*, 592 F.2d at 1247. The Movants allege[10] that economic administration of the estate favors transfer because the Debtors' "primary" assets are located in Louisiana and most interested parties will save of legal and travel costs. *See* Motion ¶ 21-22.

---

[10]  Importantly, unlike the Debtors. the Movants offer no evidence with respect to the Motion. The Motion contains factual allegations with zero supporting evidence, except for the First Day Declaration, which does not support their contentions. *See, e.g.*, Motion ¶¶ 5, 8-10. While the State of Louisiana did file a document titled as a "declaration," it is actually a pleading in support of the Motion. With the exception of a generic claim that Louisiana governmental authorities have an interest in the Chapter 11 Cases, the State Declaration contains no evidence.

70911054.8

29.     Looking to the constituency of the parties in interest in these cases, the Movants'
allegations do not weigh in favor of transfer. The Debtors have thousands of creditors located
across the country. Upon review of the Debtors' prepetition books and records, only 23.3% of
the outstanding amount owed to unsecured trade creditors is attributable to Louisiana creditors.
In terms of the number of unsecured trade creditors, only approximately 29.6% are located in
Louisiana. Turning to what is presumably the source of the Movants' information, the Debtors'
petitions, only (1) one of the top ten unsecured creditors is located in Louisiana. *See*, Docket No.
1. In fact, of the Debtors' top thirty unsecured creditors, only 26% or eight (8) are located in
Louisiana. This composition is similarly represented within the membership of the Committee,
where only one of the 5-member Committee is located in Louisiana.[11] *See* Docket No. 67. Thus,
even considering the claimants holding the largest unsecured claims, many will have to travel
and expend resources to protect their interests should the case move to Louisiana as most do not
reside in Louisiana.

30.     Further, the primary secured parties in this case, the Prepetition Secured Parties,
are not located in Louisiana. The Prepetition Lenders are national banks located across the
country. The Prepetition Agent's representatives are located in Dallas with lead counsel in
Dallas. The Subordinated Term Loan Agent is located in Connecticut with lead counsel in
Chicago.

31.     The Debtors do not deny that the majority of the Debtors' former employees are
located in Louisiana and some may be part of the class that the WARN Act Claimants seek to
represent. However, this is the single fact upon which the Motion relies. Regardless, the Debtors
also have current employees and former employees in numerous states besides Louisiana

---

[11]  That member of the Committee, Louisiana Scrap Metal Recycling of Baton Rouge, Inc. holds an unsecured claim
in an amount of approximately $765,662.43. This is several orders of magnitude smaller than several of the Debtors'
other largest non-insider unsecured creditors, who are located across the country.

including Illinois, Georgia, Ohio, Oklahoma, Pennsylvania, Tennessee, and Texas. Louisiana simply is not the only jurisdiction affected by these Chapter 11 Cases. The Movants argue that venue should be transferred based upon an adversary complaint, the merits of which have yet to be adjudicated. Moreover, many of the current and former employees are adequately represented by the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial, and Service Workers International Union, which is participating in these Chapter 11 Cases through counsel.

32.     The State Declaration argues that it has an interest in the Chapter 11 Cases, as do a number of other states. That is exactly why the Delaware Bankruptcy Court has enacted Rule 9010-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"). Local Rule 9010-1(e)(i) provides:

> <u>Government Attorneys</u>.  An attorney not admitted in the District Court but admitted in another United States District Court may appear representing the United States of America (or any officer or agency thereof) or any state or local government (or officer or agency thereof) so long as a certification is filed, signed by that attorney, stating (a) the courts in which the attorney is admitted, (b) that the attorney is in good standing in all jurisdictions in which he or she has been admitted and (c) that the attorney will be bound by these Local Rules and that the attorney submits to the jurisdiction of this Court for disciplinary purposes.

Any attorney for the States of Louisiana, Tennessee, Pennsylvania, Oklahoma, or Illinois, or any other affected governmental unit, is welcome to practice before the Delaware Bankruptcy Court upon certification pursuant to Local Rule 9010-1(e)(i).

33.     In addition to the Debtors' business operations, creditors, and lenders being located across the country, Alton Davis, the President and Chief Operating Officer of the Debtors resides in Florida. Mr. Davis routinely travels to the Debtors' locations. Other employees based

at the Debtors' headquarters also routinely travel to the Debtors' depots and the Tennessee facility. Mr. Davis, as well as others employed by the Debtors, have already proven they will attend hearings as necessary in Delaware and make themselves available for depositions in other states.

