## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Bayou Steel BD Holdings, L.L.C., *et al*.,[1] | Case No.: 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |

---

| | |
|---|---|
| CHARLES ZIEGELER and RONNIE MILLET, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | |
| v. | Adv. Pro. No.: 19-_____ (KBO) |
| BAYOU STEEL BD HOLDINGS, L.L.C. d/b/a BAYOU STEEL GROUP, BD BAYOU STEEL INVESTMENT, LLC, BD LAPLACE, LLC, BAYOU STEEL BD HOLDINGS II, L.L.C., and BLACK DIAMOND CAPITAL MANAGEMENT, LLC, | |
| Defendants. | |

## <u>CLASS ACTION ADVERSARY PROCEEDING COMPLAINT</u>

Plaintiffs, Charles Ziegeler and Ronnie Millet, (hereinafter "Plaintiffs"), individually and

as representatives of a proposed class of similarly situated former employees of Bayou Steel BD

Holdings, L.L.C. d/b/a Bayou Steel Group, f/k/a BD Long Products, LLC ("BD Long") BD Bayou

Steel Investment, LLC (hereinafter "BD Investment") and BD LaPlace, LLC f/k/a Arcelormittal

---

[1] The Debtors in these cases are Bayou Steel BD Holdings, L.L.C. (Bankr. Case No. 19-12153-KBO); BD Bayou Steel Investment, LLC (Bankr. Case No. 19-12154-KBO); and BD LaPlace, LLC (Bankr. Case. No. 19-12155-KBO). The last four digits of the taxpayer identification number for each of the Debtors follow in parenthesis: (i) Bayou Steel BD Holdings, L.L.C. (1984); (ii) BD Bayou Steel Investment, LLC (1222); and (iii) BD LaPlace, LLC (5783). The mailing address for the Debtors is 138 Highway 3217, LaPlace, Louisiana 70068.

LaPlace, LLC (""BD LaPlace" and, collectively, "Debtors"), allege upon personal knowledge of the facts respectfully pertaining to their own actions, and upon information and belief as to all other matters, bring this action against the defendants identified further below (hereinafter "Defendants and/or Debtors") and aver as follows:

## PRELIMINARY STATEMENT

1.      On or about September 30, 2019, Plaintiffs, along with nearly 400 other fellow employees of Bayou Steel BD Holdings, L.L.C. d/b/a Bayou Steel Group working at the LaPlace, Louisiana plant lost their jobs when it was suddenly announced that Defendants were closing the Bayou Steel Group plant.  The Bayou Steel plant, located near the Mississippi River produced structural steel and beams and had been a part of the LaPlace, Louisiana community since 1979. The employees learned of their terminations either directly from their supervisors but mostly through word of mouth from other coworkers, text messages and/or via Facebook.

2.      This action is brought as a result of Defendants' failure to provide its workers with the notification required under the federal Worker Adjustment and Retraining Notification Act, 29 U.S.C. § 2101, *et seq.* (the "WARN Act"), and to recover appropriate relief to remedy this situation.

3.      Through this action, Plaintiffs and other similarly situated Class Members seek damages in the amount of sixty (60) days' pay and benefits, by reason of Defendants violation of the WARN Act.  Plaintiff and Class Members were employees of Defendants for purposes of the WARN Act and were terminated as part of a mass layoff and/or plant closing ordered by Defendants.  Defendants violated federal law by failing to give Plaintiffs and other similarly situated former employees of Bayou Steel Group sixty (60) days advance notice as required by law.

## THE PARTIES

4.    Plaintiff Charles Ziegeler, is a citizen of the State of Louisiana, residing in Ascension Parish and is a former employee of Defendants who worked at the Bayou Steel Group plant located at 138 Highway 3217, LaPlace, Louisiana. ("LaPlace Plant")  Mr. Ziegeler worked for over thirty (30) years at the LaPlace Plant and at the time of his termination was a facility manager.   Mr. Ziegeler was informed of his termination via word of mouth from other employees and did not receive written notice of his termination.

5.    Plaintiff Ronnie Millet is a citizen of the State of Louisiana, residing in St. John Parish and is a former employee of Defendants who worked at the LaPlace Plant.   Mr. Millet had worked at the LaPlace Plant since 1981 holding a variety of positions, including 2nd Operator and 1st Operator, most recently at the time of his termination was the Casting Department Supervisor. Mr. Millet was on medical leave at the time of the plant closure and learned of his termination by word of mouth by other employees on September 30, 2019.

6.    Defendant Debtor and Defendant Bayou Steel BD Holdings, L.L.C. d/b/a Bayou Steel Group f/k/a/ BD Long Products, LLC ("BD Holdings") is a Delaware limited liability company with its principal place of business at 138 Highway 3217, LaPlace, Louisiana 70068.

