# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] <br><br> Debtors. | Chapter 11 <br><br> Case No. 19-12153 (KBO) <br><br> (Jointly Administered) <br><br> **Re: Docket No. 73** |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DEBTORS' MOTION FOR ENTRY OF (I) AN ORDER (A) APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) SCHEDULING AN AUCTION AND SALE HEARING, (C) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT, (E) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AN ORDER (A) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (B) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (C) GRANTING RELATED RELIEF**

The Official Committee of Unsecured Creditors (the "Committee") of Bayou Steel BD Holdings, L.L.C., *et al.*, the above-captioned debtors and debtors-in-possession (collectively, the "Debtors"), by and through its proposed undersigned counsel, hereby files this limited objection (the "Objection") to the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and*

---

[1] The Debtors in these cases are: Bayou Steel BD Holdings, L.L.C.; BD Bayou Steel Investment, LLC; and BD LaPlace, LLC.

*(II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* (the "Motion").[2]  In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.     The Committee supports the Debtors' efforts to find a potential purchaser to restart their business operations and to maximize value of the Debtors' assets through an orderly sale process.  Given the lack of any prepetition marketing efforts, the prospect that a sale of substantially all of the Debtors' assets could be consummated only months after the bankruptcy filing, and the relatively low weekly cash burn of the idling of the Debtors' operations, the Committee determined it was important to provide slightly more time to potential bidders to facilitate an effective sale process that maximizes recoveries to all creditors.  The Committee has and will continue to work diligently with the Debtors and their prepetition senior lenders (the "ABL Lenders") and subordinated lenders (the "Term Lenders" and with the ABL Lenders, the "Lenders"), to resolve consensually the Committee's issues.  The Committee believes that the parties are in agreement on a revised timeline extending certain deadlines by approximately one week.  Similarly, the Committee understands that the Debtors have agreed to expand the Committee's consultation rights under the proposed bid procedures set forth in Exhibit 1 to the proposed order granting the Motion (the "Bid Procedures") to ensure that the Committee has a meaningful opportunity to provide input at every stage of the sale process.  It is anticipated that these negotiated terms, as well as any others achieved after the filing of this Objection, will be

---

[2]     Docket No. 73.

incorporated into a revised proposed order and revised bid procedures that are filed before the hearing on the Motion.[3]

2. Despite significant efforts by the parties, as of the date of this Objection, the Committee has not resolved all of its issues regarding the Bid Procedures. As currently proposed, the Bid Procedures effectively provide immutable credit bid rights to the Lenders. It is the Committee's understanding that the Lenders seek to expand these rights even further by providing, among other things, automatic credit bid protection rights in the full amount of their purported prepetition liens with respect to their alleged collateral. This not only eviscerates the Committee's fundamental right to challenge the priority and validity of the Lenders' secured claim, but will chill bidding to the detriment of all other creditors. Any credit bid rights must be subject to the Committee's lien challenge rights and disgorgement, if the underlying lien or security interest subject to the accepted credit bid is successfully challenged.

3. Lastly, although the proposed Bid Procedures afford the Lenders certain consultation rights, based upon previous communications, Bank of America, N.A., in its capacity as agent (the "ABL Agent") for the ABL Lenders, seeks greater control over the sale process by insisting on broad-reaching preapproval rights on virtually all of the Debtors' decisions at every step in the bidding, auction and sale process. This is excessive, inappropriate, and will not promote a robust and competitive sale process. The Debtors should not be authorized to proceed with the sale of substantially all of their assets in a manner that will only benefit their Lenders at the expense of all unsecured creditors. Accordingly, the Motion should not be approved unless and until the

---

[3] Given the ongoing dialogue among the parties, the Committee reserves all rights regarding the relief sought in the Motion and the form of order approving the Motion and the Bid Procedures.

60280/0001-18054997v1

Bid Procedures and the Bid Procedures Order are revised to address the Committee's issues raised in this Objection.

