## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 24 & 42** |

## REPLY OF DEBTORS IN SUPPORT OF MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, (III) MODIFYING THE AUTOMATIC STAY, (IV) SETTING A FINAL HEARING, AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "**Debtors**") hereby submit this reply (the "**Reply**") in support of the *Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 24] (the "**Cash Collateral Motion**").[2] In support of this Reply, the Debtors, by and through their undersigned counsel, respectfully represent:

## PRELIMINARY STATEMENT

The Debtors are proceeding along two paths. First, the Debtors are liquidating all inventory on hand, which they anticipate concluding within the first 13 weeks of the Chapter 11 Cases. Second, the Debtors are marketing their remaining assets pursuant to the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the*

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

[2]  Capitalized terms used herein but not defined have the meaning ascribed to them in the Cash Collateral Motion and *Agreed Interim Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing and (V) Granting Related Relief* [Docket No. 42] (the "**Interim Order**"), as applicable.

71015748.3

*Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 73] (the "**Bidding Procedures Motion**").

The Debtors goal is to sell substantially all of their assets to a financial or strategic purchaser who will restart operations and hopefully rehire the former employees. The result of the inventory sales and sales process should provide sufficient funds to satisfy all administrative claims in the Chapter 11 Cases and pay off the amounts outstanding to Bank of America, N.A., in its capacity as agent and lender (the "**Prepetition Agent**") and Suntrust Bank (together with the Prepetition Agent, the "**Prepetition Lenders**") and leave excess funding to pay down Black Diamond Commercial Finance, LLC as lender and agent (the "**Subordinated Term Loan Agent**") as lenders (in such capacity, the "**Subordinated Term Loan Lenders**" and together with the ABL Lenders, the "**Prepetition Secured Parties**").

The amounts outstanding to the Prepetition Secured Parties are significant. The Prepetition Lenders are owed approximately $41.25 million and the Subordinated Term Loan Lenders are owed approximately $36.5 million. Together, the Prepetition Secured Parties have liens on substantially all of the Debtors' assets. In exchange for obtaining the consensual use of the Prepetition Secured Parties' Cash Collateral (as defined in the Interim Order), the Debtors determined, in their business judgment, that the terms of the Interim Order were reasonable

2

under the circumstances. The Interim Order was the result of substantial negotiations in good faith and at arm's length with the Prepetition Secured Parties.

Since entry of the Interim Order, the Debtors have worked with the Official Committee of Unsecured Creditors (the "**Committee**") on a number of issues, including the Cash Collateral Motion. These efforts have included sharing proposed forms of the final cash collateral order (the "**Final Order**") and accompanying budget (the "**Final Budget**"). On October 30, 2019, the Committee filed the *Objection of the Official Committee of Unsecured Creditors to Motion of Debtors for Entry of Interim and Final Orders (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, (IV) Setting a Final Hearing, and (V) Granting Related Relief* [Docket No. 130] (the "**Committee Objection**"). The Committee Objection contains an extended factual discussion which has no bearing on consideration of the Cash Collateral Motion.[3] The Committee Objection also outlines a number of purported issues with the Interim Order, Final Order, and Final Budget. As set out in more detail below, the Committee has taken the kitchen sink approach with its wish list of provisions for the Final Order.[4] While the Debtors understand the Committee's positions, the terms of the Interim Order and Final Order are reasonable. Nothing contained therein is unusual or "non-market". Instead, the provisions contained in the Interim Order and Final Order are narrowly tailored and designed to protect the Prepetition Secured Parties against the real risk of diminution in value of the Prepetition Collateral.

In an effort to reach consensual resolution, numerous modifications have been made to the Final Order and Final Budget. Without access to Cash Collateral, the Debtors would have no

---

[3]  For example, it is simply of no relevance to the Court or other parties what the Debtors' 10-Ks from more than fifteen years ago detail.

[4]  *See, e.g.*, *In re Metaldyne Corp.*, Case No. 09-13412 (MG), 2009 WL 2883045, at *4 (Bankr. S.D.N.Y. June 23, 2009) ("It is not clear that the Committee really believes its own rhetoric; more likely, it is saber-rattling in an effort to use what little leverage it has in an effort to force a better deal.").

