**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 19-12153 (KBO)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 13 & 40** |

**FINAL ORDER AUTHORIZING (I) CONTINUED USE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, AND (II) CONTINUATION OF EXISTING DEPOSIT PRACTICES**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a final order (this "**Final Order**"), pursuant to Bankruptcy Code sections 105(a), 363, and 364, Bankruptcy Rules 6003 and 6004, and Local Rule 2015-2, (i) authorizing, but not directing, the Debtors to continue to maintain and use their Cash Management System, including maintenance of the Debtor Bank Accounts and existing, checks and business forms, (ii) granting the Debtors a temporary suspension of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtors' practices under their Cash Management System or other actions described in the Motion or this Final Order, and (iii) authorizing, but not directing, the Debtors to continue to maintain and use their Deposit Practices; and the Court having reviewed the Motion, the First Day Declaration, and the Interim Order entered on October 3, 2019; and the Court having jurisdiction to consider the Motion and the relief

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana, 70068.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is GRANTED on a final basis, as set forth herein.

2. All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3. The Debtors are authorized to continue to use their existing Cash Management System and shall maintain detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Final Order and the Cash Collateral Order. In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain current records with respect to all transfers of cash so that all transactions can be readily ascertained, traced, recorded properly, and distinguished between prepetition and postpetition transactions on intercompany accounts, and shall include a detailed accounting of such intercompany transactions in the Debtors' monthly operating reports.

4. The Debtors are authorized to (i) continue to use any and all of the Debtor Bank Accounts in existence as of the Petition Date, including, but not limited to, the Debtor Bank

Accounts identified on Attachment 1 to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed, (ii) deposit funds in and withdraw funds from the Debtor Bank Accounts in the ordinary course by all usual means, including checks, wire transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the Debtor Bank Accounts, (iii) pay ordinary course Bank Fees and Expenses in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date for Pre-Petition Agent Bank Fees and Expenses, (iv) perform their obligations under the documents and agreements governing the Debtor Bank Accounts, and (v) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession.

5. In each instance where the Debtors hold Debtor Bank Accounts at Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Final Order the Debtors shall (i) contact each Bank, (ii) provide the Bank with each of the Debtors' employer identification numbers, and (iii) identify each of the Debtors' Bank Accounts held at such Banks as being held by a debtor in possession in a bankruptcy case and provide the case number.

6. Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks, correspondence, and other business forms without alteration or change and without the designation "Debtor in Possession" or a bankruptcy case number imprinted upon them. Notwithstanding the foregoing, once a Debtor's existing checks have been used, the Debtor shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided that, with respect to checks that

the Debtors or their agents print themselves, the Debtors shall have begun printing the "Debtor in Possession" legend and the bankruptcy case number on such items.

7. The Debtors are authorized to continue to utilize all third-party providers necessary for the administration of their Cash Management System, including their payroll processor. In addition, the Debtors are authorized, but not directed, to pay all prepetition or postpetition amounts due to such third-party providers, to the extent authorized under the Cash Collateral Order.

8. *Nunc pro tunc* to the Petition Date, and subject to the terms of this Final Order or other order of this Court, all Banks at which the Debtor Bank Accounts are maintained are authorized to continue to administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses of the Pre-Petition Agent, whether arising before or after the Petition Date), and, when requested by the Debtors in their sole discretion, to honor any and all checks, drafts, wires, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising prior to the Petition Date shall be honored. The Pre-Petition Agent is authorized to charge, and the Debtors are authorized to pay, honor, or allow any Bank Fees and Expenses of the Pre-Petition Agent or other charges associated with the Pre-Petition Agent Bank Accounts, and charge back returned items to the Pre-Petition Agent Bank Accounts in the ordinary course of business. The Debtors are authorized to:

(a) pay undisputed prepetition amounts outstanding as of the Petition Date, if any, owed in the ordinary course to the Pre-Petition Agent as service charges for the maintenance of the Cash Management System; and (b) reimburse the Pre-Petition Agent for any claims arising before or after the Petition Date in connection with customer checks deposited with the Pre-Petition Agent that have been dishonored or returned as a result of insufficient funds in the Bank Accounts in the ordinary course of business, to the same extent the Debtors were responsible for such items prior to the Petition Date.

