## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 73** |

### ORDER (I) APPROVING BID PROCEDURES IN CONNECTION WITH THE POTENTIAL SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) SCHEDULING AN AUCTION AND A SALE HEARING, (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) AUTHORIZING THE DEBTORS TO ENTER INTO A STALKING HORSE AGREEMENT, (V) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (VI) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (the "**Debtors**") for entry of an order (this "**Order**") (i) authorizing and approving the Bid Procedures attached hereto as Exhibit 1 (the "**Bid Procedures**") in connection with the sale (the "**Sale**") of substantially all of the Debtors' assets (the "**Assets**"), (ii) scheduling an auction and hearing to consider the Sale of the Assets, (iii) approving the form and manner of notice thereof, (iv) authorizing the Debtors to enter into a Stalking Horse Agreement (as defined below), (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases in connection with the Sale (collectively, the "**Contracts**"), and (vi) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

[2] Capitalized terms used as defined terms herein but not otherwise defined shall have the meanings ascribed to them in the Motion or the Bid Procedures, as applicable. In the event there is a conflict between this Order and the Motion, this Order shall control and govern.

this Court having reviewed the Motion, the Committee's limited objection to the Motion[3] and having heard statements of counsel and the evidence adduced with respect to the Motion at a hearing held before this Court (the "**Hearing**"); and this Court having determined that the legal and factual bases set forth in the Motion and the First Day Declaration and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested in the Motion having been, resolved, withdrawn or overruled on the merits; and after due deliberation thereon and good and sufficient cause appearing therefor,

**THE COURT FINDS THAT**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.

C.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The Debtors have confirmed their consent, pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), to the entry of a final order by this Court in connection with the Motion, to the extent it is later determined this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

---

[3] Docket no. 179.

D.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

E.      The bases for the relief requested in the Motion are sections 105, 363, 365, 503, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "**Bankruptcy Code**"), Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rules 2002-1, 6004-1, and 9013-1(m).

F.      Notice of the Motion has been given to: (a) the U.S. Trustee; (b) counsel to the Prepetition Agent; (c) counsel to the Subordinated Term Loan Agent; (d) counsel to the Committee; (e) counsel to the Stalking Horse Bidder, if any; (f) all other parties who have expressed a written interest in the Assets; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) all state and local taxing authorities with an interest in the Assets; (j) the Attorney General for the State of Delaware; (k) the Securities and Exchange Commission; (l) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (m) all parties known or reasonably believed to have asserted an Interest in the Assets; (n) the Contract Counterparties; (o) the Debtors' insurance carriers; (p) all parties entitled to notice pursuant to Local Rule 9013-1(m); and (r) any party that has requested notice pursuant to Bankruptcy Rule 2002 (the "**Motion Notice Parties**").

G.      Good and sufficient notice of the Motion, including the relief sought therein, and the Hearing was sufficient under the circumstances, and such notice complied with all applicable requirements under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, and no other or further notice need be provided. A reasonable opportunity to object or be heard regarding the relief provided in this Order has been afforded to all parties in interest.

H.      The Debtors have articulated good and sufficient reasons for this Court to (i) approve the Bid Procedures, (ii) schedule the bid deadlines and the Auction and the Sale

70920023.6

Hearing, (iii) approve the form and manner of notice of the Auction and Sale Hearing, (iv) approve procedures for the assumption and assignment of the Contracts, including notice of the proposed cure amounts, (v) authorize the Debtors to enter into a Stalking Horse Agreement, in the exercise of their reasonable business judgment. The entry of this Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

I.       The Bid Procedures attached hereto as <u>Exhibit 1</u> are reasonable, appropriate and represent the best method for maximizing value for the benefit of the Debtors, their estates, and their creditors. The Bid Procedures were negotiated at arm's length, in good faith, and without collusion. The Bid Procedures balance the Debtors' interests in emerging expeditiously from the Chapter 11 Cases while preserving the opportunity to attract value-maximizing proposals beneficial to the Debtors, their estates, their creditors, and other parties in interest. The Bid Procedures comply with the requirements of Local Rule 6004-1(c).

J.       The Debtors have demonstrated compelling and sound business justifications for authorization to enter into a Stalking Horse Agreement pursuant to the terms of the Bid Procedures.

