# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |

## AFFIDAVIT OF PUBLICATION OF THE NOTICE OF BID PROCEDURES, AUCTION, HEARING, AND DEADLINES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS IN USA TODAY

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.



## VERIFICATION OF PUBLICATION

**COMMONWEALTH OF VIRGINIA**
**COUNTY OF FAIRFAX**

Being duly sworn, Vanessa Salvo says that she is the principal clerk of USA TODAY, and is duly authorized by USA TODAY to make this affidavit, and is fully acquainted with the facts stated herein: on **Wednesday, November 13, 2019**, the following legal advertisement – **In re: BAYOU STEEL BD HOLDINGS, L.L.C.** – was published in the national edition of **USA TODAY**.

_Vanessa S._
Principal Clerk of USA TODAY
November 13, 2019

This _13th_ day of _November_ month _2019_ year.

_Robin Sue Purcell_
Notary Public
Commission expires on 31 October 2023



Disney Plus experienced problems on its first day. EDWARD C. BAIG

# Disney Plus hits snags on Day 1

**Users report a mixed experience**

Edward C. Baig
and Mike Snider
USA TODAY

Did Disney leave "Wreck-It Ralph" in charge?

The launch of Walt Disney's ambitious and highly anticipated Disney Plus streaming service Tuesday got off to a bumpy start, tangled in a series of problems, from sign-on difficulties and error messages to screens that were left, um, frozen.

Perhaps Ralph *did* break the Internet.

Subscribers eager to check out the debut of "The Mandalorian," the first "Star Wars" live-action TV series and one of the would-be crown jewels of the new service, may think so. They're finding that a reliable streaming galaxy is, indeed, still far, far away.

Disney devotees hoping to consume classic films such as "Bambi," "Fantasia" and "The Lion King" from the company's rich vault – not to mention Marvel diehards who can't get enough of "The Avengers" or "Iron Man" – also were left in the dark.

There certainly has been no shortage of interest in Disney+ ($6.99 monthly or $69.99 annually), the entertainment giant's entry into the increasingly congested subscription-based streaming landscape that is already occupied by, among others, Netflix, Hulu, Amazon and Apple.

Disney's pitch to a family-friendly audience is built around nearly 500 movies and 7,500 TV episodes, all that leverage iconic properties: the Disney studio itself, plus Pixar, Marvel, Star Wars and National Geographic.

Out of the gate, fans were frustrated.

Brian Clackley (@TheClickClacker) tweeted, "Sure hope this turns out better than the mydisneyexperience app which is constantly down. With all that money @Disney should be able to produce tech that works right on day one."

Ben Lesh (@benlesh) tweeted, "My @disneyplus experience so far is underwhelming. LOL. … Some of it works. But



Many users saw blank screens. DISNEY



Something went wrong logging into Disney Plus on launch day. EDWARD C. BAIG

not much. Black screens (no errors) for Marvel and Disney categories. Brand new Roku."

Many USA TODAY staffers experienced similar growing pains checking out Disney Plus on phones, tablets or set-top boxes. At least one, however, found the service streaming fine on a Roku Ultra and Apple TV 4K and simultaneously on the newer Roku and an older model elsewhere in the home.

Rich Greenfield, a media/tech/telecom analyst for LightShed Partners (@RichLightShed), tweeted that he had a "great login experience" and the "streaming was flawless."

The only problem? After watching the first episode of "The Mandalorian," there was no Episode 2 to watch, Greenfield said. (The next episode arrives Friday, and new episodes land weekly after that.)

Disney released and tweeted a statement acknowledging the problems: "The consumer demand for Disney Plus has exceeded our highest expectations. While we are pleased by this incredible response, we are aware of the current user issues and are working to swiftly resolve them. We appreciate your patience."

The problems arose despite Disney owning one of the best streaming companies on the planet, Disney Streaming Services, which grew out of its purchase of a controlling interest in BAMTech in 2017. Major League Baseball launched BAMTech in 2000 to run its websites and went on to run streaming services for HBO, WWE and other sports leagues.

Even that couldn't lead to a magic carpet ride of a launch. "Clearly, they failed to anticipate demand," said Michael Pachter, industry analyst with Wedbush Securities. "I would say they have till Sunday to get this fixed permanently. Once they cross a week, people will give up on the service."

How can the company make amends?

Andy Shapiro (@andyshapiro) tweeted one idea: "I think the only reasonable response Disney can give after #DisneyPlus fails on launch day is to provide all registered users free annual passes to Disneyland. Do the right thing, guys."

*Are you having trouble getting started with Disney Plus? Email: ebaig@usatoday.com or tweet @edbaig or @mikesnider.*

## Too much Facebook may lead to bad grades

Kevin Wheeler
USA TODAY

As it turns out, using Facebook probably won't make you any better at reading real books. In fact, cutting back on Facebook could boost students' grades, according to recent research from the University of Technology Sydney.

Researchers, led by Dr. James Wakefield, analyzed the grades of more than 500 freshman students from an introductory accounting class at an Australian university and found that the more time they spent using Facebook, the worse their grades were.

