1

```
                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE

                                     .    Chapter 11
IN RE:                               .
                                     .    Case No. 19-12153 (KBO)
BAYOU STEEL BD HOLDINGS, LLC,        .
et al.,                              .
                                     .    Courtroom No. 2
                                     .    824 North Market Street
                                     .    Wilmington, Delaware 19801
                                     .
              Debtors.               .    December 19, 2019
. . . . . . . . . . . . . . . . . .       11:05 AM

                        TRANSCRIPT OF HEARING
                 BEFORE THE HONORABLE KAREN B. OWENS
                    UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

For the Debtors:          Christopher Ward, Esquire
                          Shanti Katona, Esquire
                          Stephen J. Astringer, Esquire
                          POLSINELLI PC
                          222 Delaware Avenue, Suite 1101
                          Wilmington, Delaware 19801



Audio Operator:           AL LAGUNO

Transcription Company:    Reliable
                          1007 N. Orange Street
                          Wilmington, Delaware 19801
                          Email:  gmatthews@reliable-co.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.
```

```
 1  APPEARANCES (Continued):

 2  For Blue Cross and Blue    David Klauder, Esquire
    Shield of Louisiana:       BIELLI & KLAUDER, LLC
 3                             1204 N. King Street
                               Wilmington, Delaware 19801
 4
    For the Committee:         James Carr, Esquire
 5                             KELLEY DRYE & WARREN LLP
                               101 Park Avenue
 6                             New York, New York 10178

 7
    For Black Diamond          Daniel McGuire, Esquire
 8  Commercial Finance:        WINSTON & STRAWN LLP
                               35 W Wacker Drive
 9                             Chicago, Illinois 60601

10  For Liberty BSG            Anson B. Frelinghuysen, Esquire
    Holdings, Inc.:            HUGHES HUBBARD & REED LLP
11                             One Battery Park Plaza
                               New York, New York 10004
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

INDEX

**Bar Date Motion.** Motion of Debtors for Entry of an Order (I) Establishing Bar Dates for Filing Proofs of Claim, Including Section 503(b)(9) Claims and (II) Approving Form and Manner of Notice Thereof [Docket No. 281; Filed: 12/5/2019]

**Employee Wages.** Motion of Louisiana Health Service & Indemnity Company, D/B/A Blue Cross and Blue Shield of Louisiana for Allowance and Payment of Claim Pursuant to the Employee Wages and Benefits Order, or Alternatively, Allowance and Payment of an Administrative Claim Pursuant to 11 U.S.C. § 503(b) [Docket No. 311; Filed: 12/13/2019]

**Ruling: Adjourned Until December 23rd**

**Bid Procedures.** Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors Assets, (B) Scheduling an Auction and Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief [Docket No. 73; 10/11/2019]

1        (Proceedings commenced at 11:05 a.m.)
2              THE CLERK:  Please rise.
3              THE COURT:  Good morning.  Please be seated.
4              MS. KATONA:  Good morning, Your Honor; Shanti
5   Katona of Polsinelli on behalf of the debtors.
6              Your Honor, we're here on the debtors agenda for
7   what we had hoped would be seeking approval of the debtor's
8   sale of substantially all their assets.  We apprised Your
9   Honor's Chambers earlier this morning and I will turn the
10  podium over to Mr. Ward to address a status update with
11  respect to that.
12             Before we turn to that matter, just going through
13  the agenda.  Your Honor, we filed CNO's with respect to a
14  number of matters that we don't believe have been entered
15  yet.  So, I just wanted to walk Your Honor through those
16  orders to the extent you have any questions.
17             THE COURT:  No, I reviewed those orders prior to
18  the hearing.  So, they will be uploaded.  So, no need.
19             MS. KATONA:  Okay.
20             THE COURT:  You can just go right into the meat of
21  today's hearing.
22             MS. KATONA:  Fantastic. Your Honor, turning to
23  the first agenda item -- well, this one will move a lot
24  faster than you think. If we could move to Number 12 first
25  which is the debtor's motion seeking to establish a bar date.

1  Your Honor, we believe that both 12, and then I will have Mr.
2  Klauder address, and 13.  A lot of this hinges on what's
3  happening with respect to the sale.  So, if we can address
4  the sale we believe that it would be fruitful for the debtors
5  to have an opportunity to adjourn, at least, 12 and then Mr.
6  Klauder can address 13 to the date to which Your Honor has
7  availability to hear the sale.
8              THE COURT:  Okay.  So, 12 is the bar date motion?
9              MS. KATONA:  12 is the bar date motion.
10             THE COURT:  Okay.  So, we're going to take
11 Louisiana's motion, is that what we're doing here?
12             MR. KLAUDER:  I believe so.  David Klauder on
13 behalf of Blue Cross, Blue Shield of Louisiana.
