## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------------------X

In re:

BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*[1]

                                        Debtors.

-------------------------------------------------------------X

Chapter 11
(Jointly Administered)

Case No. 19-12153 (KBO)

Hearing Date: December 23, 2019
[Docket No. 73]

### CONDITIONAL OBJECTION OF BLACK DIAMOND
### COMMERCIAL FINANCE, L.L.C. TO SELECTION OF WINNING BID

Black Diamond Commercial Finance, L.L.C. ("BDCF") hereby conditionally objects to the selection of the winning bid at the auction completed on December 20, 2019, with respect to the *Motion of the Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 73].

### INTRODUCTION

1.      On December 18 and 20, 2019, the Debtors conducted an auction in connection with the potential sale of substantially all the Debtors' assets free and clear of liens, claims,

---

[1] The Debtors in these chapter 11 cases are: Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, L.L.C., and BD LaPlace, LLC.

encumbrances and interests.  On December 21, 2019, Debtors selected the cash bid of $28 million (subject to certain adjustments) from Liberty BSG Holdings Inc. (the "Liberty Bid") as the winning bid over the $33.5 million from a series of credit bids from BDCF (collectively, the "BDCF Bid"),[2] presumably on the pretense that the Liberty Bid included a restart of the Debtors' LaPlace facility.

2.      BDCF does not object to the selection of the Liberty Bid to the extent BDCF will receive the proceeds of the sale minus the current amount in the carve out in the current cash collateral budget.  To the extent BDCF would be required to accept less than the full amount of the sale proceeds from the Liberty Bid less the carve out amount, BDCF objects to the selection of the Liberty Bid as the winning bid.

3.      If it will not receive the sale proceeds minus only the carve out, BDCF objects to the Debtors' selection of the Liberty Bid as the winning bid because BDCF cannot be forced to accept less than its allowed secured claim.  This is especially compelling where the secured claim value is set by a credit bid from the secured creditor, as forcing the secured creditor to accept a lower number would be to strip the secured creditor of its in rem rights.  BDCF also objects to the Debtors' selection of the Liberty Bid as the winning bid because it is not the highest and best bid, it is monetarily lower than the BDCF Bid, and a restart of the LaPlace facility is speculative at best.  Accordingly, BDCF respectfully requests that this Court deny Debtors' selection of the Liberty Bid as the winning bid unless BDCF receives the sale proceeds minus only the carve out amount.

---

[2] The BDCF bids also include cash sufficient to repay Bank of America at closing to the extent Bank of America has not been repaid in full at the time of the closing.  The Debtors' project that Bank of America will be repaid in full from the collection of accounts receivable prior to the projected closing date of January 31, 2020.

I.   **The Liberty Bid cannot be approved because the proceeds thereof will be less than the minimum amount of BDCF's secured claim, which was set by the BDCF Bid.**

4.      The $28 million Liberty Bid does not provide for payment in full of BDCF's secured claim, the floor of which was set by the $33.5 million BDCF Bid.  Under controlling precedent, BDCF cannot be compelled to accept less than the full amount of its secured claim.

5.      In *In re SubMicron Sys. Corp.*, the Third Circuit held that credit bidding sets the value of the creditor's secured claim.  *See* 432 F.3d 448 (3rd Cir. 2006).  There, the Third Circuit rejected any arguments that an allowed claim is only the secured portion of a creditor's claim finding that section 363(k) "empowers creditors to bid the total face value of their claims [and] does not limit bids to claims' economic value."  *In re SubMicron Sys. Corp.*, 432 F.3d 448, 459 (3d Cir. 2006).  Additionally, the Third Circuit explained that any bid received must be above the secured creditor's credit bid:

> Until [the nonrecourse undersecured lender] is paid in full, any bid received is subject to overbid by [the lender]. If [the bidder]'s bid were valued [below the full value of the lender's claim], [the lender] could overbid it, and [the lender]'s bid would then become, by definition, the "allowed" claim. . . . It is practical that [the lender] will bid in its entire obligation and therefore that is its "allowed" claim. Because no one could buy the property without [the lender]'s consent, unless [the lender] is paid in full, the "allowed claim" of [the lender] must (for purposes of credit bidding) be its total claim without reference to the "value" of the property.

