## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| BAYOU STEEL BD HOLDINGS, L.L.C., *et al.*,[1] | Case No. 19-12153 (KBO) |
| Debtors. | (Jointly Administered) |
| | Re: Docket Nos. 73, 140, 161, 224, 242, 266, 270, 306, 313, 314, 315, 329, 355, 356, & 357 |

## ORDER (I) APPROVING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS UNDER THE ASSET PURCHASE AGREEMENT, (II) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (III) GRANTING RELATED RELIEF

Upon the *Motion of Debtors for Entry of (I) an Order (A) Approving Bid Procedures in Connection with the Potential Sale of Substantially All of the Debtors' Assets, (B) Scheduling an Auction and a Sale Hearing, (C) Approving the Form and Manner of Notice Thereof, (D) Authorizing the Debtors to Enter Into a Stalking Horse Agreement, (E) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief; and (II) an Order (A) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (B) Authorizing the Assumption and Assignment of Contracts and Leases, and (C) Granting Related Relief* [Docket No. 73] (the "**Motion**")[2] of the above-captioned debtors and debtors-in-possession (the "**Debtors**") for an order (this "**Sale**

---

1.   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783).  The location of the Debtors' mailing address is 138 Highway 3217, LaPlace, Louisiana 70068.

2.   Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion or in the Purchase Agreement (as defined herein), as applicable.  If there is a conflict between terms defined in the Motion and the Purchase Agreement, the Purchase Agreement shall control.

Order"), under sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006 and Local Rules 2002-1 and 6004-1, authorizing and approving, among other things, (a) the proposed sale of substantially all of the Debtors' assets (as defined in Section 1.1 of the Purchase Agreement, the "**Acquired Assets**") free and clear of liens, claims, encumbrances, and other interests; (b) assumption, as applicable, and assignment of certain of the Debtors' executory contracts and unexpired leases related thereto, and (c) other related relief; the Court having entered an order approving the bid procedures (the "**Bidding Procedures**") and granting related relief on November 8, 2019 [Docket No. 224] (the "**Bidding Procedures Order**"); an Auction having commenced pursuant to the terms of the Bid Procedures Order on December 18, 2019 through and concluding on December 20, 2019; the Debtors having identified the bid by Liberty BSG Holdings Inc. (the "**Buyer**") made at the Auction as the highest or otherwise best bid for the Acquired Assets; the Debtors and the Buyer having agreed to the terms of an asset purchase agreement (together with its schedules, exhibits, and attachments thereto, together with any instrument, agreement, document and certificate to be executed or delivered in accordance therewith, and pursuant to or in connection therewith, a copy of which asset purchase agreement is attached hereto as **Exhibit 1,** the "**Purchase Agreement**" and together with this Sale Order, the "**Transaction Documents**");[3] the Court having conducted a hearing on the Motion on December 23, 2019 (the "**Sale Hearing**") at which time all interested parties were offered an opportunity to be heard with respect to the Motion; the Court having (a) reviewed and considered the Motion, all relief related thereto, the objections thereto and statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at the Sale Hearing and (b) found

---

3.    In the case of any conflict between the provisions of the Purchase Agreement and this Sale Order, this Sale Order shall govern.

that, after the marketing process conducted in accordance with the Bidding Procedures Order, the Buyer has submitted the highest or otherwise best bid for the Acquired Assets; adequate and sufficient notice of the Bidding Procedures, the Purchase Agreement, and all transactions contemplated thereunder and in this Sale Order having been given in the manner directed by the Court in the Bidding Procedures Order; reasonable and adequate notice of the Motion having been provided to all persons required to be served in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules; all interested parties having been afforded an opportunity to be heard with respect to the Motion and all relief related thereto; jurisdiction existing for the Court to consider the Motion; and after due deliberation on the foregoing and upon the arguments and statements in support of the Motion presented at the hearing before the Court, it appears that the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other parties in interest, that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein, and that good and sufficient cause appearing therefor;

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:[4]

A.      **Jurisdiction and Venue**.  This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B.      **Statutory Predicates**.  The statutory predicates for the relief sought in the Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rules 2002-1 and 6004-1.

---

4.  Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

C.     **Final Order**.  This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.     **Notice**.  Actual written notice of, and a fair and reasonable opportunity to object to and to be heard with respect to the Motion and the Notice of Bid Procedures, Auction, Hearing, and Deadlines Relating to the Sale of Substantially All of the Assets of the Debtors [Docket No. 246] (the "**Sale Notice**") was provided to the following parties: (a) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"); (b) counsel to Bank of America, N.A. as administrative agent (the "**Prepetition Agent**") for itself and the other lenders (the "**Prepetition Lenders**") under the Debtors' prepetition revolving credit agreement; (c) counsel to Black Diamond Commercial Finance, LLC as agent (the "**Subordinated Term Loan Agent**"); for itself and the other lenders (the "**Subordinated Term Loan Lenders**"); (d) counsel to the Committee; (e) all other parties who have expressed a written interest in the Assets; (f) the United States Attorney's Office for the District of Delaware; (g) the Internal Revenue Service; (h) all state and local taxing authorities with an interest in the Assets; (i) the Attorney General for the State of Delaware; (j) the Securities and Exchange Commission; (k) all other governmental agencies with an interest in the Sale and transactions proposed thereunder; (l) all parties known or reasonably believed to have asserted an Interest in the Assets; (m) the counterparties to the Contracts (the "**Contract Counterparties**"); (n) the Debtors' insurance carriers; (o) all parties entitled to notice pursuant to Local Rule 9013-1(m); and (p) any party that has requested notice pursuant to

Bankruptcy Rule 2002.  *See* [Docket No. 246].  The Sale Notice and the Bidding Procedures Order were also posted on the website of the Debtors' claims and noticing agent.  The Sale Notice was also published in the national publication of USA Today.  *See* [Docket No. 247].

E.    The Sale Notice was reasonably calculated to provide all interested parties with timely and proper notice of the Sale, the Auction and the Sale Hearing.

F.    As evidenced by the affidavits of service previously filed with the Court, proper, timely, adequate, and sufficient notice of the Motion, Auction, Purchase Agreement, Sale Hearing, and transactions contemplated thereby, has been provided in accordance with the Bidding Procedures Order, sections 105(a), 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, and 6006.  The Debtors have complied with all obligations to provide notice of the Motion as required by the Bidding Procedures Order.  The notices described above were good, sufficient, and appropriate under the circumstances, and no other or further notice of the Motion, Auction, Purchase Agreement, or Sale Hearing is or shall be required.  The disclosures made by the Debtors concerning the Motion, Auction, Purchase Agreement, and Sale Hearing were good, complete, and adequate.

