# EXHIBIT 3

**From:** Ben Mather <BMather@kcr-law.com>
**Date:** Friday, August 7, 2020 at 10:50 AM
**To:** "DMcguire@winston.com" <DMcguire@winston.com>
**Subject:** Bayou

Dan –

Seth Niederman suggested I contact you to discuss the attached letter we sent Black Diamond a few months ago.  Let me know a time we could discuss.

Regards

, Ben

**Benjamin M. Mather, Esquire** Kaufman, Coren & Ress, P.C. Two Commerce Square, Suite 3900  2001 Market Street
Philadelphia, PA  19103
Tel:  (215) 735-8700 | Fax: (215) 735-5170
E-mail:   bmather@kcr-law.com

Website:  www.kcr-law.com



**KAUFMAN, COREN & RESS, P.C.**
ATTORNEYS AT LAW
TWO COMMERCE SQUARE, SUITE 3900
2001 MARKET STREET
PHILADELPHIA, PENNSYLVANIA 19103
www.kcr-law.com

STEVEN M. COREN
e-mail: scoren@kcr-law.com

April 10, 2020

TEL (215) 735-8700
FAX (215) 735-5170

**VIA FEDERAL EXPRESS**

ATTN: Legal Department
Black Diamond Capital Management
1 Sound Shore Drive
Suite 200
Greenwich, CT 06830

> RE: *In re Bayou Steel BD Holdings, L.L.C., et al.*,
> U.S.B.C. D. Del. Case No. 19-12153 (KBO)
>
> Subject Matter: Production of Documents and Examination Pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Bankruptcy Rule 2004")

Dear Sir or Madam:

    As you know, we represent George L. Miller, the Chapter 7 Trustee (the "Trustee") for the jointly-administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, LLC, and BD LaPlace, LLC (collectively, the "Debtors").

    The Trustee is in the process of investigating certain aspects of the Debtors' business and financial affairs. As a result, the Trustee seeks the production of certain documents within Black Diamond Capital Management's ("Black Diamond") possession, custody, or control (the "Documents"), and to examine Black Diamond about acts, conduct, property of the Debtors, liabilities, and the financial condition of the Debtors, as well as any other matter which may affect the administration of the Debtors' estates, including but not limited to matters related to the Documents (the "Examination"). To facilitate the production of the Documents and the Examination, the Trustee has drafted the attached Bankruptcy Rule 2004 Request that he intends to serve upon Black Diamond.

    Pursuant to Local Rule 2004-1 of the Local Rules for the United States Bankruptcy Court for the District of Delaware, the Trustee is contacting Black Diamond prior to filing a motion ordering the production of the Documents and the Examination pursuant to Bankruptcy Rule 2004 in an attempt to reach an agreement between the Trustee and Black Diamond with respect to the date, time, place, and scope of the production of the Documents and the Examination.

KAUFMAN, COREN & RESS, P.C.

Black Diamond Capital Management
April 10, 2020
Page 2

    We ask that you review the attached Bankruptcy Rule 2004 Request and contact us no later than April 24, 2020 to discuss Black Diamond's production of Documents and the Examination.

    We look forward to resolving this request in a prompt and efficient manner.

                        Very truly yours,

                        *s/Steven M. Coren*

                        STEVEN M. COREN

Enclosure

## EXHIBIT A

## DEFINITIONS

1.  "You" or "Your" or "Black Diamond" means Black Diamond Capital Management and any of its affiliates, divisions, parents, subsidiaries, predecessors, or other companies under its control, and all officers, directors, agents, employees, representatives, partners, members, and/or persons acting on its behalf.

2.  "Debtors" means all or any of the following entities: Bayou Steel BD Holdings, L.L.C., BD Bayou Steel Investment, LLC, and BD LaPlace, LLC and any of their respective predecessors.

3.  "Petition Date" means October 1, 2019.

4.  "Acquisition" means Black Diamond's acquisition of the Debtors' business in April 2016.

5.  "Directors" means all individuals who served on the Debtors' Board of Directors at any time from the Acquisition to the Petition Date.

6.  "Officers" means all individuals who served in an executive capacity for the Debtors at any time from the Acquisition to the Petition Date.

7.  "BD Distribution" means the $30,000,000 payment made by the Debtors to Black Diamond on March 17, 2017.

8.  "BD Loan" means the subordinated term loan into which the Debtors entered with Black Diamond Commercial Finance, L.L.C. in December 2017, as amended in January 2019 and May 2019.

