# EXHIBIT 4 TO ORDER

**Infra-Metals, Co. Settlement Agreement**

**SETTLEMENT AGREEMENT AND MUTUAL RELEASE**

This *Settlement Agreement and Mutual Release* (the "Settlement Agreement") is entered into by and between George L. Miller, chapter 7 trustee (the "Trustee") to the estates of Bayou Steel BD Holdings, L.L.C., *et al.* (the "Debtors"),[1] and not in any individual capacity, on the one hand, and Infra-Metals Co. ("Infra"), on the other hand. Infra and the Trustee may be referenced herein collectively as the "Parties" and/or each as a "Party."

**Background**

WHEREAS, on or about October 1, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The cases are being jointly administered pursuant to Bankruptcy Rule 1015(b); and

WHEREAS, on or about February 25, 2020 (the "Conversion Date"), the Court entered an order converting the chapter 11 cases to chapter 7 [Docket No. 496], and George L. Miller was appointed as the chapter 7 trustee [Docket No. 497]; and

WHEREAS, the Debtors and Infra had various business relationships prior to the Petition Date; and

WHEREAS, the Trustee demanded turnover in the amount of $274,949.51 representing the outstanding accounts receivable balance noted as owing by Infra in the Debtors' books and records (the "Outstanding Accounts Receivable"), and Infra responded alleging setoff of certain credits, and the Trustee has agreed to accept the settlement set forth herein in full and final satisfaction of the Outstanding Accounts Receivable; and

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are Bayou Steel BD Holdings, L.L.C., a Delaware limited liability company (1984), BD Bayou Steel Investment, LLC, a Delaware limited liability company (1222), and BD LaPlace, LLC, a Delaware limited liability company (5783).

2

WHEREAS, the Parties have engaged in good faith, arms' length negotiations to resolve the Outstanding Accounts Receivable; and

NOW THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties hereby agree that:

1. **Recitals.** The recitals set forth above are incorporated herein by reference.

2. **Settlement Amount.** Upon execution of this Settlement Agreement, Infra shall pay to the Trustee the sum of $215,000.00 (the "Settlement Payment") within five (5) business days from the entry of an order by the Court approving this Settlement. The Settlement Payment shall be wired in accordance with instructions provided by the Trustee.

3. **Settlement Effective Date.** The effective date of this Settlement Agreement and all of its terms shall be the later of (i) execution by all Parties, (ii) the date an order approving this Settlement Agreement is entered by the Court, or (iii) payment of the Settlement Payment (the "Settlement Effective Date").

4. **Claims Waiver.** Effective on the Settlement Effective Date, Infra waives any and all claims that it filed or could have filed in the cases of the Debtors, including but not limited to any filed proof of claim or scheduled claim (the "Waived Claims"), and after the Settlement Effective Date the Trustee may mark the Waived Claims as expunged or satisfied on the official claims register.

5. **Trustee's Release.** Effective on the Settlement Effective Date, the Trustee Releasees (as defined below) shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged Infra, its directors, employees, officers and the successors and assigns of any of them (collectively, the "Defendant Releasees")

from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Trustee Releasees has, had, may have, or may claim to have against the Defendant Releasees.

6.  **Infra's Release.**  Effective on the Settlement Effective Date, the Defendant Releasees shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trustee, the Debtors and their bankruptcy estates, their past or present attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Trustee Releasees"), from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, suspected or unsuspected, in law or equity, which the Defendant Releasees has, had, may have, or may claim to have against any of the Trustee Releasees.

7.  **No Admissions.**  This Settlement Agreement is not and shall not in any way be construed as an admission by the Parties of any allegations made in connection with the Outstanding Accounts Receivable.

8.  **Expenses.**  The Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with the Outstanding Accounts Receivable and this Settlement Agreement.  In the event of any dispute in connection with the enforcement of this

3

Settlement Agreement, the prevailing Party shall be entitled to its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses, whether statutorily approved or non-approved costs, incurred in connection with such action or proceeding, as determined by the Court.

9. **Severability.** The Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

10. **Miscellaneous.**

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b) Each of the Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonably necessary or appropriate in conjunction with the performance of each of the Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Parties, the Trustee Releasees, or the Defendant Releasees hereto and their respective successors.

(d) This Settlement Agreement shall be governed by and construed in accordance with the law of the State of Delaware without regard to any choice of law provisions.

(e) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(f) The United States Bankruptcy Court for the District of Delaware shall retain exclusive jurisdiction (and the Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(g) If this Settlement Agreement is not approved by the Court, then the Settlement Agreement shall be null and void and of no force or effect. In such event, each of the Parties shall be returned to the Parties' position *status quo ante*, and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein.

(h) Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or limitation in connection with the Outstanding Accounts Receivable is hereby tolled until the Settlement Effective Date. Nothing in this Settlement Agreement shall operate to revive or extend the time for filing any claim that is now time barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is executed as set forth below.

(i) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority

5

to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(j) In executing the Settlement Agreement, each of the Parties represents and warrants, for itself, that: (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(k) The Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understandings with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(l) This Settlement Agreement shall not be modified, altered, amended or vacated without the written consent of all parties hereto or order of the Court.

(m) This Settlement Agreement shall inure to the benefit of and be binding upon the successors and assigns of the Parties hereto.

(n) The Parties each agree to indemnify the other for any and all costs incurred as a result of any breach of any representation, warranty, or covenant set forth in this

7

Settlement Agreement, including, without limitation, court costs and reasonable attorneys' fees and expenses.

(o)     The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[Remainder of page intentionally left blank]

IN WITNESS WHEREOF, this Settlement Agreement is hereby executed as of the date(s) set forth below:

ACCEPTED AND AGREED TO BY:

GEORGE L. MILLER, CHAPTER 7 TRUSTEE

By: _____  Dated: 2/21, 2021
George L. Miller, solely in his capacity
as Chapter 7 Trustee of Bayou Steel BD Holdings,
L.L.C., et al.

INFRA-METALS CO.  Dated: 2/22, 2021

By: _____
Name: Mark Haight
Title: President

Error! Unknown document property name.