# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>BAYOU STEEL BD HOLDINGS, L.L.C., *et. al.*,[1]<br><br>Debtors. | Chapter 7<br><br>Case No. 19-12153 (KBO)<br><br>(Jointly Administered)<br><br>Hearing Date: November 9, 2021 at 10:00 a.m. (ET)<br>Objection Deadline: October 12, 2021 at 4:00 p.m. (ET) |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY, TO THE EXTENT APPLICABLE, TO ALLOW PAYMENT OF DEFENSE COSTS AND OTHER LOSSES UNDER DIRECTORS AND OFFICERS INSURANCE POLICY

This motion is brought by Rob Archambault, Terrence Taft, and Robert Unfried (collectively, the "Movants"), former independent directors of the Debtors who are defendants in the adversary proceedings styled *George L. Miller in his capacity as Chapter 7 Trustee for the jointly administered bankruptcy estates of Bayou Steel BD Holdings, L.L.C., et al. v. Black Diamond Capital Management, L.L.C., et al.,* Adversary Proceeding No. 18-50603 (the "Trustee Lawsuit"). Movants respectfully seek entry of an order, substantially in the form attached hereto, confirming that the automatic stay does not apply to the proceeds of that certain directors and officers liability insurance policy issued by Federal Insurance Company ("Chubb") or, in the alternative, granting immediate relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1), so that Movants may receive payments, advances and/or reimbursements of their defense costs and other expenses, consistent with their rights under the Policy.

## PRELIMINARY STATEMENT

1. By this Motion, Movants seek access to proceeds of the Policy (as defined below). The Policy provides urgently-needed coverage for losses, including defense costs that

---

[1] The Debtors in these chapter 7 cases, along with the last four digits of each Debtor's federal tax identification number, are: Bayou Steel BD Holdings, L.L.C. (1984), BD Bayou Steel Investment, LLC (1222), and BD LaPlace, LLC (5783).

Movants have incurred, and will continue to incur, in connection with the Trustee Lawsuit filed against them as former directors and officers of the Debtors, alleging, *inter alia*, that the Movants breached their fiduciary duties to the Debtors and the Debtors' creditors (the "Trustee Lawsuit"). Debtor, Bayou Steel BD Holding LLC purchased the Policy in order to protect Movants against such claims, and the policy was negotiated to ensure that Movants would have access to policy proceeds in the event that the Debtors filed for bankruptcy. In light of the Debtors' bankruptcy petitions and resulting automatic stay, Chubb has requested - and the Movants desire - that Movants obtain an order from this Court (i) confirming that the proceeds of the Policy are not subject to the automatic stay or, in the alternative, (ii) granting relief from the automatic stay. This Court has granted similar relief in analogous cases, and it should do so here.

2. ***First***, the automatic stay does not apply to the proceeds of the Policy, because those proceeds are not property of the Debtors' estates. This Court has made clear that, where an insurance policy exclusively covers a debtor's directors and officers (sometimes referred to herein as "D&O insurance"), the proceeds of that policy are not property of the debtor's estate. *See, e.g.*, *In re Downey Fin. Corp.*, 428 B.R. 595, 603 (Bankr. D. Del. 2010); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 811 (Bankr. D. Del. 2007). Here, while the Policy covers certain claims against the Debtors, that coverage is subordinate to the coverage for the Movants under the express, unambiguous terms of the policy. In a case that is on point factually and legally, this Court relied on materially indistinguishable order-of-payment provisions to hold that the proceeds of a directors and officers insurance policy were *not* property of a corporate debtor's estate subject to the automatic stay. *See Downey*, 428 B.R. at 604-08. As this Court recognized, a contrary holding would contravene the established principle that bankruptcy should not confer upon a debtor "greater rights in [insurance policy proceeds] than the debtor had before

2

filing for bankruptcy." *Id*. at 608 (internal quotation marks and citations omitted).