34.     In short, transferring venue of the Chapter 11 Cases would unnecessarily harm the administration of the Debtors' estates. A transfer of venue would slow the Debtors' Chapter 11 Cases, including the sale process, as new lawyers, a new judge, and a new United States Trustee get up to speed and learn the facts and circumstances of the Chapter 11 Cases. *See, e.g.*, *In re Manville Forrest Prods. Corp.*, 896 F.2d at 1391 (affirming the denial of a venue transfer motion which was partially based upon the District Court's findings that "the bankruptcy court had developed a substantial 'learning curve' and that transferring venue would have delayed the final resolution of the bankruptcy case."). Any delays preventing the Debtors from expeditiously conducting their sale process or liquidating inventory on hand will only serve to create more potential liquidity issues diminishing further any return to the constituents in the Chapter 11 Cases. *See, e.g.*, Transcript of Hearing at 55-57,  *In re Caribbean Petroleum Corp.*, Case No. 10-12553 (KG) [Docket No. 167] (Bankr. D. Del. Sept. 8, 2010) (denying venue transfer motion and noting that "[t]ransferring the case is fraught with risk for these debtors. The sale process and the DIP loan facility both largely hinge upon this case moving promptly and any delay regardless of how necessary it would be in the event of a transfer put these debtors at risk that they will not be able to accomplish the milestones that are really the center of the sale process and the recovery for creditors.").

35.     Finally, the Delaware Bankruptcy Court allows for parties to participate telephonically in hearings and electronically file pleadings. The Debtors have also retained a

sophisticated claims agent that is making all pleadings available free of charge through its website. As stated by Judge Kevin Gross, "this modern age of travel and communication" somewhat lessens the geographical considerations when jurisdictions are similarly accessible and convenient and the Debtors have parties in interest located across the United States. *In re Caesars Entm't Operating Co., Inc.*, 2015 WL 495259, at *6. *See, e.g.*, *Enron I.*, 274 B.R. at 347.

36.     The Movants have not met their burden to show that the economic administration of the estate is in their favor for a venue transfer.

### (2)     Location of the Debtors' Assets

37.     Courts in this jurisdiction have previously declined to transfer venue when the majority of a Debtors' assets are located in a different state. *See, e.g.*, *In re Rests. Acquisition I, LLC*, Case No. 15-12406 (KG), 2016 WL 855089, at *4 (Bankr. D. Del. Mar. 4, 2016) (noting that with respect to this factor, transferring would only "provide[] minimal incremental benefits in the context of this chapter 11 proceeding").

38.     The Movants incorrectly contend that the "Debtors operating assets are primarily located in the State of Louisiana. The Louisiana operating assets, on information and belief, account for ninety percent (90%) of the value of the Debtors total assets." Motion ¶ 17. This assertion is not accurate. This is not a single asset real estate case. To the contrary, the Debtors have production facilities in Louisiana and Tennessee and depots in Illinois, Oklahoma, and Pennsylvania. In fact, as of the Petition Date, the Debtors' only operating facility was the Tennessee facility. Moreover, the following chart details the location of the Debtors' current inventory balance:

| Location | ON HAND | | IN TRANSIT | | TOTAL | |
|---|---|---|---|---|---|---|
| | Tons | % | Tons | % | Tons | % |
| **Depots** | | | | | | |
| Catoosa, OK | 8,878 | 12.7% | 1,556 | 20.6% | 10,434 | 13.4% |
| Chicago, IL | 4,456 | 6.4% | 4,491 | 59.5% | 8,947 | 11.5% |
| Leetsdale, PA | 7,591 | 10.8% | 1,503 | 19.9% | 9,093 | 11.7% |
| **Production Facilities** | | | | | | |
| Harriman, TN | 25,912 | 37.0% | - | - | 25,912 | 33.4% |
| LaPlace, LA | 23,232 | 33.2% | - | - | 23,232 | 29.9% |
| **Total** | **70,068** | **100.0%** | **7,550** | **100.0%** | **77,618** | **100.0%** |

As this chart details, the majority of the Debtors' inventory is **not** located in Louisiana. In fact, only approximately 30% of the Debtors' inventory is located in Louisiana. While the Movants point to the LaPlace production facility as a valuable asset, which it undoubtedly is, the Debtors inventory is worth tens of millions of dollars and represents a significant asset of the estates and is spread across the country.[12] *See contra* Transcript of Hearing at 26-27, *In re Oklahoma Procure Mgmt., LLC*, Case No. 182622 (MFW) [Docket No. 113] (Bankr. D. Del. Nov. 26, 2018) ("This is a local case that should have been filed where its assets are. . . . Delaware is not a venue for cases that only have a connection with one state and one district.").