7.    Debtor and Defendant, BD LaPlace, LLC f/k/a Arcelormittal LaPlace, LLC ("BD LaPlace") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

8.    Debtor and Defendant BD Bayou Steel Investment, LLC ("BD Investment") is a Delaware limited liability company with its principal place of business located at 138 Highway 317, LaPlace, Louisiana 70068.

9.      On September 30, 2019 each of the Debtors filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 19-1253.

10.     Upon information and belief, Defendant Bayou Steel Holdings, II, L.L.C. ("BS Holdings") is a Delaware limited liability company with its principal place of business located at 138 Highway 3217, LaPlace, Louisiana 70068.

11.     Upon information and belief, Defendant BS Holdings was also an employer of the Plaintiffs and the Proposed Class since BS Holdings has a 100% equity security interest in Debtors and had oversight and control over the employment and personnel policies of Debtors.

12.     Upon information and belief, Black Diamond Capital Management, LLC ("Black Diamond") is a Delaware limited liability company with its principal place of business at One Sound Shore Drive, Greenwich, Connecticut 06830.

13.     Upon information and belief, Black Diamond was also an employer of the Plaintiff and the Proposed Class since Black Diamond holds a 100% equity interest in BS Holdings and therefore owns 100% of each of the subsidiary Debtors and as the 100% equity owners, Black Diamond had oversight and control over the employment and personnel policies of Debtors.

14.     Upon information and belief, Black Diamond through BS Holdings owned and controlled Debtors.

15.     Upon information and belief, at all relevant times, Defendants jointly owned and/or operated facilities in four locations:   LaPlace Louisiana ("Louisiana Facility"); Harriman Tennessee ("Tennessee Facility"); Leetsdale Pennsylvania (the "Pennsylvania Facility"); and Catoosa Oklahoma (the "Oklahoma Facility") and, collectively referred to as "Defendants' Facilities").

16.     Upon information and belief, at all relevant times, Defendants jointly employed approximately 460 employees across Defendants' Facilities in the time frame immediately preceding September 30, 2019.   Defendants employed approximately 380 employees at the Louisiana Facility and approximately 70 employees at the Tennessee Facility.

## JURISDICTION AND VENUE

17.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157, 1331, 1334, 1367 and 29 U.S.C. § 2104(a)(5), and the standing order of reference of bankruptcy matters by the United States District Court for the District of Delaware.

18.     The Court also has supplemental jurisdiction over the state law claims asserted herein, pursuant to 28 U.S.C. § 1367.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1409 and 29 U.S.C. § 2104(a)(5).   The instant proceeding is related to Debtors' Chapter 11 cases which are currently pending in this district.

## FACTUAL ALLEGATIONS

20.     Debtors and Defendants owned and operated Defendants' Facilities at four locations, including the Louisiana Facility, the Pennsylvania Facility, the Tennessee Facility and the Oklahoma Facilities.

21.     On or around September 30, 2019, Plaintiffs and Class Members arrived to work to learn that Defendants' Facilities were closing.  Plaintiffs and Class Members learned of the sudden closing through verbal or electronic communications with management and/or their co-workers, or through text messages, Facebook or phone calls from their fellow employees.

22.     On or around September 30, 2019, Plaintiffs and Class Members, without any advance warning or notice learned that their positions were terminated as a result of the closure of

Defendants' Facilities.   Plaintiffs and Class Members learned of their sudden termination through verbal or electronic communications with management and/or their co-workers, or through news media, Facebook and/or text messages and phone calls from their fellow employees.

23.     Neither Plaintiffs nor Class Members received any notice or warning that Defendants were closing their facilities, and in Louisiana, the unexpected closure came as a complete surprise to state and local officials.   St. John Parish President Natalie Robottom confirmed that neither she, nor the State of Louisiana were given any advance warning.[2]

24.     Upon information and belief, on September 30, 2019 at all of Defendants' Facilities, over 400 employees, which include Plaintiffs and Class Members learned either directly or indirectly that they were terminated effectively immediately as a result of the imminent closure of Defendants' Facilities.

## DEFENDANTS' VIOLATIONS OF THE WARN ACT

25.     Plaintiffs and those they seek to represent herein were discharged without cause on their part on or about September 30, 2019, as the reasonably foreseeable consequence of the mass termination and Facility closings ordered by Debtors and Defendants, and are "affected employees" within the meaning of 29 U.S.C. § 2101(a)(5).

26.     Plaintiffs bring this action on their own behalf, pursuant to the WARN Act, and on behalf of all other similarly situated employees or former employees whose employment was terminated on or about September 30, 2019 and within 30 days of that date.

---

[2]  https://www.fox8live.com/2019/09/30/bayou-steel-closing-without-advance-warning-workers-parish-state-officials/ (last visited October 25, 2019).