## BACKGROUND

**I.    General Case Background**

4.    On October 1, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court. Since the Petition Date, the Debtors have remained in possession of their assets and have continued to conduct limited operations and manage such businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.    On October 10, 2019, the Office of the United States Trustee for Region 3 appointed a five-member Committee consisting of: (i) Tokai Carbon GE LLC; (ii) Tri Coastal Trading, L.L.C.; (iii) Louisiana Scrap Metal Recycling of Baton Rouge, Inc.; (iv) American State Equipment Co., Inc.; and (v) United Steelworkers.[4] The Committee selected Kelley Drye & Warren LLP as its lead counsel and Cole Schotz P.C. as its Delaware counsel. The Committee also selected Alvarez & Marsal as its financial advisor.

**II.   The Interim Cash Collateral Order**

6.    On the Petition Date, the Debtors filed their Motion for Entry of Interim and Final Orders (I) Authorizing the Use of Cash, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief (the "Cash Collateral Motion").[5] On October 3, 2019, the Court entered an interim order (the "Interim Cash Collateral Order") approving the Cash Collateral Motion.[6]

---

[4]    Docket No. 67.

[5]    Docket No. 24.

[6]    Docket No. 42.

7.     Under the Interim Cash Collateral Order, the Committee is provided with 60 days from the date of its appointment – until December 9, 2019 (the "Lien Challenge Deadline"), to investigate if any claims exisit against the Lenders and the validity of their prepetition liens and claims against the Debtors.[7]

8.     On October 29, 2019, the Committee filed an objection to the Cash Collateral Motion, which, among other things, objects to the sweeping protections granted to the Lenders and the raises concerns regarding the administrative solvency of the proposed budget.[8]  A hearing on the final approval of the Cash Collateral Motion is scheduled for November 5, 2019.

### III.    The Sale Process

9.     Unlike most chapter 11 sale cases, there was no prepetition marketing of the Debtors' assets.  Instead, after the Debtors suffered severe liquidity issues, defaulted under their credit agreement with the ABL Lender, and forbearance agreement discussions with the Lenders broke down, the Debtors started discussions with the Lenders about an orderly liquidation of their remaining inventory and assets through a chapter 11 bankruptcy filing.[9]

10.    Only one week before the Petition Date – on September 24, 2019 – the Debtors retained Candlewood Partners in connection with the sale and marketing of their assets.[10]  On September 30, 2019, one day before the Petition Date, the Debtors conducted a reduction in force and idled most of their operations.[11]

---

[7]    *Id.* ¶ 75.

[8]    Docket No. 136.

[9]    *See Declaration of Alton Davis, President and Chief Operating Officer of Bayou Steel BD Holdings, L.L.C., in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "Davis Declaration"), Docket 14, ¶¶ 28-30.

[10]   *See* Docket 87.

[11]   *See* Davis Declaration at ¶ 30.

11.     On October 11, 2019, the Debtors filed the Motion seeking, among other things, Court approval of: (i) the Bid Procedures to be used in connection with the sale of substantially all of the Debtors' assets; (ii) procedures for the assumption and assignment of executory contracts and leases; (iii) the form and manner of the notice of auction and the sale hearing; and (iv) authorizing the Debtors to enter into an asset purchase agreement with any party identified as the stalking horse prior to the proposed bid deadline.

## OBJECTION

### I.     Any Credit Bid Must be Subject to the Committee's Challenge Rights.

12.     The Committee is supportive of a sale process that is consistent with the goal of section 363 of the Bankruptcy Code to maximize the proceeds of a sale of substantially all of a debtor's assets for the benefit of all creditors.[12] The Committee, however, objects to the rights of the Lenders to submit a credit bid that obliterates the Committee's pending investigation and lien challenge.