71015748.3

available liquidity. Without liquidity, the Debtors would be unable to, among other things, pay employees, liquidate inventory on hand, and run a sale process that could garner proceeds to benefit all of the Debtors' creditor constituencies. The Debtors have a fiduciary obligation to maximize value for all stakeholders.[5] The sale process contemplated by the Bidding Procedures Motion is the best way to maximize recovery for all parties, including unsecured creditors.

Therefore, the Debtors request that the Court overrule the Committee Objection and enter the Final Order.

## REPLY

### I.    Entry into the Final Order is an Appropriate Exercise of the Debtors' Business Judgment

1.    In essence, the Committee Objection is attempting to substitute its business judgment for that of the Debtors. That is simply not the applicable standard.

2.    A debtor's financing and adequate protection[6] decisions are evaluated under the business judgment standard.[7] As stated in *Los Angeles Dodgers*:

> The business judgment rule is a standard of judicial review designed to protect the wide latitude conferred on a board of directors in handling the affairs of the corporate enterprise. The rule refers to the judicial policy of deferring to the business judgment of corporate directors in the exercise of their broad discretion in making corporate decisions. Under the rule, courts will not second-guess a business decision, so long as corporate management exercised a minimum level of care in arriving at the decision. The business judgment rule under Delaware law and the law of numerous other jurisdictions establishes a presumption that in making a business decision, the directors of a corporation acted

---

[5]   *See N. Am. Catholic Educ. Programming Found., Inc. v. Gheewalla*, 930 A.2d 92, 103 (Del. 2007) (holding that debtors have a "duty to maximize the value of the insolvent corporation for the benefit of all those having an interest in it.").

[6]   *See, e.g., Crocker Nat'l Bank v. Am. Mariner Indus., Inc. (In re Am. Mariner Indus., Inc.)*, 734 F.2d 426, 435 (9th Cir. 1984) ("Consistent with the policies behind sections 361 and 362, the debtor should be permitted maximum flexibility in structuring a proposal for adequate protection.").

[7]   *See, e.g., In re CB Holding Corp.*, 447 B.R. 222, 227 (Bankr. D. Del. 2010) (approving the use of cash collateral as a prudent exercise of the debtors' business judgment).

> on an informed basis, in good faith, and in the honest belief that
> the action taken was in the best interests of the company.
>
> Under this formulation, the business judgment rule governs unless
> the opposing party can show one of four elements: (1) the directors
> did not in fact make a decision, (2) the directors' decision was
> uninformed; (3) the directors were not disinterested or
> independent; or (4) the directors were grossly negligent. Baseball
> relies on the third exception to argue that the business judgment
> rule does not apply

*In re Los Angeles Dodgers LLC*, 457 B.R.457 B.R 308, 313 (Bankr. D. Del. 2011).[8] Courts

routinely hold that "it is not appropriate to substitute the judgment of . . . objecting creditors, for

the business judgment of a debtor." *In re Spansion, Inc.*, 426 B.R. 114, 140 (Bankr. D. Del.

2010).

3.        The Committee has not, and cannot, argue that the Debtors have not exercised

their sound business judgment in the negotiation of a consensual cash collateral order. Before

these Chapter 11 Cases were filed, the Debtors negotiated with the Prepetition Agent. The

negotiations resulted in the Interim Order, which the Debtors determined was the best and only

opportunity to maintain the current level of operations and conduct a sale process. As set forth

below, the terms of the Interim Order and Final Order are reasonable to preserve the Debtors'

estates, thus benefitting all creditors. This determination should be afforded great deference.

## II.        The Terms of the Interim Order and Final Order are Reasonable

4.        The Committee Objection fails to recognize the hard fought negotiations between

the Debtors and the Prepetition Secured Parties given the Debtors' prepetition capital structure.

The terms of the Interim Order and the Final Order are objectively reasonable and reflect a

---

[8] *See also In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985) ("Business judgments should be left to the board room and not to this Court."); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) ("Courts are loath to interfere with corporate decisions absent a showing of bad faith, self –interest, or gross negligence.") (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1984)); *Crystalin, LLC v. Selma Props. Inc. (In re Crystalin, LLC)*, 293 B.R. 455, 463064 (B.A.P. 8th Cir. 2003) (finding that the business judgment standard is met "as long as the proposed action *appears* to enhance the debtor's estate")

71015748.3

carefully orchestrated balance between the Debtors' liquidity needs and providing the Prepetition

Secured Parties, in particular the Prepetition Agent, adequate protection.