9. Those certain deposit agreements existing between the Debtors and the Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks and, subject to applicable bankruptcy or other law, all of the provisions of such agreements, including the termination, fee provisions, rights, benefits, offset rights and remedies afforded under such agreements shall remain in full force and effect absent further order of the Court or, with respect to any such agreement with any Bank (including, for the avoidance of doubt, any rights of a Bank to use funds from the Bank Accounts to remedy any overdraft of another Bank Account to the extent permitted under the applicable deposit agreement), unless the Debtors and such Bank agree otherwise, and any other legal rights and remedies afforded to the Banks under applicable law shall be preserved, subject to applicable bankruptcy law.

10. Notwithstanding any other provision of this Final Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Final Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as the result of an innocent mistake made despite implementation of customary item handling procedures, the Bank shall not be deemed to be nor shall it be liable to the Debtors or their estates or otherwise be in

violation of this Final Order. Without limiting the foregoing, any of the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

11. The Debtors are authorized to implement such reasonable changes, consistent with this Final Order, to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts or opening any New Accounts wherever the Debtors deem that such accounts are needed or appropriate. Notwithstanding the foregoing, the Debtors shall open such New Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement and any New Account that the Debtors open in the United States shall be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation, and (ii) designated a "Debtor in Possession" account by the relevant bank. The New Accounts are deemed to be Debtor Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Final Order. The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor Bank Account(s) or New Account(s). In the event that the Debtors open or close any Debtor Bank Accounts(s) or New Account(s), such opening or closing shall be timely indicated on the Debtors' monthly operating reports and the Debtors shall give fifteen (15) days' prior notice to the U.S. Trustee, counsel to the prepetition secured creditors, counsel for the agent under the ABL Facility, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas

75201-2975, Attn: William L. Wallander and Bradley R. Foxman, and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins, and proposed counsel to the official committee of unsecured creditors appointed in these Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com) before opening or closing accounts. This period may be shortened by agreement.

12. The Debtors are authorized to deposit funds in accordance with existing practices under the Cash Management System as in effect as of the Petition Date, subject to any reasonable changes, consistent with this Final Order, to the Cash Management System that the Debtors may implement, and, to the extent such practices are inconsistent with the requirements of Bankruptcy Code section 345(b), such requirements are temporarily suspended, on an interim basis. The Debtors shall have thirty (30) days (or such additional time as the U.S. Trustee may agree to) from the Petition Date (the "**Extension Period**") within which to either come into compliance with Bankruptcy Code section 345(b) or to make such other arrangements as agreed with the U.S. Trustee. Such extension is without prejudice to the Debtors' rights to request a further extension of the Extension Period or a final waiver of the requirements under Bankruptcy Code section 345(b).

13. The requirement to establish separate accounts for cash collateral and/or tax payments is hereby waived.

14. Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the disbursements of each debtor, regardless of who pays those disbursements.

15. The Debtors shall not, and shall not permit any of their subsidiaries to, directly or indirectly, hold or otherwise maintain any of their cash, cash equivalents, bank deposits, or investments other than at a deposit account, commodity account, or securities account held or otherwise maintained and owned by a Debtor that is subject to an account control agreement in favor of the agent under the ABL Facility.

16. Nothing in the Motion or this Final Order, or the Debtors' payment of any claims pursuant to this Final Order, shall be deemed or construed as: (i) an admission as to the validity of any claim or lien against the Debtors or their estates, (ii) a waiver of the Debtors' rights to dispute any claim or lien, (iii) an approval or assumption of any agreement, contract, or lease pursuant to Bankruptcy Code section 365, (iv) an admission of the priority status of any claim, whether under Bankruptcy Code section 503(b)(9) or otherwise, or (v) a modification of the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any third party.

17. Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

18. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003.

19. Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

20. The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Final Order.

21. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Final Order.

**Dated: November 4th, 2019**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**