K.       The notice, substantially in the form attached hereto as <u>Exhibit 2</u>, provided by the Debtors regarding the Sale of the Assets by Auction and Sale Hearing (the "**Sale Notice**"), is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (i) the date, time, and place of the Auction (if one is held), (ii) the Bid Procedures and certain dates and deadlines related thereto, (iii) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing, (iv) reasonably specific identification of the assets for sale, (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement, if any, (vi) a description of the Sale as being

4

free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the sale proceeds, and (vii) notice of the proposed assumption and assignment of Contracts to the Successful Bidder (as defined in the Bid Procedures) and the right, procedures, and deadlines for objecting thereto. No other or further notice of the Sale shall be required.

L.      The Motion, this Order, and the Assignment Procedures (as defined below) set forth herein are appropriate and reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

M.      Neither the filing of the Motion, entry of this Order, the solicitation of bids or the conducting of the Auction in accordance with the Bid Procedures nor any other actions taken by the Debtors in accordance therewith shall constitute a sale of the Assets, which sale will only take place, if at all, following the Sale Hearing.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is granted as set forth herein.

2.      All objections, statements, and reservations of rights with respect to the relief requested in the Motion with respect to the Bid Procedures that have not been withdrawn, waived, or settled, as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled and denied on the merits with prejudice.

## I.      <u>The Bid Procedures</u>

3.      The Bid Procedures, attached hereto as <u>Exhibit 1</u>, are hereby approved in their entirety and fully incorporated into this Order. The Bid Procedures shall govern the submission, receipt, and analysis of all bids relating to the proposed Sale and any party desiring to submit an

70920023.6

offer for the Assets must comply with the terms of the Bid Procedures and this Order. The Bid Procedures shall also govern the terms on which the Debtors will proceed with the Auction and/or Sale.

4.     The Debtors may sell all or substantially all of the Assets in the Sale pursuant to the Bid Procedures; *provided, however*, that until such time as the Prepetition Lenders' claims have been paid in full, the Debtors shall, with notice to the Committee, obtain the Prepetition Agent's prior written consent to the proposed price allocation of any of the collateral in which the Prepetition Agent has a valid, perfected, and enforceable security interest (the "**ABL Collateral**") that is the subject of any Sale and only such ABL Collateral that remains as of the date of the closing of any Sale shall be subject to the Sale.  Until the closing of the Sale, the Debtors shall continue selling inventory, collecting accounts receivable, and making payments to the Prepetition Lenders in accordance with and subject to the terms of the budget and cash collateral order then in effect (the "**Cash Collateral Order**").

5.     The following dates and deadlines (all prevailing Eastern Time) regarding competitive bidding are hereby established (subject to modification in accordance with the Bid Procedures):

a.     **November 13, 2019 at 4:00 p.m.:** Debtors to send Cure and Possible Assumption and Assignment Notices to All Contract Counterparties and Notice of the Sale

b.     **November 27, 2019:** Stalking Horse Deadline (as defined below)

c.     **November 27, 2019 at 4:00 p.m.:** Cure Objection Deadline

d.     **December 12, 2019 at 4:00 p.m.:** Deadline to submit Bid to be considered for the Auction

e.     **December 13, 2019 at 4:00 p.m.:** Deadline to file and serve objections to relief requested at Sale Hearing (except for any objection that arises at the Auction)

70920023.6

      f.      **December 18, 2019 at 10:00 a.m.:** Proposed date of Auction

      g.      **December 18, 2019 at 4:00 p.m.:** Debtors to file notice of Successful Bidder and Contract Assignment Notices

      h.      **December 19, 2019 at 9:00 a.m.:** Deadline for the Prepetition Agent to object to relief requested at Sale Hearing