For example, students who reported using Facebook for three hours a day or more had test scores about 10% lower than those who used Facebook less often.

This three-hour mark is significant because it is close to the average amount of time students were found to use Facebook: two hours. Some students, however, reported using Facebook for as many as eight hours.

While accounting for age, gender and whether or not a student was an accounting major, the findings also revealed a split between the effects of Facebook on high achieving students and low achieving students. High-performing students showed no difference in grades, regardless of their time spent on Facebook, while lower-achieving students appeared to be most affected by their Facebook use.

"Lower-achieving students may already be grappling with self-regulation and focus, so it seems time spent on Facebook provides a further distraction from studies," Wakefield said in a statement.

Wakefield, an accounting education specialist, suggested that students with below-average grades might benefit from switching off notifications on their phones and cutting down on their time spent on Facebook.

According to the Pew Research Center, 90% of Americans ages 18-29 use social media, and 74% of Facebook users check the site every day. As of 2018, 80% of Americans age 18-24 use Facebook.

## MARKETPLACE TODAY

For advertising information: 1.800.397.0070    www.russelljohns.com/usat

### NOTICES
### LEGAL NOTICES

IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF DELAWARE
In re: BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] Debtors.    Chapter 11    Case No. 19-12153 (KBO) (Jointly Administered)

**NOTICE OF BID PROCEDURES, AUCTION, HEARING, AND DEADLINES RELATING TO THE SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS**

PLEASE TAKE NOTICE that on October 11, 2019, the above-captioned debtors and debtors in possession (the "**Debtors**") in the above-captioned case (the "**Bankruptcy Case**"), filed a *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 73] (the "**Bid Procedures and Sale Motion**").[1] The Debtors seeks to complete a sale (the "**Transaction**") of substantially all their assets (the "**Assets**")[2] to a prevailing bidder or bidders (the "**Successful Bidder**") at an auction free and clear of all liens, claims, encumbrances and other interests pursuant to Bankruptcy Code section 363 (the "**Auction**"), with all such liens, claims, encumbrances and other interests attaching with the same validity and priority to the proceeds of the sale.

PLEASE TAKE FURTHER NOTICE that, on November 8, 2019, the Bankruptcy Court entered an order [Docket No. 224] (the "**Bid Procedures Order**") approving the Bid Procedures set forth in the Bid Procedures and Sale Motion (the "**Bid Procedures**"), which set the key dates and times related to the sale of the Debtors' Assets. **All interested bidders should carefully read the Bid Procedures.** To the extent there are any inconsistencies between the Bid Procedures and the summary description of its terms and conditions contained in this notice, the terms of the Bid Procedures shall control.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Bid Procedures, the Debtors must receive a Qualifying Bid from interested bidders in writing, on or before **December 12, 2019 at 4:00 p.m. (prevailing Eastern Time)** or such later date as may be determined by the Debtors, in consultation with the Consultation Parties, and subject to (i) the reasonable written consent of the Prepetition Agent with respect to the ABL Collateral that is the subject of the Bid, and (ii) the reasonable written consent of the Subordinated Term Loan Agent with respect to the Excluded Collateral that is the subject of the Bid, in each case subject to Court adjudication of any dispute with respect thereto, (the "**Bid Deadline**"). To be considered, Qualifying Bids must be sent to the following at or before the Bid Deadline: (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com) and Shanti M. Katona (skatona@polsinelli.com); (b) counsel to the Prepetition Agent, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (Collins@rlf.com); (c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com) and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth Niederman (sniederman@foxrothschild.com); (d) counsel to the Official Committee of Unsecured Creditors for these the Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com), and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: G. David Dean (ddean@coleschotz.com) and Patrick J. Reilley (preilley@coleschotz.com).

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, if the Debtors receive one or more Qualifying Bids (other than the Stalking Horse Agreement) by the Bid Deadline, the Auction will be conducted on **December 18, 2019 at 10:00 a.m. (prevailing Eastern Time)** at Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, or at such other place, date and time as may be designated by the Debtors.

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, the Debtors have designated certain Assigned Contracts that may be assumed or assumed and assigned to the Successful Bidder. By November 13, 2019, the Debtors shall send a notice to each counterparty to an Assigned Contract setting forth the Debtors' calculation of the cure amount, if any, that would be owing to such counterparty if the Debtors decided to assume or assume and assign such Assigned Contract, and alerting such nondebtor party that their contract may be assumed and assigned to the Successful Bidder (the "**Cure and Possible Assumption and Assignment Notice**").