14             I think it's going to end up tracking with
15 whatever happens with the sale hearing.  We have been
16 discussing -- by the way, thank you, Your Honor, for setting
17 this on shortened notice and scheduling a hearing for today.
18 I know this came up quickly.
19             THE COURT:  I want to be clear on why I scheduled
20 it for a hearing.  I didn't schedule it for a hearing to
21 resolve or adjudicate Blue Cross's issues.  I scheduled it
22 because I want to ensure that if there are employees, whether
23 they are current or former, and they are submitting valid
24 claims, that they are going to be paid.  I don't care who is
25 paying them, but they are going to be paid.  Okay.

1     MR. KLAUDER: Okay.

2     THE COURT: So, that is why we're here.

3     MR. KLAUDER: Okay.

4     THE COURT: So, I appreciate that there is going to be a resolution or, perhaps, could be a resolution of the disputes. I don't think reading the papers that there could not be a negotiated solution here, but I want to be clear, there should be no former or current employee that is submitting a claim that is valid that is not going to get paid on a timely basis.

11    MR. KLAUDER: Okay. Thank you, Your Honor.

12    THE COURT: Okay.

13    MR. KLAUDER: At least as far as today we have been discussing a potential resolution. Communications were had this morning between myself and debtor's counsel with respect to that. Because today's substantive hearing on the sale looks like it's going to be continued we're going to use that time to see if we can firm-up a resolution understanding what Your Honor just said as well. That is helpful.

20    So, with respect to our motion it is going to get adjourned whenever we have an expected new hearing date. We can discuss and put it on for that, I believe.

23    THE COURT: And let me clarify. To the extent that Blue Cross, Blue Shield pays claims that are valid and it turns out that it was the debtor's responsibility then you

1  reserve all rights against the debtor.
2              MR. KLAUDER:  Right.
3              THE COURT:  Okay.  Because those claims will be
4  paid one way or the other.
5              MR. KLAUDER:  Okay.
6              THE COURT:  Does the lenders, debtors, everyone
7  understands that, correct?
8              MR. KLAUDER:  So, we will, I guess, figure out
9  what the next hearing date is and then hopefully push this
10 onto that.
11             THE COURT:  Great.
12             MR. KLAUDER:  Thank you.
13             THE COURT:  All right.  Mr. Ward?
14             MR. WARD:  I wish it was Ms. Katona, Your Honor.
15             THE COURT:  Well, it sounds like there has been a
16 great result.  I heard 13 bids, an auction till three a.m.,
17 this is good news.
18             MR. WARD:  There's two sides to every coin, Your
19 Honor.
20             THE COURT:  Okay.
21       (Laughter)
22             MR. WARD:  So, yes, there was 13 bids received; 12
23 of those were qualified.  We actually received an additional
24 bid after further -- further after the bid deadline which was
25 qualified yesterday and good faith deposits amended.  So, we

1 commenced an auction at 10 a.m. yesterday at our firm's
2 offices.  We had Lots A through J, J was substantially all
3 the assets, Lots A through I were all the separate lots for
4 bidding.
5       THE COURT:  Okay.
6       MR. WARD:  We had robust bidding.  Certain lots
7 had 25 to 35 rounds of bidding. We had highest bids for all
8 of the lots and we came to the last lot, which was Lot I,
9 which you may hear about today, which was for La Place which
10 is the main facility in Louisiana without the excess land
11 which is not very relevant for today's purposes, Your Honor,
12 but was another lot that was in the auction.
13       That lot finished with a credit bid of Black
14 Diamond, the second lien lender, for $23 and a half million
15 dollars.  As happens in auctions we took a long break and
16 discussed the bids for the lot, the bids for the whole that
17 we were expecting.  We did have a bid for substantially all
18 of the assets for $28 million dollars that we had not gotten
19 to yet.  We discussed the cash collateral budget with the
20 consultation parties and all the parties that were at the
21 auction.  We discussed the administrative solvency of the
22 debtor's estates.  And we never got to a point where we went
23 back on the record with respect to the bid for substantially
24 all the assets.
25       At about two o'clock in the morning yesterday

1  Black Diamond made what the debtor's consider a non-
2  conforming contingent bid adding some credit bids and making
3  it contingent with respect to Lot I and one of the other
4  bids.  This morning the debtor's board was not prepared to
5  accept that bid.  So, at 2 a.m. yesterday we adjourned the
6  auction until tomorrow at 10 a.m. telephonically.  We have
7  advised most of the parties, we will advise the others to the
8  extent we haven't so far.