*Id.* at 460 n.14.  Additionally, a lender holding a valid security interest in essentially all the assets sold is entitled to full payment of their claims from the proceeds of any sale of the underlying assets; "[t]heir credit bid did nothing more than preserve their right to the proceeds, as credit bids do under § 363(k)."  *In re SubMicron*, 432 F.3d at 461.[3]

---

[3] Forcing BDCF to accept proceeds from the Liberty Bid without its consent would be in direct derogation of their "right to the proceeds, as credit bids do," given that BDCF submitted a higher credit bid.

6. While the Bankruptcy Code allows a debtor to sell property of the estate free and clear of liens, claims and encumbrances of a secured creditor for less than the amount of its secured claim, the secured creditor must be compelled to do so through a legal or equitable proceeding. *See* 11 U.S.C. 363(f)(5). In an unpublished opinion, Judge Walrath contemplated this scenario in *In re Ferris Properties, Inc.*, where a sale price offered was insufficient to pay a secured creditor in full. *See No.* 14-10491-MFW (Bankr. D. Del. July 30, 2015). There, the secured lender objected to approval of the sale because the sale proceeds realized would be less than the amounts owed on the properties. In order to have the sale approved, the proponents of the sale were required to prove the existence of a legal or equitable proceeding that could compel the creditor to accept a money satisfaction of its interest in the assets to be sold. *Id.* (citing *In re PW, LLC*, 391 B.R. 25, 45 (B.A.P. 9th Cir. 2008)).

7. A cram down pursuant to section 1129(b)(2) of the Bankruptcy Code is the oft cited proceeding in which the debtor may attempt to compel the secured creditor to accept a money satisfaction. However, Judge Walrath observed that to cram down a secured creditor under section 1129(b)(2) a debtor must demonstrate that: (1) the secured creditor retains its liens; (2) the secured creditor receives deferred cash payments totaling at least the allowed amount of its claim; or (3) the secured creditor receives the indubitable equivalent of its claim. *See In re Ferris Properties, Inc.*, et al., at p. 6 (citing 11 U.S.C. § 1129(b)(2)(A)). There, since the debtor failed to demonstrate any of the requirements set forth in sections 1129(b)(2)(A)(i), (ii) and (iii), the court denied the debtor's motion to approve the sale.

8. Here, the Liberty Bid is subject to the same requirements contained in section 1129(b)(2)(A). Since a secured creditor's credit bid sets the minimum value of its allowed claim, BDCF cannot be compelled to accept less than its credit bid. This limitation makes sense

AmericasActive:14291426.3

considering secured creditors have state law in rem rights, which the Bankruptcy Code does not alter.

9.     Simply put, a debtor cannot sell free and clear over a higher credit bid unless there is other collateral available to provide the secured creditor the indubitable equivalent of its secured claim, as the debtor would not be allowing the secured creditor to retain its lien or providing payments equal to the amount of the credit bid (i.e., the value of its secured claim).  There is no other way to satisfy section 1129(b)(2)(A).

10.     Here, there is no dispute that:  (i) BDCF would not be retaining its lien; (ii) BDCF would not be receiving cash equal to the amount of the BDCF Bid; and (iii) BDCF would not receive any other assets to provide it the indubitable equivalent of the amount of the BDCF Bid.  Accordingly, *SubMicron,* as elucidated by *Ferris Properties*, cannot be satisfied and the Liberty Bid cannot be approved over the higher BDCF Bid.

**II.     The Liberty Bid is not the highest and best bid.**

11.     As a general matter, a debtor must demonstrate that the proposed sale price represents the highest and best offer.  A bankruptcy court may only accept a lower bid in the presence of sound business reasons, such as substantial doubt that the higher bidder can raise the cash necessary to complete the deal.  3 COLLIER ON BANKRUPTCY P 363.02[1][f] (15th ed. rev. 2009).