G.    In accordance with the Bidding Procedures Order, the Debtors served a cure and possible assumption and assignment notice ("**Assumption Notice**") [*see* Docket No. 242] of the Assumed Contracts/Leases upon each non-debtor counterparty to an Assumed Contract/Lease set forth on **Exhibit 2** and will serve a Supplemental Assumption Notice (as defined in the Bidding Procedures Order) upon each non-debtor counterparty to an Additional Assumed Contract/Lease set forth on **Exhibit 3**.  The Assumption Notice identified, and the Supplemental Assumption Notice will identify, the sole and exclusive amounts that the Debtors proposed to pay in connection with the assumption of the Assumed Contracts/Leases and Additional Assumed Contract/Leases,

as applicable (the foregoing amounts as stated in the Assumption Notice, as modified herein, and the Supplemental Assumption Notice, collectively referred to as the "**Cure Amounts**").  The Assumption Notice stated, and the Supplemental Assumption Notice will state, that the affected counterparty would be forever barred and estopped from asserting any other claims arising under such Assumed Contracts/Lease(s) or Additional Assumed Contract/Lease(s) prior to the date of assumption and would be deemed to consent to the assumption of the Assumed Contract/Lease(s) or Additional Assumed Contract/Lease(s), as applicable, unless an objection was timely filed.

H.      The service and provision of the Assumption Notice was good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assumed Contracts/Leases or establishing a Cure Amount for the respective Assumed Contract/Lease.  Non-debtor counterparties to the Assumed Contracts/Leases have had an adequate opportunity to object to assumption and assignment of the applicable Assumed Contract/Lease and the Cure Amount set forth in the Assumption Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code).  The deadline (the "**Contract Objection Deadline**") to file an objection to the Debtors' ability to assume and/or assign the Assumed Contract/Lease or to the stated Cure Amounts (a "**Contract Objection**") has expired and to the extent any such party timely filed a Contract Objection, all such Contract Objections have been resolved, withdrawn, overruled by this Sale Order, or continued to a later hearing by agreement of the parties.

I.      The service and provision of the Supplemental Assumption Notice as provided in the Bidding Procedures is good, sufficient, and appropriate under the circumstances, and no further

6

notice need be by given in respect of assumption and assignment of the Additional Assumed Contracts/Leases or establishing a Cure Amount for the respective Additional Assumed Contract/Lease.  Non-debtor counterparties to the Additional Assumed Contracts/Leases shall be provided an adequate opportunity to object to assumption and assignment of the applicable Additional Assumed Contract/Lease and the Cure Amount set forth in the Supplemental Assumption Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty from accepting performance by, or rendering performance to, Buyer for purposes of section 365(c)(1) of the Bankruptcy Code), subject to the procedures set forth in the Bidding Procedures Orders. The deadline (the "**Additional Contract Objection Deadline**") to file an objection to the Debtors' ability to assume and/or assign the Additional Assumed Contract/Lease or to the stated Cure Amounts (an "**Additional Contract Objection**") expires on January 16, 2020.

J.        **Corporate Authority**.  Through this Sale Order, (i) the Debtors' sale of the Acquired Assets is duly and validly authorized by all necessary corporate or limited liability company (as applicable) action; (ii) the Debtors have all the power and authority necessary to consummate the transactions contemplated by the Purchase Agreement; and (iii) other than as set forth in the Purchase Agreement, need no consent or approval from any other person to consummate the transactions contemplated by the Purchase Agreement.

K.        **Sale in Best Interests of the Debtors' Estates**.  Good and sufficient reasons for approval of the Purchase Agreement and the transactions to be consummated in connection therewith (the "**Sale**") have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications and

71516413.7

(b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code, outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyer is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will provide the means for the Debtors to maximize creditor recoveries.

L.      The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates. Time is of the essence in consummating the Sale. Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

M.      The consummation of the Sale and the assumption and assignment of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363, and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

N.      **Highest or Otherwise Best Offer**. The Debtors conducted the Auction in accordance with, and have otherwise complied in all material respects with, the Bidding Procedures Order. The Auction conducted in accordance with the Bidding Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets. The Auction was duly noticed and conducted in a non-collusive, fair, and good faith manner, and a reasonable opportunity was given to any interested party to make a higher or otherwise better offer for the Acquired Assets. The

8

Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative.  The Debtors' determination that the Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duty and constitutes a valid and sound exercise of the Debtors' business judgment.

O.    **Good Faith of Buyer and Sellers**.  The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Buyer without collusion, in good faith, and from arm's-length bargaining positions and is substantively and procedurally fair to all parties.  As demonstrated by (i) the testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bidding Procedures Order, and, among other things: (a) the Debtors and the Buyer complied with the provisions in the Bidding Procedures Order; (b) the Buyer agreed to subject its bid to the competitive bid procedures set forth in the Bidding Procedures Order; and (c) all payments to be made by the Buyer in connection with the Sale have been disclosed.  The Buyer is purchasing the Acquired Assets, in accordance with the Purchase Agreement, in good faith and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer is therefore entitled to all of the protections afforded by such provision, and otherwise has proceeded in good faith in all respects in connection with the Debtors' chapter 11 cases.  None of the Debtors nor the Buyer has engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under section 363(n) of the Bankruptcy Code.  Specifically, the Buyer has not acted in a collusive manner with any person and the Purchase Price was not controlled by any agreement among bidders.

71516413.7

P.    **Consideration**.  The consideration provided by the Buyer pursuant to the Purchase Agreement (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Acquired Assets, and (c) constitutes reasonably equivalent value and fair consideration (as those terms are defined and used in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than the Buyer.

Q.    **No Fraudulent Transfer**.  The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or the District of Columbia. Neither the Debtors nor the Buyer is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims.

R.    **Valid and Binding Contract**.  The Purchase Agreement is a valid and binding contract between the Debtors and the Buyer and shall be enforceable pursuant to its terms.  The transaction contemplated by the Purchase Agreement does not constitute a *de facto* plan of reorganization or liquidation as it does not propose to: (i) impair or restructure existing debt of, or equity interests in, the Debtors; (ii) impair or circumvent voting rights with respect to any plan proposed by the Debtors; (iii) circumvent chapter 11 safeguards, such as those set forth in sections 1125 and 1129 of the Bankruptcy Code; or (iv) classify claims or equity interests or extend debt maturities. Entry into the Purchase Agreement and the transactions contemplated therein neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates the terms

10

of a chapter 11 plan for the Debtors.  Entry into the Purchase Agreement does not constitute a *sub rosa* chapter 11 plan.