9.  "ABL Loan" means the Debtors' revolving loan with Bank of America, N.A. and SunTrust Bank pursuant to the Loan and Security Agreement dated as of April 4, 2016.

## SUBJECTS FOR EXAMINATION

1. Any and all matters relating to the Documents (as defined in Exhibit B hereto) sought from and/or produced by Black Diamond in connection with this Rule 2004 Request.

2. The Acquisition, including but not limited to the financing of the Acquisition and due diligence conducted in connection with the Acquisition.

3. The Debtors' financial condition, including cash flow, assets, and liabilities.

4. The ABL Loan, including but not limited to agreements, amendments, borrowings, payments, and other transactions relating thereto and to dealings with Bank of America, N.A. and SunTrust Bank.

5. The BD Loan, including but not limited to agreements, amendments, borrowings, payments, and other transactions relating thereto and to dealings between You, the Debtors, and/or Black Diamond Commercial Finance, L.L.C.

6. The sale of BD Vinton LLC.

7. The BD Distribution.

8. The Debtors' Board of Directors, including the appointment and compensation of its members.

9. The Debtors' and Black Diamond's relationships and transactions with Valley Joist, LLC.

10. The Debtors' operations and management, and Your involvement therewith.

11. The Debtors' corporate history and capital structure.

12. The Debtors' bankruptcy filings.

13. Black Diamond's efforts to purchase any of the Debtors' assets during the Debtors' bankruptcy proceedings, including but not limited to Black Diamond's credit bid.

14. Any and all agreements, contracts, dealings, business relationships, or other transactions between the Debtors and Black Diamond.

15. Any and all valuations, appraisals, or audits of the Debtors' business performed by or at the direction of Black Diamond, or otherwise obtained by or known to Black Diamond.

16. Any and all insurance policies that provide coverage to Black Diamond or to any of Black Diamond's partners, owners, or employees in connection with their relationship to or involvement in the Debtors' business.

17. Any and all communications Black Diamond had with its external lenders or with investors regarding the Debtors.

18. Any and all valuations, appraisals, or audits of Black Diamond's equity investment in the Debtors and/or the BD Loan.

**EXHIBIT B**

**DEFINITIONS**

1. The Definitions set forth in Exhibit A above are hereby incorporated by reference and made a part hereof.

2. "Document" shall have the broadest meaning permitted under the Bankruptcy Rules and shall include, without limitation, any documents or electronically stored information, which together include books, papers, writings, drawings, graphs, charts, photographs, sound recordings, images, electronic documents, spreadsheets, databases, electronic mail contained on your servers or computers, and other data or data compilations from which information can be obtained, either directly or, if necessary, after conversion by the recording party into a reasonably usable form. A draft or non-identical copy is a separate Document within the meaning of this term.

3. "Communication" means the transmittal of information (in the form of Documents, facts, ideas, inquiries, or otherwise), whether orally or in writing, or by any other means or medium. References to Communications with business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, or other representatives of such entities.

4. "Including" shall not be construed to limit the scope of any Request.

5. "Relating to" means, without limitation, regarding, concerning, comprising, containing, describing, analyzing, discussing, or addressing the matter at issue.

**INSTRUCTIONS**

1. The connectives "and" and "or" shall be construed either disjunctively or conjunctively, as necessary, to bring within the scope of the Requests for Production (the "Requests") all Documents that might otherwise be construed to be outside of their scope.

2. The use of the singular form of any word includes the plural form and vice versa.

3. The use of a verb in any tense, mood, or voice shall be construed as the use of the verb in all other tenses, moods, or voices, as necessary to bring within the scope of the Requests all information that might otherwise be construed to be outside of their scope.

4. If you find the meaning of any term in any Request unclear, without waiver of the Trustee's rights to seek a full and complete response to the Request, You shall assume a reasonable meaning, state what that assumed meaning is, and respond to the Request according to the assumed meaning.

5. Each Request herein should be construed independently and not with reference to any other Requests for the purpose of limitation.

6. Each Request seeks production of a Document in its entirety, without abbreviation or redaction, and all drafts and non-identical copies of each Document.

7. Documents or parts of Documents that are attached to each other should not be separated, and the fact of attachment (including bindings, electronic connection/association, or other attachment) should be clearly indicated.

8. Documents not otherwise responsive to the Request shall be produced if such Documents mention, discuss, refer to, or explain the Documents that are called for by the Request, or if such Documents are attached to Documents called for by the Request and constitute memoranda, letters, comments, or similar materials.