3. ***Second***, and in the alternative, this Court should grant relief from the stay to allow Movants access to the Policy proceeds, consistent with the terms of the Policy. Courts in this and other districts have granted such relief where, as here, a policy covers both a corporate debtor and its officers and directors, but the corporate coverage is contractually subordinate to coverage of the individuals. *See, e.g.*, *Downey*, 428 B.R. at 608-12; *In re MF Global Holdings Ltd.*, 469 B.R. 177, 192 (Bankr. S.D.N.Y. 2012).

4. This case law recognizes that it would be inequitable to construe the automatic stay to frustrate the ability of directors and officers to pay legal expenses intended to be covered by a D&O insurance policy. Here, absent relief from the stay (or an order confirming that the stay does not apply), Movants are at risk of significant and potentially irreparable harm because Movants rely on the proceeds of the Policy to pay for their legal expenses and related costs in connection with the Trustee Lawsuit.

5. By contrast, the bankruptcy estates will not suffer any prejudice from granting the requested stay relief. Even if the stay remained in place, the Debtors' estates could not receive any of the proceeds of the Policy. As noted above, any interest that the Debtors might have in the proceeds of the Policy is subordinate to that of Movants. Because the balance of hardships weighs decisively in Movants' favor, relief from the stay is warranted.

## JURISDICTION

6. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.

7. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Court may enter

a final order consistent with Article III of the United States Constitution.[2]

8. The statutory predicate for the relief requested herein is section 362 of 11 U.S.C. § 101 et seq. (the "Bankruptcy Code").

## FACTUAL BACKGROUND

### A. The Bankruptcy Proceedings

9. On October 1, 2019 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code ("Bankruptcy Code"), and the cases are being jointly administered. On February 25, 2020 (the "Conversion Date"), the Bankruptcy Court entered an order converting Debtors' chapter 11 cases to cases under chapter 7 of the Bankruptcy Code. On the Conversion Date, Plaintiff was appointed Chapter 7 Trustee of the Debtors' estates, and he continues to serve in that capacity.

10. On August 11, 2021, the Trustee filed a complaint initiating the Trustee Lawsuit against the Movants and other defendants.

### B. The Policy

11. Prior to the Petition Date, Chubb issued certain liability coverage including, but not limited to, Directors, Officers and Entity Liability Insurance Policy No. 8251-3121 (the "Policy") to Debtors for the Policy Period of April 4, 2019 through April 4, 2020.[3] *See* **Ex. A**.

12. The Policy provides the following insuring clauses, which are typical in D&O insurance policies:

---

[2] Pursuant to Rule 9013-1(f) of the Local Rules for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Movants consent to the entry of a final judgment or order *with respect to the Motion* if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution. Such consent, however, is limited to the Motion and should not be construed as consent to entry of an final judgment or order in the Trustee Lawsuit or other matter.

[3] A true and accurate copy of the Policy is attached as **Exhibit A** hereto.

> **Insuring Clause (A): Individual Non-Indemnified Liability Coverage**
>
> (A) The Company shall pay, on behalf of an **Insured Person**, **Loss** on account of a **Claim** first made against the **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent that such **Loss** is not indemnified by an **Organization**.
>
> **Insuring Clause (B): Individual Indemnified Liability Coverage**
>
> (B) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against an **Insured Person** during the **Policy Period**, or the Extended Reporting Period if applicable, to the extent the **Organization** indemnifies the **Insured Person** for such **Loss** as permitted or required by law.
>
> **Insuring Clause (C): Entity Liability Coverage**
>
> (C) The Company shall pay, on behalf of an **Organization**, **Loss** on account of a **Claim** first made against the **Organization** during the **Policy Period**, or the Extended Reporting Period if applicable.

*See* Ex. A, D&O and Entity Liability Coverage Part, I.

13. The Policy defines "Organization" to mean "the Parent Organization and any Subsidiary. Organization shall also mean any such entity as a debtor in possession under United States bankruptcy law or the equivalent of a debtor in possession under the law of any other country." The Policy defines "Loss" to include "Defense Costs," which in turn is defined to mean "that part of Loss consisting of reasonable costs, charges, fees (including attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of Insured Persons) incurred in investigating, defending, opposing or appealing any Claim and the premium for appeal, attachment or similar bonds." *Id.* at IV.