39.     As such, the Movants cannot show that the second *CORCO* factor weighs in their favor.

### (3)     Proximity of Creditors

40.     The WARN Act Plaintiffs are *three* creditors who seek to represent one class of creditors. As discussed in ¶ 29 of this Objection, the Debtors' creditors are located across the United States. Both the size of the claims of Louisiana-based creditors and the number of Louisiana-based creditors do not warrant a transfer of venue. *See Enron I*, 274 B.R. at 345

---

[12] Arguably, the Debtors' estates' assets are not the physical assets themselves, but the proceeds derived from the sale of those assets. Those sale proceeds can be administered in Delaware.

(stating that the proximity of the creditors factor must consider "the number of creditors as well as the amount of claims held by such creditors"). Even assuming *arguendo* that the majority of creditors were Louisiana-based,[13] "this factor alone would not be determinative." *In re Enron Corp.*, 284 B.R. 376, 400 (Bankr. S.D.N.Y. 2002) ("**Enron II**") (quoting *In re Island Club Marina, Ltd.*, 26 B.R. 505, 507 (Bankr. N.D. Ill. 1983)).

41.     The Court and these Chapter 11 Cases are accessible to all creditors. For further example to what was already stated, Local Rule 3007-1(g) provides that parties may appear *pro se* and telephonically with respect to claims objections and the courts is this District routinely grant such an accommodation. *In re Rests. Acquisition I, LLC*,  2016 WL 855089, at *3 ("The Court does not take lightly the 160 former employees and their claims. The Court will be amenable to their participation in hearings by telephone, as the Court has done in numerous other cases. Whether former employees will have consented claims remains to be seen.").

42.     When considering the proximity of the creditors in these Chapter 11 Cases, as detailed above, the Prepetition Agent and the Subordinated Term Loan Agent are not located in Louisiana. *In re Suzanne De Lyon, Inc.*, 125 B.R. 863, 868 (Bankr.S.D.N.Y.1991) ("Of particular significance is the desire of the two secured banks to keep the case in New York"). To the contrary, the majority of all creditors in terms of number and the amount of claims are located *outside* of Louisiana.[14]

---

[13] Again, without any basis, the Movants claim that over fifty percent of the Debtors' "creditors or their counsel are located in the Texas/Louisiana area." The Debtors question how this number was calculated, *i.e.*, was it only based upon the Debtors' petitions? If so, the list reflects only the Debtors' top thirty unsecured creditors. The Debtors have not yet filed their Schedules or Statements, so this allegation is meritless and inappropriate. Further, if the fifty percent number was accurate, that does not mean that venue must be transferred, it means half the Debtors' creditors are *not* located in Texas or Louisiana.

[14] The State Declaration argues, inconsistently, that because creditors and members of the Committee are located in or have "operations centers" in "southern states", that venue belongs in the Eastern District of Louisiana. As mentioned repeatedly, the Debtors have "operations centers" in multiple states. There has also been no showing that travel from Texas, North Carolina, or Arkansas is demonstrably more efficient and convenient than the District of Delaware.

43.     The Debtors, the Committee, the Prepetition Agent, and the Subordinated Term Loan Agent; *i.e.*, the major participants in these Chapter 11 Cases, object to the transfer to the Eastern District of Louisiana.[15] *See, e.g.*, Transcript of Hearing, *In re The Banning Lewis Ranch Co., LLC*, Case No. 10-13445 (KJC) [Docket No. 232] (Bankr. D. Del. Dec. 8, 2010) (denying motion to transfer venue when debtor was conducting nationwide sales process and secured creditors supported venue in Delaware). A motion to transfer venue is not the proper medium to adjudicate the merits of an adversary complaint and the claims of the Debtors' former employees should not be used as a litigation tactic in an attempt to garner advantage in the WARN Act Adversary Proceeding. *See* Transcript of Hearing, *In re Carey Limousine L.A., Inc.*, Case No. 12-12644 (BLS) [Docket No. 146] (Bankr. D. Del. Dec. 5, 2012) (refusing to transfer venue when it was unclear as to the effective of the claims of drivers would have on the cases).