27.     Debtors and Defendants terminated Plaintiffs' employment as part of a mass termination or plant closing as defined by 29 U.S.C. § 2101, for which Plaintiffs were entitled to receive sixty (60) days advance written notice under the WARN Act.

28.     Debtors and Defendants did not give Plaintiffs or any Class Members the statutorily required sixty (60) day notice of the mass layoff or termination in violation of the WARN Act.

29.     Plaintiffs and Class Members were discharged by Debtors and Defendants without cause on their part and are "affected employee(s)" within the meaning of the WARN Act, 29 U.S.C. § 2101(a)(5).

30.     Plaintiffs and Class Members bring this adversary proceeding pursuant to 29 U.S.C. § 2104(a)(5), Fed. R. Bankr. P. 7023, and Fed. R. Civ. P. 23(a) and (b)(3), for relief against Debtors and Defendants for all violations of the WARN Act, 29 U.S.C., § 2101 *et seq.* on their own behalf and on behalf of all other persons similarly situation as representatives of the following class defined below.

## CLASS ACTION ALLEGATIONS

31.     Plaintiffs bring this action on their behalf and on behalf of a class of all similarly situated employees.  Plaintiffs seek to certify a class (the "Class") defined as follows:

> All former employees of Defendants who were terminated from their employment without cause on or about September 30, 2019, and within 30 days of that date and/or all former employees of Defendants who were terminated without cause as the reasonably foreseeable consequence of the mass layoff and/or facility closings ordered by Defendants on or about September 30, 2019, without receiving sixty (60) days written notice of a mass layoff before the date of their termination.

32.     Excluded from the Class are Defendants, the legal representatives, heirs, successors and assigns of any excluded person, and members of the federal judiciary.

33.     **Numerosity:**   Upon information and belief, Plaintiffs estimate that the Class comprises of at least 400 fulltime employees who worked at the Defendants' Facilities, making the Class so numerous that joinder of all Class Members is impracticable.  The members of the Class can be identified and located using information contained in the Defendants' human resources records.

34.     **Commonality/Predominance:**   There are common questions of law and/or fact common to the Class that predominate over any questions affecting only individual Class Members.  The questions of law and fact common to the Class arising from Defendants' actions include but are not limited to the following:

a.      Whether the provisions of the WARN Act apply;

b.      Whether Plaintiffs and Class Members are "affected employees" as defined by the WARN Act;

c.      Whether the employee termination by Defendants on September 30, 2019 constitutes a "termination" and/or "mass layoff" under the WARN Act;

d.      Whether Defendants failed to provide the notice(s) required by the WARN Act (29 U.S.C. § 2102(b));

e.      Whether Defendants can avail themselves of any of the provisions of the WARN Act which permit lesser periods of notice;

f.      The appropriate formulae to measure damages under the WARN Act (29 U.S.C. § 2104(a)(2)); and

g.      The appropriate definitions and formulae to measure the payments to potentially offset damages under the WARN Act (29 U.S.C. § 2104(a)(2)).

35.    **Typicality:**    Plaintiffs' claims are typical of all Class Members.  Plaintiffs and Class Members were subjected to the same kind of unlawful conduct, namely that they were involuntarily terminated without adequate notice under the WARN Act on September 30, 2019. Furthermore, the claims of Plaintiffs and the Class members are based on the same legal theories and questions of law and fact pursuant to the WARN Act.

36.    **Superiority:**    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.   Class action treatment will allow a large number of similarly situated individuals to simultaneously pursue their common claims in a single forum in an efficient manner, without unnecessary duplication of effort and expense that would be required if numerous individual actions were pursued.  However, the affected employees must opt-in to this litigation so that the right to damages can be determined and quantum of damaged calculated by the Court.  Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

37.    **Predominance:**    Issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof.

38.    The common questions of law and fact described above are the most significant questions for the class action, the resolution of which will resolve the claims other than calculating damages for each Class member.

39.    Damages for class members will be easily calculated through formulas, *e.g.*, subtracting the amount returned from the amount paid for a transaction.

40.    Defendants' human resources records and payroll information provide for the calculation of damages, and ascertaining which employees fall within the Class definition and a calculation of their damages.

41. **Adequacy of Representation:** Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the Class, and Plaintiffs intend to prosecute this action vigorously.

42. Plaintiffs have retained experienced counsel qualified in class action litigation, including WARN Act class actions and bankruptcy proceedings and counsel are competent to assert the interests of the Class. Counsel for Plaintiffs have extensive experience successfully representing plaintiffs in complex class action litigation across the county.

43. The unlawful acts of Defendants, as alleged herein, constitute a course of conduct common to the Plaintiffs and each Class members.