13.     As currently drafted, any Qualified Bidder[13] which holds a valid and perfected lien on any of the Debtors' assets "that is not subject to an objection by the commencement of the Auction" has the right to credit bid the value of their claim subject to evidence regarding the grant, perfection, priority, and validity of the lien and only with respect to collateral in which such

---

[12]     *In re Family Christian, LLC*, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3rd Cir. 2004) (debtor-in-possession has fiduciary duty to protect and maximize the estate's assets); *Four B. Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.)*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the [Bankruptcy] Code, [is] to enhance the value of the estate at hand.").

[13]     Capitalized terms used by not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

creditor is secured.[14] The Bid Procedures do not include any limitations on credit bids with respect to the Committee's lien challenge rights.

14. To date, the Lenders have not disclosed whether they intend to submit a credit bid at the auction. Section 363(k) allows the holder of a lien securing an allowed claim to bid in a non-ordinary course of business sale, and if successful, to offset its claim against the purchase price of the property. Specifically, section 363(k) states:

> At a sale under subsection (b) of this section of property that is subject to a lien that secures an allowed claim, unless the court for cause orders otherwise the holder of such claim may bid at such sale, and, if the holder of such claim purchases such property, such holder may offset such claim against the purchase price of such property.

11 U.S.C. § 363(k).

15. Where a lender's liens have not been deemed valid, courts have prevented or conditioned the lender's ability to credit bid or put in place certain protections that safeguard the debtor's unsecured creditors.[15]

16. The Interim Cash Collateral Order requires the Committee to conduct its investigation of the Lenders, obtain standing and commence an adversary proceeding all within 60 days of its formation - by the Lien Challenge Deadline.[16] The Committee has requested certain documents from the Lenders to investigate their alleged liens and security interests. To date, however, only a limited number of documents have been produced. Given the expedited sale

---

[14] *See* Bid Procedures at XI.

[15] *See e.g., In re Fisker Automotive Holdings, Inc.* 510 B.R. 55, 60 (Bankr. D. Del. 2014) (capped credit bid "for cause" because bidding would be frozen without it); *In re Philadelphia Newspapers, LLC*, 599 F.3d 298, (3d Cir. 2010) *(right to credit bid is not absolute);* In *In re Free Lance-Star Publ'g Co.*, 512 B.R. 798, 806 (E.D. Va. 2014) (capping lender's credit bid in light of questionable liens).

[16] Interim Cash Collateral Order, ¶ 75. The Committee is negotiating with the Lenders and the Debtors to modify this language to provide that the Committee only needs to file a motion seeking standing to pursue claims by the Lien Challenge Deadline and not obtain standing by that deadline.

7

60280/0001-18054997v1

process, any Committee challenge of the Lenders' liens (or other causes of action) will not be resolved until after the proposed closing date for the sale of the Debtors' assets.

17.     Until the Committee is provided with the requested documents, afforded sufficient time to review the documents, examined the alleged liens and security interests of the Lenders, confirmed that the estates do not have any claims against the Lenders, and confirmed that the Lenders are not unduly improving their position via a credit bid for the Debtors' assets, the Committee's challenge rights must be preserved for the benefit of all unsecured creditors.

18.     Thus, at a minimum, the Bid Procedures must expressly reserve the Committee's right to challenge any credit bid and seek disgorgement, if a credit bid is accepted and subsequently a successful lien or other challenge is sustained against the Lenders.

## II.     Any Expansion of the Lenders' Credit Bid Rights Is Inappropriate And Will Chill Bidding.

19.     As mentioned above, discussions are ongoing between the Debtors and Lenders regarding the Bid Procedures.  Based upon prior communciations with counsel for the Debtors and the ABL Agent, the Committee understands that the Lenders are seeking to expand their credit bid rights by obtaining, among other things, (i) automatic standing to credit bid up to the full amount of their claims as stipulated in the Interim Cash Collateral Order, (ii) full auction participation rights irrespective of whether they participated in prior rounds at the acution, and (iii) designation rights if they submit a credit bid.   The ABL Lenders also want to impose significant conditions any other party that seeks to credit bid including a blanket prohibiition against credit bids on the ABL Lender's collateral unless the entire amount of the ABL Lenders' prepetition claim is paid in full at closing.  Finally, the Lenders seek to be automatically deemed Qualified Bidders and not subject to any Bid Deadline, requirements regarding Deposits, Purchase Agreements, or the submission of documentation to support the validity of their purported secured claim.  Not only

are these proposed absolute and unfettered rights inapprproiate and unwarranted, they will fustrate an open and competititve sale process.