**A.      The Adequate Protection Packages Are Appropriately Limited**

5.      Pursuant to Bankruptcy Code section 363, a debtor may not use cash collateral

without consent of all secured creditors which hold security interests in cash collateral or after a

hearing that such creditors are adequately protected.  11 U.S.C. § 363(c)(2). As a matter of law,

secured creditors are entitled to adequate protection. *See* 11 U.S.C. § 361; *United States v.

Whiting Pools, Inc.*, 462 U.S. 198, 203-04 (1983) ("At the secured creditor's insistence, the

bankruptcy court must place such limits or conditions on the trustee's power to sell, use, or lease

property as are necessary to protect the creditor."); See also *Resolution Trust Corp. v. Swedeland

Dev. Grp., Inc. (In re Swedeland Dev. Grp., Inc.)*, 16 F.3d 552, 564 (3d Cir. 1994) (stating that

adequate protection is intended to "insure that the creditor receives the value for which he

bargained prebankruptcy").

6.      Here, the Prepetition Secured Parties have validly perfected first priority liens on

substantially all of the Debtors' assets, with the exception of real estate and the Avoidance

Actions.

7.      The Committee insists that the adequate protection contemplated by the Interim

Order and Final Order should be limited. The Debtors disagree. The Prepetition Lenders are

entitled to adequate protection and the adequate protection contemplated by the Interim Order

and Final Order is limited and includes typical forms of adequate protection including: Adequate

Protection Liens; a superpriority claim[9]; and Adequate Protection Payments.[10] The Adequate

---

[9]  With respect to the Prepetition Lenders' superiority claim, the Committee Objection sought to clarify that "[t]he question of diminution must necessarily be left for another day. Committee Objection ¶ 49. The Final Order includes this proposed change.

Protection for the Subordinated Term Loan Lenders is similarly market for secured creditors in

their position and include adequate protection liens and a superpriority claim.[11] The adequate

protection packages provided by the Interim Order and Final Orders are appropriate under the

circumstances of these Chapter 11 Cases.

8.      The Committee Objection asserts that because the Prepetition Lenders are not

providing postpetition financing, they should not have recourse against Avoidance Actions.

According to the Committee:

> Avoidance powers are intended to allow a debtor-in-possession or
> a trustee to recover certain payments for the benefit of unsecured
> creditors. Avoidance Actions should not be pursued for the
> exclusive benefit of a secured creditor. Thus, the Debtors should
> not be authorized to grant a lien on the proceeds of Avoidance
> Actions. Any final order must be modified to preserve the proceeds
> of Avoidance Actions for unsecured creditors

Committee Objection ¶ 51 (citations omitted).

9.      Avoidance actions are property of a debtor's estate. *See* 11 U.S.C. § 541(a)(3). As

such, they may be pledged as security. *See  In re Applied Theory Corp.*, Case No. 02-11868,

2008 WL 1869770, at *1 (Bankr. S.D.N.Y. Apr. 24, 2008) ("Of course those assets started out

unencumbered. But those assets can thereafter be encumbered (or made available to satisfy

superpriority claims), if necessary to provide adequate protection. That's expressly authorized

under section 361(2)."). Additionally, unsecured creditors are not granted the exclusive right to

---

[10]   *See* Interim Order ¶ 24-25. The Committee claims that the Prepetition Lenders should not be entitled to payments of its prepetition debt. Committee Objection ¶ 50. However, the Bankruptcy Code specifically provides that "periodic cash payments" may be a form of adequate protection. 11 U.S.C. § 361(1). Moreover, similar provisions have been approved before. *See, e.g.*, *In re Capmark Fin. Group Inc.*, 436 B.R. 471, 510-11 (Bankr. D. Del. 2010).