      i.      **December 19, 2019 at 10:00 a.m.:** Proposed date of Sale Hearing

## II.    Entry into Stalking Horse Agreement

6.      In the event that the Debtors enter into a Stalking Horse Agreement in accordance with the Bidding Procedures on or prior to November 27, 2019 (the "**Stalking Horse Deadline**"), and if the Stalking Horse Agreement satisfies the following conditions, (a) the Break-Up Fee does not exceed three percent (3%) of the aggregate cash purchase price; (b) the Expense Reimbursement does not exceed $250,000; and (c)(1) if the Stalking Horse Purchaser proposes to purchase any ABL Collateral, the Prepetition Agent has provided its affirmative written consent to the stalking horse designation to the extent of such ABL Collateral proposed to be sold, such consent not to be unreasonably withheld and subject to Court adjudication of any dispute with respect thereto, and (2) if the Stalking Horse Purchaser proposes to purchase any Excluded Collateral, the Subordinated Term Loan Agent has provided its affirmative written consent to the stalking horse designation to the extent of such Excluded Collateral proposed to be sold, such consent not to be unreasonably withheld and subject to Court adjudication of any dispute with respect thereto, the Debtors shall file with the Court and serve on the Motion Notice Parties an expedited motion to obtain entry of the proposed Stalking Horse Purchaser pursuant to an order which shall include findings consistent with those originally proposed in the form of order annexed to the Motion.  Any Break-Up Fee and Expense Reimbursement shall be payable only from Sale proceeds, and in a Sale of both the Prepetition Agent's ABL Collateral and the Excluded Real Estate (as defined in the Intercreditor Agreement) and Excluded Real Estate

Proceeds (as defined in the Intercreditor Agreement) in which the Subordinated Term Loan Agent holds a valid, perfected and enforceable security interest (the "**Excluded Collateral**"), 50% of the total amount of the Break-Up Fee and Expense Reimbursement shall be paid from the Sale proceeds of the ABL Collateral, and 50% of the total amount of the Break-Up Fee and Expense Reimbursement shall be paid from the Excluded Collateral.

### III.    The Auction

7.      As further described in the Bid Procedures, if a Qualifying Bid, is received by the Bid Deadline, the Debtors will conduct the Auction at **10:00 a.m. (prevailing Eastern Time) on December 18, 2019**, at the offices of the Debtors' counsel, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, or such later time on such day or other place as the Debtors shall notify all Qualifying Bidders who have submitted Qualifying Bids, if a Qualifying Bid is timely received. The Debtors are authorized, subject to the terms of this Order and the Bid Procedures, to take actions reasonably necessary to conduct and implement the Auction.

8.      If the Debtors do not receive a Qualifying Bid (other than a Stalking Horse Agreement): (a) the Debtors may cancel the Auction (unless the Prepetition Agent and the Subordinated Term Loan Agent have not waived their respective Credit Bid Rights), (b) a Stalking Horse Agreement may be deemed by the Debtors to be the Successful Bid for the Assets, and (c) the Debtors shall be authorized to seek approval of the Stalking Horse Agreement as the Successful Bid at the Sale Hearing.

9.      Only Qualifying Bidders will be entitled to make any Bids at the Auction.

10.     The Debtors and their professionals shall direct and preside over the Auction and the Auction shall be transcribed or videotaped.

11.     Each Qualifying Bidder participating in the Auction must confirm in writing on the record that it (a) has not engaged in any collusion with respect to the bidding or sale of any of

the Assets or the Auction, (b) has reviewed, understands, and accepts the Bid Procedures, and (c) has consented to the core jurisdiction of this Court and to the entry of a final order by this Court on any matter related to this Order, the Sale, or the Auction if it is determined that this Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.

12.     In conjunction with any Transaction, (a) the Prepetition Agent may, in its sole and absolute discretion, credit bid any portion and up to the entire amount of the Pre-Petition Claim (as defined in the Cash Collateral Order), at any time (regardless of whether the Prepetition Agent participated in prior rounds at the Auction) on any individual Asset, portion of the Assets, or all Assets, in each case constituting Collateral (as defined in that certain *Subordination and Intercreditor Agreement* dated as of December 21, 2017 (as amended from time to time, the "**Intercreditor Agreement**")), and (b) Subordinated Term Loan Agent may, in its sole and absolute discretion, credit bid any portion and up to an amount equal to not less than the entire amount of the Subordinated Term Loan Agent's and the Subordinated Term Loan Lenders' (as defined below) (collectively, the "**Subordinated Term Loan Parties**") claims against the Debtors and their estates (collectively, the "**Pre-Petition Subordinated Term Loan Claim**") at any time (regardless of whether the Subordinated Term Loan Agent participated in prior rounds at the Auction) on any individual Asset, portion of the Assets, or all Assets, in each case constituting the Collateral or Excluded Collateral (each of (a) and (b), the "**Credit Bid Right**"), provided that all Credit Bid Rights are subject to Bankruptcy Code section 363(k).