PLEASE TAKE FURTHER NOTICE that, pursuant to the terms of the Bid Procedures, any counterparty that objects to the cure amount set forth in the Cure and Possible Assumption and Assignment Notice or the possible assignment of their Assigned Contract(s) must file with the Bankruptcy Court and serve an objection (a "**Cure or Assignment Objection**") so it is actually received on or before **4:00 p.m. prevailing Eastern Time on November 27, 2019**, by (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com) and Shanti M. Katona (skatona@polsinelli.com); (b) counsel to the Prepetition Agent, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (Collins@rlf.com); (c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com) and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth Niederman (sniederman@foxrothschild.com); (d) counsel to the Official Committee of Unsecured Creditors for these the Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com), and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: G. David Dean (ddean@coleschotz.com) and Patrick J. Reilley (preilley@coleschotz.com); (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Casey (linda.casey@usdoj.gov); and (f) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801. Where a counterparty to an Assigned Contract files a timely Cure or Assignment Objection asserting a higher cure amount than the amount listed in the Cure and Possible Assumption and Assignment Notice, or an objection to the possible assignment of that counterparty's Assigned Contract, and the parties are unable to consensually resolve the dispute, the amount to be paid under Bankruptcy Code section 365 (if any) or, as the case may be, the Debtors' ability to assign the Assigned Contract to the Successful Bidder will be determined at the Sale Hearing (as defined below).

PLEASE TAKE FURTHER NOTICE that a hearing will be held to approve the sale of the Assets to the Successful Bidder (the "**Sale Hearing**") before the Honorable Karen B. Owens, U.S. Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801, 5th Floor, Courtroom No. 6, on **December 19, 2019 at 10:00 a.m. (prevailing Eastern Time)**, or at such time thereafter as counsel may be heard or at such other time as the Bankruptcy Court may determine. The Sale Hearing may be adjourned from time to time without further notice to creditors or parties in interest other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or on the agenda for such Sale Hearing. Except as otherwise provided in the Bid Procedures, objections to the sale of the Acquired Assets to the Successful Bidder must be filed and served so they are received no later than **4:00 p.m. (prevailing Eastern Time) on December 13, 2019**, by (a) counsel for the Debtors, Polsinelli PC, 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Attn: Christopher A. Ward (cward@polsinelli.com) and Shanti M. Katona (skatona@polsinelli.com); (b) counsel to the Prepetition Agent, Vinson & Elkins LLP, 2001 Ross Avenue, Suite 3900, Dallas, Texas 75201-2975, Attn: William L. Wallander (bwallander@velaw.com) and Bradley R. Foxman (bfoxman@velaw.com), and Richards, Layton & Finger, P.A., One Rodney Square, 920 North King Street, Wilmington, Delaware 19801, Attn: Mark D. Collins (Collins@rlf.com); (c) counsel to Black Diamond Commercial Finance, LLC, Winston & Strawn LLP, 35 Wacker Dr., Chicago, Illinois 60601, Attn: Dan McGuire (dmcguire@winston.com) and Fox Rothschild LLP, Citizens Bank Center, 919 North Market Street, Suite 300, Wilmington, Delaware 19899-2323, Attn: Seth Niederman (sniederman@foxrothschild.com); (d) counsel to the Official Committee of Unsecured Creditors for these the Chapter 11 Cases, Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: Jason R. Adams (jadams@kelleydrye.com) and Lauren S. Schlussel (lschlussel@kelleydrye.com), and Cole Schotz P.C., 500 Delaware Avenue, Suite 1410, Wilmington, Delaware 19801, Attn: G. David Dean (ddean@coleschotz.com) and Patrick J. Reilley (preilley@coleschotz.com); (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, Delaware 19801, Attn: Linda Casey (linda.casey@usdoj.gov); and (f) the Clerk of the Bankruptcy Court for the District of Delaware, 824 North Market Street, 3rd Floor, Wilmington, Delaware 19801.

PLEASE TAKE FURTHER NOTICE that the Debtors are seeking to waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d) in order for the Sale to close immediately upon entry of the Sale Order by this Court.

PLEASE TAKE FURTHER NOTICE that this notice is subject to the full terms and conditions of the Bid Procedures and Sale Motion, the Bid Procedures Order and the Bid Procedures, which shall control in the event of any conflict, and the Debtors encourage parties in interest to review such documents in their entirety. Copies of the Bid Procedures and Sale Motion, the Bid Procedures and the Bid Procedures Order are available for free by accessing the website of the Debtors' noticing agent, Kurtzman Carson Consultants LLC, located at http://kccllc.net/bayousteel, or for a fee via PACER at http://www.deb.uscourts.gov.

Dated: November 8, 2019, Wilmington, Delaware
Respectfully submitted, POLSINELLI PC, */s/ Shanti M. Katona*, Christopher A. Ward (Del. Bar No. 3877), Shanti M. Katona (Del. Bar No. 5352), Stephen J. Astringer (Del. Bar No. 6375), 222 Delaware Avenue, Suite 1101, Wilmington, Delaware 19801, Telephone: (302) 252-0920, Facsimile: (302) 252-0921, cward@polsinelli.com, skatona@polsinelli.com, sastringer@polsinelli.com, *Counsel to the Debtors and Debtors in Possession*

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783). The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.
[2] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Bid Procedures and Sale Motion.
[3] The Debtors may sell all or substantially all of the Assets in the Transaction; *provided, however*, that until such time as the Prepetition Lenders' claims have been paid in full, only collateral of the Prepetition Agent that remains as of the date of the closing of any Transaction shall be subject to the Sale.

### ONE CALL DOES IT ALL!
### Call Today! (800) 397-0070