9         And at the auction we will re-open all the lots
10 given the late bid that we received yesterday and we will
11 then commence the auction for Lot J for, substantially, all
12 of the assets.  I believe one of the bidders has some
13 comments on how the auction proceeded yesterday.  But where
14 we stand today the debtors are not prepared to go forward.
15 We have spoken to our board, our board has given us direction
16 as to how the auction should be conducted as to what, if it
17 stands as it is now, what the highest and best offer is for
18 those assets.
19        So, I think what we are asking the court for is a
20 hearing date, whether it's Friday or whether it's some point
21 in the future, to consider the sale.  We think no matter
22 which sale goes forward we are going to have unhappy parties
23 and someone is going to be objecting to the ultimate outcome
24 of that.  So, we stand here today asking for your indulgence
25 for an additional hearing on the sale.  It will be sometime

1  after 10 a.m. on Friday when we re-open the auction and
2  solicit bids all for Lots A through J from all parties again.
3          THE COURT:  Okay.  Why don't I hear from other
4  parties?
5          MR. WARD:  Thank you, Your Honor.
6          THE COURT:  Thank you.
7          MR. MCGUIRE:  Good morning, Your Honor; Dan
8  McGuire for Black Diamond Commercial Finance.
9          THE COURT:  Good morning.
10         MR. MCGUIRE:  I'd just like to say, add very
11 quickly, that bidding at the auction is still open and hasn't
12 concluded yet.  I do not think this is a good time for the
13 court to get involved in the sausage making that goes on with
14 respect to auctions. I think any issues people have with the
15 auction, et cetera, should wait until there is an actual
16 result and the debtor bring the highest and best bid before
17 the court.
18         I, frankly, think there is nothing to talk about
19 relative to this until the debtor is before the court saying
20 here is the bid or bids that I think are highest and best.
21 And I am asking the court to approve.
22         THE COURT:  Okay. Well, the only thing I am going
23 to be doing is scheduling a continued hearing.  So, I am not
24 going to stop anyone from presenting their position, but I am
25 not ruling on any relief today.

1          MR. MCGUIRE:  Thank you, Your Honor.

2          MR. CARR:  Good morning, Your Honor; Jim Carr of
3 Kelley Drye & Warren on behalf of the committee.

4          Your Honor, I am not about to tell you how the
5 sausage is being made because the sausage is still in the
6 process of being made.

7          In any event, needless to say, it was a very long
8 day yesterday.  We are continuing the auction tomorrow as
9 Your Honor heard.  Yesterday wasn't successful by any stretch
10 of the imagination, but throughout the day we had numerous
11 conversations with Mr. Ward with respect to what would be an
12 acceptable exit strategy for the committee.  We think we have
13 the components of that successful exit strategy in the
14 various bids.  Hopefully there will be something that we can
15 present to Your Honor that the committee can support.

16          In a nutshell it would be restarting La Place
17 facility so that employees would have a job going forward.
18 The vendors would have partners to conduct business with.
19 Administrative claims would be paid in full and that would
20 include, Your Honor, 503(b)(9) claims.  The employee health
21 benefits for Blue Cross, Blue Shield will be fully funded.

22          Your Honor, we think we can get there, but we need
23 some cooperation from Black Diamond to get there.

24          THE COURT:  Okay.

25          MR. CARR:  Thank you.

1        THE COURT:  Thank you.

2        All right.  Anyone else wish to be heard?

3        MR. FRELINGHUYSEN:  Anson B. Frelinghuysen for
4 Liberty BSG Holdings, Inc.

5        We are one of the bidders in the process which
6 happened yesterday.  We have some reservations about the way
7 the sausage is being made, to use today's analogy.  We agree
8 that we can just let it continue.  We do have some serious
9 reservations that we may need to bring up at a future date if
10 things go in a way that is not satisfactory and not in
11 accordance with the bid procedures.

12        THE COURT:  Okay.

13        MR. FRELINGHUYSEN:  We also understand that there
14 is direction from the board of directors on how to conduct
15 the auction that I just referred to.  I make a request that
16 that be made known to all the parties in advance of the
17 auction so that we know what we are walking into and we know
18 what those procedures are.

19        THE COURT:  Okay.  Well, Mr. Ward, you can run
20 your auction as you see fit.  You know the best practices.
21 So, to the extent that you need to make any announcements on
22 the record before the auction continues you can do so, but,
23 again, I don't want to hear the disputes right now.  You are,
24 basically, creating your record through the auction
25 transcript of what will be presented to me.

1        So, when I receive the disputes I will listen to
2   them and rule on the issue that are presented.  Okay.