12.     No such reason exists here.  While not definitively articulated by the Debtors as the reason for selecting the Liberty Bid, based on discussions to date, BDCF believes it may be because the Liberty Bid has the potential for a restart of the LaPlace facility.  That basis is speculative at best, as the Liberty Bid includes absolutely no commitment to restart the LaPlace facility or to rehire a single employee of the Debtors (all of whom must be terminated prior to the closing per

the terms of the Liberty Bid).  There can be no genuine dispute that BDCF's Bid provides for the largest return for the estate and creditors.

13.     Courts have held that in determining whether to approve a sale, a judge is required to "expressly find from the evidence presented before him at the hearing a good business reason to grant such an application."  *Krys v. Farnum Place, LLC (In re Fairfield Sentry Ltd.)*, 768 F.3d 239, 246-47 (2d Cir. 2014).  Additionally, courts recognize that a bankruptcy court's "principal responsibility . . . is to secure for the benefit of creditors the best possible bid."  *Id.* (*citing Consumer News & Bus. Channel P'ship v. Fin. News Network Inc. (In re Fin. News Network Inc.)*, 980 F.2d 165, 169 (2d Cir. 1992)).

14.     The overriding consideration for approval of a section 363 sale is whether a good business reason has been articulated.  *See In re Chrysler LLC*, 576 F.3d 108, 114 (2d Cir. 2009); *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2d Cir. 2007); *In re Lionel*, 722 F.2d 1063, 1071 (2d Cir. 1983).  Presumably, the Debtors are using the speculative facility restart to justify selecting the monetarily lower Liberty Bid.  However, the Debtors have provided no evidence to prove that the facility restart can or will occur, or for that matter that the BDCF Bid will not ultimately lead to the restart of the LaPlace facility.

15.     Debtors have the burden to prove that their decision is justified in light of the higher BDCF Bid.  *See In re Integrated Res., Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992) ("[T]he debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer."), *aff'd* 147 B.R. 650 (S.D.N.Y. 1992); *see also In re GSC, Inc.*, 453 B.R. 132, 169-70 (Bankr. S.D.N.Y. 2011).

16.     Moreover, courts look at a sale as a whole, not its individual parts.  *See In re GSC, Inc.*, 453 B.R. at 173-74 ("the proper analysis of fair value is the value of the sale in its entirety

rather than the value of any individual component of that sale."). Here, the BDCF Bid undoubtedly exceeds the Liberty Bid by approximately $5.5 million. The Court should consider the whole of the BDCF Bid compared to the monetarily lower, speculatively-termed winning Liberty Bid. *See In re Broadmoor Place Invs.*, 994 F.2d 744, 746 (10th Cir. 1993) (finding that a bankruptcy court has "power to disapprove a proposed sale . . . if it has an awareness there is another proposal in hand which, from the estate's point of view, is better or more acceptable"). In doing so, the Court should find that the $33.5 million BDCF Bid is a higher and better bid than the $28 million Liberty Bid. This is especially true considering the most appealing feature of the Liberty Bid is a potential restart of the LaPlace facility; meanwhile, no proof or guarantee has been offered that the restart will ever be a reality.

<u>**CONCLUSION**</u>

WHEREFORE, BDCF respectfully submits that the Court should deny the Debtors' request to approve the Liberty Bid unless BDCF receives the proceeds of the Liberty Bid less only the current carve out amount, because the proceeds realized will not satisfy BDCF's secured claim in full and does not represent the highest and best offer, and grant such other and further relief as the Court deems to be just and proper.

Dated: December 22, 2019                         FOX ROTHSCHILD LLP

                                    By:   */s/ Seth S. Niederman*
                                          Seth A. Niederman (DE No. 4588)
                                          919 North Market Street, Suite 300
                                          Wilmington, DE 19899-2323
                                          Tel: (302) 654-7444
                                          Email: sniederman@foxrothschild.com

                                          -and-

                                          Daniel J. McGuire (IL No. 06239526)
                                          WINSTON & STRAWN LLP
                                          35 West Wacker Drive
                                          Chicago, IL 60601

Tel: (312) 558-5600
Email: dmcguire@winston.com

*Counsel to Black Diamond Commercial Finance, L.L.C.*

AmericasActive:14291426.3