S.    **No Successor or Other Derivative Liability**.  The transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Buyer with the Debtors or their estates; there is not substantial continuity between the Buyer and the Debtors; there is no continuity of enterprise between the Debtors and the Buyer; the Buyer is not a mere continuation of the Debtors or their estates; and the Buyer is not a successor or assignee of the Debtors or their estates for any purpose.  The (i) transfer of the Acquired Assets to the Buyer and (ii) assumption, as applicable, and assignment to the Buyer of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases, do not and will not subject the Buyer to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.  Buyer would not purchase the Acquired Assets but for the protections against any claims based on "successor liability" theories as specified herein.

T.    **Free and Clear**.  The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of all liens, claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), rights liabilities, mortgages, deeds of trust, pledges, charges, security interests, of whatever kind or nature, rights of first refusal, royalties, conditions sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights-of-recovery,

71516413.7

judgments, orders and decrees of any court or foreign domestic governmental entity, taxes (including foreign, state and local taxes), covenants, restrictions, indentures, instruments, leases, options, claims for reimbursement or subrogation, contribution, indemnity or exoneration, encumbrances and other interests of any kind or nature whatsoever against any of the Debtors or the Acquired Assets owned by them, including, without limitation, any debts arising under or out of, in connection with, or in any way relating to, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, environmental liabilities, employment or labor law claims or liabilities, employee pension or benefit plan claims, single-employer benefit plan claims, retiree healthcare or life insurance claims or claims for taxes of or against any of the Debtors, and any derivative, vicarious, transferee or successor liability claims, alter ego claims, *de facto* merger claims, rights or causes of action (whether in law or in equity, under any law, statute, rule or regulation of the United States, any state, territory, or possession thereof or the District of Columbia), whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, contingent or matured, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material statutory or nonstatutory, legal or equitable, and whether imposed by agreement, understanding, law, equity or otherwise arising under or out of, in connection with, or in any way related to any of the Debtors, any of the Debtors' interests in the Acquired Assets, the operation of any of the Debtors' businesses  and with respect to each Assumed Contract/Lease and Additional Assumed Contract/Lease (subject to the payment of Cure Amounts as required under section 365(b) of the Bankruptcy Code) before the effective time of the Closing, pursuant to the Purchase Agreement, or the transfer of any of the Debtors' interests

in the Acquired Assets to the Buyer, and all Excluded Liabilities (collectively, excluding any Assumed Liabilities and Permitted Exceptions, the "**Claims**"), with all such Claims attaching to the proceeds received by the Debtors that are ultimately attributable to the property against or in which such Liens are asserted (the "**Sale Proceeds**") with the same validity, priority, extent, perfection, force and effect, and in the same order of priority, which such Claims now have against the Acquired Assets or their proceeds, if any.  Without limiting the generality of the foregoing, "Claims" shall include any and all liabilities or obligations whatsoever arising under or out of, in connection with, or in any way relating to: (1) any of the employee benefit plans, including any Claims related to unpaid contributions or current or potential withdrawal or termination liability; (2) any of the Debtors' collective bargaining agreements; (3) the Worker Adjustment and Retraining Notification Act of 1988; and (4) any of the Debtors' current and former employees. The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the Sale to the Buyer and the assumption of any Assumed Liabilities by the Buyer were not free and clear of all Claims.  The Debtors may sell the Acquired Assets free and clear of any Claims therein or thereon of any kind or nature whatsoever, except as set forth in this Sale Order, because, in each case one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied; provided, however, that, nothing herein shall be deemed, or construed as, a ruling or determination by this Court that the Assumed Liabilities encumber the Acquired Assets. Each entity with a Claim that is attached to the Acquired Assets to be transferred to the Buyer on the Closing Date: (i) has, subject to the terms and conditions of this Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those

13

holders of Claims on the Acquired Assets who did not object to the Motion are deemed, subject to the terms of this Sale Order, to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy Code.  All holders of Claims on the Acquired Assets (other than the Assumed Liabilities and Permitted Exceptions) are adequately protected by having such Claims attach to the Sale Proceeds with the same validity, priority, extent, perfection, force and effect, and in the same order of priority, which such Claims now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.  All Persons having Claims of any kind or nature whatsoever against the Debtors or the Acquired Assets shall be forever barred, estopped and permanently enjoined from creating, perfecting, pursuing, enforcing, attaching, collecting, recovering, or asserting such Claims against the Buyer or any of its assets, property, affiliates, successors, assigns, or the Acquired Assets.

U.      In accordance with Finding T of this Sale Order, the material and mechanic's lien asserted by Rexel USA, Inc. ("**Rexel**") described in its Notice of Lien Perfection [Docket No. 276], shall attach solely to the Sale Proceeds, subject to all rights, claims, and defenses of Rexel and the Debtors and any such further proceedings as may be necessary to establish the validity of such material and mechanic's lien under Louisiana law.

V.      The Buyer would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Acquired Assets that are owned by the Debtors was not free and clear of all Claims on the Acquired Assets, if the Buyer would, or in the future could, be liable for any such Claims, including, as applicable, certain liabilities related to the business of the Debtors that will not be assumed by the Buyer, as described in the Purchase Agreement.  A sale of the Acquired Assets owned by the Debtors other than one

free and clear of all Claims would adversely impact the Debtors, their estates and their creditors, and would yield substantially less value for the Debtors' estates, with less certainty than the Sale.

W.      The total consideration to be provided by Buyer under the Purchase Agreement reflects the Buyer's reliance on this Sale Order to provide it, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, with title to and possession of the Acquired Assets owned by the Debtors free and clear of all Claims (including, without limitation, any potential derivative, vicarious, transferee or successor liability claims).

X.      As of the Closing, the transfer of the Acquired Assets of the Debtors to the Buyer will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Buyer with all rights, title and interest of the Debtors in, and to, the Acquired Assets, free and clear of all Claims.