9. In the event that You seek to withhold any Document, information, or thing on the basis that it is entitled to some privilege or other limitation on discovery, You are requested at the time of responding to these Requests to state with specificity the claim of privilege or other reason used to withhold the Documents, information, or thing.  You are further requested to

provide all requested Documents, information, or things that are not subject to a claim of privilege or other reason for nonproduction by excising or otherwise protecting the portions for which a privilege is asserted, if such a technique does not result in disclosing the portions for which some privilege is asserted.  You are instructed to identify all such Documents, information, or things in a manner sufficient to allow it to be described to the United States Bankruptcy Court for the District of Delaware (the "Court") for ruling on the privilege or other reason asserted, including a numerical list of the Document(s), information, and thing(s) for which a privilege or limitation of discovery is claimed, including: (i) the name of each author, writer, sender, creator, or initiator of such Document or thing; (ii) the name of each recipient, addressee, or party for whom such Document or thing was intended; (iii) the date of each such Document; (iv) the general subject matter of the Document; and (v) the claimed grounds for privilege or limitation of discovery.

10. Except as otherwise noted, these Requests cover all Documents in Your possession, custody, or control, regardless of whether they are currently in Your obsession, including but not limited to all Documents within the possession, custody, or control of persons acting on Your behalf or at Your instruction.

11. Each Document produced pursuant to these Requests shall be produced: (a) as it is kept in the ordinary course of business, complete with the original file folders, binders, containers, or other devices in which it is stored (or legible copies of the labels or other identifying information from those folders, binders, containers, or devices), or (b) organized according to the Request to which it responds.  If You elect the latter mode of production, each Document from a particular file, binder, container, or other device shall be accompanied by a legible copy of the label or other identifying information from that file, binder, container, or

device or some other reliable indicator of the file, binder, container, or device from which it was taken.

12. All Documents that are in paper form shall be produced electronically. All electronic Documents, including paper Documents converted to electronic format, shall be produced (a) in compatible format and shall include all metadata (i.e., information describing how, when, and by or to whom the electronic Document was created, accessed, modified, formatted, distributed, collected, etc.) or (b) in accordance with an agreement subsequent hereto regarding electronic Document discovery between You and the Trustee. Audio or video tapes and similar recordings, as well as other physical objects from which information may be visually read or viewed, shall be produced in their original form or in copies that are exact duplicates of the originals.

## **REQUESTS FOR PRODUCTION**

1. All valuations, appraisals, projections, business plans, or other related documents obtained or created by Black Diamond relating to the Debtors, whether in connection with the Acquisition or at any time thereafter.

2. All documents relating to the Acquisition, including but not limited to documents regarding the financing thereof or due diligence conducted in connection therewith.

3. All communications relating to the Debtors, their business operations, their financials (including, without limitation, their liquidity needs), their management, and their commercial relationships or transactions, whether among Black Diamond personnel or with third parties.

4. All communications between representatives of Black Diamond and the Debtors' Officers.

5. All documents relating to the ABL Loan.

6. All communications with Bank of America, N.A. or SunTrust Bank relating to the Debtors, including but not limited to communications relating to the Acquisition, the ABL Loan, or to any other lending or banking transaction involving the Debtors.

7. All documents relating to the BD Loan.

8. All documents relating to the BD Distribution.

9. All documents relating to transfers, agreements, contracts, business relationships or dealings, or other transactions between the Debtors and Black Diamond.

10. All documents relating to the sale of BD Vinton LLC.

11. All documents regarding the Debtors' financial condition, including but not limited to books and records, audit reports, cash flow analyses, and financial statements.

12. All documents relating to the appointment of members of the Debtors' Board of Directors or the hiring of the Debtors' Officers.

13. All documents relating to meetings or decisions of the Debtors' Board of Directors, including but not limited to board presentations, meeting minutes, and resolutions.

14. All documents relating to the operations and management of the Debtors, including but not limited to communications with the Debtors' Officers, Directors, or other personnel.

15. All documents relating to the Debtors' bankruptcy filings, including but not limited to communications relating thereto.

16. All documents relating to audits of the Debtors performed by KPMG or any other firm.

17. All documents relating to tax services performed for the Debtors by Anderson Tax LLC or any other tax or accounting firm.

18. All appraisal reports, valuation reports, or other documents relating to the Debtors prepared by Anderson Tax Valuation Services Group, and communications related thereto.

19. All appraisals or other documents relating to the Debtors prepared by Sector3 Appraisals, Inc., and communications related thereto.

20. All documents relating to services provided to the Debtors by CR3 Partners LLC ("CR3"), including but not limited to communications with CR3 and reports or other documents prepared by CR3.