14. The Movants have incurred and expect to continue incurring legal fees and costs as a result of the Trustee Lawsuit. After receiving the Trustee's March 27, 2020 letter to Chubb notifying Chubb of the Trustee's claims against insureds under the Policy (the "<u>Trustee's Notice</u>") the Movants submitted proofs of claim asserting, *inter alia*, claims on account of the Debtors' indemnification obligations to the Movants as former independent directors. *See* Proof of Claim Nos. 42, 43, and 44. On April 24, 2020, counsel to the Movants sent a letter to the

5

Trustee's special counsel (attached hereto as **Exhibit B**) enclosing the proofs of claims and stating, "[i]n light of the automatic stay…the filing of these Proofs of Claim, and this transmittal, are intended to serve as any required notification and request for indemnification to BSBD on account of the [Trustee's] Alleged Claims that would otherwise be required outside of bankruptcy." The Trustee, as the representative of the Debtors' estates, has not agreed to indemnify or advance defense costs to the Movants and has not made any payments to the Movants. Without waiving any rights or remedies, the Movants do not expect the bankruptcy estate to fulfill the Debtors' indemnification obligations and, therefore, the Movants are entitled to coverage under Insuring Clause (A) of the Policy.[4]

15. The "Priority of Payments" provision of the Policy provides:

> (A) In the event of **Loss** arising from a **Claim** for which payment is concurrently due under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, and one or more of the other Insuring Clauses of this Coverage Part, the Company shall:
>
>> (1) first, pay **Loss** for which coverage is provided under Insuring Clause (A), Individual Non-Indemnified Liability Coverage, then
>>
>> (2) with respect to whatever remaining amount of the Limit of Liability is available after payment under Subsection (A) above, pay such **Loss** for which coverage is provided under any other Insuring Clause.
>
> (B) Except as otherwise provided in Subsection (A) above, the Company may pay covered **Loss** as it becomes due under this Coverage Part without regard to the potential for other future payment obligations under this Coverage Part.

*See* Ex. A, D&O and Entity Liability Coverage Part, X.

16. A letter dated December 2, 2020, from Chubb to Movant's counsel (attached hereto as **Exhibit C**) states, while reserving all rights, that "Chubb preliminarily has determined that the [Trustee's] Notice is a Claim against your clients, who appear to qualify as Insured

---

[4] Coverage under Insuring Clause (A) is not subject to any self-insured retention, unlike coverage under Insuring Clauses (B) and (C).

6

Persons under the Policy." The letter also states that "Chubb will…be unable to pay any Defense Costs or any other Loss in this matter, absent an order from the Bankruptcy Court expressly authorizing Chubb to do so or stating that such authorization is not needed."

**RELIEF REQUESTED**

17. By this Motion, Movants seek an Order from the Court (i) confirming that the proceeds of the Policy are not property of the estates subject to the automatic stay or, in the alternative, (ii) granting relief from the automatic stay to allow Chubb to make payments or advancements of defense costs or other losses to Movants, consistent with the terms and conditions of the Policy.

**BASIS FOR RELIEF REQUESTED**

**A. The Automatic Stay Does Not Apply to Proceeds Payable to the Movants From the Policy Because Those Proceeds Are Not Property of the Estates**

18. This Court has held that, in determining whether the automatic stay applies to D&O insurance policy proceeds, the "threshold issue" is whether those proceeds are property of the estate. *Downey*, 428 B.R. at 602. "If the proceeds are not property of the estate, then [the insurers]… would not be violating the automatic stay by paying the [movants'] defenses costs" and other covered losses. *Id*.

19. Whether the policy proceeds are property of the estate, in turn, is "controlled by the language and scope of the [specific] polic[ies] at issue." *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 509 (Bankr. D. Del. 2004). Specifically, where, as here, a "liability insurance policy provides direct coverage to both the debtor and the directors and officers, 'the proceeds will be property of the estate if depletion of the proceeds would have an adverse effect on the estate to the extent the policy actually protects the estate's other assets from diminution.'" *Downey*, 428 B.R. at 603 (quoting *In re Allied Digital*, 306 B.R. at 512).