44.     As such, this factor does not weigh in favor of transfer.

**(4)     Proximity of the Debtors and Witnesses**

45.     The fourth and fifth factors - location of the Debtor and witnesses - does not focus on the location of all witnesses, only those who must appear in court. *CORCO*, 596 F.2d at 1248. The Debtors' President and Chief Operating Officer, Alton Davis, has already been made available for deposition in Louisiana. Further, Mr. Davis and Kevin Kirkland, the Debtors' Vice President of Finance, have already traveled to Delaware in these Chapter 11 Cases. Mr. Davis and the other members of management are willing and able to travel for hearings or meetings as needed. Given this fact, this factor does not support transfer. *See Enron II*, 384 B.R. at 393. *See, e.g.*, *In re Rests. Acquisition I, LLC*, 2016 WL 855089, at *4 ("With respect to . . . proximity of the witnesses, neither party disputes that the vast majority of the Debtor's employees are located

---

[15]   Upon information and belief, each of these parties will be filing separate objections or a joinder to this Objection.

in Texas. However, as discussed *supra*, numerous individuals and entities involved in the administration of the estate are located outside of Texas. Accordingly, [this factor] is neutral.").

46.     Additionally, the Debtors' books and records are largely electronically stored, meaning they can be transported and accessed quickly and efficiently. This makes this factor largely irrelevant. *See, e.g.*, *In re Suzanne De Lyon, Inc.*, 125 B.R. at 868 ("Although the books and records of the company are kept in Houston, these records could easily be transported to New York when needed. Consequently, this factor does not weigh in favor of transfer.").

47.     The Movants have not met their burden with respect to this factor.

48.     In sum, the Movants have not met their burden to demonstrate that these Chapter 11 Cases should be transferred for the convenience of the parties.

**B.      The Movants Cannot Demonstrate that Venue Must Be Transferred in the Interest of Justice**

49.     "The 'interest of justice component of Section 1412 is a broad and flexible standard which must be applied on a case-by-case basis. It contemplates a consideration of whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness...." *In re Patriot Coal Corp.*, 482 B.R. 718 739 (Bankr. S.D.N.Y. 2012) (citing *In re Manville Forest Prods. Corp.*, 896 F.2d at 1391). As noted above, when venue is proper under Section 1408, courts frequently give the debtor deference. *In re Rehoboth Hosp., LP*, Case No. 11–12798, 2011 WL 5024267, at *3 (Bankr. D. Del. Oct. 19, 2011) ("Generally, there is a presumption in favor of maintaining the debtor's choice of forum.").

50.     The Debtors are Delaware limited liability companies, and, to that end, if the Court were to transfer venue, the interest of justice would not be served. *In re Rests. Acquisition I, LLC*, 2016 WL 855089, at *5 ("Here the Debtor is a Delaware limited liability company with all the accompanying rights and privileges. There is no evidence that its decision to file its

19

chapter 11 petition in this jurisdiction was a product of bad faith or poor business judgment. Furthermore, the lenders have noted there was no collusion prior to the Petition Date and that the decision to file here was made by the Debtor. Granting deference to its decision to file for chapter 11 in this forum is consistent with the jurisprudence on this issue. As a result, the Court concludes that a venue transfer would not serve the interests of justice."). In fact, the Debtors' right to justice would be greatly impeded as the transfer of venue would only delay the administration of these Chapter 11 Cases and potentially thwart a sale process that is being run in an attempt to find a strategic or financial buyer for the business operations. This Court should not be distracted from that ultimate goal of these Chapter 11 Cases. *See, e.g.*, Transcript of Hearing at 26-27, *In re Oklahoma Procure Management, LLC*, Case No. 182622 (MFW) [Docket No. 113] (Bankr. D. Del. Nov. 26, 2018) (allowing venue to remain in Delaware because delay in the sale process may lead to liquidation).

51.     The Prepetition Secured Parties are owed over $70 million. The Debtors are liquidating their inventory on hand and conducting a global sale process in hopes of satisfying these obligations and providing a meaningful return for creditors, as well as for the goal of increasing the likelihood that the local community will benefit from the outcome of the sale of substantially all of the Debtors' assets. While the Movants filed the Adversary Proceeding immediately on the Petition Date, the result of the Adversary Proceeding will not single-handedly affect the outcome of the Chapter 11 Cases.