## COUNT I
## VIOLATIONS OF THE UNITED STATES WORKER ADJUSTMENT AND RETRAINING NOTIFICATION ACT, 29 U.S.C. §§ 2101, *et seq.* ("WARN ACT")

44. Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

45. At all times material herein, Plaintiffs, and similarly situated persons, have been entitled to rights, protections and benefits provided under the WARN Act, 29 U.S.C. § 2101 *et seq.* Plaintiffs and members of the Class are "affected employees" of Defendants within the meaning of 29 U.S.C. § 2101 (a)(5).

46. At all relevant times, Defendants were "employers" as that term is defined in 29 U.S.C. §2101(a)(1) and 20 C.F.R. § 639.3(a) and Defendants continued to operate as a business until it implemented a mass layoff or plant closure at the Defendants' Facilities. Defendants employed more than 100 employees who in the aggregate worked at least 4,000 hours per week exclusive of hours of overtime within the United States.

47. On or about September 30, 2019, Defendants ordered a "mass layoff" or "plant closing" of the Defendants' Facilities, as those terms are defined in 29 U.S.C. § 2101(a)(2), (3).

48.     Plaintiffs are informed and believe – and thereon allege – that the mass layoff or plant closing at the Defendants' Facilities resulted in "employment losses" as that term is defined by 29 U.S.C. § 2101(a)(2) for at least 50 of Defendants' employees as well as 33% of Defendants' workforce at each of their Facilities, excluding part-time employees as that term is defined by 29 U.S.C. § 2101(a)(8).

49.     Plaintiffs and each Class Member were discharged by Defendants without cause on their part.

50.     Defendants failed to give Plaintiffs and Class Members written notice that complied with the requirements of the WARN Act.

51.     Plaintiffs and each of the other Class Members are "aggrieved employees" of Defendants, at that term is defined in 29 U.S.C. §2104(a)(7).

52.     Defendants failed to pay (and continues to pay to pay) Plaintiffs and Class Members their respective wages, salary, commissions, bonuses, accrued holiday pay and accrued vacation pay for 60 days following notice of their termination and failed to pay accrued retirement benefits, for 60 days following notice of their respective terminations.   Plaintiffs and Class Members have been injured as a result of these WARN Act violations.

53.     Defendants are also liable to Plaintiffs for reasonable attorneys' fees under 29 U.S.C. § 2104.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiffs, on behalf of themselves and all Class Members, request the following:

(A)     That the Court determine and order that this action may be maintained as a class action under Fed. R. Civ. P. 23(b) and (c) and appointing Plaintiffs as class representatives and appointing their counsel to represent the Class;

(B)     That Defendants are found to have violated the provisions of the WARN Act as to Plaintiffs and the Class;

(C)     For an Order from the Court awarding Plaintiffs and the Class members unpaid wages, salary, commission, bonuses accrued holiday pay, accrued vacation pay, pension and 401(k) contributions, and other ERISA benefits for 60 working days following the Plaintiffs and/or Class members' termination, that would be been covered and paid under the then applicable employee benefit plans had that coverage continued for that period, all determined in accordance with the WARN Act, 29 U.S.C. § 2104(a)(a), in an amount to be proven at trial;

(D)     For an Order from the Court awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(E)     For an award of reasonable attorneys' fees, pre-judgment and post-judgment interest, as well all expert-witness fees and costs pursuant to 29 U.S.C. § 2104 and/or other applicable law; and

(F)     An Order granting Plaintiffs and the other members of the Class such further relief as the Court deems just and proper.

Dated:  October 30, 2019                        Respectfully submitted,

**WOMBLE BOND DICKNSON (US) LLP**

By:   */s/ Kevin J. Mangan*
      Kevin J. Mangan (DE Bar No. 3810)
      Nicholas T. Verna (DE Bar No. 6082)
      S. Alexander Faris (DE Bar No. 6278)
      1313 North Market Street, Suite 1200
      Wilmington, DE 19801
      Telephone:     (312) 252-4320
      Facsimile:     (312) 252-4330
      Email:         kevin.mangan@wbd-us.com
                     nick.verna@wbd-us.com
                     alexander.faris@wbd-us.com

      -AND-

**O'BELL LAW FIRM, LLC**
Eric J. O'Bell (*pro hac vice* to be filed)
Bradley T. Oster (*pro hac vice* to be filed)
3500 North Hullen Street
Metairie, LA 70002
Telephone:     (504) 456-8677
Facsimile:     (504) 456-8653
Email:         ejo@obelllawfirm.com
               bto@obelllawfirm.com

      -AND-

**PEIFFER WOLF CARR & KANE, APLC**
Brandon M. Wise (*pro hac vice* to be filed)
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Telephone:     (314) 833-4825
Facsimile:     (314) 833-4826
Email:

*COUNSEL FOR PLAINTIFFS AND
THE PUTATIVE CLASS MEMBERS*