20. Any further relaxation of the credit bid requirements with respect to the Lenders will only serve to chill, rather than foster, competitive bidding. Affording the Lenders with absolute credit bid rights before expiration of the Lien Challenge Deadline also frustrates the statutory charge given to the Committee to investigate prepetition conduct and the important task of pursuing avoidance and other actions against the Lenders.

### III. The ABL Agent Is Not Entitled to Preapproval or Consent Rights.

21. As currently drafted, the Lenders have the same consultation rights as the Committee in connection with the sale process. Specifically, the ABL Agent, the ABL Lenders, and the Subordinated Term Loan Agent are each a Consultation Party under the Bid Procedures.[17] In that capacity, they (like the Committee) have the right to consult with the Debtors regarding various aspects of the sale including: (i) designation of the Stalking Horse; (ii) designation of a Qualifying Bid, including the Baseline Bid and Baseline Bidder; (iii) required increases to a Deposit; (iv) negotiations with a Qualifying Bidder in advance of the auction to potentially cure a bid that was not initially deemed a qualifying bid; and (vi) auction issues such as changes to procedures, modifications of bid increase requirements and designation of the best and highest bid.

22. The Committee understands that the ABL Agent, however, is seeking to amend the Bid Procedures to require prior approval on virtually all of the Debtors' decisions about the sale of its purported collateral. Specifically, the Committee believes the ABL Agent is seeking preapproval rights regarding: (i) the proposed price allocation for any of its collateral that is subject to a sale; (ii) the form of the stalking horse agreement; (iii) selection of the Successful Bidder;

---

[17] *See* Bid Procedures at XVI (a).

(iv) withdrawal of any assets from the auction; (v) adjournment of the sale hearing; (vi) deeming the back-up bidder the successful bidder; and (vii) sale closing date with the back-up bidder (collectively, the "Consent Rights"). The ABL Agent further seeks to have all Consent Rights remain in full force and effect until the ABL Lenders have been paid in full.

23. If approved, the Consent Rights would give the ABL Agent a virtual stranglehold and absolute veto right over the entire sale process. This is excessive, untenable and contrary to provisions of section 363 of the Bankruptcy Code, which authorizes a debtor, subject to certain limitations, to sell its assets free and clear.[18] There is simply no valid justification for the ABL Agent to have this degree of control over the Debtors, their assets, the sale or the process.

---

[18] *See* 11 U.S.C. § 363(f).

**CONCLUSION**

WHEREFORE, the Committee respectfully requests that the Court (i) deny the Motion unless modified as set forth herein; and (ii) grant such other and further relief as the Court deems just and proper.

Dated: October 31, 2019
       Wilmington, Delaware

COLE SCHOTZ P.C.

*Katherine M. Devanney*
G. David Dean (No. 6403)
Patrick J. Reilley (No. 4451)
Katherine M. Devanney (No. 6356)
500 Delaware Avenue, Suite 1410
Wilmington, DE 19801
Telephone: (302) 652-3131
Facsimile: (302) 652-3117
ddean@coleschotz.com
preilley@coleschotz.com
kdevanney@coleschotz.com

and

KELLEY DRYE & WARREN LLP
Jason R. Adams
Lauren S. Schlussel
101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897
Email: jadams@kelleydrye.com
       lschlussel@kelleydrye.com

*Proposed Counsel to the Official Committee of Unsecured Creditors of Bayou Steel BD Holdings, L.L.C., et al.*