[11]   *See* Interim Order ¶ 27. The Committee seemingly contests the grant of adequate protection to the Subordinated Term Loan Agent after the Prepetition Lenders are paid in full. *See* Committee Objection ¶ 53. The Debtors are not paying anything to the Subordinated Term Loan Agent at this time or under the terms of the Final Order. "A creditor's right to receive adequate protection payments is calculated at the time adequate protection is sought." *In re Aerogroup International, Inc.*, 601 B.R. 571, 596 (Bankr. D. Del. 2019). To be clear, once the Prepetition Agent is paid off, the Subordinated Term Loan Agent would have a senior lien on substantially all of the Debtors' assets. To that end, the Debtors anticipate that an additional cash collateral motion would be filed. That is the appropriate time to address whether the Subordinated Term Loan Agent is oversecured and the recharacterization of adequate protection payments under Bankruptcy Code section 506(b).

proceeds from avoidance actions. Bankruptcy Code section 550(a) does not limit the benefit of avoidance actions to unsecured creditors, instead, such actions are preserved "for the benefit of the estate." 11 U.S.C. § 550(a). *See Mellon Bank, N.A. v. Dick Corp.*, 351 F.3d 290, 293 (7th Cir. 2003) ("Lest this way of resolving the issue be taken to assume that § 550(a) requires that some benefit flow to unsecured creditors, we add that the statute does not say this. Section 550(a) speaks of benefit to the estate--which in bankruptcy parlance denotes the set of all potentially interested parties-- rather than to any particular class of creditors."); *In re Fleming Packaging Corp.*, Case No. 03-82408, 2007 WL 4556985, at *6 (Bankr. C.D. Ill. 2007) ("This Court does not consider Section 550(a)'s 'for the benefit of the estate' phraseology as a statutory requirement that the unsecured creditors benefit directly from the recovery of an avoided transfer, *i.e.*, that the recovered funds end up in the pockets of the unsecured creditors."). As such, liens on avoidance actions or the proceeds thereof are typical adequate protection and there is no distinction between the grant of such liens in a cash collateral order or postpetition financing order.[12]

10.     The grant of Adequate Protection Liens in the Final Order is appropriate. The Debtors have determined, in their business judgment, that the grant of liens on avoidance actions was necessary to obtain the consensual use of Cash Collateral and without such grant the Prepetition Lenders would not have consented to the use of their Cash Collateral.

---

[12]   *See, e.g., In re Fuse, LLC*, Case No. 19-10872 (KG) [Docket No. 250] (Bankr. D. Del. June 18, 2019) (granting prepetition lenders who did not provide postpetition financing with liens on the proceeds of avoidance actions as adequate protection); *In re Orchard Acquisition Co., LLC*, Case No. 17-12914 (KG) [Docket No. 110] (Bankr. D. Del. Jan. 5, 2018); *In re DB Holdings Liquidation, Inc.*, Case No. 16-12435 (CSS) [Docket No. 516] (Bankr. D. Del. Apr. 5, 2017); *In re Quicksilver Resources, Inc.*, Case No. 15-10585 (LSS) [Docket No. 307] (Bankr. D. Del. May 1, 2015) (same).

**B.      The Waivers Under Bankruptcy Code Section 506(c) and 552(b) Are Appropriate Under the Circumstances**

11.      The Committee objects to the inclusion of waivers under Bankruptcy Code sections 506(c) and 552(b).[13] The Debtors believe that because the Final Budget has been amended to address the Committee's concerns related to administrative expenses and a Winddown budget, the Committee's arguments are moot.

### (1)      The Bankruptcy Code Section 506(c) Waiver Should be Approved

12.      Debtors have the authority to waiver their rights under Bankruptcy Code section 506(c). *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) ("the trustee is the only party empowered to invoke" section 506(c)); *see also In re Smart World Techs., LLC*, 423 F.3d 166, 181-82 (2d Cir. 2005) ("Section 506(c) . . . allows only the 'trustee,' or debtor-in-possession, to take advantage of this exception. . . . We read *Hartford Underwriters* to stand for the proposition that § 1109(b) does not entitle parties in interest, such as Smart World's creditors, to usurp the debtor-in-possession's role as legal representative of the estate."); *In re River Ctr. Holdings, LLC*, 394 B.R. 704, 717 (Bankr. S.D.N.Y. 2008) ("The Supreme Court has made clear that only the trustee has the power, under the plain language of the Code, to assert a section 506(c) claim.").