13.     The Prepetition Agent and the Subordinated Term Loan Agent shall each be deemed to be a Qualifying Bidder in all respects, and shall not be required to submit a Deposit, Purchase Agreement, or any other deliverable or documentation to the Debtors, the Notice

Parties, or their representatives or agents.  Upon exercise of a Credit Bid Right, the Prepetition Agent and the Subordinated Term Loan Agent (as applicable) shall not be required to take title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), or be deemed to have taken title to or ownership of, or have any obligation in connection with (in each case, legal, equitable, or otherwise), any individual Asset, portion of the Assets, or all of the Assets, and the Prepetition Agent and the Subordinated Term Loan Agent (as applicable) shall have the right to designate any person or entity in its sole and absolute discretion that shall take title to the individual Asset, portion of the Assets, or all of the Assets that are subject to the Credit Bid Right **provided that** counterparties may object to such designee's adequate assurance of future performance under any executory contract and unexpired lease that is assumed by the Debtors and assigned to such designee under section 365 of the Bankruptcy Code in connection with any Transaction.  Except for any holder of any Prior Liens (as defined in the Cash Collateral Order) (who, for the avoidance of doubt, may only credit bid a claim with respect to the collateral in which such holder holds a perfected security interest), no other person may credit bid on the Collateral unless the entire amount of the Pre-Petition Claim will be paid in full in cash on the closing of the proposed Transaction, and no other person may credit bid on the Excluded Collateral unless the Pre-Petition Subordinated Term Loan Claim will be paid in full in cash on the closing of the proposed Transaction, subject to Bankruptcy Code section 363(k).

14.    Notwithstanding anything to the contrary herein, the Subordinated Term Loan Agent's Credit Bid Right shall be subject in all respects to the terms of the Intercreditor Agreement, and to the extent the terms of these Bidding Procedures are in conflict with the terms of the Intercreditor Agreement, the terms of the Intercreditor Agreement shall control.  Any

70920023.6

credit bid of the Subordinated Term Loan Agent on the ABL Collateral must provide for the full payment in cash of the Pre-Petition Claim, subject to Bankruptcy Code section 363(k).  Subject to the terms of the Cash Collateral Order, all proceeds resulting from any Transaction shall be delivered and applied in the manner set forth in the Intercreditor Agreement.  For the avoidance of doubt, all Credit Bid Rights hereunder shall be subject to the terms of the Cash Collateral Order and Bankruptcy Code section 363(k).

15.    Notwithstanding anything to the contrary herein, the Subordinated Term Loan Agent's Credit Bid Right shall be subject in all respects to the terms of the Intercreditor Agreement, and to the extent the terms of these Bidding Procedures are in conflict with the terms of the Intercreditor Agreement, the terms of the Intercreditor Agreement shall control.  Any credit bid of the Subordinated Term Loan Agent on the Collateral must provide for the full payment in cash of the Pre-Petition Claim, subject to Bankruptcy Code section 363(k).  Subject to the terms of the Cash Collateral Order, all proceeds resulting from any Transaction shall be delivered and applied in the manner set forth in the Intercreditor Agreement.  For the avoidance of doubt, all Credit Bid Rights hereunder shall be subject to the terms of the Cash Collateral Order including Bankruptcy Code section 363(k).

16.    In the event of a competing Qualifying Bid, all Qualifying Bidders will be entitled, but not obligated, to submit overbids.

17.    The Debtors may (i) determine, in consultation with the Consultation Parties, and (A) subject to the written consent of the Prepetition Agent solely with respect to the proposed price allocation of any of the Prepetition Agent's ABL Collateral that is the subject of the Qualifying Bid, such consent not to be unreasonably withheld and subject to Court adjudication of any dispute with respect thereto, and (B) subject to the written consent of the Subordinated