3              MR. WARD:  Absolutely, Your Honor.  We're not
4   trying to hide the ball here.  We are going to re-open all
5   the lots at 10 a.m. tomorrow and go through A through J.
6   Parties will be allowed to bid again, credit bids will be
7   accepted, and we will just move forward with that and come
8   back to the court with what the debtors deem the highest and
9   best bids.
10             THE COURT:  Okay.  So, in terms of scheduling
11  realistically, I mean, what are you looking at if you wanted
12  a hearing time tomorrow?  My intention was actually to close
13  my Chambers for the benefit of the staff for the holiday
14  after lunch, but if you --
15             MR. WARD:  Your Honor, consulted with the
16  consultation parties and I think everyone agrees that there
17  is not a chance we're going to get done in time to get before
18  you tomorrow.
19             THE COURT:  Okay.
20             MR. WARD:  So, I know we are coming up on
21  Christmas, Hanukah and New Year's.
22             THE COURT:  Okay.  So let's take a five minute
23  break.  There is a chance I could hear you on Monday the
24  23rd.  Is that something that would be workable for everyone
25  in this room?

1      MR. WARD:  For the debtors it works, Your Honor.
2      THE COURT:  Okay.  Anyone else that would object
3 to that scheduling?
4      MR. CARR:  That's fine for the committee, Your
5 Honor.
6      MR. WARD:  It looks like it works for, at least,
7 the parties here, Your Honor.
8      THE COURT:  Okay.  Let me take a five minute break
9 and consult with those who are in charge of my scheduling.
10     Stand adjourned.
11   (Recess taken at 11:18 a.m.)
12   (Proceeding resumed at 11:26 a.m.)
13     THE CLERK:  Please rise.
14     THE COURT:  Please be seated.
15     Okay.  After consulting the powers that be let's
16 do a hearing at 12:30, starting 12:30 on Monday the 23rd.
17 Any of the disputed issues that I will have to address during
18 the hearing I would like the relevant parties to submit some
19 sort of statement, or pleading or objection by five p.m. on
20 Sunday.
21     MR. WARD:  Thank you very much, Your Honor.  We
22 truly appreciate your accommodation here.
23     THE COURT:  So, Monday at 12:30.  5 p.m. Sunday
24 submissions.
25     MR. WARD:  All right.  And we will file a notice

1 on the docket for parties.  And, obviously, we will let
2 parties that were at the auction know.
3         Before we adjourn, Your Honor, I think Ms. Katona
4 had one issue she wanted to discuss with the court on the
5 Blue Cross Blue Shield motion.
6         THE COURT:  Okay.
7         MS. KATONA:  Good morning, Your Honor; Shanti
8 Katona of Polsinelli on behalf of the debtors.
9         THE COURT:  Good morning.
10         MS. KATONA:  Your Honor, with respect to Agenda
11 Item Number 13 counsel for Blue Cross, Blue Shield of
12 Louisiana and the debtors were wondering if Your Honor would
13 entertain a brief in Chambers discussion regarding the
14 comments that were made with respect to the relief.
15         THE COURT:  You know, I have never and I've said
16 I'm never going to hold a Chamber's conference, but last
17 night when I was reading the papers I thought this actually
18 might be the dispute that I'm going to have a Chambers
19 conference on.  I have a meeting at 12:15.  How long do you
20 expect the Chambers conference will be?
21         MS. KATONA:  It should not take long from the
22 debtor's perspective, Your Honor.
23         MR. KLAUDER:  It should be pretty brief.
24         THE COURT:  Okay.  Why don't we then adjourn.  Do
25 you anticipate that we will need to come back on the record

1 after the Chambers conference?

2        MS. KATONA:  I don't believe so.

3        THE COURT:  Okay.

4        MR. KLAUDER:  The one thing I would put on the
5 record Agenda Item 13 will also get continued to the 23rd at
6 12:30.

7        THE COURT:  Yes, as well as Agenda Item Number 12.
8 Okay.  So, why don't we adjourn the hearing and you can meet
9 me in five minutes in the mediation room right next door.  We
10 are preparing for our judges meeting in that room.  So,
11 hopefully, there is no one currently in it.  Then I will wish
12 you good luck at the auction and see you on Monday.  Okay.

13        MS. KATONA:  Thank you, Your Honor.

14     (Proceedings concluded at 11:28 a.m.)

15

16                          CERTIFICATE

17

18 We certify that the foregoing is a correct transcript from

19 the electronic sound recording of the proceedings in the

20 above-entitled matter.

21

22

23 /s/Mary Zajaczkowski                    December 20, 2019
   Mary Zajaczkowski, CET**D-531

24

25