Y.      **Assumed Contracts/Leases, Cure, and Adequate Assurance**.  Subject to the terms of this Sale Order, the Assumed Contracts/Leases and Additional Assumed Contracts/Leases that are executory contracts or unexpired leases that are subject to the requirements for assumption and assignment under section 365 of the Bankruptcy Code shall be those agreements set forth on **Exhibit 2** and **Exhibit 3** to this Sale Order, respectively.  The assumption and assignment of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases pursuant to the terms of this Sale Order is integral to the Purchase Agreement, is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.

Z.      Payment of the Cure Amounts shall (i) to the extent necessary, cure or provide adequate assurance of cure, within the meaning of section 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (ii) to the extent necessary, provide compensation or adequate assurance of

71516413.7

compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Assumed Contracts/Leases and Additional Assumed Contracts/Leases, within the meaning of section 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.

AA.    The Buyer's financial wherewithal to consummate the transactions contemplated by the Purchase Agreement and the evidence presented at the Sale Hearing demonstrating the Buyer's ability to perform the obligations under the Assumed Contracts/Leases and Additional Assumed Contracts/Leases after the Closing Date shall constitute adequate assurance of future performance within the meaning of section 365(b)(1)(C), 365(b)(3) (to the extent applicable), and 365(f)(2)(B) of the Bankruptcy Code.

BB.    **Necessity of Order**.  The Buyer would not consummate the transactions absent the relief provided for in this Sale Order.

NOW, THEREFORE, IT IS ORDERED THAT:

1.    **Motion Is Granted**.  The Motion and the relief requested therein is **GRANTED** and **APPROVED**, as set forth herein.

2.    **Findings of Fact and Conclusions**.  The Court's findings of fact and conclusions of law in the Bidding Procedure Order and the record of the hearing with respect to the Bidding Procedures Order are incorporated herein by reference.

3.    **Objections Overruled**.  Any objections to the entry of this Sale Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing (the full record of which is incorporated herein by reference), by stipulation filed with the Court, or set forth herein are denied and overruled on the merits with prejudice.

16

4.      **Approval**.  The Purchase Agreement and all of the terms and conditions thereof, are approved.  Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized to: (a) execute the Purchase Agreement, along with any additional instruments or documents that may be reasonably necessary or appropriate to implement the Purchase Agreement, provided that such additional documents do not materially change its terms adversely to the Debtors' estates; (b) consummate the Sale in accordance with the terms and conditions of the Purchase Agreement and the instruments to the Purchase Agreement contemplated thereby; and (c) execute and deliver, perform under, consummate, implement, and close fully the transactions contemplated by the Purchase Agreement, including the sale of all the Acquired Assets and the assumption and assignment to the Buyer (in accordance with the Purchase Agreement and sections 363 and 365 of the Bankruptcy Code) of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement and the Sale.  Any officer of the Debtors is authorized to execute and deliver the Purchase Agreement and the other documents that are necessary to consummate the transactions set forth in the Purchase Agreement.

5.      This Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of the Debtors, all holders of equity interests in the Debtors, any holders of claims (as defined in section 101(5) of the Bankruptcy Code), Claims or other interests in, against or on all or any portion of the Acquired Assets (whether known or unknown), the Buyer and all successors and assigns of the Buyer, the Acquired Assets and any trustees, if any, subsequently appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code of the Debtors' cases.  This Sale Order and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyer, and the respective successors and assigns of each

17

of the foregoing.  The Purchase Agreement, the Sale and this Sale Order shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors or any trustee, examiner or receiver.

6.        Section 2.2.3(i) of the Purchase Agreement is hereby amended to replace "December 19, 2019" with "December 26, 2019" and Schedule 1.1 of the Purchase Agreement is hereby amended to remove the "Scrap collection site located in Harvey, LA" and such amendments shall be effective without further action of the Debtors and Buyer upon entry of this Sale Order.

7.        This Sale Order does not approve the sale or transfer of the equipment, fixtures, or other related property of Air Liquide Large Industries U.S. LP ("**Air Liquide**" and such property the "**Air Liquide Equipment**"), nor does it grant to the Buyer any rights in the Air Liquide Equipment to possess, use, or otherwise benefit from the Air Liquide Equipment.  The Debtors and the Buyer shall cooperate with Air Liquide and provide Air Liquide with reasonable access to the LaPlace, Louisiana facility so that Air Liquide may remove, solely at its own costs, the Air Liquide Equipment within ninety days after the Closing Date.  Air Liquide Equipment remaining on the premises on or after such date without the written consent of Buyer shall become Acquired Assets for no additional consideration.  Air Liquide shall agree to indemnify Buyer and its affiliates and contractors for any injury or losses suffered by them as a result of Air Liquide's removal of the Air Liquide Equipment from the premises.

8.        **Transfer of Acquired Assets Free and Clear of Claims on the Acquired Assets**. Pursuant to sections 105(a), 363(b), 363(f) and 365 of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyer in accordance with the Purchase Agreement and this Sale Order; such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets and shall vest the Buyer with title in and to the Acquired Assets.  Other than

18

71516413.7

the Assumed Liabilities, the Buyer shall take title to and possession of the Acquired Assets free and clear of all Claims and other interests of any kind or nature whatsoever therein or thereon, including but not limited to successor or successor-in-interest liability and Claims in respect of the Excluded Liabilities, and all such Claims shall attach to the Sale Proceeds, subject to the terms of such Claims with the same validity, force and effect, and in the same order of priority, that such Claims now have against the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

9.       Unless otherwise expressly included in the definition of Assumed Liabilities in the Purchase Agreement, the Buyer shall not be responsible for any Claim against the Debtors or the Debtors' estates or Excluded Liabilities, whether known or unknown as of the Closing Date, now existing or hereafter arising, whether fixed or contingent, whether derivatively, vicariously, as a transferee, successor, alter ego, or otherwise, of any kind, nature or character whatsoever, by reason of any theory of law or equity, including Claims or Excluded Liabilities arising under, without limitation: (i) any employment or labor agreements or the termination thereof relating to the Debtors; (ii) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, including, without limitation, the Employee Benefit Plans and any participation or other agreements related to the Employee Benefit Plans, or the termination of any of the foregoing; (iii) the Debtors' business operations or the cessation thereof; (iv) any litigation involving one or more of the Debtors; and (v) any employee, workers' compensation, occupational disease or unemployment or temporary disability related law, including, without limitation, claims that might otherwise arise under or pursuant to: (A) the Employee Retirement Income Security Act of 1974,