20. Here, the use of the Policy proceeds to pay Movants' defense costs and other covered losses in the Trustee Lawsuit – consistent with the terms of the Policy – would not have any adverse effect on the Debtors' estates. As discussed above, Movants are entitled to coverage under Insuring Clause (A). Insuring Clause (A) provides coverage only to Insured Persons, not to the Debtors. Accordingly, Insuring Clause (A) proceeds plainly do not constitute property of the Debtors' estates. *See Downey*, 428 B.R. at 603 ("When a [corporate] debtor's liability insurance policy only provides direct coverage to the directors and officers, courts generally hold that the proceeds are not property of the estate."); *see also In re Matter of Vitek, Inc.*, 51 F.3d 530, 535 (5th Cir. 1995) ("[W]hen a debtor corporation owns a liability policy that exclusively covers its directors and officers, . . . the proceeds of that D&O policy are not part of the debtor's bankruptcy estate.").

21. The potential for coverage of the Debtors under the Insuring Clauses (B) and (C) does not alter this conclusion. As noted above, the Insuring Clause (B) provisions apply only to the extent that the Debtors actually indemnify a director or officer for losses on a covered claim. In several cases, this Court has held that indemnification coverage does not constitute property of the estate where indemnification is "hypothetical or speculative" and thus, "is no longer protecting the estate's other assets from diminution." *Downey*, 428 B.R. at 607; *see also World Health Alternatives*, 369 B.R. 810 (noting that courts "have found that insurance policy proceeds are not property of the estate where a debtor is covered for indemnification, but indemnification 'either has not occurred, is hypothetical, or speculative'") (quoting *Allied Digital*, 306 B.R. at 512)).

22. Here, the likelihood that Debtors' estates will indemnify Movants or any other Insured Person – and thereby triggering coverage under Insuring Clause (B) – is hypothetical at

best. The Trustee has not given any indication that the estates have the intention, let alone the financial wherewithal, to advance Movants' defense costs (or to otherwise indemnify Movants) going forward. Rather, the Trustee seeks to equitably subordinate any proofs of claim filed by the defendants in the Trustee lawsuit. Thus, Insuring Clause (B) does not provide the Debtors' estates with a property interest in the Policy proceeds.

Finally, while the Policy provides certain coverage for the debtor Organizations, any such coverage is contractually subordinated to Movants' right to coverage under the Insuring Clause (A) provisions and, therefore, potential Organization coverage does not provide any basis for concluding that the Policy protects estate assets from diminution. Thus, to the extent the Debtors' estate could ever incur future Loss under Insuring Clauses (B) or (C) – which appears unlikely – the estates would have only a contingent right to proceeds, limited to the extent the non-indemnified Loss incurred by the Insured Persons under Insuring Clause (A) did not exceed the Policy's Limit of Liability. *See, e.g.*, *In re World Health Alternatives, Inc.*, 369 B.R. at 811 (reasoning that policy proceeds were not assets of the estate for reasons including that a priority of payments provision required that payments under Insuring Agreement A be made first).

23. This Court's decision in *Downey* is squarely on point. There, former officers and directors of a Chapter 7 debtor moved for an order that the automatic stay did not preclude their access to proceeds of a D&O insurance policy in connection with a securities action that had been filed against them. *Downey*, 428 B.R. at 598. Like this Policy, the debtor's policy in *Downey* provided for Side A, Side B, and Side C coverage. *Id*. at 604. This Court granted the directors' and officers' motion, holding that the policy proceeds were not property of the estate. *Id*. at 604-08.