52.     Time is of the essence in these Chapter 11 Cases as the Debtors must complete the sale process as soon as practicable. Any delay will be detrimental to the sale process and ultimate viability of the Chapter 11 Cases. Thus, it is critical for the Debtors to complete the sale process and emerge from bankruptcy as soon as possible.

70911054.8

53.     As such, the interests of justice do not favor transfer.

**WHEREFORE**, the Debtors respectfully request that the Court deny the Motion.

Dated:   October 30, 2019
        Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

*/s/     Christopher A. Ward*
Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen J. Astringer (Del. Bar No. 6375)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sastringer@polsinelli.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

70911054.8

## Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |

### DECLARATION OF ALTON DAVIS, PRESIDENT AND CHIEF OPERATING OFFICER OF BAYOU STEEL BD HOLDINGS, L.L.C., IN SUPPORT OF THE OBJECTION OF DEBTORS TO MOTION OF WARN ACT CLAIMANTS TO TRANSFER VENUE OF THREE AFFILIATED CASES TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF LOUISIANA

I, Alton Davis, hereby declare under penalty of perjury and to the best of my knowledge, information and belief:

1.      I am the President and Chief  Operating Officer ("**COO**") of Bayou Steel BD Holdings, L.L.C. and its subsidiaries (collectively, the "**Debtors**" or the "**Company**") in the above-captioned chapter 11 cases (collectively, the "**Chapter 11 Cases**"). I have served as President and COO of the Debtors since April 4, 2016.

2.      In my capacity as COO of the Debtors, I have personal knowledge of, and am familiar with, the business affairs, day-to-day operations, books and records, and financial condition of the Debtors. I am authorized to make this declaration (this "**Declaration**") on behalf of the Debtors. Except as otherwise noted, I have personal knowledge of the matters set forth herein or have gained knowledge of such matters from the Debtors' employees, agents, attorneys, and advisors, the accuracy and completeness of which information I relied upon to provide this Declaration. References to the Bankruptcy Code (as hereafter defined), the chapter

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

11 process, and related legal matters are based on my understanding of such matters in reliance on the explanation provided by, and the advice of, counsel. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

3.     I have reviewed the *Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* [Docket No. 68] (the "**Motion**") filed by Troy Fleming, Jarrod Nabor, and Davarian Ursin (collectively, the "**WARN Act Claimants**" or "**Movants**").

4.     I submit this Declaration on behalf of the Debtors in support of the *Objection of Debtors to Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* (the "**Objection**").

5.     I have personally reviewed the Debtors' company formation documents and understand that each of the three Debtors is a Delaware limited liability company: BD LaPlace LLC was formed on May 26, 1988; BD Bayou Steel Investment, LLC was formed on May 18, 2006; and Bayou Steel BD Holdings, L.L.C. was formed on December 22, 2015.

6.     The Debtors are a national steel producer with facilities and warehouses in five states that ship and deliver steel to locations across the country and internationally. While the Debtors are headquartered in LaPlace, Louisiana, the Debtors operate production facilities in LaPlace, Louisiana and Harriman, Tennessee. The Debtors also operate three distribution depots in Catoosa, Oklahoma, Chicago, Illinois,[2] and Leetsdale, Pennsylvania.

7.     Based upon my review of the Debtors' books and records and Court pleadings:

    a.     Debtors' Professionals:

        (i)     The Debtors have retained counsel in Delaware: Polsinelli PC.

---

[2] The Debtors own the depot in Chicago, Illinois.

(ii)    The Debtors' financial advisor and investment banker, Candlewood Partners, LLC has offices in Cleveland, Ohio and New York, New York.

b.    Secured Debt

(i)    As of the Petition Date, the Debtors are obligated to Bank of America, N.A., in its capacity as agent and lender (the "**Prepetition Agent**") and Suntrust Bank (together with the Senior Agent, the "**Prepetition Lenders**") in the amount of approximately $41.25 million. The Prepetition Agent's representatives are located in Dallas Texas.

(ii)    The primary professionals for the Prepetition Agent are located in Dallas, Texas: Vinson & Elkins LLP. The Prepetition Agent has retained counsel in Delaware: Richards, Layton & Finger, P.A.