13.      While the Committee contends that "counts in this jurisdiction have conditioned the waiver on the consent of the committee,"[14] that assertion fails to cite the many decisions to the contrary. *See, e.g.*, Hearing Transcript, *In re Orchard Supply Hardware Stores Corp.*, Case No. 13-11565 (CSS) [Docket No. 244] (Bankr. D. Del. July 15, 2013) (overruling Committee objection with regard to Bankruptcy Code section 506(c) waiver). Additionally, the Prepetition Lenders have agreed to subordinate their liens to the Carve Out and Professional Fee Reserve.

---

[13]  *See* Committee Objection ¶¶ 43-46.
[14]  Committee Objection ¶ 43.

71015748.3

14.     For the foregoing reasons, the Committee's objection with respect to the Debtors' grant of a waiver under Bankruptcy Code section 506(c) should be overruled.

### (2)     The Bankruptcy Code Section 552(b) Waiver Should be Approved

15.     Bankruptcy Code section 552(b) provides that a perfected lien on prepetition collateral extends to postpetition proceeds of such collateral unless the court orders otherwise based on the equities of the case. *See In re Gen Growth Props.*, 412 B.R. 122, 129 (Bankr. S.D.N.Y. 2009) ("In light of the Lenders' agreement to subordinate their liens and superpriority claims to the Carve-Out, the Lenders are entitled to a waiver of . . . any 'equities of the case' claims under section 552(b) of the Bankruptcy Code . . ."). These waivers are routinely granted when, as is present here, they are subject to the Carve-Out and are part of the adequate protection package for a secured lender. *See, e.g.*, *In re Remington Outdoor Company, Inc.*, Case No. 18-10684 (BLS), [Docket No. 177] (Bankr. D. Del. Apr. 16, 2018); *In re The Bon-Ton Stores, Inc.*, Case No. 18-10248 (MFW), Docket No. 352 (Bankr. D. Del. Mar. 12, 2018); *In re Patriot National, Inc.*, Case No. 18-10189 (KG), [Docket No. 297] (Bankr. D. Del. Mar. 6, 2018); *In re SeaStar Holdings, Inc.*, Case No. 18-10039 (CSS), [Docket No. 113] (Bankr. D. Del. Jan. 29, 2018).

16.     The Committee asserts that a Bankruptcy Code section 552(b) waiver is improper because the Final Budget does not have a satisfactory amount for administrative and priority claims and the Committee's professionals.[15] Objection ¶ 45. The Committee Objection

---

[15]   The Debtors do not dispute that the Committee's professionals should be reasonably funded, but not to the peril of these Chapter 11 Cases or the consensual use of Cash Collateral. *See In re Molycorp., Inc.*, 562 B.R. 67, 75 (Bankr. D. Del. 2017) ("Payment of professionals' fees in Chapter 11 cases is a favored object of the Bankruptcy Code, but it is no more favored than protecting the rights of creditors with secured claims.").

71015748.3

completely misses the mark. These Chapter 11 Cases will involve an expedited sale process. While unexpected issues may arise, the Chapter 11 Cases are not overly complicated.[16]

17.     The Committee avers that $475,00 over the first three months of these Chapter 11 Cases is not sufficient,[17] but do not provide what they believe to be an appropriate number.[18] The Debtors submit that $475,000 is appropriate for the Committee and its professionals under the circumstances to conduct investigations, participate in the sale process, and otherwise be active in the Chapter 11 Cases. Similar cases have provided for similar amounts, and the Committee' professionals are budgeted for an amount that is approximately 40% of the Debtors' professionals, which is more than adequate in the Chapter 11 Cases and above market for similarly situated cases.

18.     The Debtors further oppose any *pro rata* allocation amongst professionals. Each professional in these Chapter 11 Cases has different responsibilities and duties. The Committee Objection lays out what the Committee believes their fiduciary duties to be over the next two months. *See* Committee Objection ¶ 45. The Debtors will be prosecuting these Chapter 11 Cases and be involved in all aspects, including bankruptcy, labor and employment, litigation, environment, corporate and M&A, real estate, and other legal advice. To collapse these linen items would be unfairly prejudicial to the Debtors' professionals and is not appropriate.