70920023.6

Term Loan Agent solely with respect to the proposed price allocation of any of the Subordinated Term Loan Agent's Excluded Collateral that is the subject of the Qualifying Bid, such consent not to be unreasonably withheld and subject to Court adjudication of any dispute with respect thereto, which Qualifying Bid or combination of Qualifying Bids is the highest or otherwise best offer; (ii) in consultation with the Consultation Parties reject at any time before the entry of the Sale Order any Bid that, in the discretion of the Debtors and subject to the reasonable written consent of the Prepetition Agent with respect to the ABL Collateral and the reasonable written consent of the Subordinated Term Loan Agent with respect to the Excluded Collateral, in each case subject to Court adjudication of any dispute with respect thereto, is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or the Bid Procedures, or (c) contrary to the best interest of the Debtors, their estates, their creditors, interest holders, or other parties in interest; and (iii) at or before the conclusion of the Auction may impose such other terms and conditions upon Qualifying Bidders as the Debtors determine, in consultation with the Consultation Parties and subject to the reasonable written consent of the Prepetition Agent with respect to the ABL Collateral and the reasonable written consent of the Subordinated Term Loan Agent with respect to the Excluded Collateral, in each case subject to Court adjudication of any dispute with respect thereto, to be in the best interest of the Debtors' estates.

18.    No person or entity, other than a Stalking Horse Bidder, shall be entitled to any expense reimbursement, breakup fee, topping or termination fee, or other similar fee or payment, and, by submitting a Bid, such person or entity is deemed to have waived its right to request or file with this Court any request for expense reimbursement or any other fee of any nature in connection with the Auction and the Sale, whether by virtue of Bankruptcy Code section 503(b)

or otherwise.  Neither the Prepetition Lenders nor the Subordinated Term Loan Lenders shall be entitled to a Break-up Fee or an Expense Reimbursement; provided that the foregoing shall not limit any rights, claims, or interests of the Prepetition Lenders or the Subordinated Term Loan Lenders under applicable loan documents or orders of the Court.

**IV.**     **Assumption and Assignment Notices & Procedures**

19.     The procedures set forth below regarding the assumption and assignment of the executory contracts proposed to be assumed by the Debtors pursuant to Bankruptcy Code section 365(b) and assigned to the Stalking Horse Bidder (or other Successful Bidder, if any) pursuant to Bankruptcy Code section 365(f) in connection with the Sale (the "**Assignment Procedures**") are hereby approved to the extent set forth herein. These Assignment Procedures shall govern the assumption and assignment of all of the Contracts to be assumed and assigned in connection with the Sale, subject to the payments necessary to cure any defaults arising under any such Contracts.

20.     On or prior to **November 13, 2019**, the Debtors shall serve via overnight delivery on all non-Debtor counterparties (each a "**Contract Counterparty**" and, collectively, the "**Contract Counterparties**") to any Contract (the "**Cure and Possible Assumption and Assignment Notice Parties**") that may be assumed by the Debtors and assigned to a Stalking Horse Bidder or other Successful Bidder after the results of the Auction, which notice shall be substantially in the form attached hereto as Exhibit 3 (a "**Cure and Possible Assumption and Assignment Notice**"). The Cure and Possible Assumption and Assignment Notice shall inform each recipient of the timing and procedures relating to such assumption and assignment, and, to the extent applicable, (i) the title of the executory contract or unexpired lease, as applicable, (ii) the name of the counterparty to the executory contract or unexpired lease, as applicable, (iii) the Debtors' good faith estimate of the cure amount (if any) required in connection with the executory contract or unexpired lease, as applicable, (iv) the identity of the Successor Bidder (as

assignee, if applicable), and (v) the Contract Objection Deadline (as defined below). The presence of a Contract on the Cure and Possible Assumption and Assignment Notice does not constitute an admission that such Contract is an executory contract or unexpired lease, and the presence of a Contract on any notice shall not prevent the Debtors from subsequently withdrawing such request for assumption or rejecting such Contract any time before such Contract is actually assumed and assigned pursuant to the Sale Order.