71516413.7

as amended; (B) the Fair Labor Standards Act; (C) Title VII of the Civil Rights Act of 1964; (D) the Federal Rehabilitation Act of 1973; (E) the National Labor Relations Act; (F) the Worker Adjustment and Retraining Notification Act of 1988; (G) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended; (H) the Americans with Disabilities Act of 1990; (I) the Consolidated Omnibus Budget Reconciliation Act of 1985; (J) the Multiemployer Pension Plan Amendments Act of 1980; (K) state and local discrimination laws; (L) state and local unemployment compensation laws or any other similar state and local laws; (M) state workers' compensation laws; (N) any other state, local or federal employee benefit laws, regulations or rules or other state, local or federal laws, regulations or rules relating to, wages, benefits, employment or termination of employment with any or all Debtors or any predecessors; (O) any antitrust laws; (P) any product liability or similar laws, whether state or federal or otherwise; (Q) any environmental laws, rules, or regulations, including, without limitation, under the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601, et seq., or similar state statutes and Environmental Laws, as defined in the Purchase Agreement; (R) any bulk sales or similar laws; (S) any federal, state or local tax statutes, regulations or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended; and (T) any common law doctrine of *de facto* merger or successor or transferee liability, successor-in-interest liability theory or any other theory of or related to successor liability.  For the avoidance of doubt, (a) the Prepetition Agent's Liens on collateral in which the Prepetition Agent's Liens now attach and which collateral is an Acquired Asset (the "**ABL Acquired Collateral**") shall attach to the Sale Proceeds resulting from the ABL Acquired Collateral with the same validity, priority, extent, perfection, force and effect, and in the same order of priority, which such Liens now have against the ABL Acquired Collateral, and (b) only the Prepetition Agent's Liens

that now attach to property of the Debtors and that are not the Acquired Assets shall survive this Sale Order.  Until such time as the Pre-Petition Claim (as defined in the Final Cash Collateral Order)[5] is indefeasibly paid and satisfied in full, all Sale Proceeds received by the Debtors shall constitute Cash Collateral of the Prepetition Agent.

10.    This Sale Order expressly preserves the Prepetition Agent's right to request further adequate protection from the Debtors.  This Sale Order further expressly preserves all of the Prepetition Agent's now-existing claims, interests, Liens, rights and remedies against, in, and to: (a) all assets of the Debtors' estates that remain after the Closing Date (which shall exclude the Acquired Assets), and (b) the Sale Proceeds; which preservation of rights, for the avoidance of doubt, preserves rights as against the Debtors, if any, and not Buyer.  If as of the Closing Date the Pre-Petition Claim has not been indefeasibly paid and satisfied in full, on the Closing Date the Debtors shall deliver an amount of the Sale Proceeds equal to the amount of the Pre-Petition Claim that remains outstanding as of the Closing Date, which amount shall be paid indefeasibly to the Prepetition Agent for application of the Sale Proceeds to the Pre-Petition Claim as determined by the Prepetition Agent in accordance with the terms of the Pre-Petition Claim Documents and the Final Cash Collateral Order.

11.    The Debtors, their agents, and all other persons and entities that are in possession of some or all of the Acquired Assets on the Closing Date are authorized and directed to surrender possession of such Acquired Assets to the Buyer in accordance with the Purchase Agreement on the Closing Date.  On the Closing Date, each of the Debtors' creditors is authorized and directed

---

5.  "Final Cash Collateral Order" means the *Agreed Final Order (I) Authorizing the Use of Cash Collateral, (II) Granting Adequate Protection, (III) Modifying the Automatic Stay, and (IV) Granting Related Relief* [Docket No. 241] (as amended, modified, or extended from time to time).

to execute such documents and take all other actions as may be reasonably necessary to release its Claims or other interests in the Acquired Assets (other than the Assumed Liabilities and Permitted Exceptions), if any, as such Claims may have been recorded or may otherwise exist.

12.     If any person or entity which has filed statements or other documents or agreements evidencing Claims on or claims against all or any portion of the Acquired Assets (other than statements or documents with respect to the Assumed Liabilities or Permitted Exceptions) shall not have delivered to the Debtors prior to the Closing Date, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all such Claims or other interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors and the Buyer, individually and jointly, are authorized to file a certified copy of this Sale Order with the appropriate clerk and/or record with the appropriate recorder to act to release any such Claims in accordance with this Sale Order.

13.     On the Closing Date, this Sale Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer to the Buyer of the Debtors' interests in the Acquired Assets.  This Sale Order is and shall be effective as a determination that, on the Closing Date, all Claims or other interests of any kind or nature whatsoever existing as to the Acquired Assets prior to the Closing Date, other than the Assumed Liabilities and Permitted Exceptions, shall have been unconditionally released, discharged, and terminated as to the Acquired Assets, and that the conveyances described herein have been effected, with all such Claims attaching to the Sale Proceeds with the same validity, priority, extent, perfection, force and effect, and in the same order of priority, which such Claims now have against the Acquired Assets or their proceeds, if any.  This Sale Order shall be binding upon and

71516413.7

govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement. A certified copy of this Sale Order may be filed with the appropriate clerk and/or recorded with the recorder to act to release any Claims on the Acquired Assets, except those assumed as Assumed Liabilities.

14.     **Prohibition of Actions against Buyer**.   Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Sale Order or the Purchase Agreement, all persons and entities holding Claims or other interests of any kind or nature whatsoever against or in all or any portion of the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Acquired Assets or the transfer of the Acquired Assets to the Buyer in accordance with the Purchase Agreement, are forever barred, estopped, and permanently enjoined from asserting against the Buyer, its successors or assigns, its property or the Acquired Assets, such persons' or entities' Claims in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing, in any manner, any action or other proceeding against the Buyer, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering, in any manner,

23

any judgment, award, decree, or order against the Buyer, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Claims against the Buyer, its successors, their assets, or their properties; (d) asserting any setoff or right of subrogation of any kind against any obligation due the Buyer or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order, other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

15.    To the greatest extent available under applicable law, the Buyer shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Buyer as of the Closing Date.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Acquired Assets or the Debtors' business sold, transferred, or conveyed to the Buyer on account of the filing or pendency of these Chapter 11 Cases or the consummation of the transactions contemplated by the Purchase Agreement.

16.    All persons and entities are forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer in accordance with the terms of the Purchase Agreement and this Sale Order.