24. In so holding, this Court relied on an order-of-payments clause under which the

9

debtor's interest in the Side B and Side C coverage was "under all circumstances, junior to Coverage A, which provide[d] direct coverage to the [directors and officers]." *Id*. at 607-608 (noting that the policy preserved "this chain of priority in the event of bankruptcy"). Noting the established principle that bankruptcy should not expand a debtor's rights "against others beyond what rights existed at the commencement of the case[,]" this Court recognized that the order-of-payments clause "provide[d] a clear chain of priority among the three types of coverage[,]" which was not affected by the bankruptcy filing. *Id*. at 607 (internal quotation marks omitted). "This is significant[,]" this Court explained, "because were the Court to hold that the Policy proceeds are property of the estate and, thus, subject to the automatic stay, the trustee would have 'greater rights in the [policy proceeds] than the debtor had before filing for bankruptcy.'" *Id*. at 608 (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997)). Thus, the Court concluded that the policy proceeds were "**not property of the estate**" subject to the automatic stay. *Downey*, 428 B.R. at 608.

25. The same reasoning applies here. The Priority of Payments Clause in the Policy is materially identical to the order-of-payment clause in the policy at issue in *Downey*. Outside of bankruptcy, the Debtors' interest in the proceeds of the Policy would be subordinate to the interests of Movants in the Insuring Clause (A) coverage. Assuming *arguendo* that the Policy proceeds were deemed property of the Debtors' estates, the Debtors and their estates would be granted greater rights in the policy proceeds than they would have had outside of bankruptcy, contrary to established principles of bankruptcy law. *See Downey*, 428 B.R. at 608.

26. For the foregoing reasons, the Court should enter an order confirming that the proceeds of the Policy are not property of the Debtors' estates, and thus not subject to the automatic stay, so that Movants may have access to the policy proceeds, consistent with their

contractual rights.

B. **The Court Should, in the Alternative, Grant Relief from the Automatic Stay**

27. Even if the proceeds of the Policy are subject to the automatic stay, the Court should grant relief from the stay so that the Movants can access the policy proceeds to pay for these defense costs and other covered Losses. *See Downey*, 428 B.R. at 608 (holding in the alternative that, even if the policy proceeds were property of the estate, cause existed to lift the automatic stay). Courts in this and other Circuits routinely grant such relief. *See, e.g.*, *MF Global*, 469 B.R. at 192 ("Courts in this Circuit and other jurisdictions have permitted the advancement of defense costs to a debtor's directors or officers even though the insurance policies provide direct coverage to the [debtor]"); *In re Enron Corp.*, No. 01–16034, 2002 WL 1008240, at *2 (Bankr. S.D.N.Y. May 17, 2002) (granting relief from stay, to the extent applicable, for payment of defense costs); *In re CyberMedica, Inc.,* 280 B.R. 12, 18–19 (Bankr. D. Mass. 2002) (granting relief from stay for cause because directors and officers would suffer irreparable harm if prevented from exercising their rights to defense payments under directors and officers insurance policy); *In re Laminate Kingdom, LLC*, No. 07-10279, 2008 WL 1766637, at *4 (Bankr. S.D. Fla. Mar. 13, 2008) ("Because of the separate and distinct interests between the directors and officers and the debtor, numerous courts have granted relief from the automatic stay to permit the advancement of defense costs to a debtor's directors and officers – even though the insurance policies also provided direct coverage to debtor").

28. Section 362(d)(1) of the Bankruptcy Code authorizes the Court to grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such property in interest[.]" 11 U.S.C. § 362(d)(1). In considering whether to grant relief from the stay under this provision, the Court should consider (1) "[w]hether any great prejudice to either the bankrupt estate or the debtor will result from a lifting of the stay" and (2) "[w]hether

11

the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor." *Downey*, 428 B.R. at 609. As described below, these factors strongly weigh in favor of lifting the automatic stay.

29. ***First***, there would not be any prejudice to these estates from lifting the stay to allow Chubb to pay its coverage obligations to Movants. Even if these estates are deemed to have an interest in proceeds of the Policy, that interest would not be impaired by lifting the automatic stay because the company's interest is subordinate to the rights of the Movants and other Insured Persons. *See Laminate*, 2008 WL 1766637, at *3 ("[T]he estate has only a contingent, residual interest in the Policy's proceeds; and, payment of the proceeds in accordance with the 'Priority of Payments Endorsement' does not diminish the protection the Policy affords the estate, as such protection is only available after the [directors' and officers'] Costs of Defense are paid."). Stated simply, debtors and their estates are not prejudiced simply by being held to the terms of their contracts. *See, e.g.*, *In re Continental Airlines, Inc.*, 134 B.R. 536, 541 (Bankr. D. Del. 1991) ("To the extent that such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate.") (internal quotation marks and citations omitted).