(iii)    As of the Petition Date, the Debtors are obligated to Black Diamond Commercial Finance, LLC as lender and agent (the "**Subordinated Term Loan Agent**", and together with the Prepetition Lenders, the "**Prepetition Secured Parties**") in the amount of approximately $36.5 million. The Subordinated Term Loan Agent's representatives are located in Connecticut.

(iv)    The primary professionals for the Subordinated Term Loan Agent are located in Chicago, Illinois: Winston & Strawn, LLP. The Subordinated Term Loan Agent has retained counsel in Delaware: Fox Rothschild LLP.

c.    Unsecured Debt

(i)    Attached to the Debtors' petitions was Official Form 204, which lists the creditors who have the thirty largest unsecured claims not held by insiders. Only one of the top ten unsecured creditors is located in Louisiana. Of the Debtors' top thirty unsecured creditors, only eight are located in Louisiana.

(ii)    As of the Petition Date, the Debtors have approximately $41 million outstanding in unsecured trade debt (the "**Unsecured Trade Debt**"). The Unsecured Trade Debt comprises the majority of the Debtors' unsecured debt. The Unsecured Trade Debt is held by approximately 760 parties (the "**Unsecured Trade Creditors**").

(iii)    Approximately $9.62 million in Unsecured Trade Debt is attributable to creditors located in Louisiana. This represents approximately 23.3% of the total Unsecured Trade Debt.

70911054.8

>     (iv)    Approximately 225 of the Unsecured Trade Creditors are located in Louisiana. This represents approximately 29.6% of the total Unsecured Trade Creditors.

8.    The Debtors decided to file the Chapter 11 Cases in the District of Delaware after consulting with counsel. The Debtors selected the District of Delaware as the proper venue because they believe it is the best and most convenient forum to implement a successful and expeditious sale process.

9.    The Debtors do not deny that the majority of the Debtors' former employees are located in Louisiana and some may be part of the class that the WARN Act Claimants seek to represent. Regardless, the Debtors current employees and former employees are located in in numerous states besides Louisiana including Illinois, Georgia, Ohio, Oklahoma, Pennsylvania, Tennessee, and Texas. Many of the Debtors' employees belong to the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied-Industrial, and Service Workers International Union, which I understand is represented in these Chapter 11 Cases.

10.    I reside in Florida. I routinely travel to the Debtors' location in Tennessee as part of my job. I attended the first day hearing in these Chapter 11 Cases in Delaware. I have also made myself available for a deposition in New Orleans, Louisiana.

11.    I, and other members of management, am willing and able to travel for hearings or meetings as needed.

12.    No member of the Debtors' board of directors (the "**Board**") is located in Louisiana. I understand that he Board has held only one in-person meeting in Louisiana.

13.    I believe that transferring venue of the Chapter 11 Cases would unnecessarily harm the administration of the Debtors' estates. A transfer of venue would slow the Debtors' Chapter 11 Cases, including the sale process, as new lawyers, a new judge, and a new United States Trustee get up to speed and learn the facts and circumstances of the Chapter 11 Cases.

Any delays preventing the Debtors from expeditiously conducting their sale process or liquidating inventory on hand will only serve to create more potential liquidity issues diminishing further any return to the constituents in the Chapter 11 Cases.

14.    As I noted above, the Debtors have production facilities in Louisiana and Tennessee and depots in Illinois, Oklahoma, and Pennsylvania. In fact, as of the Petition Date, the Debtors' only operating facility was the Tennessee facility. Moreover, the following chart details the location of the Debtors' current inventory balance:

| Location | ON HAND | | IN TRANSIT | | TOTAL | |
|---|---|---|---|---|---|---|
| | Tons | % | Tons | % | Tons | % |
| **Depots** | | | | | | |
| Catoosa, OK | 8,878 | 12.7% | 1,556 | 20.6% | 10,434 | 13.4% |
| Chicago, IL | 4,456 | 6.4% | 4,491 | 59.5% | 8,947 | 11.5% |
| Leetsdale, PA | 7,591 | 10.8% | 1,503 | 19.9% | 9,093 | 11.7% |
| **Production Facilities** | | | | | | |
| Harriman, TN | 25,912 | 37.0% | - | - | 25,912 | 33.4% |
| LaPlace, LA | 23,232 | 33.2% | - | - | 23,232 | 29.9% |
| **Total** | **70,068** | **100.0%** | **7,550** | **100.0%** | **77,618** | **100.0%** |

As this chart details, the majority of the Debtors' inventory is *not* located in Louisiana. In fact, only approximately 30% of the Debtors' inventory is located in Louisiana. While the Movants point to the LaPlace production facility as a valuable asset, which it undoubtedly is, the Debtors inventory is worth tens of millions of dollars and represents a significant asset of the estates and is spread across the country.