19.     The Debtors therefore submit that they are able to validly waive the equities of the case exception.

---

[16]   The Committee alleges that it must investigate "historic transactions," but the Debtors question the relevance of such investigation at this point in time. Much of the Committee Objection is devoted to facts from over fifteen years ago, which would be well beyond any relevant statute of limitations. Such investigation is not relevant to the Final Cash Collateral Order.

[17]   Both the Debtors' professionals and the Prepetition Agent's professionals are in the Final Budget for $800,000.

[18]   The Debtors note that no Committee professional has filed a retention application so it is nearly impossible to evaluate the propriety of their line item in the Final Budget.

71015748.3

### C.      The Release and Challenge Rights are Sufficient

20.      The Final Order includes a number of revisions to the Committee's challenge rights including the requested tolling provisions. The Debtors believe that the only remaining issue with respect to the Committee's challenge rights is the Challenge Period of 60 days.

21.      Though the Committee asserts that the Challenge Period is not adequate, it does not recommend what it feels to be an appropriate investigation period. The Debtors submit that the Challenge Period is appropriate given the facts of these Chapter 11 Cases. The proposed Challenge Period complies with Local Rule 4001-2(a)(i)(B) which provides:

> Provisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's pre-petition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the creditors' committee, if formed, at least sixty (60) days from the date of its formation to investigate such matters.

As detailed in numerous pleadings, the Debtors need to proceed on an expedited sale process. To allow the Committee to continue its investigation after an auction would create unnecessary uncertainty. The Debtors have complied with the Committee's diligence requests and are making sure the Committee has everything it needs to complete a sufficient investigation. Courts in this jurisdiction often approve similar investigation periods.

22.      The Committee also disputes the release provisions if a challenge is not brought. Again, such releases are market and reflect the negotiations between the Debtors and the Prepetition Agent.

12

**D.      Reply to Additional Objections**

23.      The Final Order contains a provision granting the Committee a $50,000 budget to investigate the Prepetition Secured Parties' claims and liens, as well as the Debtors' stipulations and releases in the Final Order.[19]

24.      The Debtors have addressed the Committee's argument with respect to reporting. The Debtors have, and will continue to provide the committee with all reports being provided to the Prepetition Agent.

**III.      The Interim Order and Budget Do Not Threaten Administrative Insolvency**

25.      The Committee's arguments with respect to the Debtors' theoretical administrative insolvency have no basis in fact. While acknowledging that the Debtors' statements of financial affairs and schedules of assets and liabilities have not been filed, the Committee blindly proposes that the Debtors are at risk of administrative insolvency. As a basis for these assertions, the Committee notes that the Interim Budget does not account for certain administrative claims including 503(b)(9) claims and does not contain a wind down budget.[20]

26.      The Final Budget addresses several of these concerns by providing line items for 503(b)(9) claims and a wind down budget.

27.      The Debtors will file a further revised Final Cash Collateral Order and further revised budget prior to the November 5 hearing. The revised budgeted accounts for the administrative solvency of the Chapter 11 Cases.

---

[19]  This is in addition to the $50,000 allocated to the Committee for its investigation budget in the Final Order.

[20]  The Committee Objection further notes that "[t]he Initial budget also fails to reserve for asserted administrative claims arising from the termination of 300 employees on the eve of bankruptcy, a potentially substantial liability that could have been avoided through appropriate bankruptcy planning." Committee Objection ¶ 40. The merits of the adversary proceedings brought pursuant to the WARN Act have not yet been adjudicated, so there is no reason the Debtors would need to contain this line item.

71015748.3

For all of the foregoing reasons, as well as those set forth in the Cash Collateral Motion, the Debtors submit that the Court enter the Final Order and overrule the Committee Objection.

Dated:   November 1, 2019
          Wilmington, Delaware

Respectfully submitted,

**POLSINELLI PC**

Christopher A. Ward (Del. Bar No. 3877)
Shanti M. Katona (Del. Bar No. 5352)
Stephen J. Astringer (Del. Bar No. 6375)
222 Delaware Avenue, Suite 1101
Wilmington, Delaware 19801
Telephone: (302) 252-0920
Facsimile: (302) 252-0921
cward@polsinelli.com
skatona@polsinelli.com
sastringer@polsinelli.com

*Proposed Counsel to the Debtors and Debtors in Possession*

14

71015748.3