21.     Although the Debtors intend to make a good faith effort to identify all Contracts that may be assumed and assigned in connection with a Sale, the Debtors may discover certain executory contracts and unexpired leases inadvertently omitted from the list of Contracts, or Successful Bidders may identity other executory contracts and/or unexpired leases that they desire to assume and assign in connection with the Sale. Accordingly, the Debtors reserve the right, but only in accordance with the Stalking Horse Agreement, or as otherwise agreed to by the Debtors and the Successful Bidder after consultation with the Consultation Parties, at any time after the service of the Cure and Possible Assumption and Assignment Notice and before the closing of a Sale, to (i) supplement the list of Contracts with previously omitted executory contracts, (ii) remove Contracts from the list of executory contracts and unexpired leases ultimately selected as Contracts that a Successful Bidder proposes to be assumed and assigned to it in connection with a Sale, and/or (iii) modify the previously stated cure amount associated with any Contract. In the event the Debtors exercise any of these reserved rights, the Debtors will promptly serve a supplemental notice of contract assumption (a "**Supplemental Assumption Notice**") on each of the counterparties to such Contracts and their counsel of record, if any; *provided*, *however*, the Debtors may not add an executory contract to the list of Contracts that has been previously rejected by the Debtors by order of the Court. Each Supplemental

70920023.6

Assumption Notice will include the same information with respect to listed Contracts as was included in the Cure and Possible Assumption and Assignment Notice. The Supplemental Assumption Notice shall be served by the Debtors on the applicable Contract Counterparties by overnight mail, and the deadline for such Contract Counterparties to object to the Cure Amount (only if different than the Cure Amount set forth in the Cure and Possible Assumption and Assignment Notice) or the assumption and assignment of the applicable Contracts to a Successful Bidder shall be fourteen (14) days after service of the Supplemental Assumption Notice.

22.     Objections, if any, to the cure amount set forth on the Cure and Possible Assumption and Assignment Notice or the possible assignment of its executory contract or unexpired lease (each, a "**Contract Objection**") **must** (i) be in writing, (ii) comply with the applicable provisions of the Bankruptcy Rules and the Local Rules, and (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof, and (iv) be filed with the Bankruptcy Court and served on the following parties so as to be actually received on or before **November 27, 2019 at 4:00 p.m. (prevailing Eastern Time) (the "Contract Objection Deadline")**: (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com) and Shanti Katona (skatona@polsinelli.com); (b) counsel to the Prepetition Agent, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (Collins@rlf.com);

(c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com) and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth Niederman (sniederman@foxrothschild.com); (d) counsel to the Official Committee of Unsecured Creditors for these the Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com), and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: G. David Dean (ddean@coleschotz.com) and Patrick J. Reilley (preilley@coleschotz.com); and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Casey (linda.casey@usdoj.gov). If a Successful Bidder that is not a Stalking Horse Bidder prevails at the Auction, then the deadline to object to assumption and assignment solely with respect to the adequate assurance of future performance shall be extended so that any such objection must be received by the Sale Hearing, *provided*, *however*, that the deadline to object to the proposed cure amount shall not be so extended.

23.     If a Contract Counterparty does not timely file and serve a Contract Objection or object to assumption and assignment solely with respect to the adequate assurance of future performance by the Sale Hearing in the case of Successful Bidder that is not a Stalking Horse Bidder, that party will be forever barred from objecting to (i) the Debtors' proposed cure amount, (ii) the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), (iii) the related relief requested in the Motion, and (iv) the Sale. Such party shall be forever barred and estopped from objecting to the

16

cure amount, the assumption and assignment of that party's executory contract or unexpired lease (including the adequate assurance of future performance), the relief requested in the Motion, whether applicable law excuses such counterparty from accepting performance by, or rendering performance to, a Stalking Horse Bidder or the Successful Bidder, as applicable, for purposes of Bankruptcy Code section 365(c)(1) and from asserting any additional cure or other amounts against the Debtors and the Stalking Horse Bidder or Successful Bidder, as applicable, with respect to such party's executory contract or unexpired lease.

24.     Where a Contract Counterparty to an Assigned Contract files a timely Contract Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or objecting to the possible assignment of that Contract Counterparty's executory contract or unexpired lease, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtors' ability to assign the executory contract or unexpired lease to the Successful Bidder will be determined at the Sale Hearing, unless otherwise agreed to by the parties or ordered by the Court.

25.     The payment of the applicable cure amount by the Debtors or Stalking Horse Bidder (or other Successful Bidder), as applicable, shall (i) effect a cure of all defaults existing thereunder and (ii) compensate for any actual pecuniary loss to such counterparty resulting from such default.

**V.     Notice of the Sale Process**

26.     The Sale Notice, and the Cure and Possible Assumption and Assignment Notice, in substantially the forms as annexed to this Order as Exhibit 2, Exhibit 3, and Exhibit 4, respectively, and the Bid Procedures Notice, in substantially the forms as annexed to the Motion as Exhibit C, respectively, are hereby approved.