17.    The Buyer has given substantial consideration under the Purchase Agreement for the benefit of the Debtors, their estates, and creditors.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential Claims on the Acquired Assets pursuant to this Sale Order, which releases shall be deemed to have been given in favor of the Buyer by all holders of Claims against any of the Debtors or any of the Acquired Assets, other than with respect to the Assumed Liabilities, with all such Claims attaching to the Sale Proceeds with the same validity, priority, extent, perfection, force and effect, and in the same order of priority, which such Claims now have against the Acquired Assets or their proceeds, if any.  The consideration provided by the Buyer for the Acquired Assets under the Purchase Agreement is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

18.    Notwithstanding the foregoing, nothing herein shall prevent (i) the Debtors from pursuing an action against the Buyer arising under the Purchase Agreement or the related documents, or (ii) any administrative agencies, governmental, tax and regulatory authorities, secretaries of state, and other federal, state and local officials from properly exercising their police and regulatory powers.

19.    **Police and Regulatory Matters**.  Nothing in this Sale Order or the Purchase Agreement releases, nullifies, precludes or enjoins the enforcement of any police or regulatory liability to a governmental unit that any entity would be subject to as the post-sale owner or operator of property after the date of entry of this Sale Order.  Nothing in this Sale Order or the Purchase Agreement authorizes the transfer or assignment of any governmental (a) license, (b) permit, (c) registration, (d) authorization, or (e) approval, or the discontinuation of any obligation thereunder, without compliance with all applicable legal requirements and approvals under police or regulatory law.  Nothing in this Sale Order divests any tribunal of any jurisdiction

it may have under police or regulatory law to interpret this Sale Order or to adjudicate any defense asserted under this Order.

20.    **Federal Communications Commission Approval**.  Notwithstanding any other provision of this Sale Order or any other order of this Court, no sale, transfer or assignment of any rights and interests of the Debtor in any federal license or authorization issued by the Federal Communications Commission (the "**FCC**") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Communications Act of 1934, as amended, and the rules and regulations promulgated thereunder.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

21.    **Administrative Bridge.**  Within three (3) Business Days of the Court's entry of the Sale Order, Buyer shall pay (i) to Sellers by wire transfer of immediately available funds to an account designated by Sellers, the amount of $200,000, which shall be used by Sellers to fund administrative expenses of the Sellers' bankruptcy estates accruing through the Closing Date, and (ii) to the Trust Account the amount of $250,000, which shall be used by the Escrow Agent to fund insurance premiums actually paid by Sellers with respect to insurance policies covering the Acquired Assets, as described in the Insurance Motion, through the Closing Date (the amounts set forth in clauses (i) and (ii) of this sentence collectively the "**Administrative Bridge**") as further provided in the Purchase Agreement.

22.    **Assumption and Assignment of Contracts**.  The Debtors are authorized, in accordance with sections 105(a) and 365 of the Bankruptcy Code, to (a) assume and assign to the

Buyer, in accordance with the Purchase Agreement, effective upon the Closing Date and payment of the Cure Amounts by Buyer, the Assumed Contracts/Leases and Additional Assumed Contracts/Leases set forth on **Exhibit 2** and **Exhibit 3**, respectively, free and clear of all Claims and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) and (b) execute and deliver to the Buyer such documents or other instruments as are necessary to assign and transfer the Assumed Contracts/Leases and Additional Assumed Contracts/Leases (and the Assumed Liabilities) to the Buyer in accordance with the Purchase Agreement.

23.    With respect to the Assumed Contracts/Leases and Additional Assumed Contracts/Leases set forth on **Exhibit 2** and **Exhibit 3**, respectively: (a) each Assumed Contract/Lease and Additional Assumed Contract/Lease is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtors may assume each of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases in accordance with section 365 of the Bankruptcy Code; (c) the Debtors may assign each Assumed Contract/Lease and Additional Assumed Contracts/Leases in accordance with sections 363 and 365 of the Bankruptcy Code; and (d) any provisions in any Assumed Contract/Lease or Additional Assumed Contract/Lease(or state or local law or ordinances) that prohibit or condition the assignment of such Assumed Contract/Lease or Additional Assumed Contract/Lease or allow the party to such Assumed Contract/Lease or Additional Assumed Contract/Lease to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract/Lease or Additional Assumed Contract/Lease, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (e) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyer of each Assumed Contract/Lease or Additional Assumed

Contract/Lease, in accordance with the Purchase Agreement, have been satisfied; (f) the Assumed Contracts/Leases and Additional Assumed Contracts/Leases shall be transferred and assigned to and following the Closing Date, shall remain in full force and effect for the benefit of, the Buyer in accordance with the Purchase Agreement, notwithstanding any state or local law or ordinances or any provision in any such Assumed Contract/Lease or Additional Assumed Contract/Lease (including those of the type described in sections 363(*l*), 365(b)(2) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and the Debtors shall be relieved from any further liability with respect to the Assumed Contracts/Leases and Additional Assumed Contracts/Leases after such assignment to and assumption by the Buyer in accordance with the Purchase Agreement; and (g) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer shall be fully and irrevocably vested in all right, title, and interest of and in each Assumed Contract/Lease and Additional Assumed Contract/Lease.

24.     All defaults or other obligations of the Debtors under the Assumed Contracts/Leases set forth on **Exhibit 2** and Additional Assumed Contracts/Leases set forth on **Exhibit 3** arising or accruing prior to the Closing Date (without giving effect to any acceleration clauses or any default provisions of the kind specified in section 365(b)(2) of the Bankruptcy Code) shall be cured on the Closing Date or as soon thereafter as practicable by payment of the Cure Amounts by the Buyer.  To the extent that any counterparty to an Assumed Contract/Lease or Additional Assumed Contract/Lease did not object to the Debtors' assumption and assignment of such Assumed Contract/Lease or to its Cure Amount by the Contract Objection Deadline, or does not object to the Debtors' assumption and assignment of such Additional Assumed Contract/Lease or to its Cure Amount by the Additional Contract Objection Deadline, such counterparty is deemed to have consented to the applicable Cure Amount and to the assumption and assignment of its

28

respective Assumed Contract(s)/Lease(s) or Additional Assumed Contract(s)/Lease(s) to the Buyer in accordance with the Purchase Agreement and this Sale Order.[6]