30. ***Second***, absent stay relief, the Movants would suffer substantial and potentially irreparable harm. Without the Policy proceeds, the Movants would not have adequate resources to pay their attorney's fees and other defense costs in the Trustee Lawsuit, thereby undermining their ability to present an effective defense. The Movants thus "may suffer substantial and irreparable harm if prevented from exercising their rights to defense payments." *Downey*, 428 B.R. at 610 (quoting *CyberMedica*, 280 B.R. at 18); *Allied Digital*, 306 B.R. at 514 ("Without funding, the Individual Defendants will be prevented from conducting a meaningful defense to the [plaintiff's] claims and may suffer substantial and irreparable harm.").

31. In short, the balance of equities is not a close question here. Absent stay relief, the Movants face significant and potentially irreparable harm, as they would be deprived of the critical funds that they need – and to which they are unambiguously entitled – to fund their defense of the Trustee Lawsuit. The Movants relied upon the existence and availability of insurance coverage when serving in a fiduciary capacity for the Debtors. By contrast, the Debtors' estates would not be harmed by lifting the stay because it is not entitled to the proceeds payable to the Movants.

32. For the foregoing reasons, Movants respectfully request that the Court enter an Order providing that the automatic stay, to the extent applicable, is lifted to allow Chubb to advance and/or reimburse the defense costs and other Losses of the Movants pursuant to the terms and conditions of the Policies.

## NOTICE

33. Notice of this Motion has been given via United States first class mail or served electronically, to (i) the Trustee; (ii) Chubb; and (iii) all parties who have filed a notice of appearance in these cases pursuant to Federal Rule of Bankruptcy Procedure 2002(i). In light of the nature of the relief requested herein, the Movants submit that no other or further notice is necessary.

34. No previous motion for the relief sought herein has been made by Movants to this or any other court.

## CONCLUSION

35. For all the foregoing reasons, Movants respectfully request that the Court enter an order:

(1) Confirming that the proceeds payable under the Policy to Movants are not subject to the automatic stay, and that the automatic stay of 11 U.S.C. § 362(a) does not preclude, or subject to any liability, Chubb from advancing past, present and/or

future defense costs and other Losses incurred by any Movants in connection with the Trustee Lawsuit or any other action or Claim covered by the Policy, subject to any reservation of rights by Chubb;

(2) Alternatively, granting relief from or modifying the automatic stay under 11 U.S.C. §362(d)(1), to the extent that it may be deemed applicable, for all purposes, with regard to the proceeds of the Policy as to all Movants, and without limiting the generality of the foregoing, directing that the automatic stay shall not preclude, or subject to any liability, Chubb for advancing any past, present or future defense costs or other Loss incurred by any Movants in connection with the Trustee Lawsuit or any other Claim covered by the Policy, subject to any reservation of rights by Chubb;

(3) Providing that any disputes that may arise out of this Order shall be subject to the jurisdiction of this Court; and

(4) Granting Movants any other just and proper relief.

Dated: September 28, 2021
Wilmington, Delaware

BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP

 */s/ Jennifer R. Hoover*
Jennifer R. Hoover (No. 5111)
John C. Gentile (No. 6159)
1313 North Market Street, Suite 1201
Wilmington, Delaware 19801
Telephone: (302) 442-7010
Email: jhoover@beneschlaw.com
jgentile@beneschlaw.com

-and-

Sven T. Nylen (*pro hac vice* pending)
71 South Wacker Drive, Suite 1600
Chicago, Illinois 60606-4637
Telephone: (312) 212-4949
Email: snylen@beneschlaw.com

*Counsel to Defendants Rob Archambault, Terry Taft, and Bob Unfried*