15.    The Debtors' books and records are largely electronically stored.

16.    I do not believe the interests of justice would be served if the Chapter 11 Cases were transferred to the Eastern District of Louisiana. In fact, the Debtors' right to justice would be greatly impeded as the transfer of venue would only delay the administration of these Chapter

70911054.8

11 Cases and thwart a sale process that is being run in an attempt to find a strategic or financial buyer that will re-start business operations. This Court should not be distracted from that ultimate goal of these Chapter 11 Cases.

17.     The Prepetition Secured Parties are owed over $70 million. The Debtors are liquidating their inventory on hand and conducting a global sale process in hopes of satisfying these obligations and providing a meaningful return for unsecured creditors, as well as the opportunity to increase the likelihood that the local community will benefit from the outcome of the sale of substantially all of the Debtors' assets. While the Movants filed the Adversary Proceeding on the Petition Date, the result of the Adversary Proceeding will not affect the outcome of the Chapter 11 Cases.

18.     Time is of the essence in these Chapter 11 Cases as the Debtors must complete the sale process by years end. Any delay will be detrimental to the sale process and ultimate viability of the Chapter 11 Cases. Thus, it is critical for the Debtors to complete the sale process and emerge from bankruptcy as soon as possible.

## **RESPONSE TO STATE DECLARATION**

19.     I have reviewed the *Declaration in Support of Motion of WARN Act Claimants to Transfer Venue of Three Affiliated Chapter 11 Bankruptcy Cases to the United States Bankruptcy Court for the Eastern District of Louisiana* [Docket No. 85] (the "**State Declaration**").

20.     There is no evidence that any "environmental remediation" would be required for any of the Debtors' real property. State Declaration, pg. 2.[3]

---

[3] The State Declaration does not use numbered paragraphs. All references to the State Declaration are made to page numbers.

Executed this 30th day of October, 2019.
LaPlace, Louisiana

**Bayou Steel BD Holdings, L.L.C.**
Debtors and Debtors in Possession


/s/  Alton Davis
Alton Davis
President and Chief Operating Officer

70911054.8

**Exhibit B**



# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF

DELAWARE, DO HEREBY CERTIFY "BD LAPLACE, LLC" IS DULY FORMED UNDER

THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A

LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF

THE TWENTY-SEVENTH DAY OF SEPTEMBER, A.D. 2019.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "BD LAPLACE, LLC"

WAS FORMED ON THE TWENTY-SIXTH DAY OF MAY, A.D. 1988.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN

PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

2161945  8300

SR# 20197271942

You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203684388

Date: 09-27-19



# Delaware

**The First State**

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "BD BAYOU STEEL INVESTMENT, LLC" IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-SEVENTH DAY OF SEPTEMBER, A.D. 2019.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "BD BAYOU STEEL INVESTMENT, LLC" WAS FORMED ON THE EIGHTEENTH DAY OF MAY, A.D. 2006.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

4161514  8300
SR# 20197271942
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203684382

Date: 09-27-19

2



# Delaware

### The First State

Page 1

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY "BAYOU STEEL BD HOLDINGS, L.L.C." IS DULY FORMED UNDER THE LAWS OF THE STATE OF DELAWARE AND IS IN GOOD STANDING AND HAS A LEGAL EXISTENCE SO FAR AS THE RECORDS OF THIS OFFICE SHOW, AS OF THE TWENTY-SEVENTH DAY OF SEPTEMBER, A.D. 2019.

AND I DO HEREBY FURTHER CERTIFY THAT THE SAID "BAYOU STEEL BD HOLDINGS, L.L.C." WAS FORMED ON THE TWENTY-SECOND DAY OF DECEMBER, A.D. 2015.

AND I DO HEREBY FURTHER CERTIFY THAT THE ANNUAL TAXES HAVE BEEN PAID TO DATE.

Jeffrey W. Bullock, Secretary of State

5915017  8300
SR# 20197271942
You may verify this certificate online at corp.delaware.gov/authver.shtml

Authentication: 203684391
Date: 09-27-19

70911054.8