17

27.    Within two (2) business days after the entry of this Order, the Debtors (or their agent) shall serve the Sale Notice by first-class mail upon: (a) the U.S. Trustee; (b)) counsel to the Prepetition Agent; (c) counsel to the Subordinated Term Loan Agent; (d) counsel to the Committee; (e) counsel to the Stalking Horse Bidder, if any; (f) all other parties who have expressed a written interest in the Assets; (g) the United States Attorney's Office for the District of Delaware; (h) the Internal Revenue Service; (i) all state and local taxing authorities with an interest in the Assets; (j) the Attorney General for the State of Delaware; (k) the Securities and Exchange Commission; (l) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (m) all parties known or reasonably believed to have asserted an Interest in the Assets; (n) the Contract Counterparties; (o) the Debtors' insurance carriers; (p) all parties entitled to notice pursuant to Local Rule 9013-1(m); and (q) any party that has requested notice pursuant to Bankruptcy Rule 2002.

28.    As soon as practicable after the entry of this Order, the Debtors shall publish the Bid Procedures Notice in a newspaper in national circulation. In addition, as soon as reasonably practicable, but in no event later than three (3) business days after entry of this Order, the Debtors will also post the Sale Notice and this Bid Procedures on the website maintained by the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC, located at http://kccllc.net/bayousteel.

29.    Such publication notice as set forth in the preceding two sentences shall be deemed sufficient and proper notice of the Sale to any other interested parties whose identifies are unknown to the Debtors.

**VI.    The Sale Hearing**

30.    The Sale Hearing will be conducted on **December 19, 2019 at 10:00 a.m. (prevailing Eastern Time)**. The Debtors will seek entry of an order of the Court at the Sale

18

Hearing approving and authorizing the sale of the Assets to the Successful Bidder. The Debtors, in consultation with the Consultation Parties and subject to the consent of the Prepetition Agent, may adjourn the Sale Hearing from time to time without further notice other than such announcement being made in open court or a notice of adjournment filed on the Court's docket.

## VII.    Objections to the Sale

31.    Objections, if any, to the relief requested in the Motion relating to the Sale (each, a "**Sale Objection**") must: (i) be in writing, (ii) comply with the Bankruptcy Rules and the Local Rules, (iii) be filed with the Court, and (iv) be served so it is actually received no later than **4:00 p.m. (prevailing Eastern Time) on December 13, 2019**,[4] by (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com) and Shanti Katona (skatona@polsinelli.com); (b) counsel to the Prepetition Agent, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (Collins@rlf.com); (c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com) and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth Niederman (sniederman@foxrothschild.com); (d) counsel to the Official Committee of Unsecured Creditors for these the Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com), and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: G. David

---

[4] The deadline for the Prepetition Agent to object to the Sale shall be December 19, 2019 at 9:00 a.m. (ET).

Dean (ddean@coleschotz.com) and Patrick J. Reilley (preilley@coleschotz.com); and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Casey (linda.casey@usdoj.gov).

32.     A party's failure to timely file a Sale Objection in accordance with this Order shall forever bar the assertion, at the applicable Sale Hearing or otherwise, of any objection to the relief requested in the Motion, or to the consummation of the Sale and the performance of the related transactions, including the transfer of the Assets to the applicable Successful Bidder(s), free and clear of all liens, claims, interests, and encumbrances pursuant to Bankruptcy Code section 363(f), and shall be deemed to be a "consent" for purposes of Bankruptcy Code section 363(f).

## VIII.   <u>Other Relief Granted</u>

33.     Nothing in this Order, the Stalking Horse Agreement, or the Motion shall be deemed to or constitute the assumption or assignment of an executory contract or unexpired lease.

34.     The requirements of Bankruptcy Rules 6004(h) and 6006(d) are waived.

35.     The Debtors are hereby authorized to conduct the Sale without the necessity of complying with any state or local bulk transfer laws or requirements.

36.     The Debtors are authorized to take all reasonable actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

37.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry, notwithstanding any provision in the Bankruptcy Rules or the Local Rules to the contrary, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

70920023.6

38.    The Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: November 8th, 2019**
**Wilmington, Delaware**

21