25.     Unless otherwise represented by the Debtors in a separate pleading, in open court at the Sale Hearing, in this Sale Order (including in Paragraph 22 hereto), or pursuant to a contract or lease amendment entered into by the appropriate counterparty (any such amendment being deemed approved by this Sale Order), the Cure Amount provided in the Assumption Notice or Supplemental Assumption Notice, as applicable, reflects the sole amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under the Assumed Contracts/Leases set forth on **Exhibit 2** or Additional Assumed Contracts/Leases set forth on **Exhibit 3**, as applicable, and no other amounts are or shall be due in connection with the assumption by the Debtors and the assignment to the Buyer of the Assumed Contracts/Leases or Additional Assumed Contracts/Leases in accordance with the Purchase Agreement

26.     Notwithstanding Section 8.4 or Schedule 1.1.3(i) of the Purchase Agreement, nothing in this Sale Order shall, absent agreement between  Buyer, Entergy Louisiana LLC ("**Entergy**"), and Westchester Fire Insurance Company ("**Surety**" and together with Buyer and Entergy the "**Entergy Parties**"): (i) constitute an assumption and assignment or rejection pursuant to section 365 of the Bankruptcy Code of that certain: (a) Electric Service Agreement, dated July 14, 1980, between Entergy and BD LaPlace LLC (including any and all of their past affiliates), including any and all amendment(s), modification(s) and/or rider(s) thereto (the "**Entergy Agreement**"); or (b) General Agreement of Indemnity executed on or about August 29, 2016, by Bayou Steel BD Holdings LLC and BD Laplace LLC in favor of the Surety (the "**Indemnity**

---

6.   To the extent the Pre-Petition Claim is not paid in full on the Closing Date, the Debtors shall not be authorized to use Cash Collateral (as defined in the Final Cash Collateral Order) to pay any Cure Amounts.

**Agreement**"); (ii) constitute a finding as to the cure amount needed, the time such cure amount is to be paid and the assurance of future performance that is to be provided, if any, for Buyer to assume the Entergy Agreement; (iii) constitute a finding regarding Section 8.4 of the Purchase Agreement; (iv) impair or affect both Entergy's claim against Surety under the surety bond (Bond No. K09340142) (the "**Surety Bond**") relating to the Entergy Agreement, and the Surety's defenses in connection therewith; (v) affect or impair the rights of the Surety relating to: (a) any surety bond(s), including the Surety Bond, issued by the Surety on behalf of any of the Debtors and/or their non-debtor affiliates (collectively, the "**Bonds**"), (b) the Indemnity Agreement; and (c) any collateral of the Surety, including, but not limited to, the Irrevocable Standby Letter of Credit number 68128096 and any proceeds therefrom (sections (v)(a) through (v)(c) herein collectively referred to as the "**Surety Assets**"); or (vi) constitute a finding that the Surety Assets and any deposits held by the Debtors or Entergy related to the Entergy Agreement are Acquired Assets or may be relied upon in any manner by Buyer. The matters in the immediately preceding sentence continue to be negotiated by the Entergy Parties and remain subject to a full reservation of rights by each of the Entergy Parties, including without limitation reservation of Entergy's rights to contend that the Surety's agreement is not required for the matters in section (ii) of the immediately preceding sentence. Subject to agreement by the Entergy Parties, the Entergy Agreement may be assumed and assigned pursuant to section 365 of the Bankruptcy Code to the Buyer without further Court order. If a subsequent agreement is not reached by the Entergy Parties by the Closing Date, then the Entergy Agreement shall be deemed rejected pursuant to section 365 of the Bankruptcy Code as of the Closing Date. The Debtors shall not knowingly destroy any books and/or records relating to the Bonds that they may possess and, upon the written request of

the Surety, the Debtors and/or the Buyer (to the extent available to Buyer) shall reasonably provide

such books and/or records to the Surety with cost allocation to be agreed.

27.     This Sale Order does not approve the sale or transfer of the equipment, fixtures, or

other related property (including, without limitation, tanks) (the "**Air Products Equipment**") of

Air Products and Chemicals, Inc. ("**Air Products**"), nor does it grant to the Buyer any rights in

the Air Products Equipment to possess, use, or otherwise benefit from the Air Products Equipment;

provided, however, the Buyer and Air Products may agree to enter into an assignment agreement

with respect to the Product Purchase Agreement (the "**Purchaser-Air Products Agreement**")

prior to the Closing Date.  To the extent no agreement is reached by the Buyer and Air Products

by the Closing Date, the Purchaser-Air Products Agreement shall be deemed rejected pursuant to

section 365 of the Bankruptcy Code as of the Closing Date.  To the extent that the Purchaser-Air

Products Agreement is rejected, the Debtors and the Buyer shall cooperate with Air Products and

provide Air Products with reasonable access to the LaPlace, Louisiana facility so that Air Products

may remove, solely at its own costs, the Air Products Equipment within ninety days after the

Closing Date.  Air Products Equipment remaining on the premises on or after such date without

the written consent of Buyer shall become Acquired Assets for no additional consideration.  Air

Products shall agree to indemnify Buyer and its affiliates and contractors for any injury or losses

suffered by them as a result of Air Product's removal of the Air Product Equipment from the

premises.

28.     Upon the Debtors' assignment of the Assumed Contracts/Leases or Additional

Assumed Contracts/Leases, as applicable, to the Buyer under the provisions of this Sale Order and

any additional orders of this Court and payment of any Cure Amounts as set forth herein, no default

shall exist under any Assumed Contract/Lease or Additional Assumed Contract/Lease, and no

counterparty to any Assumed Contract/Lease or Additional Assumed Contract/Lease shall be permitted (a) to declare a default by the Buyer under such Assumed Contract/Lease or Additional Assumed Contract/Lease or (b) otherwise take action against the Buyer as a result of Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the relevant Assumed Contract/Lease or Additional Assumed Contract/Lease.  Each non-debtor party to an Assumed Contract/Lease or Additional Assumed Contract/Lease is also forever barred, estopped, and permanently enjoined from (i) asserting against the Debtors or the Buyer, or the property of any of them, any default or claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the Closing Date, including those constituting Excluded Liabilities or, against the Buyer, any counterclaim, defense, setoff, recoupment or any other Claim arising prior to or existing as of the Closing Date asserted or assertable against the Debtors; and (ii) imposing or charging against the Buyer any rent accelerations, assignment fees, increases or any other fees as a result of the Debtors' assumption and assignment to the Buyer of any Assumed Contract/Lease or Additional Assumed Contract/Lease in accordance with the Purchase Agreement.  The validity of such assumption and assignment of each Assumed Contract/Lease or Additional Assumed Contract/Lease shall not be affected by any dispute between the Debtors and any non-debtor party to an Assumed Contract/Lease or Additional Assumed Contract/Lease relating to such contract's respective Cure Amounts.

29.     The failure of the Debtors or the Buyer to enforce at any time one or more terms or conditions of any Assumed Contract/Lease or Additional Assumed Contract/Lease shall not be a waiver of such terms or conditions, or of the Debtors' and the Buyer's rights to enforce every term and condition of the Assumed Contracts/Leases or Additional Assumed Contracts/Leases.

30.     Notwithstanding anything herein to the contrary, the Buyer may remove any Contract from the list of Assumed Contracts/Leases or Additional Assumed Contracts/Leases (and thereby exclude such Contract from the definition of Assumed Contracts/Leases or Additional Assumed Contracts/Leases, as applicable) in accordance with the Purchase Agreement.

31.     Except as provided in the Purchase Agreement or this Sale Order, after the Closing Date, the Debtors and their estates shall have no further liabilities or obligations with respect to any Assumed Liabilities, and all holders of claims for Assumed Liabilities are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, their property or their assets or estates.

32.     **Good Faith**.  The transactions contemplated by the Purchase Agreement are undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale (including the assumption and assignment of the Assumed Contracts/Leases and Additional Assumed Contracts/Leases) with the Buyer, unless such authorization is duly stayed pending such appeal.  The Debtors and the Buyer will be acting in good faith if they proceed to consummate the Sale at any time after entry of this Sale Order.

33.     There has been no showing that the Debtors or the Buyer engaged in any action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  The Buyer is entitled to all the protections and immunities of section 363(n) of the Bankruptcy Code.

34.     **Failure to Specify Provisions**.  The failure specifically to include any particular provisions of the Purchase Agreement in this Sale Order shall not diminish or impair the

71516413.7

effectiveness of such provisions, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety; provided, however, that this Sale Order shall govern if there is any inconsistency between the Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order. All of the provisions of this Sale Order are non-severable and mutually dependent. To the extent that this Sale Order is inconsistent with any prior order or pleading with respect to the Motion in these Chapter 11 Cases, the terms of this Sale Order shall control.

35.    **Non-Material Modifications**.    The Purchase Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court; provided, that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

36.    **Letters of Credit**.    Within two (2) business days after the Closing Date, and to the extent that all undrawn letters of credit (the "**Letters of Credit**") issued by the Prepetition Agent on behalf of the Debtors are not cash collateralized as of such time, the Debtors shall deliver to the Prepetition Agent from the Sale Proceeds a cash amount equal to 102.5% of the face amount of such Letters of Credit to be held by the Prepetition Agent to cash collateralize such Letters of Credit. The Prepetition Agent shall be authorized to apply any such cash collateral held against the amount of any draw on any Letter of Credit, without notice of any kind or further order or action by the Court, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to the extent necessary to permit the Prepetition Agent to so apply any such cash collateral. Except as provided herein, the Letters of Credit shall remain in full force and effect as provided in the Letters of Credit.

34

37.    **Subsequent Plan Provisions**.  Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order dismissing any of these cases or any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Purchase Agreement or this Sale Order.

38.    **Resolution of Objections**.  A continued hearing with respect to unresolved cure and assumption objections shall be held on January 8, 2020 at 10:00 a.m. (ET) (the "**Continued Hearing**").

39.    **Backup Bid**.  To the extent applicable, the Subordinated Term Loan Agent is designated as the Back-Up Bidder (as defined in the Bidding Procedures) and the bid submitted by the Back-Up Bidder (as defined in the Bidding Procedures) at the Auction is the Back-Up Bid. Anything herein to the contrary notwithstanding, in the event that the Buyer fails to close the Sale by January 31, 2020 (or such date as may be extended in accordance with the Bid Procedures), the Back-Up Bid will be deemed to be the Successful Bid, the Back-Up Bidder will be deemed to be the Successful Bidder, and the Debtors shall be authorized to promptly submit an order to approve the sale to the Back-Up Bidder in accordance with the Back-Up Bid and the Bid Procedures.  If Buyer fails to close the Sale by January 31, 2020 (or such date as may be extended in accordance with the Bid Procedures), the Debtors are authorized, but not directed, to close, and take all actions necessary to close, with the Subordinated Term Loan Agent on the Backup Bid without further order of the Court, and in such case the findings and other provisions of this Sale Order shall apply to the Subordinated Term Loan Agent and the Backup Bid to the same extent they do with respect to, and in lieu of Liberty BSG Holdings Inc.

71516413.7

40.     This Sale Order expressly preserves the Subordinated Term Loan Agent's right to request adequate protection from the Debtors. This Sale Order further expressly preserves all, if any, of the Subordinated Term Loan Agent's now-existing claims, interests, Liens, rights and remedies against, in, and to: (a) all assets of the Debtors' estates that remain after the Closing Date (which shall exclude the Acquired Assets), and (b) the Sale Proceeds; which preservation of rights, for the avoidance of doubt, preserves rights as against the Debtors, if any, and not Buyer. Except as expressly set forth in Paragraph 10 of this Order with respect to the Pre-Petition Claim and Paragraph 36 with respect to the Letters of Credit, no Sale Proceeds may be disbursed or used for any purpose absent further order of the Court.

41.     **No Stay of Order**.  Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062 and 9014, this Sale Order shall not be stayed for fourteen days after the entry hereof, but shall be effective and enforceable immediately upon issuance hereof.  Time is of the essence in closing the transactions referenced herein, and the Debtors and the Buyer intend to close the Sale on January 31, 2020.  Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay, or risk its appeal being foreclosed as moot.

42.     **Calculation of Time**.  All time periods set forth in this Sale Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

43.     **Automatic Stay**.  The Buyer shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Purchase Agreement, and related agreements, documents or other instruments.  The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the provisions of this Sale Order

44.   **Retention of Jurisdiction**.  This Court retains jurisdiction, pursuant to its statutory powers under 28 U.S.C. § 157(b)(2), to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Buyer in accordance with the Purchase Agreement, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to (a) interpret, implement, and enforce the provisions of this Sale Order and the Purchase Agreement; (b) adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale; (c) protect the Buyer against any Claims or other interests in the Debtors or the Acquired Assets of any kind or nature whatsoever; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Assumed Contracts/Leases and Additional Assumed Contracts/Leases.

**Dated: December 26th, 2019**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**

71516413.7